**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TIG INSURANCE COMPANY, as successor )
by merger to International Insurance Company )
and International Surplus Lines Insurance )
Company; )
  )
      Plaintiff-Judgment Creditor, )
  )   Case No. 1:18-mc-00129
  )
      v. )
  )
REPUBLIC OF ARGENTINA as successor to )
Caja Nacional de Ahorro y Seguro; and CAJA )
NACIONAL DE AHORRO Y SEGURO; )
  )
      Defendants-Judgment Debtors. )

**DECLARATION OF JULIE RODRIGUEZ ALDORT**

I, Julie Rodriguez Aldort, declare as follows:

1.     I am a partner at the law firm of Butler, Rubin, Saltarelli & Boyd LLP ("Butler

Rubin"), counsel to TIG Insurance Company.  My firm was counsel to TIG in the two underlying

arbitrations and subsequent federal proceedings to confirm two arbitral awards, which led to the

two default judgments that TIG now seeks to enforce.  I submit this Declaration in support of

TIG's Motions for (1) Emergency Relief concerning Real Property about to be Sold by the

Republic of Argentina; (2) Attachment-Related Relief in Aid of Execution on Judgments; and (3)

Writ of Execution on Judgments.  I make the statements below based on my personal knowledge

and based on my review of firm business records.  True and correct copies of each of the exhibits

referenced below, and submitted concurrently herewith, are included and denoted as "Ex."

**Background on 2001 Default Judgment**

**A.  The Underlying Arbitral Proceedings**

2.     On April 10, 2000, TIG, through its predecessor, International Insurance

Company, demanded arbitration against Caja Nacional de Ahorro y Seguro ("Caja"), now

succeeded by the Republic of Argentina, relating to amounts due under the Casualty Reinsurance

Agreement and the Casualty Excess Reinsurance Agreement (the "Reinsurance Contracts"). The

Reinsurance Contracts each included an arbitration clause at Article XXI. (Ex. 1, Reinsurance

Contracts at 14, 32).[1] TIG served the arbitration demand on Caja in accordance with the parties'

special arrangement for service set forth in Article XX of the Reinsurance Contracts. Article XX

provides as follows:

> It is further agreed that service of process in such suit may be made upon John G. Smith, Attorney-In-Fact, as respects Lloyd's admitted, and Lord Bissell & Brook as respects other underwriters, both of 115 LaSalle Street, Chicago, Illinois 60603, and that any suit instituted against any of them upon this Agreement, Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of any appeal.

> The above-named are authorized and directed to accept service of process on behalf of Reinsurers in any suit and/or upon request of the Company, to give a written undertaking to the Company that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted.

> ***

> [P]ursuant to any statute of any state, territory, or district of the United States which makes provisions therefor, Reinsurers hereon designate the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Company or any beneficiary hereunder arising out of this Agreement of reinsurance, and hereby designate the above-named as the person to whom said officer is authorized to mail such process or a true copy thereof.

(*Id.* at 13, 33).

---

[1] Page number references are to the "Aldort" sequential numbering applied to the Exhibits attached to this Declaration, rather than to the original document numbering.

3.      On April 10, 2000, TIG complied with the parties' contractual agreement on service by sending the arbitration demand letter via certified mail to, *inter alia*, Lord Bissell & Brook LLP and the State of Illinois, Secretary of State.  (Ex. 2, April 10, 2000 Demand Letter). In addition, although not required by the Reinsurance Contracts, TIG sent a copy of the arbitration demand letter to the President of Caja on April 10, 2000 by International FedEx delivery.  (*Id.*, FedEx Tracking Confirmation at 50).

4.      Caja defaulted in the arbitral proceeding.  On October 17, 2000, following a merits hearing, the arbitral panel unanimously entered an award in favor of TIG and granted a motion for default judgment/final award.  On October 17, 2000 TIG's counsel, Butler Rubin, sent the arbitration panel's Final Award by FedEx and Express International Mail to Caja in Argentina, and by U.S. Mail and by facsimile to Lord Bissell & Brook.  (Ex. 3, Final Award and Transmittal Letter).

## B.  The Federal Proceeding to Confirm the Final Arbitration Award

5.      On October 27, 2000, TIG filed its Petition for Confirmation of Arbitration Panel's Award ("Petition") in the U.S. District Court for the Northern District of Illinois, *International Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 1:00-cv-06703.  (Ex. 4, Petition and Proof of Service).  On October 30, 2000, TIG served Caja with its Petition by sending a copy to Caja in care of the State of Illinois, Department of Insurance, using a private process server.  (*Id.* at 66).  On November 3, 2000, TIG also served Caja with its Petition by sending a copy to Caja in care of its other designated agent for service of process, Lord Bissell & Brook LLP, using a private process server.  (*Id.* at 64).

6.      On November 24, 2000, Jorge Moreira, Richard M. Clark, and Richard J. Rettberg entered general appearances on behalf of Caja.   On the same date, Caja's attorneys filed an

Answer to the Petition on Caja's behalf.  In its Answer, Caja did not challenge service of the Arbitration Demand, the Final Arbitral Award, or TIG's Petition to Confirm.  (Ex. 5, Caja Answer at 79 (admitting jurisdiction and venue are proper)).

7.    On December 18, 2000, TIG moved to strike Caja's answer to the Petition and moved for an order requiring Caja to post pre-judgment security, as required by Illinois statute 215 ILCS 125(3).  (Ex. 6, TIG Mot. To Strike).  The statute requires that foreign reinsurers, i.e. those that are not authorized to do business in Illinois, post security with the court before filing an answer to the Petition.  Caja filed its opposition to TIG's motion to strike on January 31, 2001.  (Ex. 7, Caja Opp'n).  On March 22, 2001, after the matter was fully briefed by both parties, the court granted TIG's motion to strike Caja's answer and ordered Caja to post pre-judgment security.  (Ex. 8, March 22, 2001 Order); (Ex. 9, March 26, 2001 Corrected Ruling); (Ex. 10, April 18, 2001 Corrected Judgment).

8.    Caja, however, did not post pre-judgment security.  Accordingly, on April 12, 2001, TIG moved for a default judgment against Caja for Caja's failure to post security and answer.  (Ex. 11, TIG 2001 Mot. Default J.).

9.    On April 23, 2001, Caja filed its notice of appeal to the Seventh Circuit.  (Ex. 12, First Notice of Appeal).

10.    On July 5, 2001, the district court entered a default judgment in favor of TIG, granting TIG's April 12th petition and noting that "[t]he October 17, 2000 arbitration award of $4,702,428.12" is confirmed. (Ex. 13, 2001 Default J. at 185).  The district court held Caja in default because it failed to post pre-answer security as required by Illinois law.  (*Id.*)  The court issued the order in open court with counsel for Caja present.  (*Id*. at 184).

11.     Caja filed a notice of appeal of the default on August 3, 2001.  (Ex. 14, Second Notice of Appeal).

12.     On October 8, 2001, Caja filed its Motion for Relief from Judgment Pursuant to FRCP 60(b).  (Ex. 15, Caja 60(b) Mot.).  After the matter was fully briefed, including an opposition by TIG and further reply by Caja, the Court denied Caja's motion.  (Ex. 16, Nov. 27, 2001 Order).

**C.  Caja's Unsuccessful Appeal to the Seventh Circuit**

13.     On June 7, 2002, after receiving briefing from the parties and after oral argument, the U.S. Court of Appeals for the Seventh Circuit affirmed the district court's judgment.  *See International Insurance Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392 (7th Cir. 2002). Among other things, the Seventh Circuit affirmed the finding that Caja had agreed to arbitrate under the reinsurance contracts in issue.  The Seventh Circuit concluded that:  (1) the action  falls within the Panama Convention because the suit involves a dispute arising from a commercial arbitration agreement between signatories (*id*. at 396); (2) "[b]y agreeing to a contract designating Chicago, Illinois as the site of arbitration, even if it is a foreign instrumentality, Caja waived its immunity in a proceeding to confirm the arbitral award" (*id.* at 397); (3) Caja had accepted the court's jurisdiction (*id*. at 396-397); and, (4) even assuming Caja had proved it was in fact acting as the Republic of Argentina, Caja had waived immunity under the Panama Convention from enforcement proceedings relating to the underlying arbitration award (*id*. at 397, 399-400).  Caja did not seek further review and the Court of Appeals decision became final on September 5, 2002, 90 days after the decision.

**D. Caja's Efforts to Evade Payment on the Judgment and the Sanctions That Followed**

14.    Before the Northern District of Illinois, TIG, among other things, invoked

Illinois's state laws and sought a "citation to discover assets" that would reveal what assets could

be executed upon to satisfy the judgment.  (Ex. 16 at 255).  On June 6, 2002, the Northern

District of Illinois granted discovery into Caja Nacional's assets – only for Caja Nacional to not

comply.  (Ex. 46, March 17, 2005 Order, at 418).

15.    In fact, over a period of three more years – from 2002 to 2005 – the Northern

District of Illinois issued several orders, penalizing Caja for its failure to provide discovery of

assets.  On December 4, 2002, the Court sanctioned Caja $2,000 a day for failure to provide

discovery.  (Ex. 44, Dec. 4, 2002 Order, at 408).  Then in 2003, the Court awarded TIG

attorneys' fees of $8,060.  (Ex. 45, March 13, 2003 Order, at 414).  Then in 2005 – after Caja

still failed to provide discovery of relevant assets – the Court raised the sanctions against Caja to

$4,000 a day.  (Ex. 46 at 417).  And that amount kept accruing, as the Northern District of

Illinois left the citation to discover assets in place and retained jurisdiction over the case.

16.    Eventually, in 2014, TIG filed a petition to revive the judgment.  All told, the

judgment debt established by TIG in its petition was in excess of $23 million – an amount which

included the underlying final arbitral award; post-judgment interest then calculated in accordance

with Illinois state law[2]; an award of $8,060 in attorneys' fees; and sanctions first at a rate of

$2,000 a day, and then $4,000 a day.  (Ex. 47, Pet. to Revive J. at 425).  The Northern District

---

[2] "Post-judgment interest may be awarded against a foreign sovereign where the court has jurisdiction under the FSIA." *Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea*, 962 F. Supp. 2d 152, 165 (D. D.C. 2013). The award of such interest "is mandatory, not discretionary." *Id.* (citing *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 850 F. Supp. 2d 277, 287 (D. D.C. 2012)).

Before the Northern District of Illinois, TIG sought post-judgment interest in accordance with Illinois's laws and statutory interest rate of 9%.  However, because the judgment was rendered by a federal court, the federal post-judgment interest rates, set forth principally by 28 U.S.C. § 1961, are in effect.  TIG accordingly proceeds in

granted the petition and revived the judgment, extending the time for it to remain in effect.  (Ex. 48, July 11, 2014 Order); *see also* D.C. Code § 15-103 (revival of judgment "extends the effect and operation of the judgment or decree with the lien thereby created and all the remedies for its enforcement for the period of twelve years from the date of the order").

### E.  Post-Appeal Service of the Default Judgment

17.    On July 25, 2017, TIG, through my office, served via process server the default judgment entered on July 5, 2001 on the State of Illinois, Department of Insurance.  (Ex. 17, July 25, 2017 Transmittal Letters and Process Server Aff.).

18.    On August 2, 2017, TIG, through the office of its counsel at Mitchell, Silberberg & Knupp, LLP, also served the default judgment on the Republic of Argentina pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.  I am informed that those efforts are separately detailed in the accompanying Declaration of Mark N. Bravin in the Section titled "Hague Convention Service of the 2001 Default Judgment."

### Background on 2018 Default Judgment

### A.  The Underlying Arbitral Proceedings

19.    On July 1, 2016, TIG demanded a second arbitration against the Republic, as successor to Caja, with respect to additional amounts due under the Reinsurance Contracts since the initiation of the 2000 arbitration.  (Ex. 18, July 1, 2016 Arbitration Demand and Mailing Return Receipts, at 268-271, 304-305).  The arbitration demand was served on the Republic by

---

accordance with the federal rates, with calculations that are set forth in greater detail in the Declaration of Christopher LeGros at ¶ 16.

certified mail on Locke Lord (as successor to Lord Bissell and Brook), return receipt dated July 7, 2016, and on the State of Illinois (return receipt dated July 6, 2016) pursuant to Article XX. (*Id.* at 304-305).  In addition, copies of the arbitration demand were served via hand delivery in Buenos Aires to the Ministry of Finance, the attorney general's office, and the Instituto Nacional de Reaseguro ("INDER") (*Id.* at 270, 272, 280 (received stamps)).  TIG included a Spanish translation of the arbitration demand in the copies served directly on the Republic in Buenos Aires. (*Id.*).

20.    On February 2, 2017, an arbitration hearing was held in Chicago, Illinois, as agreed to in Article XXI of the Reinsurance Contracts.  The Republic failed to appear.  The arbitration panel reviewed documentary evidence, received and examined testimony from two witnesses, and heard argument.  On March 9, 2017, the arbitration panel entered its Final Award in favor of TIG, awarding it $3,459,489.31.  (Ex. 49, Mar. 9, 2017 Final Order and Award).  The Panel emailed copies of the award directly to the Ministry of Economy, the Attorney General, and INDER via the email.  (Ex. 19, Mar. 9, 2017 Transmittal Email).  On March 15, 2017, TIG also forwarded the award to the same email addresses, in addition to the Republic's Embassy. (Ex. 20, March 15, 2017 Transmittal Email).

**B.  The Federal Proceeding to Confirm the 2017 Arbitration Award**

21.    On April 14, 2017, TIG filed a Petition for Confirmation of Final Arbitration Award in the United States District Court for the Northern District of Illinois in a proceeding captioned *TIG Insurance Co. v. Republic of Argentina*, No. 17-cv-02835. (Ex. 24, 2017 Pet.)  On April 20, 2017, TIG, via special process server, served its Petition for Confirmation of Final Arbitration Award and supporting documentation to Caja in care of Locke Lord and the State of Illinois, Department of Insurance.  (Ex. 21, Return of Service on Illinois Dept. of Insurance;  Ex.

22, Return of Service on Locke Lord LLP; Ex. 23, Safazadeh Decl. at ¶ 4).

22.    On May 11, 2017, TIG's local counsel in Argentina delivered by hand courtesy copies of the Petition and supporting documentation, along with a Spanish translation of the documents, to the Republic's Attorney General's office and Ministry of Economy. (Ex. 23 at ¶ 6). The Republic's offices acknowledged receipt by stamping a copy of the documents and giving the stamped copy to TIG's counsel. (*Id*.)

23.    The Republic failed to respond to TIG's Petition. TIG filed a motion for default on August 30, 2017. (Ex. 25, TIG 2017 Mot. Default J.). Again, in accordance with Article XX of the Reinsurance Contracts, TIG served the Republic through its agents, the State of Illinois, Department of Insurance by hand delivery, and through its agent Locke Lord LLP (as successor to Lord, Bissell & Brook LLP) by registered mail, (Ex. 26, Mailing Return Receipt). TIG also served the Republic's Guillermo Garcia Eleisequi and Silvina Gonzalez Napolitano in Argentina via registered mail, but the Republic returned these documents without opening them.

24.    On September 6, 2017, the court entered a default order (Ex. 27, Notification of Dkt. Entry), under Fed. R. Civ. P. 55(a), which provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The court ordered service of the Order of Default on the Republic via a means that allows for electronic confirmation of delivery, (*id*.), and TIG sent the order to Locke Lord LLP, (Ex. 28, Sept. 8, 2017 Transmittal Email). Additionally, on September 11, 2017, TIG's local counsel in Buenos Aires emailed the order, with a Spanish translation to the Republic's Ignacio Perez Cortes at the Republic's Ministry of Economy and Bernardo Saravia Frias with the Attorney General's office. (Ex. 29, Sept. 11, 2017 Email to B. Frias; Ex. 30, Sept. 11, 2017 Email to I. Cortes).

25.     On September 20, 2017, during a hearing on the motion for default judgment, the court advised that it had received an *ex parte* communication from the Argentine consulate challenging the service of the action because TIG had not followed Hague Service Convention procedures.  (Ex. 31, Sept. 19, 2017 Ltr. from Argentine Consulate; Ex. 32, Sept. 20, 2017 Minute Entry).  The court continued the motion and encouraged the Republic to file an attorney appearance, sending the order to the Consulate by mail.  (Ex. 32).  TIG also forwarded the order by email to the consulate on the same date.  (Ex. 33, Sept. 20, 2017 Email).

26.     On October 11, 2017, TIG responded to the Consulate's letter to the court with a motion to strike the ex parte communication contesting service, (Ex. 34, TIG Mot. to Strike Letter), and served its response on the Republic via the Consulate, the State of Illinois/Department of Insurance, (Ex. 35, Certificate of Service), and Locke Lord LLP (Ex. 36, Oct. 11, 2017 Email).  TIG's local counsel in Buenos Aires also sent a copy with Spanish translation on October 19, 2017, via email to Ignacio Perez Cortes at the Republic's Ministry of Economy and Bernardo Saravia Frias with the Attorney General's Office.  (Ex. 37, Oct. 19, 2017 Email).

27.     On December 6, 2017, the court denied TIG's motion to strike as moot and held that the Republic's objection to the validity of service was overruled.  (Ex. 38, Dec. 6, 2017 Order).  The court found as follows: "TIG has established that service was appropriate under 28 USC 1608 because even taking Argentina's submissions as properly filed, what TIG has established is that there was a special arrangement within the meaning of 1608 in the insurance contracts for the insurance company to serve Argentina via their lawyers at what was then called Lord, Bissell & Brook and what's now called Locke Lord and the Illinois Department of Insurance."  (Ex. 39, Tr., Dec. 6, 2017 Proceedings, at 390).

28.    On January 8, 2018, the court entered a default judgment against the Republic for $3,459,489.31 and confirmed the arbitration award in TIG's favor.  (Exs. 40-41, 2018 Default J.).  Upon its own order, the court mailed and emailed the order and judgment to the Republic via the Illinois Department of Insurance, Locke Lord, and the Consulate.  (Ex. 42, Jan. 10, 2018 Order).  On January 30, 2018, TIG served copies of the default judgment and order via registered and certified mail to the Illinois Department of Insurance and Locke Lord in accordance with the parties' agreement in Article XX of the Reinsurance Contracts.  (Ex. 43, Jan. 30, 2018 Transmittal Letters, Return Receipts, and Tracking Information).

29.    In addition to the service ordered by the Court pursuant to the "special arrangement" set forth in the reinsurance agreements, TIG in an abundance of caution separately served the 2018 default judgment on the Republic pursuant to the procedures set forth in the Hague Convention.  I am informed that those efforts are further set forth in the Declaration of Mark N. Bravin in the Section titled "Hague Convention Service of the 2018 Default Judgment."

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 25th day of September 2018 in Chicago, Illinois.

Julie Rodriguez Aldort
Attorney for TIG Insurance Company

# Exhibit 1



CASUALTY REINSURANCE AGREEMENT

ARTICLE | | PAGE
--- | --- | ---
I | TERM | 1
II | TERRITORY | 1
III | BUSINESS REINSURED | 1
IV | DEFINITIONS | 2
V | COVER | 3
VI | WARRANTY | 3
VII | NET RETAINED LINES | 3
VIII | EXCLUSIONS | 4
IX | CLAIMS | 5
X | SALVAGE | 6
XI | PREMIUM | 6
XII | REPORTS | 7
XIII | ORIGINAL CONDITIONS | 8
XIV | ERRORS AND OMISSION | 8
XV | TAXES | 8
XVI | ADVANCES | 9
XVII | INSPECTION | 9
XVIII | CURRENCY | 10
XIX | INSOLVENCY | 10
XX | SERVICE OF SUIT | 11
XXI | ARBITRATION | 12
XXII | TERMINATION | 12
XXIII | INTERMEDIARY | 13
XXIV | PARTICIPATION | 13

Aldort 2

This CASUALTY REINSURANCE AGREEMENT entered
into by and between INTERNATIONAL SURPLUS
LINES INSURANCE COMPANY, Chicago, Illinois
and L. W. BIEGLER INC., Chicago, Illinois,
acting for and on behalf of the Companies
more fully described in ARTICLE III, (here-
inafter together called the "Company") of
the one part, and

(hereinafter called the "Reinsurer") of the
other part.

WITNESSETH:

In consideration of the mutual covenants hereinafter contained and upon
the terms and conditions hereinafter set forth, the parties hereto agree as
follows:

## ARTICLE I

TERM:

This Agreement shall become effective at 12:01 A.M., Central Standard
Time, January 1, 1979 and shall continue in force until terminated in accordance
with ARTICLE XXII, TERMINATION.

## ARTICLE II

TERRITORY:

This Agreement shall cover losses occurring within the territorial
limits of the Company's Policies.

## ARTICLE III

BUSINESS REINSURED:

This Agreement is to cover the net excess liability of the Company aris-
ing out of losses occurring during the term of this Agreement on all Policies
written by International Surplus Lines Insurance Company, or through the agency
of L. W. Biegler Inc., for the account of United States Fire Insurance Company
and/or Westchester Fire Insurance Company, both of New York, New York and/or
International Insurance Company, Chicago, Illinois and/or Industrial Indemnity
Company, San Francisco, California and/or United States Fire Insurance Company
of Canada, Toronto, Ontario and/or North River Insurance Company, Morristown,
New Jersey and/or Herald Insurance Company of Canada, Toronto, Ontario covering
business classified by the Company as casualty business and specifically declared
to this Agreement subject to the further terms, conditions and exclusions con-
tained herein.

-1-

In the event a claim is reported or threatened under any Policy before declaration of cession to this Agreement has been made on the Company's records, the portion of such policy which the Company may consider reinsured hereunder shall be based upon the established practice of the Company in reinsuring Policies of similar amount and classification. It is understood, however, that upon request by the Reinsurer, the Company will produce evidence of its practice applicable to any such case forming the subject of inquiry or investigation.

<u>ARTICLE IV</u>

<u>DEFINITIONS</u>:

A.  The term "Casualty Business" as used in this Agreement shall mean all business classified by the Company as casualty business including but not limited to;

Accident & Sickness Insurance
Burglary & Theft Insurance
Directors' & Officers' Insurance
Commercial Multi-Peril Insurance, Section II only
Elevator Insurance
Glass Insurance
Comprehensive Personal Liability Insurance alone or as part of Homeowners' or Farmowners' Insurance
Water Damage Insurance
Workmen's Compensation and Employers' Liability Insurance
Personal Injury Liability Insurance including Professional Liability
Property Damage Liability Insurance
Automobile Liability Insurance

B.  The term "Policies" as used in this Agreement shall mean any and all binders, policies, and contracts of insurance or reinsurance issued, accepted or held covered provisionally or otherwise by or on behalf of the Company.

C.  The term "Ultimate Net Loss" as used in this Agreement shall mean the sum actually paid in the settlement of losses for which the Company is liable, such sum to exclude costs and expenses as described in ARTICLE IX, CLAIMS, but salvages and any recoveries including recoveries under any other reinsurances whether recovered or not are first to be deducted from any such sum to arrive at the amount of liability, if any, attaching hereunder.

Nothing, however, contained herein shall be construed as meaning that losses are not recoverable hereunder until the Ultimate Net Loss to the Company has been ascertained.

D.  The term "Loss Occurrence" as used in this Agreement shall mean any one occurrence or accident as defined in the Policy out of which the loss arose; or in the absence of a definition, a loss, accident, casualty, disaster or series of losses, accidents

-2-

Aldort 4

casualties or disasters arising out of one event or occur-
rence; but when the applicable policy limit is in the aggregate,
the exhaustion of the underlying aggregate limit shall be
deemed an "occurrence".

ARTICLE V

COVER:

A. With respect to Casualty Business other than Directors'
and Officers' Business, the Reinsurer shall be liable for
the Ultimate Net Loss in excess of the retention declared
by the Company of not less than $250,000 nor more than
$500,000 each and every insured, each and every Loss Occur-
rence, subject to a limit of liability to the Reinsurer
to be declared by the Company, but not to exceed $500,000
each and every insured, each and every Loss Occurrence;
provided that, declaration shall be made in accord with the
schedule appearing in ARTICLE XI, PREMIUM.

B. With respect to Directors' and Officers' Business the
Company may cede on a pro rata basis, and may choose the
proportion of any Policy to be ceded as reinsured and the
Reinsurer shall be liable in respect of losses arising out
of such cessions in the proportion chosen by the Company;
provided that the Reinsurer's share shall never exceed
$500,000 any one insured, any one Loss Occurrence.

It is understood that the Company shall be the sole judge of what
constitutes one insured.

ARTICLE VI

WARRANTY:

With respect to Directors' and Officers' Insurance Policies ceded to
this Agreement on a pro rata basis it is warranted that such Policies shall be
at least $5,000,000 from first loss on any occurrence giving rise to a claim
hereunder.

ARTICLE VII

NET RETAINED LINES:

This Agreement applies only to that portion of any insurance or rein-
surances covered by this Agreement which the Company retains net, or net and
quota share reinsurance, and in calculating the amount of any loss hereunder
and also in computing the amount in excess of which this Agreement attaches,
only loss or losses in respect of that portion of any insurances or reinsurances
which the Company retains net or net and quota share reinsurance, shall be
included, it being understood and agreed that the amount of the Reinsurer's
liability hereunder in respect of any loss or losses shall not be increased by
reason of the inability of the Company to collect from any other reinsurer
whether specific or general, any amount which may have become due from them,
whether such inability arises from the insolvency of such other Reinsurer or
otherwise.

-3-

It is understood that underlying excess of loss reinsurances may be utilized by the Company, and any such underlying excess of loss reinsurances shall be ignored for purposes of this Agreement.

### ARTICLE VIII

EXCLUSIONS:

This Agreement does not cover:

A. Liability excluded under the provisions of the Nuclear Incident Clauses attached being:

1. Nuclear Incident Exclusion Clause - Liability - Reinsurance.
2. Nuclear Incident Exclusion Clause - Physical Damage - Reinsurance.
3. Nuclear Incident Exclusion Clause - Physical Damage and Liability (Boiler and Machinery Policies) - Reinsurance.

B. Reinsurance assumed by the Company (other than facultative and Agency reinsurance);

C. Liability assumed as a member of any Pool or Association;

D. Business classified by the Company as:

1. Aviation Liability (except when such aviation liability is incorporated in a policy covering Comprehensive General Liability);
2. Ocean Marine Business, except that this exclusion applies only to Ocean Marine Business when written as such, and does not apply when the original insured's operations insurable as Ocean Marine Business constitute only an incidental and minor part of his main operations provided the main operations are written by the Company;
3. Workmen's Compensation (except when written Excess of Loss); or Employers' Liability (applies only to risks reinsured with the Workmen's Compensation Reinsurance Bureau). As respects Workmen's Compensation written Excess of Loss, this Agreement does not cover and specifically excludes the following operations carried on by an original insured as a principle operation.

(a) Coal Mining involving underground operations;
(b) Operation of Aircraft;
(c) Operations involving an explosive substance as follows:
   (i) The manufacturing of any explosive substance intended for use as an explosive,
   (ii) the loading of any explosive substance into containers for use as explosive objects, propellant charges, or detonating devices, (including storage in connection therewith); or the dismantling of, or the unloading of explosive substance from such containers;

-4-

Aldort 6

(iii)   the processing or destruction of any explosive sub-stance (including storage in connection therewith),

(iv)   the manufacturing of any product, including but not limited to Fireworks and Fuse, in which any explosive substance is an ingredient.

It is specially agreed, however, this exclusion D.3. (c) shall not apply where use of an explosive substance is purely incidental to the main operations.

An explosive substance is defined as any substance the express purpose of which is to explode, as dif-ferentiated from commodities used industrially and which are only incidentally explosive such as, but not limited to, gasoline, celluloid, fuel gases, and dyestuffs.

(d)   Aggregate Excess Workmen's Compensation Insurance;

E.   Business classified by the Company as Boiler and Machinery;

F.   Surety;

G.   Medical Malpractice business;

H.   Railroad Business.

Except for A,B and C, it is understood that the foregoing shall not apply where the operations outlined are only incidental to the original assurd's main operations.

If the Company, without the knowledge and contrary to the instructions of its Home Office, is bound on a risk falling within one of the foregoing classes, such risk is covered hereunder until said Home Office receives knowledge thereof, and pending concellation of such risk by the Company, for a further period of thirty (30) days after the receipt of such knowledge by the Home Office of the Company.

<div align="center">ARTICLE IX</div>

CLAIMS:

The Company will advise the Reinsurer promptly of all claims and any subsequent developments pertaining thereto, which involve the Reinsurer, or which are reserved or which are paid in an amount in excess of one-half of the Company's retention.

All payments of claims in which this reinsurance is involved shall be binding upon the Reinsurer, which shall be bound to pay or allow, as the case may be, its proportion of such payments immediately upon receipt of the Company' proof of loss. All court costs and expenses, including interest, paid by the Company (excluding salaries of permanent officials and employees of the Company) connected with any resistance to, investigation of, or negotiations concerning

<div align="center">-5-</div>

Aldort 7

settlement of such claims shall be apportioned in proportion of the respective interests as finally determined; provided, however, that with respect to excess cessions, in the event a verdict or judgment is reduced by litigation or other- wise (other than by the trial court), resulting in an ultimate saving to the Reinsurer, or a judgment is reversed outright, the expenses incurred in securing such reduction or reversal shall be pro-rated between the Company and the Rein- surer in the proportion that each benefits from such reduction or reversal, and the expenses incurred up to the time of the original verdict or judgment shall be pro-rated in proportion to each party's interest in such verdict or judgment.

Transactions shall be made payable, directly to the other party.

It is understood that, when so requested, the Company will afford the Reinsurer an opportunity to be associated with the Company, at the expense of the Reinsurer, in the defense or control of any claim or suit or proceeding involving this reinsurance, and the Company and the Reinsurer shall cooperate in every respect in the defense of such claim or suit or proceeding.

### ARTICLE X

SALVAGE:

A.  As respects excess cessions, salvage (i.e., reimbursement obtained or recovery made by the Company, less the actual cost, excluding salaries of officials and permanent employees of the Company, of obtaining such reimbursement or making such recovery) applying to risks covered under this Agreement shall always be used to reimburse the excess carriers in the reverse order of their priority, according to their participation, before being used in any way to reimburse the Company for its primary loss.

Should a recovery effort be unsuccessful, or should the expenses of making a recovery exceed the recovery, then the Company and the Reinsurer shall share such expense in proportion to their interest in the loss.

B.  As respects pro-rata cessions, all salvage recoveries and all attendant expense (excluding salaries of officials and permanent employees of the Company) shall be shared in proportion to the cession of the Policy out of which the loss arose.

### ARTICLE XI

PREMIUM:

Within forty-five (45) days following the end of each calendar quarter that this Agreement remains in effect the Company shall pay to the Reinsurer a premium based on the rates in the following schedules:

-6-

Aldort 8

As respects excess cessions:

| Company's Declared Retention: | Reinsurer's Liability Declared by the Company may be: | Rate Gross . P. | Rate Net . P. |
|---|---|---|---|
| A)  $250,000 | 1. Less than or equal to the Co's retention | a) 19.0% | b) 23.0% |
|  | 2. More than the Co's retention, but not greater than twice the Co's retention | a) 22.5% | b) 28.0% |
| B)  Greater than $250,000 but not more than $500,000 | 1. Less than or equal to the Co's retention | a) 19.0% | b) 23.0% |
|  | 2. More than the Co's retention, but not to exceed the limits of liability as shown in ARTICLE V, COVER | a) 22.5% | b) 28.0% |

Directors' and Officers' Liability may be ceded on a pro-rata share basis with premiums payable pro-rata subject to a ceding commission of 27.5% of the Original Gross Earned Premium.

**ARTICLE XII**

REPORTS:

A. Within forty-five (45) days following the end of each calendar quarter that this Agreement remains in effect the Company shall supply the Reinsurer with a report covering the following:

   1. Premium earned during the calendar quarter;

   2. Loss and loss expense paid during the calendar quarter;

   3. Loss and loss expense outstanding at the end of the calendar quarter.

B. Within forty-five (45) days following the end of each Agreement Year that this Agreement remains in effect the Company shall supply the Reinsurer with a report covering the following:

   1. Premium ceded to this Agreement during the Agreement Year segregated by major class;

-7-

** Earned basis for non-admitted Reinsurers.

Aldort 9

2. Loss and loss expense paid during the Agreement Year segregated by major class and year of occurrence;

3. Loss and loss expense outstanding at the end of the Agreement Year segregated by major class and year of occurrence.

### ARTICLE XIII

ORIGINAL CONDITIONS:

All reinsurance ceded to this Agreement on a pro-rata basis shall be subject to the same terms, rates, conditions and waivers, and to the same modification, alterations, and cancelments as the respective Policies of the Company; except in the case of the insolvency of the Company, in which case the provisions of the INSOLVENCY ARTICLE shall take precedence.

### ARTICLE XIV

ERRORS AND OMISSIONS:

Inadvertent delays, errors or omissions made in connection with this Agreement or any transaction hereunder shall not relieve either party from any liability which would have attached had such delay, error or omission not occurred, provided always that such error or omission will be rectified as soon as possible after discovery.

### ARTICLE XV

TAXES:

The Company will be liable for taxes (except Federal Excise Tax) on premiums reported to the Reinsurer hereunder.

Federal Excise Tax applies only to those Reinsurers, excepting Underwriters at Lloyds, London, and other reinsurers exempt from the Federal Excise Tax, who are domiciled outside the United States of America.

The Reinsurer has agreed to allow, for the purpose of paying the Federal Excise Tax, 1% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

In the event of any return of premium becoming due hereunder, the Reinsurer will deduct 1% from the amount of the return, and the Company or its agent should take steps to recover the tax from the U.S. Government.

--8--

ARTICLE XVI

ADVANCES:

   If the Reinsurer is unauthorized in any state of the United States of America or the District of Columbia where authorization is required by insurance regulatory authorities, the Reinsurer will fund (provided particulars are received forty-five days prior to the date funding is required by the Company) outstanding losses by either cash advances, escrow accounts for the benefit of the Company, Letters of Credit, or a combination thereof, if a penalty would accrue to the Company on its statement without such funding.  The Reinsurer shall have the sole option of determining the method of funding referred to above provided it is acceptable to the insurance regulatory authorities involved.

   LOSS RESERVES: (Applies only to Lloyd's Underwriters and certain other Reinsurers who are domiciled outside the United States of America at the sole option of such other Reinsurers).

   As regards policies or bonds issued by the Company coming within the scope of this Agreement, the Company agrees that when it shall file with the Insurance Department or set up on its books reserves for losses which it shall be required to set up by law it will forward to the Reinsurers a statement showing the proportion of such loss reserves which is applicable to them.  The Reinsurers hereby agree that they will apply for and secure delivery to the Company a clean irrevocable Letter of Credit issued by Citibank NA of New York in an amount equal to Reinsurers' proportion of said loss reserves.

   The Company undertakes to use and apply any amounts which it may draw upon such credit for the following purposes only:

   a)  To pay the Reinsurers' share or to reimburse the Company for
       the Reinsurers' share of any liability for loss reinsured by
       this Agreement.

   b)  To make refund of any sum which is in excess of the actual
       amount required to pay Reinsurers' share of any liability
       reinsured by this Agreement.

   First National City Bank of New York shall have no responsibility whatsoever in connection with the propriety of withdrawals made by the Company or the disposition of funds withdrawn except to see that withdrawals are made only upon the order of properly authorized representatives of the Company.

ARTICLE XVII

INSPECTION:

   The Company shall place at the disposal of the Reinsurer at all reasonable times, and the Reinsurer shall have the right ot inspect, through its authorized representatives, all books, records and papers of the Company in

-9-

Aldort 11

connection with any reinsurance hereunder, or claims in connection herewith. The Company will maintain reports of pro-rata cessions separately from excess cessions.

## ARTICLE XVIII

CURRENCY:

All transactions shall be in United States currency, with the exception of Canadian dollars which shall remain as Canadian dollars. Premiums and losses shall for the purpose of this Reinsurance, be converted into United States dollars, except Canadian currency, at the rates of exchange at which they are entered in the books of the Company.

## ARTICLE XIX

INSOLVENCY:

In the event of the insolvency of the Company, reinsurance under this Agreement shall be payable by the Reinsurer on the basis of the liability of the Company under contract or contracts reinsured without diminution because of the insolvency of the Company to the Company or to its liquidator, receiver, or statutory successor, except as provided by Section 315 of the New York Insurance Law or except:

a) where the Agreement specifically provides another payee of such reinsurance in the event of the insolvency of the Company, and;

b) where the Reinsurer with the consent of the direct insured or insureds has assumed such Policy obligations of the Company as direct obligations of the Reinsurer to the payees under such Policies and in substitution for the obligations of the Company to such payees.

It is agreed, however, that the liquidator or receiver or statutory successor of the insolvent Company shall give written notice to the Reinsurer of the pendency of a claim against the insolvent Company on the Contract or Contracts reinsured within a reasonable time after such claim is filed in the insolvency proceeding and that during the pendency of such claim the Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defense or defenses which it may deem available to the Company or its liquidator or receiver or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

-10-

Aldort 12

Where two or more Reinsurers are involved in the same claim and a majority in interest elect to interpose defense to such claim, the expense shall be apportioned in accordance with the terms of this Agreement as though such expense had been incurred by the insolvent Company.

Should the Company go into liquidation or should a receiver be appointed the Reinsurer shall be entitled to deduct from any sums which may be or may become due to the Company under this Reinsurance Agreement, any sums which are due to the Reinsurer by the Company under this Reinsurance Agreement and which are payable at a fixed or stated date, as well as any other sums due the Reinsurer which are permitted to be offset under applicable law.

<div align="center">ARTICLE XX</div>

SERVICE OF SUIT:

This Article applies only to Reinsurers domiciled outside the United States of America.

It is agreed that, in the event of the failure of Reinsurers hereon to pay any amount claimed to be due hereunder, Reinsurers hereon, at the request of the Company will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

It is further agreed that service of process in such suit may be made upon John G. Smith, Attorney-In-Fact, as respects Lloyd's admitted, and Lord Bissell & Brook as respects other underwriters, both of 115 LaSalle Street, Chicago, Illinois 60603, and that in any suit instituted against any one of them upon this Agreement, Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of any appeal.

The above-named are authorized and directed to accept service of process on behalf of Reinsurers in any suit and/or upon request of the Company, to give a written undertaking to the Company that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefor, Reinsurers hereon hereby designate the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Company or any beneficiary hereunder arising out of this Agreement of reinsurance, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

<div align="center">-11-</div>

Aldort 13

## ARTICLE XXI

ARBITRATION:

If any dispute shall arise between the Company and the Reinsurer, either before or after the termination of this Agreement, with reference to the interpretation of this Agreement or the rights of either party with respect to any transactions under this Agreement, the dispute shall be referred to three Arbitrators, one to be chosen by each party and the third by the two so chosen. If either party refuses or neglects to appoint an Arbitrator within thirty days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate two Arbitrators who shall choose the third. In the event the two Arbitrators do not agree on the selection of the third Arbitrator within thirty days after both Arbitrators have been named, the Company shall petition the American Arbitration Association to appoint an Arbitrator. Each party shall submit its case to the Arbitrators within thirty days of the appointment of the Arbitrators. The Arbitrators shall consider this Agreement an honorable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law. The decision of a majority of the Arbitrators shall be final and binding on both the Company and the Reinsurer. Judgment may be entered upon the award of the Arbitrators in any court having jurisdiction. The expense of the Arbitrators and of the arbitration shall be equally divided between the Company and the Reinsurer. Any such arbitration shall take place in Chicago, Illinois unless some other location is mutually agreed upon by the parties.

## ARTICLE XXII

TERMINATION:

This Agreement may be terminated at any January 1, 12:01 A.M., Central Standard Time, by either party giving at least ninety (90) days prior written notice by Registered Mail to the other party. The Reinsurer shall continue to be liable for losses under Policies in force until the natural expiration or termination or anniversary date of such policies ceded to this Agreement or the first anniversary date of the termination of this Agreement, whichever occurs first.

Notice of cancellation on the part of either the Company or Reinsurer will be mailed directly to the other party.

The Company shall have the option to terminate all liability of the Reinsurer as of the termination date for losses occurring subsequent to the termination date.

Immediately following the time that the Reinsurer is relieved of liability for losses occurring thereafter, the Reinsurer shall return to the Company an appropriate unearned premium portfolio.

-12-

Aldort 14

The Reinsurer, may however, cancel this Agreement absolutely on thirty (30) days notice for non-payment of premium due.  Such cancellation shall not take effect if premium due is paid promptly after notice of cancellation is received by the Company.

### ARTICLE XXIII

INTERMEDIARY:

J. L. Kelley, Inc., P. O. Box 267, Franklin Lakes, New Jersey 07417 is hereby recognized as the Broker negotiating this Agreement through whom all communications (including but not limited to notices, statements, premiums, written premiums, commissions, taxes, losses, loss adjustment of the expense, salvage and loss settlements) relating thereto shall be transmitted to the Company or the Reinsurer.  Payments by the Company to the Broker shall be deemed to constitute payment to the Reinsurer.  Payments by the Reinsurer to the Broker shall be deemed only to constitute payment to the Company to the extent that such payments are actually received by the Company.

### ARTICLE XXIV

PARTICIPATION:   CASUALTY REINSURANCE AGREEMENT
                 EFFECTIVE January 1, 1979

This Agreement is for  .583 % of the liability and amounts set forth in this Agreement and the Reinsurer is entitled to a proportionate share of the premium provided.

IN WITNESS WHEREOF, the parties hereto, by their respective duly authorized officers, have executed this Agreement in duplicate as of the dates recorded below:

At Chicago, Illinois this _10th_ day of _Oct_ 1979.

INTERNATIONAL SURPLUS LINES INSURANCE COMPANY

ATTEST:

NORMAN R. REID
SENIOR VICE PRESIDENT

At Chicago, Illinois this _10th_ day of _Oct_ 1979.

L. W. BIEGLER INC.  for and on behalf of the Companies listed in ARTICLE III, pursuant to the authority granted by such Companies.

ATTEST:

NORMAN R. REID
SENIOR VICE PRESIDENT

At  Buenos Aires,     this   17   day of  Abril  1979

CAJA NACIONAL DE AMORRO Y SEGURO

OUR REF.: 1358

ATTEST:

OSVALDO N. ANCONATANI
1° JEFE DEPARTAMENTO COBERTURAS ESPECIALES

-13-

U.S.A.

## NUCLEAR INCIDENT EXCLUSION CLAUSE — PHYSICAL DAMAGE — REINSURANCE.

1. This Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2. Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:

    I. Nuclear reactor power plants including all auxiliary property on the site, or

    II. Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and "critical facilities" as such, or

    III. Installations for fabricating complete fuel elements or for processing substantial quantities of "special nuclear material", and for reprocessing, salvaging, chemically separating, storing or disposing of "spent" nuclear fuel or waste materials, or

    IV. Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3. Without in any way restricting the operations of paragraphs (1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate

    (a)   where Reassured does not have knowledge of such nuclear reactor power plant or nuclear installation, or

    (b)   where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused. However on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4. Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against.

5. It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Reassured to be the primary hazard.

6. The term "special nuclear material" shall have the meaning given it in the Atomic Energy Act of 1954 or by any law amendatory thereof.

7. Reassured to be sole judge of what constitutes:

    (a)   substantial quantities, and

    (b)   the extent of installation, plant or site.

Note. — Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

    (a)   all policies issued by the Reassured on or before 31st December 1957 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply,

    (b)   with respect to any risk located in Canada policies issued by the Reassured on or before 31st December 1958 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply.

Aldort 16

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY-REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.*

I.  It is agreed that the policy does not apply under any liability coverage,
to { *injury, sickness, disease, death or destruction* / bodily injury or property damage }  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II.  Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners' Policies.

III.  The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

(a)  become effective on or after 1st May, 1960, or

(b)  become effective before that date and contain the Limited Exclusion Provision set out above;

provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.*

I  It is agreed that the policy does not apply:

I.  Under any Liability Coverage, to { *injury, sickness, disease, death or destruction* / bodily injury or property damage }

(a)  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to { *immediate medical or surgical relief,* / first aid, }  to expenses incurred with respect to { *bodily injury, sickness, disease or death* / bodily injury }  resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

Aldort 17

III. Under any Liability ⌐⌐ ⌐ .age, to { *injury, sickness, disease, death o.*   *ction* resulting from
                                         { bodily injury or property damage
the hazardous properties of nuclear material, if

(a)   the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b)   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c)   the { *injury, sickness, disease, death or destruction*   arises out of the furnishing by an in-
          { bodily injury or property damage
sured of services, materials, parts or equipment in connection with the planning, construc-
tion, maintenance, operation or use of any nuclear facility, but if such facility is located
within the United States of America, its territories, or possessions or Canada, this exclusion

(c) applies only to   { *injury to or destruction of property at such nuclear facility.*
                       { property damage to such nuclear facility and any property thereat.

IV.  As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility"  means

(a)   any nuclear reactor,

(b)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium; (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

{ *With respect to injury to or destruction of property, the word "injury" or "destruction" includes*
{ *all "property damage" includes all forms of radioactive contamination of property.*
{ *forms of radioactive contamination of property.*

V.  The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which become effective on or after 1st May, 1960, provided this paragraph (3) shall not be applicable to

(i)    Garage and Automobile Policies issued by the Reassured on New York risks, or
(ii)   statutory liability insurance required under Chapter 90, General Laws of Massachusetts, until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having Jurisdiction thereof.

(4)   Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Reassured in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions adopted by the Canadian Underwriters' Association or the Independent Insurance Conference of Canada.

---

*NOTE.  The words printed in italics in the Limited Exclusion Provision and in the Broad Exclusion Provision shall apply only in relation to original liability policies which include a Limited Exclusion Provision or a Broad Exclusion Provision containing those words.

Aldort 18

## NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE AND LIABILITY (BOILER AND MACHINERY POLICIES)—REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all original Boiler and Machinery Insurance or Reinsurance contracts of the Reassured shall be deemed to include the following provisions of this paragraph;

This policy does not apply to "loss", whether it be direct or indirect, proximate or remote

(a)   from an Accident caused directly or indirectly by nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled; or

(b)   from nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, caused directly or indirectly by, contributed to or aggravated by an Accident.

(3) However, it is agreed that loss arising out of the use of Radioactive Isotopes in any form is not hereby excluded from reinsurance protection.

(4) Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

(a)   all policies issued by the Reassured effective on or before 30th April, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th April, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply,

(b)   with respect to any risk located in Canada policies issued by the Reassured effective on or before 30th June, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th June, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply.

Aldort 19

57?

## TERMINATION ENDORSEMENT

This Endorsement attaches to and becomes part of CASUALTY REINSURANCE AGREEMENT entered into by and between INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, Chicago, Illinois and L. W. BIEGLER INC., Chicago, Illinois, acting for and on behalf of the Companies more fully described in ARTICLE III, (hereinafter together called the "Company") of the one part, and

CAJA NACIONAL DE AMORRO Y SEGURO

(hereinafter called the "Reinsurer") of the other part.

IT IS AGREED that, effective 12:01 A.M., Central Standard Time, January 1 1984 this Agreement is terminated in accordance with the run-off provisions of ARTICLE XXII, TERMINATION.

ALL OTHER TERMS AND CONDITIONS OF THIS AGREEMENT REMAIN UNCHANGED.

IN WITNESS WHEREOF, the parties hereto, by their respective duly authorized officer, have executed this Agreement in duplicate as of the dates recorded below:

At Chicago, Illinois this 20 day of MARCH, 1985.

INTERNATIONAL SURPLUS LINES INSURANCE COMPANY

ATTEST:

NORMAN R. REID, SENIOR VICE PRESIDENT

At Chicago, Illinois this 20 day of MARCH, 1985.

L. W. BIEGLER INC. for and on behalf of the Companies listed in ARTICLE III, pursuant to the authority granted by such Companies.

ATTEST:

NORMAN R. REID, SENIOR VICE PRESIDENT

At _____ this _____ day of _____, 198

CAJA NACIONAL DE AMORRO Y SEGURO
CAJA NACIONAL DE AHORRO Y SEGURO
OUR REF's 1.358
1 3 AGO. 1984

ATTEST:

ALBERTO O. AVILA
JEFE DEPARTAMENTO SUSCRIP. : DE REASEGUROS ACTIVOS

Aldort 20

This CASUALTY EXCESS REINSURANCE AGREEMENT entered into by and between INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, Chicago, Illinois and L. W. BIEGLER INC., Chicago, Illinois, acting for and on behalf of the Companies more fully described in ARTICLE III, (hereinafter together called the "Company") of the one part, and

(hereinafter called the "Reinsurer") of the other part.

WITNESSETH:

In consideration of the mutual covenants hereinafter contained and upon the terms and conditions hereinafter set forth, the parties hereto agree as follows:

## ARTICLE I

TERM:

This Agreement shall become effective at 12:01 A.M., Central Standard Time, March 15, 1979 and shall continue in force until terminated in accordance with ARTICLE XXII, TERMINATION.

## ARTICLE II

TERRITORY:

This Agreement shall cover losses occurring within the territorial limits of the Company's policies.

## ARTICLE III

BUSINESS REINSURED:

This Agreement is to cover the excess liability of the Company arising out of losses occurring during the term of this Agreement on all policies written by International Surplus Lines Insurance Company, or through the agency of L. W. Biegler Inc., for the account of United States Fire Insurance Company and/or Westchester Fire Insurance Company, both of New York, New York and/or International Insurance Company, Chicago, Illinois and/or Industrial Indemnity Company, San Francisco, California and/or United States Fire Insurance Company of Canada, Toronto, Ontario and/or North River Insurance Company, Morristown, New Jersey and/or Herald Insurance Company of Canada, Toronto, Ontario covering business classified by the Company as casualty business and specifically declar to this Agreement subject to the further terms, conditions and exclusions contained herein.

-1-

In the event a claim is reported or threatened under any Policy before declaration of cession to this Agreement has been made on the Company's record the portion of such policy which the Company may consider reinsured hereunder shall be based upon the established practice of the Company in reinsuring Policies of similar amount and classification. It is understood, however, that upon request by the Reinsurer, the Company will produce evidence of its practice applicable to any such case forming the subject of inquiry or investigation.

<u>ARTICLE IV</u>

DEFINITIONS:

A. The term "Casualty Business" as used in this Agreement shall mean all business classified by the Company as casualty business including but not limited to:

Accident & Sickness Insurance
Burglary & Theft Insurance
Commercial Multi-Peril Insurance, Section II only
Elevator Insurance
Glass Insurance
Comprehensive Personal Liability Insurance alone or as part of Homeowners' or Farmowners' Insurance
Water Damage Insurance
Workmen's Compensation and Employers' Liability Insurance
Personal Injury Liability Insurance, including Professional Liability
Property Damage Liability Insurance
Automobile Liability Insurance

B. The term "Policies" as used in this Agreement shall mean any and all binders, policies, and contracts of insurance or reinsurance issued, accepted or held covered provisionally or otherwise by or on behalf of the Company.

C. The term "Ultimate Net Loss" as used in this Agreement shall mean the sum actually paid in the settlement of losses for which the Company is liable, such sum to exclude costs and expenses as described in ARTICLE IX, CLAIMS, but salvages and any recoveries including recoveries under any other reinsurances whether recovered or not are first to be deducted from any such sum to arrive at the amount of liability, if any, attaching hereunder.

Nothing, however, contained herein shall be construed as meaning that losses are not recoverable hereunder until the Ultimate Net Loss to the Company has been ascertained.

D. The term "Loss Occurrence" as used in this Agreement shall mean any one occurrence or accident as defined in the Policy out of which the loss arose; or in the absence of a definition, a loss, accident, casualty, disaster or series of losses, accidents

-2-

Aldort 22

casualties or disasters arising out of one event or occur-
rence; but when the applicable policy limit is in the ag-
gregate, the exhaustion of the underlying aggregate limit
shall be deemed an "occurrence".

With regards to claims made policies ceded to this Agreement,
this agreement covers the Company's loss arising from any claim
or claims made during the policy period.

E.   The term "Agreement Year" as used in this Agreement shall mean
the 12 consecutive months commencing with each April 1st, except
the first Agreement Year shall be from March 15, 1979 to
April 1, 1980.

## ARTICLE V

LIABILITY:

The Reinsurer shall be liable for the Ultimate Net Loss over and above
an initial Ultimate Net Loss of at least $2,000,000 each and every loss Occurrence
and aggregate where applicable, each and every insured, Bodily Injury and Prop-
erty Damage combined, subject to a limit of liability to the Reinsurer of
$3,000,000 each and every loss Occurrence and aggregate where applicable, each
and every insured, Bodily Injury and Property Damage combined.  The Company shall
be sole judge as to what constitutes one insured.

## ARTICLE VI

WARRANTY:

It is warranted for purposes of this Agreement that the Company shall
retain 5% pure net participation in this layer of $3,000,000 excess of at least
$2,000,000 each and every loss Occurrence and aggregate where applicable, each
and every insured, Bodily Injury and Property Damage Liability combined.

## ARTICLE VII

NET RETAINED LINES:

This Agreement applies only to that portion of any insurances or rein-
surances covered by the Agreement which the company retains net or net and
treaty, and in calculating the amount of any loss hereunder and also in comput-
ing the amount in excess of which this Agreement attaches, only loss or losses
in respect of that portion of any insurances or reinsurances which the Company
retains net or net and treaty shall be included, it being understood and agreed

-3-

Aldort 23

that the amount of the Reinsurer's liability hereunder in respect of any loss or losses shall not be increased by reason of the inability of the Company to collect from any other reinsurers, whether specific or general, any amounts which may have become due from them, whether such inability arises from the insolvency of such other reinsurers or otherwise.

It is understood that underlying excess of loss reinsurances may be utilized by the Company, and any such underlying excess of loss reinsurances shall be ignored for purposes of this Agreement.

## ARTICLE VIII

EXCLUSIONS:

This Agreement does not cover:

A. Liability excluded under the provisions of the Nuclear Incident Clauses attached being:

1. Nuclear Incident Exclusion Clause - Liability - Reinsurance.
2. Nuclear Incident Exclusion Clause - Physical Damage - Reinsurance.
3. Nuclear Incident Exclusion Clause - Physical Damage and Liability (Boiler and Machinery Policies) - Reinsurance.

B. Reinsurance assumed by the Company (other than facultative and Agency reinsurance);

C. Liability assumed as a member of any Pool or Association;

D. Business classified by the Company as:

1. Aviation Liability (except when such aviation liability is incorporated in a policy covering Comprehensive General Liability);
2. Ocean Marine Business, except that this exclusion applies only to Ocean Marine Business when written as such, and does not apply when the original insured's operations insurable as Ocean Marine Business constitute only an incidental and minor part of his main operations provided the main operations are written by the Company;
3. Workmen's Compensation (except when written Excess of Loss); or Employers' Liability (applies only to risks reinsured with the Workmen's Compensation Reinsurance Bureau). As respects Workmen's Compensation written Excess of Loss, this Agreement does not cover and specifically excludes the following operations carried on by an original insured as a principle operation

-4-

Aldort 24

(a)  Coal Mining involving underground operations;
(b)  Operation of Aircraft;
(c)  Operations involving an explosive substance as follows:
    (i)  The manufacturing of any explosive substance intended for use as an explosive,
    (ii)  the loading of any explosive substance into containers for use as explosive objects, propellant charges, or detonating devices, (including storage in connection therewith); or the dismantling of, or the unloading of explosive substance from such containers,
    (iii)  the processing or destruction of any explosive substance (including storage in connection therewith),
    (iv)  the manufacturing of any product, including but not limited to Fireworks and Fuse, in which any explosive substance is an ingredient.

It is specially agreed, however, this exclusion D.3. (c) shall not apply where use of an explosive substance is purely incidental to the main operations.

An explosive substance is defined as any substance the express purpose of which is to explode, as differentiated from commodities used industrially and which are only incidentally explosive such as, but not limited to, gasoline, celluloid, fuel gases, and dyestuffs.

(d)  Aggregate Excess Workmen's Compensation Insurance;

E.  Business classified by the Company as Boiler and Machinery;

F.  Surety;

G.  Medical Malpractice business;

H.  Railroad Business.

I.  Directors and Officers Liability

J.  Utilities.

K.  Professional Indemnity.

L.  Accident and Sickness

Except for A,B and C, it is understood that the foregoing shall not apply where the operations outlined are only incidental to the original assured's main operations.

If the Company, without the knowledge and contrary to the instructions of its Home Office, is bound on a risk falling within one of the foregoing classes, such risk is covered hereunder until said Home Office receives knowledge thereof, and pending cancellation of such risk by the Company, for a further period of thirty (30) days after the receipt of such knowledge by the Home Office of the Company.

-5-

## ARTICLE IX

CLAIMS:

The Company will advise the Reinsurer promptly of all claims, which in the opinion of the Company may involve the Reinsurer, and all subsequent developments thereto which may materially affect the position of the Reinsurer, and the Reinsurer will abide by the settlements of the Company.

When so requested, the Company will afford the Reinsurer an opportunity to be associated with the Company at the expense of the Reinsurer, in the defense of any claim or suit or proceeding involving this reinsurance, and the Company will cooperate in every respect in the defense or control of such claim, suit or proceeding.

Amounts due hereunder in the settlement of losses shall be payable as soon as practicable after each such settlement has been claimed and proved.

All court costs and expenses, including interest on judgments, paid by the Company (excluding salaries and expenses of permanent officials and employees of the Company) connected with any resistance to, investigation of or negotiations concerning settlement of such claims shall be apportioned in proportion to the respective interests as finally determined. Provided that, in the event a verdict or judgment is reduced by litigation or otherwise (other than by the trial court) resulting in an ultimate saving to the Reinsurer, or a judgment is reversed outright, the expenses incurred in securing such reduction or reversal shall be pro-rated between the Company and the Reinsurer in the proportion that each benefits from such verdict or judgment shall be pro-rated in proportion to each party's interest in such verdict or judgment.

Salvage (i.e., reimbursement obtained or recovery made by the Company, less the actual cost, excluding salaries of officials and permanent employees of the Company of obtaining such reimbursement or making such recovery) applying to Policies covered under this Agreement shall always be used to reimburse the excess carriers in the reverse order of their priority, according to their participation, before being used in any way to reimburse the Company for its primary loss.

## ARTICLE X

PREMIUM:

The Company shall pay as a premium for this reinsurance the Original Gross Net Written Premium Income on business ceded to this Agreement less 25% Ceding Commission. Payment shall be made 45 days after the end of each calendar quarter.

Non admitted Reinsurers, if any, will be paid on an earned premium basis.

-6-

Aldort 26

## ARTICLE XI

REPORTS:

A. Within forty-five (45) days following the end of each calendar quarter that this Agreement remains in effect the Company shall supply the Reinsurer with a report covering the following:

   1. Premium earned during the calendar quarter;

   2. Loss and loss expense paid during the calendar quarter;

   3. Loss and loss expense outstanding at the end of the calendar quarter.

B. Within forty-five (45) days following the end of each Agreement Year that this Agreement remains in effect the Company shall supply the Reinsurer with a report covering the following:

   1. Premium ceded to this Agreement during the Agreement Year segregated by major class;

   2. Loss and loss expense paid during the Agreement Year segregated by major class and year of occurrence;

   3. Loss and loss expense outstanding at the end of the Agreement Year segregated by major class and year of occurrence.

## ARTICLE XII

CONTINGENT COMMISSION:

The Reinsurer will also allow to the Company a profit commission of twenty percent (20.0%) on the net profits during each Agreement Year period, if any, accruing on all business reinsured under this Agreement, such net profit shall be calculated as follows:

A. PREMIUMS EARNED TO BE:

   1. The premiums written during the period (less cancellations and returns)

   2. Plus the unearned premium reserve at the end of the previous period;

   3. Less the unearned premium reserve at the end of the period.

-7-

B.  LOSSES INCURRED TO BE:

1.  Losses and loss adjustment expenses paid during the period.

2.  Less the reserve for unadjusted losses and loss adjustment expenses, including reserve for incurred but not reported losses from the previous years statement, if any;

3.  Plus the reserve for unadjusted losses and loss adjustment expenses, including reserve for incurred but not reported losses at the close of the period.

C.  EXPENSES INCURRED:

1.  Reinsurer's expenses of 10% earned premium ceded, as in A above;

2.  Deficit or underwriting loss, if any, from the previous contingent commission statement.

D.  NET PROFIT TO BE:

1.  Premium earned, as in A above;

2.  Less net losses incurred, as in B above;

3.  Less net expenses incurred, as in C above.

The first computation of profit commission shall be made as soon as possible following April 1, 1980, covering the first Agreement Year period, succeeding computations shall be at the end of each Agreement Year thereafter.

Should the working of this Agreement result in a loss to the Reinsurer in respect of any one Agreement Year period, the amount of such loss shall be carried forward in succeeding contingent commission statements, and no profit shall be considered as earned during any ensuing period until all previous loss has been balanced and a credit balance has again been restored.

-8-

In the event of termination of this Agreement at other than the end of each Agreement Year period, the time this Agreement remains in effect from inception or from the end of the last Agreement Year period shall be considered as an Agreement Year period for purposes of this Article.

In the event of termination of this Agreement no contingent commission statement shall be prepared in respect of the period ending with the effective date of termination until all liability has expired and all claims have been settled.

## ARTICLE XIII

ORIGINAL CONDITIONS:

All reinsurance ceded to this Agreement on a pro-rata basis shall be subject to the same terms, rates, conditions and waivers and to the same modification, alterations, and cancelments as the respective Policies of the Company; except in the case of the insolvency of the Company, in which case the provisions of the INSOLVENCY ARTICLE shall take precedence.

## ARTICLE XIV

ERRORS AND OMISSIONS:

Inadvertent delays, errors or omissions made in connection with this Agreement or any transaction hereunder shall not relieve either party from any liability which would have attached had such delay, error or omission not occurred, provided always that such error or omission will be rectified as soon as possible after discovery.

## ARTICLE XV

TAXES:

The Company will be liable for taxes (except Federal Excise Tax) on premiums reported to the Reinsurer hereunder.

Federal Excise Tax applies only to thos Reinsurers, excepting Underwriters at Lloyds, London, and other reinsurers exempt from the Federal Excise Tax, who are domiciled outside the United States of America.

The Reinsurer has agreed to allow, for the purpose of paying the Federal Excise Tax, 1% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

-9-

In the event of any return of premium becoming due hereunder, the Reinsurer will deduct 1% from the amount of the return, and the Company or its agent should take steps to recover the tax from the U. S. Government.

## ARTICLE XVI

ADVANCES:

If the Reinsurer is unauthorized in any state of the United States of America or the District of Columbia where authorization is required by insurance regulatory authorities, the Reinsurer will fund (provided particulars are received forty-five days prior to the date funding is required by the Company) outstanding losses by either cash advances, escrow accounts for the benefit of the Company, Letters of Credit, or a combination thereof, if a penalty would accrue to the Company on its statement without such funding. The Reinsurer shall have the sole option of determining the method of funding referred to above provided it is acceptable to the insurance regulatory authorities involved.

LOSS RESERVES: (Applies only to Lloyd's Underwriters and certain other Reinsurers who are domiciled outside the United States of America at the sole option of such other Reinsurers).

As regards policies or bonds issued by the Company coming within the scope of this Agreement, the Company agrees that when it shall file with the Insurance Department or set up on its books reserves for losses which it shall be required to set up by law it will forward to the Reinsurers a statement showing the proportion of such loss reserves which is applicable to them. The Reinsurers hereby agree that they will apply for and secure delivery to the Company a clean irrevocable Letter of Credit issued by Citibank NA in an amount equal to Reinsurers' proportion of said loss reserves.

The Company undertakes to use and apply any amounts which it may draw upon such credit for the following purposes only:

a)  To pay the Reinsurers' share or to reimburse the Company for the Reinsurers' share of any liability for loss reinsured by this Agreement.

b)  To make refund of any sum which is in excess of the actual amount required to pay Reinsurers' share of any liability reinsured by this Agreement.

Citibank NA shall have no responsibility whatsoever in connection with the propriety of withdrawals made by the Company or the disposition of funds withdrawn except to see that withdrawals are made only upon the order of properly authorized representatives of the Company.

-10-

Aldort 30

## ARTICLE XVII

INSPECTION:

The Company shall place at the disposal of the Reinsurer at all reasonable times, and the Reinsurer shall have the right to inspect, through its authorized representatives, all books, records and papers of the Company in connection with any reinsurance hereunder, or claims in connection herewith. The Company will maintain reports of pro-rata cessions separately from excess cessions.

## ARTICLE XVIII

CURRENCY:

All transactions shall be in United States currency, with the exception of Canadian dollars which shall remain as Canadian dollars. Premiums and losses shall for the purpose of this Reinsurance, be converted into United States dollars, except Canadian currency, at the rates of exchange at which they are entered in the books of the Company.

## ARTICLE XIX

INSOLVENCY:

In the event of the insolvency of the Company, reinsurance under this Agreement shall be payable by the Reinsurer on the basis of the liability of the Company under contract or contracts reinsuranced without diminution because of the insolvency of the Company to the Company or to its liquidator, receiver, or statutory successor, except as provided by Section 315 of the New York Insurance Law or except.

    a)    where the Agreement specifically provides another payee of such reinsurance in the event of the insolvency of the Company, and;

    b)    where the Reinsurer with the consent of the direct insured or insureds has assumed such Policy obligations of the Company as direct obligations of the Reinsurer to the payees under such Policies and in substitution for the obligations of the Company to such payees.

-11-

Aldort 31

It is agreed, however, that the liquidator or receiver or statutory successor of the insolvent Company shall give written notice to the Reinsurer of the pendency of a claim against the insolvent Company on the Contract or Contracts reinsured within a reasonable time after such claim is filed in the insolvency proceeding and that during the pendency of such claim the Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defense or defenses which it may deem available to the Company or its liquidator or receiver or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company soley as a result of the defense undertaken by the Reinsurer.

Where two or more Reinsurers are involved in the same claim and a majority in interest elect to interpose defense to such claim, the expense shall be apportioned in accordance with the terms of this Agreement as though such expense had been incurred by the insolvent Company.

Should the Company go into liquidation or should a receiver be appointed the Reinsurer shall be entitled to deduct from any sums which may be or may become due to the Company under this Reinsurance Agreement, any sums which are due to the Reinsurer by the Company under this Reinsurance Agreement and which are payable at a fixed or stated date, as well as any other sums due the Reinsurer which are permitted to be offset under applicable law.

<div align="center">ARTICLE XX</div>

SERVICE TO SUIT:

This Article applies only to Reinsurers domiciled outside the United States of America.

It is agreed that, in the event of the failure of Reinsurers hereon to pay any amount claimed to be due hereunder, Reinsurers heron, at the request of the Company will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

It is further agreed that service of process in such suit may be made upon John G. Smith, Attorney-In-Fact, as respects Lloyd's admitted, and Lord Bissell & Brook as respects other underwriters, both of 115 LaSalle Street, Chicago, Illinois  60603, and that in any suit instituted against any one of them upon this Agreement, Reinsurers will abide by the final decision of such Court or any Appellate Court in the event of any appeal.

<div align="center">-12-</div>

Aldort 32

The above-named are authorized and directed to accept service of process on behalf of Reinsurers in any suit and/or upon request of the Company, to give a written undertaking to the Company that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefor, Reinsurers hereon hereby designate the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Company or any beneficiary hereunder arising out of this Agreement of reinsurance, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## ARTICLE XXI

ARBITRATION:

If any dispute shall arise between the Company and the Reinsurer, either before or after the termination of this Agreement, with reference to the interpretation of this Agreement or the rights of either party with respect to any transactions under this Agreement, the dispute shall be referred to three Arbitrators, one to be chosen by each party and the third by the two so chosen. If either party refuses or neglects to appoint an Arbitrator within thirty days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate two Arbitrators who shall choose the third. In the event the two Arbitrators do not agree on the selection of the third Arbitrator within thirty days after both Arbitrators have been named, the Company shall petition the American Arbitration Association to appoint an Arbitrator. Each party shall submit its case to the Arbitrators within thirty days of the appointment of the Arbitrators. The Arbitrators shall consider this Agreement an honorable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law. The decision of a majority of the Arbitrators shall be final and binding on both the Company and the Reinsurer. Judgment may be entered upon the award of the Arbitrators in any court having jurisdiction. The expense of the Arbitrators and of the arbitration shall be equally divided between the Company and the Reinsurer. Any such arbitration shall take place in Chicago, Illinois unless some other location is mutually agreed upon by the parties.

## ARTICLE XXII

TERMINATION:

This Agreement may be terminated at any April 1, 12:01 A.M., Central Standard Time, by either party giving at least ninety (90) days prior written notice by Certified Mail to the other party. The Reinsurer shall continue to

-13-

Aldort 33

be liable for losses under Policies in force until the natural expiration or termination or anniversary date of such policies ceded to this Agreement or the first anniversary date of the termination of thsi Agreement, whichever occurs first.

Notice of cancellation on the part of either the Company or Reinsurer will be mailed directly to the other party.

The Company shall have the option to terminate all liability of the Reinsurer as of the termination date for losses occurring subsequent to the termination date.

Immediately following the time that the Reinsurer is relieved of liability for losses occurring thereafter, the Reinsurer (except non-admitted Reinsurers, if any) shall return to the Company an appropriate unearned premium portfolio.

The Reinsurer, may however, cancel this Agreement absolutely on thirty (30) days notice for non-payment of premium due. Such cancellation shall not take effect if premium due is paid promptly after notice of cancellation is received by the Company.

<div align="center">ARTICLE XXIII</div>

INTERMEDIARY:

J. L. Kelley, Inc., P. O. Box 267, Franklin Lakes, New Jersey 07417 is hereby recognized as the Broker negotiating this Agreement through whom all communications (including but not limited to notices, statements, premiums, written premiums, commissions, taxes, losses, loss adjustment of the expense, salvages and loss settlements) relating thereto shall be transmitted to the Company or the Reinsurer. Payments by the Company to the Broker shall be deemed to constitute payment to the Reinsurer. Payments by the Reinsurer to the Broker shall be deemed only to constitute payment to the Company to the extent that such payments are actually received by the Company.

<div align="center">-14-</div>

Aldort 34

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY-REINSURANCE

(1)   This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2)   Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.*

I.   It is agreed that the policy does not apply under any liability coverage,
to { *injury, sickness, disease, death or destruction*
{ bodily injury or property damage          with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II.   Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners' Policies.

III.   The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

(a)   become effective on or after 1st May, 1960, or

(b)   become effective before that date and contain the Limited Exclusion Provision set out above;

provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3)   Except for those three classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)
shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.*

It is agreed that the policy does not apply:

I.   Under any Liability Coverage, to { *injury, sickness, disease, death or destruction*
{ bodily injury or property damage

(a)   with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b)   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.   Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to { *immediate medical or surgical relief,*
{ first aid,                to expenses incurred with respect to
{ *bodily injury, sickness, disease or death*
{ bodily injury          resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

Aldort 35

III.  Under any Liability   }   age, to { *injury, sickness, disease, death or* }*ction* resulting from
   { bodily injury or property damage
the hazardous properties of nuclear material, if

(a)   the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b)   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c)   the { *injury, sickness, disease, death or destruction* arises out of the furnishing by an in-
     { bodily injury or property damage
   sured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories, or possessions or Canada, this exclusion

(c) applies only to   { *injury to or destruction of property at such nuclear facility.*
                       { property damage to such nuclear facility and any property thereat.

IV.  As used in this endorsement:
"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a)   any nuclear reactor,

(b)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams or uranium 235,

(d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
{ *With respect to injury to or destruction of property, the word "injury" or "destruction" includes*
{ *all* "property damage" includes all forms of radioactive contamination of property,
{ *forms of radioactive contamination of property.*

V.  The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which become effective on or after 1st May, 1960, provided this paragraph (3) shall not be applicable to
(i)    Garage and Automobile Policies issued by the Reassured on New York risks, or
(ii)   statutory liability insurance required under Chapter 90, General Laws of Massachusetts, until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(4)   Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Reassured in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions adopted by the Canadian Underwriters' Association or the Independent Insurance Conference of Canada.

---

*NOTE. The words printed in italics in the Limited Exclusion Provision and in the Broad Exclusion Provision shall apply only in relation to original liability policies which include a Limited Exclusion Provision or a Broad Exclusion Provision containing those words.

U.S.A.

### NUCLEAR INCIDENT EXCLUSION CLAUSE — PHYSICAL DAMAGE — REINSURANCE.

1. This Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2. Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:

    I. Nuclear reactor power plants including all auxiliary property on the site, or

    II. Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and "critical facilities" as such, or

    III. Installations for fabricating complete fuel elements or for processing substantial quantities of "special nuclear material", and for reprocessing, salvaging, chemically separating, storing or disposing of "spent" nuclear fuel or waste materials, or

    IV. Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3. Without in any way restricting the operations of paragraphs (1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate

    (a) where Reassured does not have knowledge of such nuclear reactor power plant or nuclear installation, or

    (b) where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused. However on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4. Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against.

5. It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Reassured to be the primary hazard.

6. The term "special nuclear material" shall have the meaning given it in the Atomic Energy Act of 1954 or by any law amendatory thereof.

7. Reassured to be sole judge of what constitutes:

    (a) substantial quantities, and

    (b) the extent of installation, plant or site.

Note. — Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

    (a) all policies issued by the Reassured on or before 31st December 1957 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply,

    (b) with respect to any risk located in Canada policies issued by the Reassured on or before 31st December 1958 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply.

Aldort 37

ARTICLE XCIV

PARTICIPATION:    CASUALTY EXCESS REINSURANCE AGREEMENT
                  EFFECTIVE March 15, 1979

This Agreement is for 6.67% of the liability and amounts set forth in this Agreement and the Reinsurer is entitled to a proportionate share of the premium provided.

IN WITNESS WHEREOF, the parties hereto, by their respective duly authorized officers, have executed this Agreement in duplicate as of the dates recorded below:

At Chicago, Illinois this _nineteenth_ day of _December_ 1979.

INTERNATIONAL SURPLUS LINES INSURANCE COMPANY

ATTEST:

_Marcia McCann_

Norman Reid, Senior Vice President

At Chicago, Illinois this                day of              1979.

L. W. BIEGLER INC. for and on behalf of the Companies listed in ARTICLE III, pursuant to the authority granted by such Companies.

ATTEST:

Norman Reid, Senior Vice President

At _Greenwich, Conn._ this _22nd_ day of _December_ 1979.

CAJA NACIONAL DE AHORRO Y SEGURO, _through for in Reinsurance transgar. American treaty Corporation, and for the Reinsurance Corporation of Connecticut._

ATTEST:

_Michele G. DiAcri_
Michele G. DiAcri

_David M. Pierson._    ( _President_ )

# C.20016.

-15-

Aldort 38

## ENDORSEMENT NO. 1

This Endorsement attaches to and becomes
part of CASUALTY EXCESS REINSURANCE AGREEMENT
entered into by and between INTERNATIONAL
SURPLUS LINES INSURANCE COMPANY, Chicago,
Illinois and L.W. BIEGLER INC., Chicago, Illinois,
acting for and on behalf of the Companies more
fully described in ARTICLE III, (hereinafter
together called the "Company") of the one part,
and

   CAJA NACIONAL DE AHORRO Y SEGURO


(hereinafter called the "Reinsurer") of the
other part.

   IT IS AGREED that, effective January 1, 1980 the first paragraph of
ARTICLE VII, NET RETAINED LINES is amended to read as follows:

   This Agreement applies only to that portion of any insurances or rein-
surances covered by the Agreement which the Company retains net or net and
treaty, and in calculating the amount of any loss hereunder and also in comput-
ing the amount in excess of which this Agreement attaches, only loss or losses
in respect of that portion of any insurances or reinsurances which the Company
retains net or net and treaty and facultative shall be included, it being
understood and agreed that the amount of the Reinsurer's liability hereunder
in respect of any loss or losses shall not be increased by reason of the in-
ability of the Company to collect from any other reinsurers, whether specific
or general, any amounts which may have become due from them, whether such
inability arises from the insolvency of such other reinsurers or otherwise.

   IT IS FURTHER AGREED that, effective January 1, 1980 the following is
added to ARTICLE XIII, ORIGINAL CONDITIONS:

   Further, where policies are written with an underlying limit of
$10,000,000 or higher, the Reinsurer's premium and liability may be pro-rata
with other layer participants.

   ALL OTHER TERMS AND CONDITIONS OF THIS AGREEMENT REMAIN UNCHANGED.


-1-

Aldort 39

IN WITNESS WHEREOF, the parties hereto, by their respective duly authorized officers, have executed this Agreement in duplicate as of the dates recorded below:

At Chicago, Illinois this _6th_ day of _August_ 1980.

INTERNATIONAL SURPLUS LINES INSURANCE COMPANY

ATTEST:

_Marcia McCann_

Norman R. Reid, Senior Vice President

At Chicago, Illinois this _6th_ day of _August_ 1980.

L. W. BIEGLER INC. for and on behalf of the Companies listed in ARTICLE III, pursuant to the authority granted by such Companies.

ATTEST:

_Marcia McCann_

Norman R. Reid, Senior Vice President

At _____ this _____ day of _____ 19__.

CAJA NACIONAL DE AHORRO Y SEGURO

ATTEST:

-2-

# Exhibit 2

BUTLER, RUBIN, SALTARELLI & BOYD
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
THREE FIRST NATIONAL PLAZA · SUITE 1800
70 WEST MADISON STREET
CHICAGO, ILLINOIS 60602
(312) 444-9660
——
TELECOPIER (312) 444-9287

April 10, 2000

**VIA FEDERAL EXPRESS INTERNATIONAL,**
**RETURN RECEIPT REQUESTED AND FACSIMILE**

President
Caja National de Ahorro y Seguro
Aldolfo Alsina, 470 Piso 4
(1087) Capital Federal
Buenos Aires, Argentina

<div style="margin-left:2em">

Re:     In the Matter of the Arbitration Between
        International Insurance Company and
        <u>Caja National De Ahorro y Seguro</u>

</div>

Dear Sir/Madam:

This law firm represents International Insurance Company ("IIC") individually and as successor in interest to International Surplus Lines Insurance Company, The North River Insurance Company, United States Fire Insurance Company and/or Westchester Fire Insurance Company, Industrial Indemnity Company, United States Fire Insurance Company of Canada, Toronto, Ontario, and Herald Insurance Company of Canada, Toronto, Ontario with respect to certain reinsurance agreements between IIC and Caja National de Ahorro y Seguro ("Caja"). Pursuant to the arbitration clauses contained in each of the agreements, IIC hereby demands arbitration due to Caja's failure to pay balances owed. A schedule of the agreements at issue, as well as the balances owed on each contract, is attached hereto.

IIC will seek an order from the arbitration panel requiring Caja to pay the amounts past due, plus interest, costs, and attorneys' fees. In addition, pursuant to Article XVI of the treaties, IIC will seek from Caja a letter of credit sufficient to cover the amounts due under the treaties.

Pursuant to the agreements, IIC demands that Caja appoint an arbitrator within thirty (30) days of this demand, May 10, 2000. If Caja fails to appoint an arbitrator, IIC will exercise its right to appoint a second arbitrator.

Aldort 42

President
Caja National de Ahorroy Keguro
April 10, 2000
Page 2

IIC suggests that the parties agree to have this dispute heard in a single, consolidated proceeding. Should Caja insist, however, on a separate arbitration under each reinsurance agreement, then this letter constitutes a demand for a separate arbitration under each agreement.

IIC hereby appoints Dan Schmidt as its arbitrator, whether in a consolidated proceeding or in separate proceedings. Mr. Schmidt can be reached at:

> 185 Silverside Avenue
> Little Silver, New Jersey 07739

Please direct all future correspondence to the undersigned.

Very truly yours,

R. Douglass Bond

cc:    Lord Bissell & Brook
       S. LaSalle Street
       Chicago, Illinois 60603
       ( BY CERTIFIED MAIL)

       Mr. C.J. Smith
       Treaty Department
       AON Group Limited Claim Consultancy
       Insurance House
       125/129 Vaughan Way
       Leicester LE1 45B England UK

       Mr. Charles Allen
       C.E. Heath
       Heath Resolutions
       Heath House, Victoria Avenue
       Southend-on Sea SS2 6DX England UK

President
Caja National de Ahorroy Keguro
April 10, 2000
Page 3

Dan Schmidt
185 Silverside Avenue
Little Silver, New Jersey 07739

Illinois Secretary of State
State of Illinois Center
100 West Randolph Street
Chicago, Illinois 60601
(BY CERTIFIED MAIL)

President
Caja National de Ahorroy Keguro
April 10, 2000
Page 4

SCHEDULE

| Agreement | Treaty Term | Balance Past Due |
|---|---|---|
| First Casualty Excess Treaty | 01/01/79-12/31/83 | 220,975.16 |
| Second Casualty Excess Treaty | 03/15/79-12/31/81 | 1,952,430.31 |
| **TOTAL AMOUNT DUE** | | **2,173,405.47** |

W:\I\IIC\Caja\Arbitration\arbitration demand.wpd

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE™

## POST OFFICE TO ADDRESSEE

EK058176160US

**ORIGIN (POSTAL USE ONLY)**

| No ZIP Code | Day of Delivery | Flat Rate Envelope |
| --- | --- | --- |
| | ☐ Next  ☐ Second | ☐ |
| Date In | | Postage |
| Mo.   Day   Year | ☐ 12 Noon  ☐ 3 PM | $ |
| Time In | Military | Return Receipt Fee |
| ☐ AM  ☐ PM | ☐ 2nd Day  ☐ 3rd Day | |
| Weight | Int'l Alpha Country Code | COD Fee   Insurance Fee |
| lbs.    ozs. | | |
| No Delivery | Acceptance Clerk Initials | Total Postage & Fees |
| ☐ Weekend  ☐ Holiday | | $ |

SEE REVERSE SIDE FOR
SERVICE GUARANTEE AND
INSURANCE COVERAGE LIMITS

This was delivered on 4/25 @ 10:15

Customer Copy

**CUSTOMER USE ONLY**

Method of PAYMENT:

Express Mail Corporate Acct. No.

Federal Agency Acct. No. or
Postal Service Acct. No.

FROM: (PLEASE PRINT)   PHONE ( 312 ) 444-9660

Randi L. Ellias
Butler, Rubin, Saltarelli + Boyd
1800 Three First National
Chicago, IL 60602

TO: (PLEASE PRINT)

President
Caja Nacional de Ahorro y Seguro
Adolfo Alsina, 470 Piso 4
Buenos Aires    Argentina

**FOR PICKUP OR TRACKING CALL 1-800-222-1811     www.usps.gov**

Label 11-B  July 1997

Aldort 46

Mail Tracking & Delivery Confirmation

Page 1 of 1



**delivery status**

**You entered** EK058176160US

Your item was delivered at 10:15 am on April 25.



Enter the number from your shipping receipt into the field below.

Item Number:

You can track delivery of **Express Mail** and Priority Mail Global Guaranteed and confirm delivery for domestic **Priority Mail** and **Parcel Post**.

*Fly Like an Eagle.*™

Copyright © 1999 United States Postal Service

Aldort 47

Express Mail Tracking & Delivery Confirmation

Page 1 of 1



**delivery status**

**You entered** EK058176160US

Your item was delivered at 10:15 am on April 25.



Enter the number from your shipping receipt into the field below.

Item Number:

You can track delivery of **Express Mail** and Priority Mail Global Guaranteed and confirm delivery for domestic **Priority Mail** and **Parcel Post**.

Fly Like an Eagle.

Copyright © 1999 United States Postal Service

Aldort 48

**MANIFEST/BILLING COPY**

THIS PLY MUST BE PULLED AT MANIFEST POINT BY FEDEX

PACKAGE TRACKING NUMBER

Fedex

400-4811 0322

4-10-00

**1** From
Douglass Bond
Phone Number (Very Important)
312 444-56..

IIC/Caja
1800

**3** To
President
Caja National de Ahorro y Seguro
Adolfo Alsina, 470 Piso 4
(1087) Capital Federal
Buenos Aires
Argentina

**4** FedEx International Priority — FedEx International Priority Freight

**5** FedEx Letter — All Other Packaging

**6** Hold for Pickup — Deliver Weekday — Deliver Saturday

**9** Number of Packages: 1

Complete Description of Contents/Harmonized Code
Legal Documents

Total Weight

Country of Manufacture: USA

**10** FedEx Courier Receipt:
Marianne Matigalski

**7** Bill Sender — Credit Card — Cash/Check
Bill Recipient — Bill 3rd Party

Call 800-247-1/47  For Int'l Customer Service.

Aldort 49



```
EASYLINK 3806421K001 15SEP00 12:05/12:05 EST
FROM: 62000875
       FEDERAL EXPRESS (CRN: WPODA)
TO:    3124449702
```

                              FAX   MESSAGE
                              ------------
                              ------------

                          FEDEX (FEDERAL EXPRESS, INC.)
                          TEL.    1-800-247-4747


     ATTN : Marianne Malonowski

     COMPANY : Butler Rubin Saltarelli

     FROM : MULL/KASEY@EMC2

     SUBJECT : Written Proof of Delivery

     Dear :  Marianne Malonowski

     This is in reply to your request for delivery information regarding
     awb number  40048110322       .

     Our records indicate that your shipment was delivered on
     04 / 12 / 00  at   1256  and signed for by   .Elena.



     Should you need further assistance, please feel free to contact me
     in International Customer Support at our toll-free number,
     1-800-247-4747, extension   344 - 3001 .

     We value your patronage and look forward to serving your air
     express needs.

     Sincerely,

     Kasey Jackson
     Representative
     International Customer Support
     FedEx

Aldort 50

# Exhibit 3

# BUTLER, RUBIN, SALTARELLI & BOYD

A PARTNERSHIP OF PROFESSIONAL CORPORATIONS

THREE FIRST NATIONAL PLAZA · SUITE 1800

70 WEST MADISON STREET

CHICAGO, ILLINOIS 60602

(312) 444-9660

TELECOPIER (312) 444-9287

October 17, 2000

BY FEDERAL EXPRESS INTERNATIONAL &          BY MAIL & FACSIMILE
EXPRESS MAIL INTERNATIONAL

President                                    Anthony B. Sherman
Caja National de Ahorro y Seguro             Jane Veldman
Aldolfo Alsina, 470 Piso 4                   Lord Bissell & Brook
(1087) Capital Federal                       115 South LaSalle Street
Buenos Aires, Argentina                      Chicago, Illinois 60603



Re:    In the Matter of the Arbitration Between
       International Insurance Company and
       Caja National De Ahorro y Seguro

Dear Sirs and Madam:

        Enclosed please find the Final Award in the above-referenced arbitration, entered by the
Panel on October 17, 2000.

                        Very truly yours,

                        R. Douglass Bond

                        R. Douglass Bond

RDB:
Enclosures

Aldort 52

In the Matter of the Arbitration Between )
)
INTERNATIONAL INSURANCE COMPANY for itself )
and as Successor in Interest to INTERNATIONAL )
SURPLUS LINES INSURANCE COMPANY and THE )
NORTH RIVER INSURANCE COMPANY, UNITED )
STATES FIRE INSURANCE COMPANY and/or )
WESTCHESTER FIRE INSURANCE COMPANY, )
INDUSTRIAL INDEMNITY COMPANY, UNITED )
STATES FIRE INSURANCE COMPANY of CANADA, )
TORONTO, ONTARIO, and HERALD INSURANCE )
COMPANY OF CANADA, TORONTO, ONTARIO, )
)
                              Claimant,   )     Mr. Martin D. Haber
           and                            )     Mr. Daniel E. Schmidt IV
                                          )     Mr. Peter C. Clemente
CAJA NACIONAL DE AHORRO Y SEGURO,         )
                                          )
                           Respondent.    )

## FINAL AWARD

We, the undersigned, duly appointed arbitrators (the "Panel") in the above-captioned matter, after reviewing all the submissions made to Panel in this matter, including all briefs, exhibits, and authorities, and after hearing live testimony and oral presentation, do hereby rule as follows:

1.    The motion for default judgment brought by Claimant International Insurance Company ("IIC") is granted.

2.    Within fifteen days of the date of this Final Award, Respondent Caja Nacional de Ahorro y Seguro ("Caja") shall pay to IIC:

(a) $2,009,061.72 in overdue balances;

(b) $1,310,559.90 in interest;

(c) $15,000 in arbitration costs and arbitrator costs; and

(d) $46,890.50 in attorneys' fees incurred by IIC in this matter.

3.      Within fifteen days of the date of this Final Award, consistent with the provisions for cash advances in Article XVI of the reinsurance treaties at issue in this arbitration, Caja shall pay $1,320,916 (as Caja's share of case reserves) to a separate account to be maintained by IIC.  IIC may draw down funds from this account as reimbursement to IIC for Caja's share of any liability for loss reinsured by the reinsurance treaties at issue in this arbitration.

4.      Caja shall comply in the future with all of its obligations under the reinsurance treaties at issue in this arbitration.

This award reflects the Panel's final, unanimous decision with respect to the issues submitted to it in this matter.

So ordered this _17th_ day of October, 2000.

Martin D. Haber

Daniel E. Schmidt, IV

Peter C. Clemente

2

Aldort 54

# Exhibit 4

Case: 1:00-cv-06703 Document #: 1 Filed: 10/27/00 Page 1 of 8 PageID #:1



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

**DOCKETED**

OCT 3 0 2000

INTERNATIONAL INSURANCE COMPANY, )
for itself and as Successor In Interest to )
International Surplus Lines Insurance Company, )
The North River Insurance Company, United )
States Fire Insurance Company and/or Westchester )
Fire Insurance Company, Industrial Indemnity )
Company, United States Fire Insurance Company )
of Canada, Toronto, Ontario, and Herald Insurance )
Company of Canada, Toronto, Ontario, )
)
Plaintiff, )
)
v. )
)
CAJA NACIONAL DE AHORRO Y SEGURO, )
)
Defendant. )

Civil Action No.

**00C 6703**

JUDGE JOHN W DARRAH

MAGISTRATE JUDGE ASHMAN

## PETITION FOR CONFIRMATION OF ARBITRATION PANEL'S AWARD

International Insurance Company, for itself and as successor in interest to International Surplus Lines Insurance Company, The North River Insurance Company, United States Fire Insurance Company and/or Westchester Fire Insurance Company, Industrial Indemnity Company, United States Fire Insurance Company of Canada, Toronto, Ontario, and Herald Insurance Company of Canada, Toronto, Ontario ("IIC"), petitions this Court to confirm the Final Award of an arbitration panel entered on October 17, 2000. In support hereof, IIC states as follows:

### Nature of the Action

1. This is an action pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.*, and the Inter-American Convention on International Commercial Arbitration (the "Convention") and its implementing legislation, 9 U.S.C. § 301, *et. seq.*, to confirm an arbitration award. IIC is a domestic insurance company that purchased reinsurance from Caja Nacional de Ahorro y Seguro

Aldort 56

("Caja"), an alien insurance and reinsurance company domiciled in Argentina. Pursuant to the terms of two reinsurance contracts entered into between the parties, IIC initiated an arbitration for Caja's failure to pay IIC over two million dollars in indemnity obligations. Caja failed to appear in the arbitration proceeding. On October 17, 2000, the arbitration panel entered a default award against Caja in the amount of $2,009,061.72 in overdue balances, $1,310,559.90 in interest; $15,000 in arbitration costs and arbitrator costs; and $46,890.50 in attorneys' fees incurred by IIC in this matter. In addition, the arbitration panel ordered Caja to pay a cash advance in the amount of $1,320,916 for its share of case reserves under the reinsurance contracts at issue in the arbitration.

### The Parties

2. IIC is a corporation organized and existing under the laws of the State of Illinois with its current principal place of business in Manchester, New Hampshire. At the time the contracts were negotiated, IIC's principal place of business was in Chicago, Illinois.

3. Upon information and belief, Caja is a corporation organized and existing under the laws of Argentina with its principal place of business in Buenos Aires, Argentina. Caja was formerly wholly owned by the government of Argentina, but, upon information and belief, is now privately owned.

### Jurisdiction

4. Jurisdiction of this Court is proper pursuant to 9 U.S.C. § 203 and 9 U.S.C. § 302 inasmuch as this is an action or proceeding falling under the convention.

5. Venue is properly maintained in this district pursuant to 9 U.S.C. § 204 and 9 U.S.C. § 302.

- 2 -

### Facts

6.  IIC and Caja entered into two reinsurance treaties at issue in the arbitration, the Casualty Reinsurance Agreement incepting on January 1, 1979 and terminating on December 31, 1983, and the Casualty Excess Reinsurance Agreement incepting on March 15, 1979 and terminating on December 31, 1981 (the "Treaties").

7.  Article XXI of each Treaty contains an arbitration clause, requiring the arbitration of "any dispute . . . with reference to the interpretation of this Agreement or the rights of either party with respect to any transaction under this Agreement . . ."

8.  Article XXI of each Treaty further provides that any such dispute shall be referred to three Arbitrators, "one to be chosen by each party and the third by the two so chosen." Finally, the Treaties provide that "[i]f either party refuses or neglects to appoint an Arbitrator within thirty days after receipt of written notice from the other party requesting it to do so, the requesting party may nominate two arbitrators who shall choose the third."

9.  Article XVI of each Treaty obligated Caja, as an unauthorized reinsurer, to provide cash advances or fund letters of credit or escrow accounts "if a penalty would accrue to the Company on its statement without such funding."

10. On April 10, 2000, IIC demanded arbitration with Caja with respect to amounts due under the Treaties. IIC appointed its arbitrator in its demand letter. The arbitration demand was served on Caja via Express Mail International and Federal Express International, and also by certified mail on Lord Bissell and Brook of Chicago, Illinois ("Lord Bissell"), specified as Caja's agent for service of process in Article XX of each Treaty.

11. Caja did not respond to IIC's arbitration demand, failing to name its arbitrator within

- 3 -

Aldort 58

thirty days of its receipt of the arbitration demand, as required by the arbitration provision of each Treaty. Accordingly, IIC named a second arbitrator on May 26, 2000. IIC notified Caja that it had appointed a second arbitrator via correspondence dated May 26, 2000 and sent by Express Mail International and Federal Express International. This correspondence was also sent via certified mail to Lord Bissell, designated as Caja's agent. The two arbitrators appointed a third arbitrator.

12. Article XXI of the Treaties required the parties to submit their case to the arbitration panel within thirty days of the formation of the panel. The panel was formed as of July 21, 2000 when the third arbitrator notified the parties that he had been selected by the other two. IIC submitted its Statement of Issues to the Panel on August 4, 2000, serving its Statement of Issues upon Caja by Federal Express International and Express Mail International and upon Lord Bissell by facsimile, on that same day. Caja failed to submit its case.

13. Following their appointment, the arbitration panel scheduled a telephonic hearing with the parties and their counsel to discuss issues, potential discovery, and a schedule for the proceedings. Caja was notified of the scheduled hearing via correspondence dated July 31, 2000 and August 4, 2000. That correspondence was sent to Caja by Express Mail International and Federal Express International. The July 31, 2000 correspondence was sent to Lord Bissell via Federal Express, and the August 4, 2000 correspondence was sent to Lord Bissell via facsimile. The telephonic hearing took place on August 14, 2000. Caja failed to participate.

14. During the August 14, 2000 telephonic hearing, IIC accepted the arbitration panel. After acceptance of the panel by IIC, the panel set a schedule for the arbitration proceeding. The schedule required IIC to make its pre-hearing submissions to the panel and Caja by September

- 4 -

Aldort 59

Case: 1:00-cv-06703 Document #: 1 Filed: 10/27/00 Page 5 of 8 PageID #:5

18, 2000, and Caja to make its pre-hearing submissions to the panel and IIC by October 2, 2000.

The panel also scheduled the arbitration hearing in this matter for October 17, 2000.  A transcript

of the telephonic hearing, along with additional correspondence outlining the schedule, was sent

on August 21, 2000 to Caja via Federal Express International and Express Mail International and

to Lord Bissell by U.S. mail.

15. IIC made its pre-hearing submission as required on September 18, 2000, serving

copies on Caja by Federal Express International and Express Mail International and on Lord

Bissell by facsimile and messenger on that same day.  Caja failed to provide any pre-hearing

submission.

16. On October 17, 2000, the arbitration hearing was held in Chicago, Illinois.  Caja

failed to appear.

### Cause of Action

17. On October 17, 2000, the panel entered its written Final Award, attached as Exhibit A

hereto.  The Final Award requires, *inter alia*, that:

a.     Caja pay to IIC $2,009,061.72 in overdue balances;

b.     Caja pay to IIC $1,310,559.90 in interest;

c.     Caja pay to IIC $15,000 in arbitration costs and arbitrator costs;

d.     Caja pay to IIC $46,890.50 in attorneys' fees incurred by IIC in this

matter;

e.     Caja to pay $1,320,916 as a cash advance to cover Caja's share of case

reserves under the Treaties; and

f.     The amounts to be paid under paragraphs (a) through (e) be paid within

- 5 -

fifteen days of the date of the Final Award, or by November 1, 2000.

18. The total amount to be paid by Caja to IIC pursuant to the Final Award is

$4,702,428.12.

19. Article XXI of each Treaty provides that "judgment may be entered upon the award

of the Arbitrators in any court having jurisdiction."

WHEREFORE, International Insurance Company respectfully requests that this Court

confirm the Final Award of the arbitration panel and enter judgment against Caja Nacional de

Ahorro y Seguro in accordance with the terms thereof.

INTERNATIONAL INSURANCE COMPANY,
for itself and as successor in interest to International
Surplus Lines Insurance Company, The North River
Insurance Company, United States Fire Insurance
Company and/or Westchester Fire Insurance
Company, Industrial Indemnity Company, United
States Fire Insurance Company of Canada, Toronto,
Ontario, and Herald Insurance Company of Canada,
Toronto, Ontario

By: _Randi Ellias_
One of its Attorneys

James I. Rubin (Attorney I.D. No. 02413191)
R. Douglass Bond (Attorney I.D. No. 06203843)
Randi Ellias (Attorney I.D. No. 06237021)
Butler, Rubin, Saltarelli & Boyd
1800 Three First National Plaza
Chicago, Illinois 60602
(312) 444-9660

W:\IIC\Caja\Confirmation\petition for confirmation.doc

- 6 -

Aldort 61

Case: 1:00-cv-06703 Document #: 1 Filed: 10/27/00 Page 7 of 8 PageID #:7

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

INTERNATIONAL INSURANCE COMPANY

## DEFENDANTS

C.J. NACI N.L. E AH K  Y SEGU

**DOCKETED**

**00C 6703**

OCT 3 0 2000

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    NH
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

JUDGE JOHN W DARRAH

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Butler, Rubin, Saltarelli & Boyd
1800 Three First National Plaza
Chicago, IL 60602

MAGISTRATE JUDGE ASHMAN

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | | | ☒ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | **PRISONER PETITIONS** | | |
| ☐ 290 All Other Real Property | | ☐ 510 Motion to Vacate Sentence | | |
| | | **Habeas Corpus:** | | |
| | | ☐ 530 General | | |
| | | ☐ 535 Death Penalty | | |
| | **PERSONAL INJURY** | ☐ 540 Mandamus & Other | | |
| | ☐ 362 Personal Injury — Med. Malpractice | ☐ 550 Civil Rights | | |
| | ☐ 365 Personal Injury — Product Liability | ☐ 555 Prison Condition | | |
| | ☐ 368 Asbestos Personal Injury Product Liability | | | |
| | **PERSONAL PROPERTY** | | | |
| | ☐ 370 Other Fraud | | | |
| | ☐ 371 Truth in Lending | | | |
| | ☐ 380 Other Personal Property Damage | | | |
| | ☐ 385 Property Damage Product Liability | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Petition for confirmation of arbitration award
9 U.S.C. §1, et.seq. and 9 U.S.C. §301, et.seq.

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**
$4,702,428.12

CHECK YES only if demanded in complaint
**JURY DEMAND:** ☐ YES ☒ NO

## VIII.
This case ☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE
October 27, 2000

SIGNATURE OF ATTORNEY OF RECORD
Randi A. Ellias

UNITED STATES DISTRICT COURT

Aldort 62

## NITED STATES DISTRICT COUF
## NORTHERN DISTRICT OF ILLINOIS



In the Matter of

INTERNATIONAL INSURANCE COMPANY,
                                        Plaintiff,

vs.

CAJA NACIONAL DE AHORRO Y SEGURO,
                                        Defendant.

**DOCKETED**

OCT 3 0 2000

00C 6703

### APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

**International Insurance Company**    JUDGE JOHN W DARRAH

MAGISTRATE JUDGE ASHMAN

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE  R. Douglass Bond |
| NAME  James I. Rubin | NAME  R. Douglass Bond |
| FIRM  Butler Rubin Saltarelli & Boyd | FIRM  Butler Rubin Saltarelli & Boyd |
| STREET ADDRESS  1800 Three First National Plaza | STREET ADDRESS  1800 Three First National Plaza |
| CITY/STATE/ZIP  Chicago, IL 60602 | CITY/STATE/ZIP  Chicago, IL 60602 |
| TELEPHONE NUMBER  (312) 444-9660   FAX NUMBER  (312) 444-9702 | TELEPHONE NUMBER  (312) 444-9660   FAX NUMBER  (312) 444-9702 |
| E-MAIL ADDRESS  jrubin@butlerrubin.com | E-MAIL ADDRESS  dbond@butlerrubin.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  02413191 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  06203843 |
| MEMBER OF TRIAL BAR?  YES ☒  NO ☐ | MEMBER OF TRIAL BAR?  YES ☐  NO ☒ |
| TRIAL ATTORNEY?  YES ☒  NO ☐ | TRIAL ATTORNEY?  YES ☒  NO |
| | DESIGNATED AS LOCAL COUNSEL?  YES ☐  NO ☒ |
| (C) | (D) |
| SIGNATURE  Randi Ellias | SIGNATURE |
| NAME  Randi Ellias | NAME |
| FIRM  Butler Rubin Saltarelli & Boyd | FIRM |
| STREET ADDRESS  1800 Three First National Plaza | STREET ADDRESS |
| CITY/STATE/ZIP  Chicago, IL 60602 | CITY/STATE/ZIP |
| TELEPHONE NUMBER  (312) 444-9660   FAX NUMBER  (312) 444-9702 | TELEPHONE NUMBER   FAX NUMBER |
| E-MAIL ADDRESS  rellias@butlerrubin.com | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  06237021 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?  YES ☐  NO ☒ | MEMBER OF TRIAL BAR?  YES ☐  NO |
| TRIAL ATTORNEY?  YES ☒  NO ☐ | TRIAL ATTORNEY?  YES ☐  NO |
| DESIGNATED AS LOCAL COUNSEL?  YES ☐  NO ☒ | DESIGNATED AS LOCAL COUNSEL?  YES ☐  NO |

# Affidavit of Process Server

_International Insurance Contract_ vs _Caja Nacional De Ahorro y Seguro_ 00 C6763
PLAINTIFF/PETITIONER                                    DEFENDANT/RESPONDENT          CASE #

Being duly sworn, on my oath, I ___Tracy Ellis___
declare that I am a citizen of the United States, over the age of eighteen and not a party to this action.

**Service:** I served ___Caja Nacional De Ahorro y Seguro___
NAME OF PERSON/ENTITY BEING SERVED

with the (documents)   ☐ Subpoena with $_____witness fee and mileage

☐ Letter, Summons & Petition for Confirmation of Arbitration
Panel's Award

by serving (NAME) ___Jane Doe (receptionist wouldn't give name)___

at ☐ Home _____

☐ Business ___115 S. Lasalle, 26th Fl, Chicago, IL___

☐ on (DATE) ___11-3-00___                      at (TIME) ___3:00___

Thereafter copies of the documents were mailed by prepaid, first class mail on (DATE) _____

from (CITY) _____ (STATE) _____

**Manner of Service:**
☐ By Personal Service.
☐ By leaving, during office hours, copies at the office of the person/entity being served, leaving same with the person apparently in charge thereof,
namely ___Jane Doe (receptionist wouldn't give name)___
☐ By leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the general nature of the papers,
namely _____
☐ By posting copies in a conspicuous manner to the address of the person/entity being served.

**Non-Service:**   After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):
☐ Unknown at Address          ☐ Evading                    ☐ Other: _____
☐ Address Does Not Exist      ☐ Service Cancelled by Litigant
☐ Moved, Left no Forwarding   ☐ Unable to Serve in a Timely Fashion

**Service Attempts:**   Service was attempted on: (   )_____, (   )_____
                                                      DATE   TIME            DATE   TIME
(   )_____, (   )_____, (   )_____
     DATE   TIME            DATE   TIME            DATE   TIME

**Description:**   ☐ Male        ☐ White Skin    ☐ Black Hair    ☐ White Hair   ☐ 14-20 Yrs.   ☐ Under 5'     ☐ Under 100 Lbs.
                   ☐ Female      ☐ Black Skin    ☐ Brown Hair    ☐ Balding      ☐ 21-35 Yrs.   ☐ 5'0"-5'3"    ☐ 100-130 Lbs.
                                 ☐ Yellow Skin   ☐ Blond Hair                   ☐ 36-50 Yrs.   ☐ 5'4"-5'8"    ☐ 131-160 Lbs.
                                 ☐ Brown Skin    ☐ Gray Hair     ☐ Mustache     ☐ 51-65 Yrs.   ☐ 5'9"-6'0"    ☐ 161-200 Lbs.
                   ☐ Glasses     ☐ Red Skin      ☐ Red Hair      ☐ Beard        ☐ Over 65 Yrs. ☐ Over 6'      ☐ Over 200 Lbs.

OTHER IDENTIFYING FEATURES: _____

State of Illinois    County of Cook

Subscribed and sworn to before me,
a notary public, this ___3___ day of ___November___, 20 ___00___

_____
NOTARY PUBLIC

_____
SERVED BY
LASALLE PROCESS SERVERS

OFFICIAL SEAL
ANDREW RAPHAEL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-17-2003

CHARTER MEMBER NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS.

Aldort 64

AO 440 (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

INTERNATIONAL INSURANCE COMPANY

              Plaintiff,

            v.

CAJA NACIONAL DE AHORRO Y SEGURO,

              Defendant.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: 

ASSIGNED JUDGE:

DESIGNATED
MAGISTRATE JUDGE:

TO: (Name and address of Defendant)

President
Caja National de Ahorro y Seguro
Aldolfo Alsina, 470 Piso 4
(1087) Capital Federal
Buenos Aires, Argentina

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Butler, Rubin, Saltarelli & Boyd
1800 Three First National Plaza
Chicago, Illinois 60602
(312) 444-9660

an answer to the complaint which is herewith served upon you, _____ 20 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

MICHAEL W. DOBBINS, CLERK

_____
(by) DEPUTY CLERK

OCT 27 2000

_____
DATE

00C6703

# Affidavit of Process Server

International Insurance Co. vs Caja Nacional de Ahorro y Seguro
PLAINTIFF/PETITIONER                          DEFENDANT/RESPONDENT          CASE #

Being duly sworn, on my oath, I _Tracy Ellis_
declare that I am a citizen of the United States, over the age of eighteen and not a party to this action.

**Service:** I served _Illinois Department of Insurance_
NAME OF PERSON/ENTITY BEING SERVED
with the (documents) ☐ Subpoena with $_____ witness fee and mileage
☒ _Letter @ Summons & Complaint, and $10.00 check_

by serving (NAME) _Glen Gasinek (Staff Attorney)_

at ☐ Home _____

☒ Business _100 W. Randolph, Ste. 15-100, Chicago, IL_

☒ On (DATE) _10-30-00_                    at (TIME) _2:30 pm_

Thereafter copies of the documents were mailed by prepaid, first class mail on (DATE) _____

from (CITY) _____ (STATE) _____

**Manner of Service:**
☐ By Personal Service.
☒ By leaving, during office hours, copies at the office of the person/entity being served, leaving same with the person apparently in charge thereof,
namely _Glen Gasinek (Staff Attorney)_
☐ By leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the general nature of the papers,
namely _____
☐ By posting copies in a conspicuous manner to the address of the person/entity being served.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):
☐ Unknown at Address          ☐ Evading                    ☐ Other: _____
☐ Address Does Not Exist      ☐ Service Cancelled by Litigant
☐ Moved, Left no Forwarding   ☐ Unable to Serve in a Timely Fashion

**Service Attempts:** Service was attempted on: ( )_____, ( )_____
                                                  DATE  TIME              DATE  TIME
( )_____, ( )_____, ( )_____
   DATE    TIME         DATE    TIME         DATE    TIME

**Description:** ☒ Male      ☒ White Skin   ☒ Black Hair   ☐ White Hair   ☐ 14-20 Yrs.   ☐ Under 5'    ☐ Under 100 Lbs.
               ☐ Female     ☐ Black Skin   ☐ Brown Hair   ☐ Balding      ☐ 21-35 Yrs.   ☐ 5'0"-5'3"   ☐ 100-130 Lbs.
                            ☐ Yellow Skin  ☐ Blond Hair                  ☒ 36-50 Yrs.   ☐ 5'4"-5'8"   ☒ 131-160 Lbs.
                            ☐ Brown Skin   ☐ Gray Hair    ☐ Mustache     ☐ 51-65 Yrs.   ☐ 5'9"-6'0"   ☐ 161-200 Lbs.
               ☐ Glasses    ☐ Red Skin     ☐ Red Hair     ☐ Beard        ☐ Over 65 Yrs. ☒ Over 6'     ☐ Over 200 Lbs.

OTHER IDENTIFYING FEATURES: _____

State of Illinois    County of Cook                        _Tracy Ellis_
                                                           SERVED BY
Subscribed and sworn before me,                            LASALLE PROCESS SERVERS
a notary public, this _31_ day of _October, 2000_

_____
NOTARY PUBLIC

┌─────────────────────────────┐
│       OFFICIAL SEAL         │
│      ANDREW RAPHAEL         │
│ NOTARY PUBLIC, STATE OF ILLINOIS │
│ MY COMMISSION EXPIRES 11-17-2003 │
└─────────────────────────────┘

CHARTER MEMBER NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS.

Aldort 66

AO 440 (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

INTERNATIONAL INSURANCE COMPANY

Plaintiff,

**SUMMONS IN A CIVIL CASE**

v.

CAJA NACIONAL DE AHORRO Y SEGURO,

CASE NUMBER: **00C 6703**

Defendant.

ASSIGNED JUDGE:

DESIGNATED MAGISTRATE JUDGE: **JUDGE JOHN W DARRAH**

**MAGISTRATE JUDGE ASHMAN**

TO: (Name and address of Defendant)

President
Caja National de Ahorro y Seguro
Aldolfo Alsina, 470 Piso 4
(1087) Capital Federal
Buenos Aires, Argentina

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Butler, Rubin, Saltarelli & Boyd
1800 Three First National Plaza
Chicago, Illinois 60602
(312) 444-9660

an answer to the complaint which is herewith served upon you, _____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

MICHAEL W. DOBBINS, CLERK

CAROLYN HOESLY

_____
(_,) DEPUTY CLERK

OCT 2 7 2000

_____
DATE





Caja Nat'l de Ahorro y Seguro
Aldolfo Alsina, 470 Piso 4
(1087) Capital Federal
Buenos Aires, Argentina

**FedEx** International A *Waybill*

937250    9286767

**1 From** Please print and press hard.

Date 10-27-2000 Sender's FedEx
Account Number 1005-7182-0

Sender's Name Randi Ellias    Phone 312 444-9660

Company BUTLER RUBIN SALTARELLIE BOYD

Address 70 W MADISON ST STE 1800

CHICAGO    US    ZIP Postal Code 60602    IL

**2 Your Internal Billing Reference**
First 24 characters will appear on invoice.

IIC/Caja/Confirmation

**3 To**

Recipient's Name President    Phone

Company Caja Nacional de Ahorro y Seguro

Address Adolfo Alsina, 470 Piso 4

(1087) Capital Federal

City Buenos Aires    State Province

Country Argentina

Recipient's Tax I.D. number for Customs purposes
e.g. GST/RFC/VAT/EIN or Sender's I.D. number if actually required

**4 Shipment Information**

Total Packages    Total Weight ___ lbs/kg

Commodity Description: legal documents

Country of Manufacture USA

**5 Express Package Service**
Packages up to 150 lbs./68 kg

☒ FedEx Intl. Priority
☐ FedEx Intl. First
☐ FedEx Intl. Economy

**6 Packaging**

☒ FedEx Letter/Envelope    ☐ FedEx Pak    ☐ Other Pkg.    ☐ FedEx 10kg Box    ☐ FedEx 25kg Box

**7 Special Handling**

☐ HOLD at FedEx Location    ☐ SATURDAY Delivery

**Shipper must check/tick:**
☒ This shipment does not contain Dangerous Goods.

**8a Payment** Bill transportation charges to:

☒ Sender Acct. No. in Section 1    ☐ Recipient    ☐ Third Party    ☐ Credit Card    ☐ Cash/Cheque

**8b Payment** Bill duties and taxes to:

☐ Sender    ☐ Recipient    ☐ Third Party

**9 Required Signature**

Sender's Signature M. Matinowski  Executed 10-27-2000

**Questions?**
In the U.S., call (800)247-4747
Outside the U.S., call your local FedEx office
or
Visit our Web site at www.fedex.com

FedEx Tracking Number 8117 7912 4296

0402

Aldort 70

FedEx Express | Tracking | Results Detail

United States

# FedEx

Ship | Track | Rates | Signature Proof | Locations | Pickup | International Tools

Home | About FedEx | Service Info | Careers | eBusiness Tools | Manage My Account | Customer Service | Site Index

Select More Online Services      GO      Search for                GO

**Track Shipments**
**Detailed Results**

› Track Shipments
› Alternate Reference Track
› Email Track
› Multi-Carrier Track

**Related Links**
› Rate Finder
› Signature Proof
› Handheld Track
› Custom Critical
› FedEx eCommerce Builder
› Print, Bind & Ship

Your one-stop resource for **International shipping** assistance. click here ›

Link ›

| | |
|---|---|
| Tracking Number | 811779124296 |
| Reference Number | |
| Ship Date | |
| Delivered To | Recept/Frnt desk |
| Delivery Location | |
| Delivery Date/Time | 10/31/2000 12:25 |
| Signed For By | .MORIA |
| Service Typ | |

**Tracking Options**
- Obtain a Signature Proof of Delivery
- Email these tracking results to one or more recipients
- Track More Shipments

| Scan Activity | Date/Time | Comments |
|---|---|---|
| Delivered BUENOS AIRES AR | 10/31/2000 12:25 | |
| On FedEx vehicle for delivery BUENOS AIRES AR | 10/31/2000 10:17 | |
| Arrived at FedEx Destination Location BUENOS AIRES AR | 10/31/2000 09:57 | |
| Package status BUENOS AIRES AR | 10/31/2000 06:09 | Package available for clearance |
| Arrived at FedEx Ramp BUENOS AIRES AR | 10/30/2000 22:27 | |
| Left FedEx Ramp CAMPINAS BR | 10/30/2000 19:10 | |
| Left FedEx Sort Facility MEMPHIS TN | 10/29/2000 13:39 | |
| Arrived at FedEx Ramp CAMPINAS BR | 10/30/2000 04:07 | |
| Left FedEx Ramp MIAMI FL | 10/29/2000 17:55 | |
| Arrived at FedEx Ramp MIAMI FL | 10/29/2000 17:24 | |
| Left FedEx Sort Facility MEMPHIS TN | 10/29/2000 14:59 | |
| Left FedEx Sort Facility MEMPHIS TN | 10/29/2000 12:46 | |
| Left FedEx Sort Facility MEMPHIS TN | 10/29/2000 09:08 | |

## Email Your Detailed Tracking Results
Enter your email (optional), up to three email addresses as recipients, add your message, and click on **Send Email**.

| From | |
|---|---|
| To | |
| To | |
| To | |

Aldort 71



FROM: (PLEASE PRINT)

Rudi Ellias
Butler Rubin Saltarelli Boyd
Neo Three First National Plaza
Chicago, IL 60002

PHONE ( 312 ) 1414 - 4660

TO: (PLEASE PRINT)

Vincent
Olga Natured Leibnungsgrupino
Aldiko Alexai quo hisopho
(1817) Capital leibural
Euros asuras Argentine

PHONE ( )

SEE REVERSE SIDE FOR
SERVICE GUARANTEE AND
INSURANCE COVERAGE LIMITS

Customer Copy

EK058291275US

FOR PICKUP OR TRACKING CALL 1-800-222-1811

www.usps.gov

Label 11-B  July 1997

Express Mail Tracking & Delivery Confirmation                    Page 1 of 1




Home

**delivery status**

**You entered** EK053291275US

Your item was delivered at 9:00 am on November 4.

Here is what happened earlier:

- November 3 4:27 pm ARRIVED ABROAD BUE
- November 1 4:34 pm INTERNATIONAL DISPATCH READY CHICAGO (O"HARE) AMC
- October 31 2:01 pm ENROUTE CHICAGO IL 60607
- October 31 1:00 pm ENROUTE CHICAGO IL 60601
- October 31 11:57 am ACCEPT OR PICKUP CHICAGO IL 60601

Enter the number from your shipping receipt into the field below.

Item Number: 

You can track delivery of **Express Mail** and **Global Express Guaranteed** and confirm delivery for domestic **Priority Mail** and **Parcel Post.**



Copyright © 1999 United States Postal Service

Aldort 73

# Exhibit 5

IIC / CAJA:

JIR, RDB, RLE, GJC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RECEIVED
NOV 2 4 2000
MICHAEL W. DOBBINS
CLERK, U. S. DISTRICT COURT

INTERNATIONAL INSURANCE COMPANY, et
al..,

              Plaintiff,

v.

CAJA NATIONAL DE AHORRO Y SEGURO,

              Defendant.

NO:  00 C 6703

Judge John W. Darrah

Magistrate Judge Martin Ashman

<u>NOTICE OF FILING</u>

TO:    James I. Rubin
       Renton Douglass bond
       Randi L. Ellias
       Butler, Rubin, Saltarelli & Boyd
       Three First National Plaza
       70 W. Madison Street
       Chicago, IL 60602

     **PLEASE TAKE NOTICE** that on November 24, 2000, the undersigned has filed the following documents:

•     Answer to Petition To Confirm Arbitration Award

in the United States District Court For the Northern District of Illinois, Eastern Division, a copy of which is attached hereto.

                         Respectfully submitted,

                         CAJA NACIONAL DE AHORRO Y SEGURO

                         BY:            
                              Richard J. Rettberg
                              Local Counsel

Jorge W. Moreira
The Moreira Law Firm P.C.
130 W. 42nd Street, Suite 501
New York, NY 10036
212-398-8600
Fax: 212-398-9425

Richard M. Clark - ARDC #0452823
Richard J. Rettberg - ARDC #02318989
McKenna, Storer, Rowe, White & Farrug
200 North La Salle Street - Suite 3000
Chicago, IL 60601-1083
312/558-3900
Fax: 312/558-8348

STATE OF ILLINOIS      )
                          )
COUNTY OF COOK      )

<u>CERTIFICATE OF SERVICE</u>

     The undersigned states that she served the foregoing Notice of Filing and the above-listed document(s) referred to therein by mailing a copy to the above-named attorney(s) at the address(es) indicated

Aldort 75

and depositing same in the U.S. Mail at 200 North LaSalle Street, Chicago, Illinois, at 5:00 p.m. on
November 24, 2000, with proper postage prepaid.

Sworn before me on November 24, 2000

NOTARY PUBLIC

"OFFICIAL SEAL"
JOHN W. EGAN
Notary Public, State of Illinois
My Commission Expires 2-14-2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

RECEIVED

NOV 2 4 2000

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| INTERNATIONAL INSURANCE COMPANY, ) <br> for itself and as Successor In Interest to ) <br> International Surplus Lines Insurance Company, ) <br> The North River Insurance Company, United ) <br> States Fire Insurance Company and/or Westchester ) <br> Fire Insurance Company, Industrial Indemnity ) <br> Company, United States Fire Insurance Company ) <br> of Canada, Toronto, Ontario, and Herald Insurance ) <br> Company of Canada, Toronto, Ontario, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> CAJA NACIONAL DE AHORRO Y SEGURO, ) <br> ) <br> Defendant. ) | Civil Action No. 00 C 6703 <br><br> Hon. John W. Darrah <br><br> Magistrate Judge Ashman |

## ANSWER TO PETITION TO CONFIRM ARBITRATION AWARD

Caja Nacional de Ahorro y Seguro ("Caja") as and for its Answer to the Petition

for Confirmation of Arbitration Award of International Insurance Company ("IIC"), for

itself and as Successor in interest to the above-captioned companies, alleges, on

information and belief, as follows:

### Nature of Action

1.      This is an action pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et. *seq.*,

and the Inter-American Convention on International Commercial Arbitration (the

"Convention") and its implementing legislation, 9 U.S.C. § 3Ol, *et. seq.,* to confirm an

arbitration award. IIC is a domestic insurance company that purchased reinsurance from

Caja Nacional de Ahorro y Seguro ("Caja"), an alien insurance and reinsurance company

domiciled in Argentina. Pursuant to the terms of two reinsurance contracts entered into

1

between the parties, IIC initiated an arbitration for Caja failure to pay IIC over two million dollars in indemnity obligations. Caja failed to appear in the arbitration proceeding. On October 17, 2000, the arbitration panel entered a default award against Caja in the amount of $2,009,061.72 in overdue balances, $1,310,559.90 in interest; $15,000 in arbitration costs and arbitrator costs; and $46,890.50 in attorneys' fees incurred by IIC in this matter. In addition, the arbitration panel ordered Caja to pay a cash advance in the amount of $1,320,916 for its share of case reserves under the reinsurance contracts at issue in the arbitration.

1.      RESPONSE: Defendant Caja is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "1".

<div align="center"><strong>The Parties</strong></div>

2.      IIC is a corporation organized and existing under the laws of the State of Illinois with its current principal place of business in Manchester, New Hampshire. At the time the contracts were negotiated, IIC's principal place of business was in Chicago, Illinois.

2.      RESPONSE: On information and belief, Defendant Caja admits the allegations of Paragraph "2".

3.      Upon information and belief, Caja is a corporation organized and existing under the laws of Argentina with its principal place of business in Buenos Aires, Argentina. Caja was formerly wholly owned by the government of Argentina, but, upon information and belief, is now privately owned.

<div align="center">2</div>

3.  **RESPONSE**: Defendant Caja admits the allegations of the first sentence of
Paragraph "3" and admits that at all times Caja was and is wholly owned by the
Government of Argentina and denies the rest of the second sentence.

### Jurisdiction

4.  Jurisdiction of this Court is proper pursuant to 9 U.S.C. § 203 and 9 U.S.C. § 302

inasmuch as this is an action or proceeding falling under the convention.

5.  Venue is properly maintained in this district pursuant to 9 U.S.C. § 204 and 9

U.S.C. § 302.

4.-5.  **RESPONSE**:  Defendant Caja admits the allegations  contained in Paragraphs "4"
and "5".

### Facts

6.  IJC and Caja entered into two reinsurance treaties at issue in the arbitration, the

Casualty Reinsurance Agreement incepting on January 1, 1979 and terminating on

December 31, 1983, and the Casualty Excess Reinsurance Agreement incepting on

March 15, 1979 and terminating on December 31, 1981 (the "Treaties").

6.  **RESPONSE**:  Defendant Caja is without knowledge or information sufficient to
form a belief as to the truth of the allegations set forth in Paragraph "6".

7.  Article XXI of each Treaty contains an arbitration clause, requiring the arbitration

of "any dispute . . with reference to the interpretation of this Agreement or the rights of

either party with respect to any transaction under this Agreement..."

7.  **RESPONSE**:  Defendant Caja is without knowledge or information sufficient to
form a belief as to the truth of the allegations set forth in Paragraph "7"

3

8.    Article XXI of each Treaty further provides that any such dispute shall be referred to three Arbitrators, "one to be chosen by each party and the third by the two so chosen." Finally, the Treaties provide that "[i]f either party refuses or neglects to appoint an Arbitrator within thirty days after receipt of written notice from the other party requesting it to do so, the requesting party may nominate two arbitrators who shall choose the third."

8.    RESPONSE:  Defendant Caja is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "8".

9.    Article XVI of each Treaty obligated Caja, as an unauthorized reinsurer, to provide cash advances or fund letters of credit or escrow accounts "if a penalty would accrue to the Company on its statement without such funding."

9.    RESPONSE:  Defendant Caja is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "9".

10.    On April 10, 2000, IIC demanded arbitration with Caja with respect to amounts due under the Treaties. IIC appointed its arbitrator in its demand letter. The arbitration demand was served on Caja via Express Mail International and Federal Express International, and also by certified mail on Lord Bissell and Brook of Chicago, Illinois ("Lord Bissell"), specified as Caja's agent for service of process in Article XX of each Treaty.

10.    RESPONSE:  Defendant Caja is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "10".

11.    Caja did not respond to IIC's arbitration demand, failing to name its arbitrator within thirty days of its receipt of the arbitration demand, as required by the arbitration provision of each Treaty. Accordingly, IIC named a second arbitrator on May 26, 2000.

4

IIC notified Caja that it had appointed a second arbitrator via correspondence dated May 26, 2000 and sent by Express Mail International and Federal Express International. This correspondence was also sent via certified mail to Lord Bissell, designated as Caja's agent. The two arbitrators appointed a third arbitrator.

11.    **RESPONSE**:  Defendant Caja is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "11".

12.    Article XXI of the Treaties required the parties to submit their case to the arbitration panel within thirty days of the formation of the panel. The panel was formed as of July 21, 2000 when the third arbitrator notified the parties that he had been selected by the other two. IIC submitted its Statement of Issues to the Panel on August 4, 2000, serving its Statement of Issues upon Caja by Federal Express International and Express Mail International and upon Lord Bissell by facsimile, on that same day. Caja failed to submit its case.

12.    **RESPONSE**:  Defendant Caja is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "12".

13.    Following their appointment, the arbitration panel scheduled a telephonic hearing with the parties and their counsel to discuss issues, potential discovery, and a schedule for the proceedings. Caja was notified of the scheduled hearing via correspondence dated July 31, 2000 and August 4, 2000. That correspondence was sent to Caja by Express Mail International and Federal Express International. The July 31, 2000 correspondence was sent to Lord Bissell via Federal Express, and the August 4, 2000 correspondence was sent to Lord Bissell via facsimile. The telephonic hearing took place on August 14, 2000. Caja failed to participate.

Aldort 81

13.    RESPONSE:  Defendant Caja is without knowledge or information sufficient to

form a belief as to the truth of the allegations set forth in Paragraph "13".

14.    During the August 14, 2000 telephonic hearing, IIC accepted the arbitration panel.

After acceptance of the panel by IIC, the panel set a schedule for the arbitration

proceeding. The schedule required IIC to make its pre-hearing submissions to the panel

and Caja by September 18, 2000, and Caja to make its pre-hearing submissions to the

panel and IIC by October 2, 2000. The panel also scheduled the arbitration hearing in this

matter for October 17, 2000. A transcript of the telephonic hearing, along with additional

correspondence outlining the schedule, was sent on August 21, 2000 to Caja via Federal

Express International and Express Mail International and to Lord Bissell by U.S. mail.

14.    RESPONSE:  Defendant Caja is without knowledge or information sufficient to

form a belief as to the truth of the allegations set forth in Paragraph "14".

15.    IIC made its pre-hearing submission as required on September 18, 2000, serving

copies on Caja by Federal Express International and Express Mail International and on

Lord Bissell by facsimile and messenger on that same day. Caja failed to provide any pre-

hearing submission.

15.    RESPONSE:  Defendant Caja is without knowledge or information sufficient to

form a belief as to the truth of the allegations set forth in Paragraph "15".

16.    On October 17, 2000, the arbitration hearing was held in Chicago, Illinois. Caja

failed to appear.

16.    RESPONSE: Defendant Caja is without knowledge or information sufficient to

form a  belief as to the truth of the allegations set forth in Paragraph "16".

<div align="center">Cause of Action</div>

<div align="center">6</div>

17.    On October 17, 2000, the panel entered its written Final Award, attached as

Exhibit A hereto. The Final Award requires, *inter alia*, that:

      a.     Caja pay to IIC $2,009,061.72 in overdue balances;

      b.     Caja pay to IIC $1,310,559.90 in interest;

      c.     Caja pay to IIC $15,000 in arbitration costs and arbitrator costs;

      d.     Caja pay to IIC *$46,890.50* in attorneys' fees incurred by IIC in this matter;

      e.     Caja to pay $1,320,916 as a cash advance to cover Caja's share of case reserves under the Treaties; and

      f.     The amounts to be paid under paragraphs (a) through (e) be paid within fifteen days of the date of the Final Award, or by November 1, 2000.

17.    **RESPONSE**: Defendant Caja is without knowledge or information sufficient to

form a belief as to the truth of the allegations set forth in Paragraph "17".

18.    The total amount to be paid by Caja to IIC pursuant to the Final Award is

$4,702,428.12.

18.    **RESPONSE**:  Defendant Caja is without knowledge or information sufficient to

form a belief as to the truth of the allegations set forth in Paragraph "18".

19.    Article XXI of each Treaty provides that "judgment may be entered upon the

award of the Arbitrators in any court having jurisdiction."

19.    **RESPONSE**: Defendant Caja is without knowledge or information sufficient to

form a belief as to the truth of the allegations set forth in Paragraph "19".

7

Aldort 83

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Petition fails to state facts sufficient to allege claims against Caja upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

To the extent that Defendant Caja has not been presented with facts sufficient to demonstrate that IIC is entitled to coverage under the policies issued by Caja to IIC, coverage, if any, is barred.

### THIRD AFFIRMATIVE DEFENSE

Coverage, if any, is barred by the terms, exclusions, conditions, and limitations contained in the policies issued by Defendant Caja

### FOURTH AFFIRMATIVE DEFENSE

To the extent that the Petition alleges claims for indemnification of entities that do not qualify as "insureds" or as persons insured under the policies issued by Defendant Caja, coverage, if any, is barred.

### FIFTH AFFIRMATIVE DEFENSE

To the extent that the alleged claims asserted against IIC do not involve "personal injury" as that term is defined or used in the policies issued by Defendant Caja, coverage, if any, is barred.

Aldort 84

### SIXTH AFFIRMATIVE DEFENSE

To the extent that the alleged claims asserted against IIC did not result from an "occurrence" as that term is defined or used in the policies issued by Defendant Caja, coverage, if any, is barred.

### SEVENTH AFFIRMATIVE DEFENSE

To the extent that the alleged claims asserted against IIC do not seek relief in the form of "damages" as that term is defined or used in the policies issued by Defendant Caja, coverage, if any, is barred.

### EIGHTH AFFIRMATIVE DEFENSE

The policies issued by Defendant Caja provide coverage only for damages that takes place during the policy period. To the extent that any of the alleged damages took place prior to or after the expiration of the applicable policy periods, coverage, if any, is barred.

### NINTH AFFIRMATIVE DEFENSE

To the extent that IIC seeks coverage for governmental, civil, or criminal fines or penalties, such liability is barred by the terms and conditions of the policies issued by Defendant Caja and by public policy.

### TENTH AFFIRMATIVE DEFENSE

To the extent that IIC expected or intended (or a reasonable insured should have expected or intended) the damages alleged in the underlying claims, coverage, if any, is barred.

### ELEVENTH AFFIRMATIVE DEFENSE

To the extent that IIC has waived any rights it may have had under the policies issued by Defendant Caja, at law or in equity, coverage, if any, is barred.

9

Aldort 85

### TWELFTH AFFIRMATIVE DEFENSE

To the extent that IIC has failed to perform all of its obligations under the policies issued by Defendant Caja, coverage, if any, is barred.

### THIRTEENTH AFFIRMATIVE DEFENSE

To the extent that IIC was aware of an alleged occurrence or claim described in the Petition, and failed to give timely notice to Defendant Caja in accordance with the terms of the policies issued by defendant Caja, coverage, if any, is barred.

### FOURTEENTH AFFIRMATIVE DEFENSE

To the extent that IIC failed to cooperate with Defendant Caja in the investigation, settlement, defense, or control of any underlying claim, coverage, if any, is barred.

### FIFTEENTH AFFIRMATIVE DEFENSE

Any coverage otherwise available under the policies issued by Defendant Caja to IIC does not apply for a greater proportion of the alleged loss than that stated in the applicable contribution provision when other insurance applies to the alleged loss.

### SIXTEENTH AFFIRMATIVE DEFENSE

To the extent that IIC's alleged liability for the underlying claims has not been fixed and rendered certain either by final judgement against IIC after an adjudicatory proceeding or by settlement approved in writing by Defendant Caja, coverage, if any, is barred.

### SEVENTEENTH AFFIRMATIVE DEFENSE

To the extent that IIC did not make a written demand for payment in accordance with the terms of the policies issued by Defendant Caja, coverage, if any, is barred.

Aldort 86

## EIGHTEENTH AFFIRMATIVE DEFENSE

Insurance provides coverage only for matters that are contingent, unknown, or fortuitous. To the extent that the underlying claims of IIC were not contingent, unknown, or fortuitous, there is no coverage under the policies issued by Defendant Caja.

## NINETEENTH AFFIRMATIVE DEFENSE

To the extent that IIC negligently or intentionally failed to disclose, concealed, or misrepresented facts known by it to be material to the risks underwritten by Defendant Caja in the policies issued by Defendant Caja, coverage, if any, is barred.

## TWENTIETH AFFIRMATIVE DEFENSE

IIC's claims are barred in whole or in part by the applicable statute of limitations.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

IIC's claims are barred in whole or in part based upon the doctrine of laches.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

IIC's rights and claims against Defendant Caja, if any, are barred in whole or in part based upon the doctrine of waiver.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

IIC's claims are barred in whole or in part based upon the doctrine of estoppel.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

IIC's claims are barred in whole or in part based upon the doctrine of unclean hands.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

IIC's claims are barred in whole or in part based upon the doctrine of judicial estoppel.

11

Aldort 87

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Defendant Caja reserves the right to amend its Answer to the Petition to assert such additional Affirmative Defenses, Cross-Claims, and Counterclaims as may become apparent in the course of discovery in this matter, including those arising out of the Foreign Sovereign Immunities Act.

WHEREFORE, Caja Nacional de Ahorro y Seguro respectfully requests that this Court deny the Petition and enter Judgment in favor of Caja Nacional de Ahorro y Seguro.

CAJA NACIONAL DE AHORRO Y SEGURO

By: _____
Jorge Moreira
One of its attorneys

Jorge Moreira
130 W. 42d Street
New York, NY 10036
Telephone 212-398-8600
Fax: 212-398-9425

Local Counsel:

Richard M. Clark
ARDC #0452823
Richard J. Rettberg
ARDC #2318989
McKenna, Storer, Rowe, White & Farrug
200 N. LaSalle Street, Suite 3000
Chicago, Illinois 60601-1083
Telephone: 312-558-3900
Fax:    312-558-8348

12

Aldort 88

Exhibit 6

Aldort 89

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RECEIVED

DEC 1 8 2000

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| INTERNATIONAL INSURANCE COMPANY, for itself and as Successor In Interest to International Surplus Lines Insurance Company, and The North River Insurance Company | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| CAJA NACIONAL DE AHORRO Y SEGURO, | ) ) |
| Defendant. | ) ) |

Civil Action No. ~~Hon. Gray~~ *00 C 6703*

Hon. ~~Ruben Castillo~~ *John W. Darrah*

Magistrate Judge ~~Edward A. Bobrick~~ *Martin Ashman*

**NOTICE OF MOTION, FILING, AND CERTIFICATE OF SERVICE**

TO:  Jorge W. Moreira
The Moreira Law Firm P.C.
130 W. 42nd Street, Suite 501
New York, NY 10036

Richard M. Clark
Richard J. Rettberg
McKenna, Storer, Rowe, White & Farrug
200 N. LaSalle St., Suite 3000
Chicago, IL 60601

*January 3, 2001*

**PLEASE TAKE NOTICE** that on ~~December 21, 2000~~ at 9:30 a.m., or as soon thereafter as I may be heard, I shall appear before the Honorable John W. Darrah in Room 1203 of the United States District Court for the Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois or in his absence, before any other Judge who may be sitting in his stead, and then and there present for hearing the attached **Motion to Strike Caja's Answer to Petition for Confirmation of Arbitration Award and for an Order Requiring Caja to Post Pre-Judgment Security and Plaintiff's Memorandum of Law in Support of its Motion to Strike Caja's Answer to Petition for Confirmation of Arbitration Award and for an Order Requiring Caja to Post Pre-Judgment Security.** These documents were filed with the Clerk of the United States District Court for the Northern District of Illinois on December 18, 2000, and copies are hereby served upon you.

Aldort 90

I hereby certify that I caused a copy of this Notice and the aforementioned documents to be served upon all counsel listed above on December 18, 2000 by first class U.S. mail, postage prepaid.

_Randi A. Ellias_

One of the Attorneys for International Insurance
Company

James I. Rubin (Attorney I.D. No. 02413191)
R. Douglass Bond (Attorney I.D. No. 06203843)
Randi Ellias (Attorney I.D. No. 06237021)
Butler, Rubin, Saltarelli & Boyd
1800 Three First National Plaza
Chicago, Illinois 60602
(312) 444-9660

W:\IIC\Caja\Litigation\nmcs.doc

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

RECEIVED

DEC 1 8 2000

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

INTERNATIONAL INSURANCE COMPANY, )
for itself and as Successor In Interest to )
International Surplus Lines Insurance Company, )
The North River Insurance Company, United )
States Fire Insurance Company and/or Westchester )
Fire Insurance Company, Industrial Indemnity )
Company, United States Fire Insurance Company )
of Canada, Toronto, Ontario, and Herald Insurance )
Company of Canada, Toronto, Ontario, )
                                             )
                              Plaintiff, )
                                             )
        v.                                   )
                                             )
CAJA NACIONAL DE AHORRO Y SEGURO, )
                                             )
                              Defendant. )

Civil Action No. 00 C 6703

Judge John W. Darrah

Magistrate Judge Martin Ashman

**PLAINTIFF'S MOTION TO STRIKE CAJA'S ANSWER
TO PETITION FOR CONFIRMATION OF ARBITRATION AWARD
AND FOR AN ORDER REQUIRING CAJA TO POST PRE-JUDGMENT SECURITY**

Pursuant to Fed. R. Civ. P. 12(f), plaintiff, International Insurance Company ("IIC")

hereby moves this Court to (1) strike the answer to its petition for confirmation of an arbitration

award filed by defendant Caja Nacional de Ahorro y Seguro ("Caja"); and (2) order Caja to

deposit pre-judgment security in the amount of $ 4,702,428.12. In support of its motion, IIC

states as follows:

1.      Caja's answer should be stricken in its entirety due to its failure to post adequate

pre-judgment security with the clerk of the court sufficient to secure the payment of any final

judgment that may be rendered against it in this proceeding, as required by 215 ILCS 125(3). In

addition, Caja should be ordered to provide this pre-judgment security prior to filing any

pleading in this action.

Aldort 92

2.    All of Caja's twenty-six affirmative defenses should be stricken as "immaterial" and "impertinent" because they do not assert any of the proper grounds for vacatur of an arbitration award permitted by the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.*, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *see* 9 U.S.C. § 201, *et. seq.*, or the Inter-American Convention on International Commercial Arbitration, *see* 9 U.S.C. § 301, *et. seq.*

IIC submits the accompanying memorandum of law in support of its motion.

INTERNATIONAL INSURANCE COMPANY, for itself and as successor in interest to International Surplus Lines Insurance Company, The North River Insurance Company, United States Fire Insurance Company and/or Westchester Fire Insurance Company, Industrial Indemnity Company, United States Fire Insurance Company of Canada, Toronto, Ontario, and Herald Insurance Company of Canada, Toronto, Ontario

By: _Randi Ellias_____
                      One of its Attorneys

James I. Rubin (Attorney I.D. No. 02413191)
R. Douglass Bond (Attorney I.D. No. 06203843)
Randi Ellias (Attorney I.D. No. 06237021)
Butler, Rubin, Saltarelli & Boyd
1800 Three First National Plaza
Chicago, Illinois 60602
(312) 444-9660

\\BTLRCHINT02\CLIENT\IIC\Caja\Confirmation\motion to strike.doc

-2-

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

RECEIVED

DEC 1 8 2000

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| INTERNATIONAL INSURANCE COMPANY, ) <br> for itself and as Successor In Interest to ) <br> International Surplus Lines Insurance Company, ) <br> The North River Insurance Company, United ) <br> States Fire Insurance Company and/or Westchester ) <br> Fire Insurance Company, Industrial Indemnity ) <br> Company, United States Fire Insurance Company ) <br> of Canada, Toronto, Ontario, and Herald Insurance ) <br> Company of Canada, Toronto, Ontario, ) <br> ) <br>                      Plaintiff, ) <br> ) <br>      v. ) <br> ) <br> CAJA NACIONAL DE AHORRO Y SEGURO, ) <br> ) <br>                      Defendant. ) | Civil Action No. 00 C 6703 <br><br> Judge John W. Darrah <br><br> Magistrate Judge Martin Ashman |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO STRIKE CAJA'S ANSWER
TO PETITION FOR CONFIRMATION OF ARBITRATION AWARD AND
FOR AN ORDER REQUIRING CAJA TO POST PRE-JUDGMENT SECURITY**

**I.     INTRODUCTION**

Defendant Caja Nacional de Ahorro y Seguro ("Caja") purports to answer the petition for

confirmation (the "Petition") filed by plaintiff International Insurance Company ("IIC") by

denying virtually any knowledge regarding any of the allegations in the Petition and by asserting

twenty-six affirmative defenses.  IIC asks this Court to strike Caja's answer to the petition (the

"Answer") in its entirety because Caja failed to comply with the Illinois statute requiring Caja to

post security sufficient to cover any judgment that this Court may render against it *before* Caja

filed its answer.  215 ILCS 5/123(5).  IIC also asks this Court to order Caja to post this

prejudgment security.  In addition, all of the twenty-six affirmative defenses asserted by Caja

should be stricken because they relate to matters that Caja should have raised in front of the

arbitration panel that heard the underlying dispute. At this stage of the game, if Caja intends to

contest the arbitration award, it is limited to the grounds for overturning arbitration awards that

are set forth in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et. seq.*, the Convention on the

Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), or the

Inter-American Convention on International Commercial Arbitration (the "Inter-American

Convention"), -- none of which Caja has asserted.[1] Thus, pursuant to Fed. R. Civ. P. 12(f), all

of Caja's affirmative defenses should be stricken.

## II.    BACKGROUND

IIC is a domestic insurance company that purchased reinsurance from Caja, an alien

insurance and reinsurance company headquartered in Buenos Aires, Argentina. IIC believes that

Caja was previously wholly owned by the Argentinean government, but has since been

privatized. Pursuant to two reinsurance contracts between the parties, IIC initiated an arbitration

due to Caja's failure to pay IIC over two million dollars in indemnity obligations. Caja failed to

appear in the arbitration proceeding. On October 17, 2000, the arbitration panel entered a final

default award against Caja in the amount of $2,009,061.72 in overdue balances, $1,310,559.90 in

interest, $15,000 in arbitration costs and arbitrator costs, and $46,890.50 in attorneys' fees

incurred by IIC in pursuing the arbitration. In addition, the arbitration panel ordered Caja to pay

a cash advance in the amount of $1,320,916 for its share of case reserves under the reinsurance

contracts at issue in the arbitration. A copy of the Final Award is attached hereto as Exhibit A.

---

[1] Argentina and the United States are each signatories to both the New York Convention and the Inter-American Convention. *See* 9 U.S.C. § 201, *et. seq.*, 9 U.S.C. § 301, *et. seq.*

Aldort 95

The reinsurance treaties that at issue in the underlying arbitration were the Casualty Reinsurance Agreement incepting on January 1, 1979 and terminating on December 31, 1983, and the Casualty Excess Reinsurance Agreement incepting on March 15, 1979 and terminating on December 31, 1981 (the "Treaties"). Copies of the Treaties are attached hereto as Exhibits B and C, respectively.

Article XXI of each Treaty contains an arbitration clause, requiring the arbitration of "any dispute with reference to the interpretation of this Agreement or the rights of either party with respect to any transaction under this Agreement . . ." Article XXI of each Treaty further provides that any such dispute shall be referred to three Arbitrators, "one to be chosen by each party and the third by the two so chosen." The Treaties further provide that "[i]f either party refuses or neglects to appoint an Arbitrator within thirty days after receipt of written notice from the other party requesting it to do so, the requesting party may nominate two arbitrators who shall choose the third."

On April 10, 2000, IIC demanded arbitration with Caja with respect to amounts due under the Treaties. IIC appointed its arbitrator in the demand letter. The arbitration demand was served on Caja via Express Mail International and Federal Express International. The demand as also served by certified mail on Lord Bissell & Brook of Chicago, Illinois ("Lord Bissell") pursuant to Article XX of each Treaty, each of which specified Lord Bissell as Caja's agent for service of process. A copy of the demand is attached hereto as Exhibit D.

Caja failed to respond to the arbitration demand and failed to name its arbitrator within thirty days of receiving the demand, as required by the Treaties. Accordingly, IIC named a

-3-

second arbitrator on May 26, 2000. IIC notified Caja that it had appointed a second arbitrator via correspondence dated May 26, 2000 and sent by Express Mail International and Federal Express International. In addition, this correspondence was also sent via certified mail to Lord Bissell. A copy of the May 26, 2000 correspondence is attached hereto as Exhibit E. The two arbitrators appointed by IIC then appointed a third arbitrator.

Article XXI of the Treaties required the parties to submit their case to the arbitration panel within thirty days of the formation of the panel. The panel was formed as of July 21, 2000, when the third arbitrator notified the parties that he had been selected to complete the panel. A copy of the July 21, 2000 letter is attached hereto as Exhibit F. IIC submitted its statement of issues to the panel on August 4, 2000. IIC served its statement of issues upon Caja by Federal Express International and Express Mail International and upon Lord Bissell by facsimile that same day. Caja failed to submit its case.

Following its appointment, the arbitration panel scheduled a telephonic hearing with the parties and their counsel to discuss issues, potential discovery, and a schedule for the proceedings. Caja was notified of the scheduled hearing via correspondence dated July 31, 2000 and August 4, 2000. Again, that correspondence was sent to Caja via Express Mail International and Federal Express International. The July 31, 2000 correspondence was sent to Lord Bissell via Federal Express, and the August 4, 2000 correspondence was sent to Lord Bissell by facsimile. The July 31, 2000 and August 4, 2000 correspondence are attached hereto as Exhibit G. The telephonic hearing took place on August 14, 2000. Caja failed to participate.

During the August 14, 2000 telephonic hearing, IIC accepted the arbitration panel.

-4-

After acceptance of the panel by IIC, the panel set a schedule for the arbitration proceeding. The schedule required IIC to make its pre-hearing submissions to the panel and Caja by September 18, 2000, and Caja to make its pre-hearing submissions to the panel and IIC by October 2, 2000. The panel also scheduled the arbitration hearing in this matter for October 17, 2000. A transcript of the telephonic hearing, along with additional correspondence outlining the schedule, was sent on August 21, 2000 to Caja via Federal Express International and Express Mail International and to Lord Bissell by U.S. mail. A copy of the August 21, 2000 letter is attached hereto as Exhibit H.

IIC made its pre-hearing submission as required on September 18, 2000, serving copies on Caja by Federal Express International and Express Mail International and on Lord Bissell by facsimile and messenger on that same day. Caja failed to provide any pre-hearing submission.

On October 17, 2000, the arbitration hearing was held in Chicago, Illinois. Caja failed to appear. The panel entered the default judgment described above. On October 27, 2000, IIC filed the instant litigation, seeking confirmation of the arbitration award. On November 24, 2000, Caja filed its answer to IIC's petition for confirmation. Prior to filing its answer, Caja did not post security sufficient to secure the potential final judgment against it.

III.     **ARGUMENT**

      A.    **The Court should strike Caja's answer to the Petition because Caja failed to comply with the provisions of the Illinois Insurance Code that required Caja to post security prior to filing its answer.**

Section 123(5) of the Illinois Insurance Code mandates that a foreign or alien insurer or reinsurer not authorized by the Illinois Department of Insurance to do business in Illinois post

-5-

adequate pre-judgment security with the Court -- "sufficient to secure the payment of any final

judgment that may be rendered" in the proceedings -- prior to filing "any pleading in any action

or proceeding . . . instituted against it." 215 ILCS 5/123(5).  For the Court's convenience, a copy

of the Illinois statute is appended hereto as Exhibit I.  In enacting Section 123, the Illinois

legislature made clear its intent to protect the citizens of and corporations authorized by the State

of Illinois in their dealings with foreign reinsurers such as Caja, stating:

> The Legislature declares that it is a subject of concern that
> many residents of this State or corporations authorized to do
> business in this State hold policies of insurance or reinsurance
> issued by companies not authorized to do business in this State,
> thus presenting to such residents or corporations authorized to do
> business in this State the often insuperable obstacle of resorting to
> distant forums for the purpose of asserting legal rights under such
> policies.  In furtherance of such State interest, the Legislature
> herein provides a method of substituted service of process upon
> such companies and *declares that in doing so it exercises its power
> to protect its residents and corporations authorized to do business
> in this State* . . .

215 ILCS 5/123(1) (emphasis added).

As an unauthorized alien reinsurer, Caja should have posted security with this Court

*before* filing its answer to IIC's petition to confirm the arbitration award.  *Id*.  Caja failed to do

so, despite serving and filing its answer to IIC's petition.  Accordingly, Caja's Answer should be

stricken, and the Court should refuse to consider the assertions set forth therein unless and until

Caja provides pre-judgment security in the amount of the arbitration award, which is

$4,702.428.12.

Aldort 99

**B.      Caja's Affirmative Defenses Should Be Stricken Pursuant to Fed. R. Civ. P. 12(f) Because They Do Not Constitute Grounds For Vacating the Arbitration Award under the FAA, the Inter-American Convention, or the New York Convention.**

Regardless of whether the Court strikes Caja's Answer in its entirety because of Caja's failure to post the required security, the Court should, strike Caja's twenty-six affirmative defenses as "immaterial" and "impertinent" pursuant to Fed. Civ. P. 12(f).  The affirmative defenses asserted by Caja relate to the merits of the underlying arbitration.  Specifically, they relate to issues regarding the nature of the losses that IIC ceded to Caja, including whether certain losses were actually covered by the underlying policies, whether the claims asserted against IIC by its insured constituted "occurrences," whether the claims at issue involved the indemnification of parties improperly identified as "insureds," and other, similar issues.

Unfortunately for Caja, the time to assert such defenses was at the arbitration hearing that Caja failed to attend, despite having received proper notice of the hearing.  At this point, Caja may ask this Court to vacate the arbitration award at issue only if it can prove that one of the narrow grounds for vacatur set forth by the FAA, the Inter-American Convention, or the New York Convention applies.  Caja has failed to allege *any* of those potentially applicable grounds for vacatur.  It has instead set forth grounds entirely outside the scope of the applicable law, all of which should be stricken as "immaterial" and "impertinent."

The FAA provides four grounds for vacating an arbitration award: (1) where the award "was procured by corruption, fraud, or undue means;" (2) where the arbitrators acted with "evident partiality or corruption;" (3) where "the arbitrators were guilty of misconduct in refusing to postpone the hearing . . . or in refusing to hear evidence pertinent and material to the

-7-

controversy; or of any other misbehavior by which the rights of any party have been prejudiced;"

and (4) "where the arbitrators exceeded their powers or so imperfectly executed them that a

mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C.

10(a)-(d). Thus, the FAA allows for the vacatur of an arbitration award only where the party

seeking vacation of the award can show that the arbitration was procedurally unfair in some

manner. Nowhere in the affirmative defenses at issue does Caja make any claim whatsoever

regarding the underlying arbitration proceeding. Thus, it has failed to assert a cognizable ground

for vacating the award under the FAA.

     Article 5 of the Inter-American Convention also provides several alternative grounds for

"refusing" to recognize and execute an arbitration award. Specifically, Article 5 provides that

recognition and enforcement of an arbitral award may be refused if the party seeking to avoid the

award can prove:

> (a) That the parties to the agreement were subject to some
> incapacity under the applicable law or that the agreement is not
> valid under the law to which the parties have submitted it, or if
> such law is not specified, under the law of the State in which
> the decision was made; or
>
> (b) That the party against which the arbitral decision has been
> made was not duly notified of the appointment of the arbitrator
> or of the arbitration procedure to be followed, or was unable,
> for any other reason to present his defense; or
>
> (c) That the decision concerns a dispute not envisaged in the
> agreement between the parties to submit to arbitration . . . ; or
>
> (d) That the constitution of the arbitral tribunal or the arbitration
> procedure has not been carried out in accordance with the terms
> of the agreement signed by the parties . . . ; or

-8-

Aldort 101

(e) That the decision is not yet binding on the parties or has been
annulled or suspended by a competent authority of the State or
according to the law of which the decision has been made.

See 9 U.S.C. 301. In addition, the Inter-American Convention contemplates that a competent

authority may refuse to enforce an arbitral award if "the subject of the dispute cannot be settled

by arbitration under the law of that State [where recognition and enforcement are sought]" or if

"the recognition or execution of the decision would be contrary to the public policy ("order

public") of that State." *Id.* Caja's affirmative defenses incorporate none of the reasons identified

by the Inter-American Convention as grounds for vacating an award.

Article V of the New York Convention provides grounds for vacating an arbitration

award that are virtually identical to those set forth in Article V of the Inter-American

Convention. Again, despite the multitude of affirmative defenses laid out in its Answer, Caja has

failed to assert any of these cognizable grounds for vacating the award.

Fed. R. Civ. P. 12(f) permits a district court to strike "from any pleading any insufficient

defense." *See also Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1399 (7th Cir. 1991). In

particular, a motion to strike a defense may be granted where there is a clear showing that the

challenged defense has no bearing on the subject matter and that permitting the defense to stand

would prejudice the plaintiff. *Oliner v. McBride's Industries, Inc.*, 106 F.R.D. 14, 17 (S.D.N.Y.

1985). Here, Caja's affirmative defenses have no bearing on the subject matter of this

proceeding. They are not defenses to the recognition and enforcement of an arbitration award

that are recognized by any of the applicable statutes or treaties. Rather, Caja has asserted

defenses that it should have raised in the underlying arbitration. Clearly, IIC -- having provided

-9-

Aldort 102

Caja with the required notice of its intent to arbitrate and having participated in an arbitration hearing at which Caja failed to appear despite that notice -- would be prejudiced if Caja were permitted to raise these defenses at this late date. Accordingly, all of Caja's affirmative defenses should be stricken.

In addition, Rule 12(f) also permits the Court to strike "redundant," "immaterial," "impertinent" or "scandalous" matter from pleadings. Fed. R. Civ. P. 12(f); *Gilbert v. Eli Lilly & Co.*, 56 F.R.D. 116, 120-21 (D.P.R. 1972). "Immaterial" matter is defined as "that which has no essential or important relationship to the claim for relief or the defenses being pleaded. *Gilbert*, 56 F.R.D. at 121 n.5 (citations omitted). "Impertinent" matter is defined as "any allegation not responsive nor relevant to the issues involved in the action and which could not be put in issue or be given in evidence between the parties." *Id.* at n.6 (citations omitted). For the reasons discussed in this section, Caja's affirmative defenses are both impertinent and immaterial. Accordingly, they should be stricken from the Answer.

## I.    CONCLUSION

In light of Caja's failure to post security with this Court prior to filing its answer to IIC's petition for confirmation, Caja's entire answer should be stricken. In addition, the Court should order Caja to deposit with the clerk of this pre-hearing security in the amount of $ 4,702,428.12, pursuant to the Illinois Insurance Code. At the very least, this Court should strike Caja's affirmative defenses as none of them constitutes a cognizable ground for refusing to recognize and enforce the arbitration award at issue.

Aldort 103

Respectfully submitted,

INTERNATIONAL INSURANCE COMPANY,
for itself and as successor in interest to International
Surplus Lines Insurance Company, The North River
Insurance Company, United States Fire Insurance
Company and/or Westchester Fire Insurance
Company, Industrial Indemnity Company, United
States Fire Insurance Company of Canada, Toronto,
Ontario, and Herald Insurance Company of Canada,
Toronto, Ontario

By: _____
    One of its Attorneys

Dated:   December 18, 2000

James I. Rubin (Attorney I.D. No. 02413191)
R. Douglass Bond (Attorney I.D. No. 06203843)
Randi Ellias (Attorney I.D. No. 06237021)
Butler, Rubin, Saltarelli & Boyd
1800 Three First National Plaza
Chicago, Illinois 60602
(312) 444-9660

W:\IIIC\Caja\Confirmation\memorandum to strike 4.doc

Aldort 104

# Exhibit 7

*48609-30*

(IC/CAJA: JIR, RDB,
RLE, GJC-(file)

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

INTERNATIONAL INSURANCE COMPANY, et al..,

Plaintiff,

v.

CAJA NATIONAL DE AHORRO Y SEGURO,

Defendant.

NO: 00 C 6703

Judge John W. Darrah

Magistrate Judge Martin Ashman

### NOTICE OF FILING

TO:    James I. Rubin
       Renton Douglass bond
       Randi L. Ellias
       Butler, Rubin, Saltarelli & Boyd
       Three First National Plaza
       70 W. Madison Street
       Chicago, IL 60602

 **PLEASE TAKE NOTICE** that on January 31, 2001, the undersigned has filed the following documents:

•  Defendant Memorandum In Opposition To Plaintiff's Motion To Strike Answer And For Posting Of Pre-Judgment Security

in the United States District Court For the Northern District of Illinois, Eastern Division, a copy of which is attached hereto.

Respectfully submitted,

CAJA NACIONAL DE AHORRO Y SEGURO

BY: _____
  Richard J. Rettberg
  Local Counsel

Jorge W. Moreira
The Moreira Law Firm P.C.
130 W. 42nd Street, Suite 501
New York, NY 10036
212-398-8600
Fax: 212-398-9425

Richard M. Clark - ARDC #0452823
Richard J. Rettberg - ARDC #02318989
McKenna, Storer, Rowe, White & Farrug
200 North La Salle Street - Suite 3000
Chicago, IL 60601-1083
312/558-3900
Fax: 312/558-8348

Aldort 106

STATE OF ILLINOIS        )
                         )
COUNTY OF COOK           )

### CERTIFICATE OF SERVICE

The undersigned states that she served the foregoing Notice of Filing and the above-listed document(s) referred to therein by mailing a copy to the above-named attorney(s) at the address(es) indicated and depositing same in the U.S. Mail at 200 North LaSalle Street, Chicago, Illinois, at 5:00 p.m. on January 31, 2001, with proper postage prepaid.

Sworn before me on January 31, 2001

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
PAMELA S. WOODS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1/25/2002

Aldort 107

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL INSURANCE COMPANY, et al.., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | NO:  00 C 6703 |
| | ) | |
| v. | ) | Judge John W. Darrah |
| | ) | |
| CAJA NATIONAL DE AHORRO Y SEGURO, | ) | Magistrate Judge Martin Ashman |
| | ) | |
| Defendant. | ) | |
| | ) | |

DEFENDANT MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO STRIKE ANSWER AND FOR
POSTING OF PRE - JUDGMENT SECURITY

I. INTRODUCTION

1) Defendant Caja Nacional de Ahorro y Seguro ("Caja") timely answered the petition for
confirmation (the "Petition") filed by plaintiff International Insurance Company ("IIC"). IIC
now moves this Court to strike Caja's answer to the petition (the "Answer") in its entirety
because Caja failed to comply with the Illinois statute requiring Caja to post security
sufficient to cover any judgment that this Court may render against it, before Caja filed its
answer. IIC also asks this Court to order Caja to post prejudgment security. In addition,
plaintiff moves that all of the twenty-six affirmative defenses asserted by Caja should be
stricken because they relate to matters that Caja should have raised in front of the
Arbitrational Panel.

2) Caja finds itself in this matter, the object of an award, issued by a panel in which it was not
represented, in a process where it could not present its case, which in a very speedy fashion
decided matters of proper notice, validity of contracts, periods of coverage, allocation of
claims, proof of losses, etc.

1

Aldort 108

3) The end result was an award against Caja for $ 2,009,061.72 in overdue balances, plus $1,310,559.90 in interests, plus $ 15.000 in arbitration costs, plus $ 46,890.50 in attorneys fees. In addition, the award orders Caja to post an additional $ 1,320.916 as security for future claims.

4) On October 26, 2000, before this action was filed, a request was made to plaintiff's attorneys, for copies of the documents related to the arbitration. Plaintiff's response was a flat denial. However, from an examination of the documents now attached to the motion, we can find the following irregularities:

   a) Of the two contracts submitted by IIC (attached as exhibit B and C to its petition) attached herewith as our Exhibits 1 and 2, one of them (exhibit 1) is not signed by Caja. It is, purportedly, signed by American Treaty Reinsurance, at Greenwich, Connecticut. No backup documents are submitted therewith, nor explanation of whether the arbitration panel (appointed by plaintiff in its entirety) made any finding about the validity of the unsigned contract, or if the award includes claims under that contract, or if it found that premiums were paid under that contract. If no contract was signed by Caja, then the arbitrators did not have the power to proceed with the arbitration, and the award is void.

   b) With respect to the award for arbitration costs and legal fees, the arbitration clauses in both contracts (Exhibits 3 and 4 hereto), state that the fees shall be "equally divided between the company and the reinsurer". The arbitrators clearly exceeded their powers in this area.

   c) As to the appointment of the entirety of the panel by IIC, to the exclusion of La Caja, the same arbitration clauses provide that a party may appoint the arbitrator for the party in default, 30 days after receipt of the notice of arbitration by the defaulting party. No proof of receipt is provided, as required by the contract. Not even an Affidavit of Service is

2

Aldort 109

attached to IIC's petition.

5)  In sum, not only did Caja not have an opportunity to defend its case, but also it was denied by IIC, upon our request, for copies of the documents submitted to the arbitrators. The documents considered by the arbitrators to reach the award, the allegations of IIC regarding why it pretends to collect upon an unsigned contract, and without evidence that the notice of arbitration was received by La Caja, remain a secret.

6)  This is why, when we timely opposed the petition of IIC to confirm the award, the principal thrust of our action was for discovery, to obtain copies of the documentation submitted to the panel, of the evidence adduced, of the allegations, of the testimony at the hearings. It would be unfair to expect that Caja could deal with this situation in a fashion similar to that of a motion for summary judgment. Caja needs now, at least, to see the elements that it was denied during the process, or after, when we requested them. The situation for Caja is aggravated by the fact that it is a state owned company in liquidation, which administration was transferred to Instituto Nacional de Reaseguros ("INDER") (See the Moreira affidavit and attached documents which include the Crespo Affidavit, attached to these documents as Group Exhibit 6), another state owned company in liquidation, and that no records of the transactions object of this arbitration could be timely found in Argentina.

## II. CAJA'S STATEMENT IN OPPOSITION TO PETITION FOR SECURITY BY IIC

7)  IIC seeks by this petition, an order compelling Caja to post a pre-answer security. However, IIC failed to appraise the court of the fact that Caja is an instrumentality of the government of Argentina. In fact, IIC denies it after having first alleging that in its own pleadings (see Exhibit 5, numeral 3).

8)  The question presented here, is governed by the <u>Foreign Sovereign Immunities Act (28 USCA 1600</u> et Seq), and by numerous and well settled judicial precedent, that state that

3

Aldort 110

foreign governments and their instrumentalities are exempt from the requirements of state or local laws or rules, to post pre-judgment security when being sued in the United States.

9) We make reference in particular to the following cases:

a) <u>Don W. Stephens (Commissioner of Insurance KY) V. National Distillers & Chemical Corp. et al., 69 F.3d 1226. (1996)</u> where the Commissioner requested pre-judgment security from the foreign companies defendants. Some of the defendants filed a motion for relief from that requirement under the FSIA. The lower court (District Court) found for foreign retrocessionaires, commissioner appealed. The 2nd. Circuit court, on 11-3-95 decided to affirm (for the retrocessionaires) and held that:

    (1) State pre-judgment security requirement was pre-judgment "attachment" for purposes of FSIA.

    (2) FSIA preempted state pre-judgment security requirement notwithstanding McCarran - Ferguson Act.

b) <u>S & S Machinery Co. v. Massinexportimport 706 F 2d 411 (1983)</u> where plaintiff had attached some Letters of Credit and obtained an injunction against Massinexportimport, ordering it not to negotiate other Letters of Credit. Massinexportimport moved in the District Court (S.D.N.Y.), and the Judge vacated the attachment and the injunction, because Massinexportimport was a Rumanian, government owned company. Plaintiff appealed to the 2nd Circuit Court of Appeals. The S.D.N.Y. was affirmed. An Agency or instrumentality of foreign state is treated as a foreign state for purposes of FSIA, which immunizes foreign states and its alter egos from pre-judgment attachment of assets in U.S. FSIA @ 1603 (a) " An agency or instrumentality of a foreign state as elaborated in subsection (b) itself is treated as a foreign state for purposes of the act."

c) <u>Moore, Commissioner of Ins (KY) v. National Distillers and Chemical Corp. et al. 143</u>

4

FRD 526 (1992) where the Commissioner, as liquidator of Delta America Re., sought an order against defendants (Foreign Companies) to post a bond (Pre-judgment security). The Motion to except foreign companies from posting Prejudgment Security was granted with respect to three foreign government entities. The reasoning was that the FSIA has preeminence over State Law, and unless the foreign state (or instrumentality thereof) expressly waives the immunity, they are immune from the state law obligation of posting Pre-judgment Security.

10) Finally, Caja has never waived its rights under the FSIA. On the contrary, it has fought vigorously to preserve them. That right is a manifestation of its sovereign nature and so it has been recognized by the law.

### III. CAJA'S ANSWER SHOULD NOT BE STRIKEN

11) IIC also seeks in this action, to strike the answer and affirmative defenses interposed by Caja, on the basis that they are not sufficient to vacate the arbitration award. IIC specifically points out to rule 12 (f) of the Fed. R. Civ.P., which grants the court authority to strike insufficient defenses, or redundant, immaterial, impertinent or scandalous matter.

12) With regards to the degree of specificity of CAJA's answer, we pray for the court to take into account that it is precisely CAJA's contention that it is in a position of disadvantage, because it lacks information as to the process that resulted in an award against it. It is not possible for CAJA to present detailed facts in response to IIC's petition because those facts are, for the moment, in the exclusive domain of IIC, who has refused to share them with us. We refer particularly to the documents submitted to the arbitrators in support of their claims, and the transcripts of the arbitration hearings.

13) The necessity of maintaining the affirmative defenses arises from the expectation that discovery will reveal the facts that will support those defenses, which, if not pleaded, are

Aldort 112

waived.

14) Some of those facts began to become evident when IIC filed its motion to strike our answer and defenses, such as is the case with our exhibit 1 (offered by IIC as exhibit a). That consists of a contract offered by IIC as evidence of a contractual relationship, and the basis for their claims, but which is not signed by CAJA, and where IIC does not state facts to support why claims under that contract are valid, actionable claims, subject to arbitration.

15) That is also evident from exhibits 3 and 4 (arbitration clauses), which clearly state that the expenses and costs of the arbitration will be born equally by the parties, and where that contractual agreement was ignored and violated by the arbitral award.

16) While it is true that we do not have the factual elements to explain and support all the defenses in great detail, those defenses are related to the contractual relationship (or absence of that relationship). Further, the petitioner has not shown that the defenses being challenged are so unrelated to the claim as to be void of merit and unworthy of any consideration (Robinson v. The Midlane Club, Inc., 1994 WL 577219 – N.D. Ill. Oct. 19, 1994). The movant must establish that the presence of the references sought to be stricken from the pleading will be prejudicial to the movant. (Pelech v. Klaff-Joss L.P., 828 F.Supp. 525, 536 – N.D. Ill. 1993).

17) Motions to strike under federal rule 12 (f) are not favored, and are usually denied unless the language objected to has no possible relation to the controversy and is clearly prejudicial (Simmons v. John F. Kennedy Medical Center, 727 F.Supp 440 – N.D. Ill. 1989, Farza v. Chicago Health Clubs, Inc., 347 F. Supp. 955, 962 – N.D. Ill. 1972, 2A Moore's Federal Practice, Para 12.21 at 2437 – 2nd. Ed. 1975). The motion to strike a defense for insufficiency should be granted only when it appears that the defense is frivolous or does not present any bona fide issue of fact or law.

Aldort 113

18) Petitioner does not present any specific objections to the affirmative defenses.

19) On the other hand, affirmative defenses are pleadings, and are therefore subject to all pleading requirements of the <u>Federal Rules of Civil Procedure. (Heller, 883 F.2d. at 1294,</u> <u>Flasza v. TNT Holland Motor Express Inc., 155 F.R.D. 612, 613</u> – N.D. Ill. 1994).

20) Thus, affirmative defenses must set forth a "short and plain statement" of the defense, which they do in this case, and therefore, they should be admitted.

21) Finally, with respect to the inclusion in our answer of the grounds to vacate the award, and in particular the grounds listed in the Convention on Recognition and enforcement of Foreign Arbitral Awards (The New York Convention), (as well as under the Interamerican Convention for International Commercial Arbitration [the Panama Convention]), the grounds to deny recognition and enforcement are listed in the article V thereof.

22) Article V (a) for example establishes the defense of absence of a valid agreement, as does Article II.

23) The 2nd Affirmative defense covers precisely that ground, as it states that there is no contractual coverage of IIC's claims, or at least, no agreement to arbitrate those claims. Also, neither IIC's petition, nor its moving papers provide evidence of why IIC seeks coverage under a contract not signed by CAJA.

24) The 1st Affirmative defense is pertinent because IIC's petition does not allege facts sufficient to comply with the FSIA requirements to effectuate service of process on a foreign sovereign, and acquire personal jurisdiction over La Caja, and no affidavit of service has been provided by the petitioner to that effect.

25) There are similarly valid reasons for the admission of all of Caja's affirmative defenses, but since IIC has not advanced any specific argument for their dismissal, it is clear that all defenses should be admitted.

Aldort 114

## III.    CONCLUSION

26) Respondent La Caja, a foreign sovereign, should not be required to post pre-judgment

security in order to answer the petition of IIC, and the motion of petitioner to strike the

answer and affirmative defenses of La Caja should be denied and La Caja should be allowed

discovery of the arbitration materials and the basis of the claims submitted by IIC to the

arbitration panel.

Respectfully submitted,

CAJA NACIONAL DE AHORROS Y SEGURO

BY _____

Jorge Moreira,
One of Its Attorneys

Jorge Moreira
130 W. 42d Street
New York, NY 10036
Telephone 212-398-8600
Fax: 212-398-9425

Local Counsel:

Richard M. Clark
ARDC #0452823
Richard J. Rettberg
ARDC #2318989
McKenna, Storer, Rowe, White & Farrug
200 N. LaSalle Street, Suite 3000
Chicago, Illinois 60601-1083
Telephone: 312-558-3900
Fax:    312-558-8348

Aldort 115

## ARTICLE XXIV

PARTICIPATION:    CASUALTY EXCESS REINSURANCE AGREEMENT
                  EFFECTIVE March 15, 1979

This Agreement is for 6.67% of the liability and amounts set forth in this Agreement and the Reinsurer is entitled to a proportionate share of the premium provided.

IN WITNESS WHEREOF, the parties hereto, by their respective duly authorized officers, have executed this Agreement in duplicate as of the dates recorded below:

At Chicago, Illinois this *Nineteenth* day of *December,* 1979.

INTERNATIONAL SURPLUS LINES INSURANCE COMPANY

ATTEST:

*Marcia McCann*

Norman Reid, Senior Vice President

At Chicago, Illinois this                         day of              1979.

L. W. BIEGLER INC. for and on behalf of the Companies listed in ARTICLE III, pursuant to the authority granted by such Companies.

ATTEST:

Norman Reid, Senior Vice President

At *Greenwich,* this *2nd* day of *December* 1979.
*Conn.*

CAJA NACIONAL DE AHORRO Y SEGURO, *through its Reinsurance Managers, American Treaty Corporation, and for the Reinsurance Corporation of Connecticut.*

*Landon Pierson*

J. AVID.m. PIERSON.    (President.

ATTEST:

*Michele G. DiAcri*
Michele G. DiAcri

# C. 20016.

**EXHIBIT**

-15-

Aldort 116

The Re    urer, may however, cancel thi   Agreement absolutely on thirty (30) days notice for non-payment of premium due.  Such cancellation shall not take effect if premium due is paid promptly after notice of cancellation is received by the Company.

## ARTICLE XXIII

INTERMEDIARY:

J. L. Kelley, Inc., P. O. Box 267, Franklin Lakes, New Jersey 07417 is hereby recognized as the Broker negotiating this Agreement through whom all communications (including but not limited to notices, statements, premiums, wr ten premiums, commissions, taxes, losses, loss adjustment of the expense, salv and loss settlements) relating thereto shall be transmitted to the Company or Reinsurer.  Payments by the Company to the Broker shall be deemed to constitut payment to the Reinsurer.  Payments by the Reinsurer to the Broker shall be de ed only to constitute payment to the Company to the extent that such payments actually received by the Company.

## ARTICLE XXIV

PARTICIPATION:  CASUALTY REINSURANCE AGREEMENT
EFFECTIVE January 1, 1979

This Agreement is for  .583 % of the liability and amounts set forth this Agreement and the Reinsurer is entitled to a proportionate share of the premium provided..

IN WITNESS WHEREOF, the parties hereto, by their respective duly auth rized officers, have executed this Agreement in duplicate as of the dates rec ed below:

At Chicago, Illinois this        10th      day of  Oct           197

INTERNATIONAL SURPLUS LINES INSURANCE COMPA

ATTEST:

NORMAN R. REID
SENIOR VICE PRESIDENT

At Chicago, Illinois this        10th      day of  Oct           197

L. W. BIEGLER INC.  for and on behalf of th Companies listed in ARTICLE III, pursuant to the authority granted by such Companies.

ATTEST:

NORMAN R. REID
SENIOR VICE PRESIDENT

At  Buenos Aires,        this    17    day of  Abril        19

CAJA NACIONAL DE AMORRO Y SEGURO

OUR REF.: 1358

OSVALDO N. ANCONATANI
1º JEFE DEPARTAMENTO COBERTURAS ESPECIALES

-13-

EXHIBIT
2

The above-named are authorized and directed to accept service of process on behalf of Reinsurers in any suit and/or upon request of the Company, to give a written undertaking to the Company that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefor, Reinsurers hereon hereby designate the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Company or any beneficiary hereunder arising out of this Agreement of reinsurance, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## ARTICLE XXI

ARBITRATION:

If any dispute shall arise between the Company and the Reinsurer, either before or after the termination of this Agreement, with reference to the interpretation of this Agreement or the rights of either party with respect to any transactions under this Agreement, the dispute shall be referred to three Arbitrators, one to be chosen by each party and the third by the two so chosen. If either party refuses or neglects to appoint an Arbitrator within thirty days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate two Arbitrators who shall choose the third. In the event the two Arbitrators do not agree on the selection of the third Arbitrator within thirty days after both Arbitrators have been named, the Company shall petition the American Arbitration Association to appoint an Arbitrator. Each party shall submit its case to the Arbitrators within thirty days of the appointment of the Arbitrators. The Arbitrators shall consider this Agreement an honorable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law. The decision of a majority of the Arbitrators shall be final and binding on both the Company and the Reinsurer. Judgment may be entered upon the award of the Arbitrators in any court having jurisdiction. The expense of the Arbitrators and of the arbitration shall be equally divided between the Company and the Reinsurer. Any such arbitration shall take place in Chicago, Illinois unless some other location is mutually agreed upon by the parties.

## ARTICLE XXII

TERMINATION:

This Agreement may be terminated at any April 1, 12:01 A.M., Central Standard Time, by either party giving at least ninety (90) days prior written notice by Certified Mail to the other party. The Reinsurer shall continue to

-13-


EXHIBIT
3

## ARTICLE XXI

ARBITRATION:

If any dispute shall arise between the Company and the Reinsurer, either before or after the termination of this Agreement, with reference to the interpretation of this Agreement or the rights of either party with respect to any transactions under this Agreement, the dispute shall be referred to three Arbitrators, one to be chosen by each party and the third by the two so chosen. If either party refuses or neglects to appoint an Arbitrator within thirty days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate two Arbitrators who shall choose the third. In the event the two Arbitrators do not agree on the selection of the third Arbitrator within thirty days after both Arbitrators have been named, the Company shall petition the American Arbitration Association to appoint an Arbitrator. Each party shall submit its case to the Arbitrators within thirty days of the appointment of the Arbitrators. The Arbitrators shall consider this Agreement an honorable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law. The decision of a majority of the Arbitrators shall be final and binding on both the Company and the Reinsurer. Judgment may be entered upon the award of the Arbitrators in any court having jurisdiction. The expense of the Arbitrators and of the arbitration shall be equally divided between the Company and the Reinsurer. Any such arbitration shall take place in Chicago, Illinois unless some other location is mutually agreed upon by the parties.

## ARTICLE XXII

TERMINATION:

This Agreement may be terminated at any January 1, 12:01 A.M., Central Standard Time, by either party giving at least ninety (90) days prior written notice by Registered Mail to the other party. The Reinsurer shall continue to be liable for losses under Policies in force until the natural expiration or termination or anniversary date of such policies ceded to this Agreement or the first anniversary date of the termination of this Agreement, whichever occurs first.

Notice of cancellation on the part of either the Company or Reinsurer will be mailed directly to the other party.

The Company shall have the option to terminate all liability of the Reinsurer as of the termination date for losses occurring subsequent to the termination date.

Immediately following the time that the Reinsurer is relieved of liability for losses occurring thereafter, the Reinsurer shall return to the Company an appropriate unearned premium portfolio.



-12-

Aldort 119

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

INTERNATIONAL INSURANCE COMPANY,          )
for itself and as Successor In Interest to          )
International Surplus Lines Insurance Company,          )
The North River Insurance Company, United          )
States Fire Insurance Company and/or Westchester          )
Fire Insurance Company, Industrial Indemnity          )
Company, United States Fire Insurance Company          )
of Canada, Toronto, Ontario, and Herald Insurance          )
Company of Canada, Toronto, Ontario,          )
          )
          Plaintiff,          )
          )
    v.          )
          )
CAJA NATIONAL DE AHORRO Y SEGURO,          )
          )
          Defendant.          )

JUDGE GOTTSCHALL

MAGISTRATE JUDGE BOBRICK

00C 2189

RECEIVED

APR 1 0 2000

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT.

Civil Action No.

### COMPLAINT

International Insurance Company, for itself and as successor in interest to International

Surplus Lines Insurance Company, The North River Insurance Company, United States Fire

Insurance Company and/or Westchester Fire Insurance Company, Industrial Indemnity Company,

United States Fire Insurance Company of Canada, Toronto, Ontario, and Herald Insurance

Company of Canada, Toronto, Ontario ("IIC"), complains of Defendant, Caja National De

Ahorro y Seguro ("Caja"), as follows:

#### Nature of the Action

1.      This action seeks damages in connection with Caja's failure to pay amounts due

under certain contracts of facultative reinsurance issued to IIC.

#### The Parties

2.      IIC is a corporation organized and existing under the laws of the State of Illinois

with its current principal place of business in Manchester, New Hampshire.  At the time the

contracts were negotiated, IIC's principal place of business was in Chicago, Illinois.



EXHIBIT

5

Aldort 120

3.      Caja is a corporation organized and existing under the laws of Argentina with its

principal place of business in Buenos Aires, Argentina.  Caja is wholly owned by the government

of Argentina.

### Jurisdiction

4.      Jurisdiction of this court is proper pursuant to the Foreign Sovereign Immunities

Act, 28 U.S.C. § 1330.  Caja is subject to personal jurisdiction in the United States.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(f)(1) in that a

substantial part of the events or omissions giving rise to the claim occurred in this district.

### COUNT I
### Breach of Contract

6.      For the period from September 1, 1978 through September 1, 1983, IIC provided

excess and umbrella liability insurance to Owens-Corning Fiberglas Corporation ("Owens-

Corning"), a company domiciled in Toledo, Ohio, pursuant to policies numbers 522000410,

XSI005731, XSI006285, XSI006287, XSI007710, XSI007712, XSI007713, and XSI008573 (the

"Owens-Corning Policies").

7.      IIC and Caja entered into eight facultative reinsurance contacts pursuant to which

Caja agreed to indemnify IIC for a portion of the losses incurred by IIC on the Owens-Corning

Policies (collectively, the "Facultative Certificates").  Copies of two of the Facultative

Certificates and the Lloyd's of London policies referenced therein are attached hereto as Group

Exhibits A and B.  The Facultative Certificates state that they are "subject to the same terms,

clauses, and conditions" and are "identical in risk, subject matter and interest" as the attached

policies issued by Lloyd's of London.  In turn, each Lloyd's policy incorporated by reference in

the Facultative Certificates contains a service of suit provision.

8.      On information and belief, the remaining six Facultative Certificates issued by

- 2 -

Aldort 121

Caja contain provisions identical to those described in paragraph 7 hereof which incorporate by reference the terms of a corresponding Lloyd's policy with its service of suit provision.

9. The Facultative Certificates provide that, in exchange for premium paid by IIC, Caja agreed to reinsure and indemnify IIC for a portion of amounts paid by IIC in connection with judgments and settlements incurred on the Owens-Corning Policies.

10. IIC has paid various amounts in connection with the investigation, defense and settlement of claims arising under the Owens-Corning Policies.

11. Pursuant to the terms of the Facultative Certificates, Caja must indemnify IIC for its share of the payments IIC has made under the Owens-Corning Policies. As of December 31 1999, Caja's share of IIC's payments totalled $2,174,309.82.

12. On various dates up to and including January 28, 2000, IIC issued reinsurance billing notices to Caja and made demand upon Caja to indemnify IIC for its share of IIC's losses.

13. Despite demand, Caja has failed to fulfill its obligations under the Facultative Certificates to pay its share of IIC's losses.

14. By failing to pay its share of IIC's losses, Caja has breached its obligations to reinsure and indemnify IIC as required by the Facultative Certificates.

15. As a result of Caja's breach of the Facultative Certificates as stated herein, IIC has suffered damages in the amount of at least $2,174,309.82.

## COUNT II
### Breach of the Duty of Utmost Good Faith

16. IIC realleges each and every allegation set forth in paragraphs 7-15 as paragraph 16 of Count II.

17. Caja owes to IIC the duty of utmost good faith.

18. Caja has breached its duty of utmost good faith by failing to pay its share of IIC's

- 3 -

Aldort 122

losses as required by the Facultative Certificates.

19.     As a result of Caja's breach of its duty of utmost good faith, IIC has suffered damages in the amount $2,174,309.82.

WHEREFORE, Plaintiff International Insurance Company, for itself and as successor to International Surplus Lines Insurance Company, The North River Insurance Company, United States Fire Insurance Company and/or Westchester Fire Insurance Company, Industrial Indemnity Company, United States Fire Insurance Company of Canada, Toronto, Ontario, and Herald Insurance Company of Canada, Toronto, Ontario, respectfully requests that this Court enter judgment in its favor, and award IIC:

A.     Compensatory damages in the amount $2,174,309.82, plus interest;

B.     Reasonable costs and fees incurred in bringing this action; and

C.     Such other relief as the Court deems just and proper.

INTERNATIONAL INSURANCE COMPANY,
for itself and as successor in interest to International
Surplus Lines Insurance Company, The North River
Insurance Company, United States Fire Insurance
Company and/or Westchester Fire Insurance
Company, Industrial Indemnity Company, United
States Fire Insurance Company of Canada, Toronto,
Ontario, and Herald Insurance Company of Canada,
Toronto, Ontario

By _R. Douglass Bond_____
        One of its Attorneys

James I. Rubin (Attorney I.D. No. 02413191)
R. Douglass Bond (Attorney I.D. No. 06203843)
Randi Ellias (Attorney I.D. No. 06237021)
Butler, Rubin, Saltarelli & Boyd
1800 Three First National Plaza
Chicago, Illinois 60602
(312) 444-9660

W:\IIC\Caja\Litigation\complaint.wpd

- 4 -

Aldort 123

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

INTERNATIONAL INSURANCE COMPANY,                    )
for itself and as Successor In Interest to            )
International Surplus Lines Insurance Company,         )
The North River insurance Company, United            )
States Fire Insurance Company and/or Westchester      )
Fire Insurance Company, Industrial Indemnity          )        Civil Action
Company, United States Fire Insurance Company         )        No. 00 C 6703
of Canada, Toronto, Ontario, and Herald Insurance     )
Company of Canada, Toronto, Ontario,                  )        Judge John W. Darrah
                                                      )
                              Plaintiff,              )        Magistrate Judge
           v.                                         )        Martin Ashman
                                                      )
CAJA NACIONAL DE AHORROS Y SEGURO,                   )
                                                      )
                              Defendant.              )

AFFIDAVIT OF JORGE W. MOREIRA, ESQ.

STATE OF NEW YORK      )
                       ) SS:
COUNTY OF NEW YORK     )

Jorge W. Moreira, being duly sworn, deposes and says:

1.  I am principal attorney of The Moreira Law Firm, P.C., attorneys for respondent Caja

Nacional de Ahorros y Seguros ("CAJA"), an agency wholly owned by the Government of

Argentina. I am admitted to practice as an attorney in the State of New York and the United States

Districts Courts for the Southern and Eastern Districts of New York.

2.  I make this affidavit in support of CAJA's opposition to IIC's motion to order CAJA to

post Pre- Judgment Security.



EXHIBIT
GROUP
6

3.  My statement that CAJA is wholly owned by the government of Argentina and has its principal place of business in Buenos Aires, Argentina, is based on personal knowledge, and is also corroborated by the Affidavit of Dr. Horacio R. Crespo Counsel of Instituto Nacional de Reaseguros "INDER" and an attorney admitted in the Republic of Argentina, certified by John Larrea, Vice Consul of the U.S.A. in Buenos Aires, on January 9th 2001. (The "Crespo Affidavit").

Additionally, we also attached a copy of the Decree of the Ministry of Economy of Argentina, dated July 31 1998, ("The Decree") that transfers to INDER, the Administration of LA CAJA. The Decree is translated into the English language and certified by the U.S Vice Consul in Buenos Aires.

4.  I certify that the documents attached herewith (the Crespo Affidavit and the Decree) are true copies of the originals that I had before me.

The originals were filed very recently in another case between the same parties, before Hon. Joan B. Gottshall, Index  No. 00C2189, in this same Court.

Jorge W. Moreira

Sworn to and subscribed before me this ___ day of January, 2001

NOTARY PUBLIC

ANGELO D TARTARO
Notary Public, State of New York
No 02TA5050728
Qualified in Westchester County
Commission Expires Oct 16, 19___





*Ministerio de Economía*

*Instituto Nacional de Reaseguros*

*Sociedad del Estado en Liquidación – Decreto 171/92*

I Horacio Raúl Crespo, an attorney at law admitted in Argentina, and Counsel for Instituto Nacional de Reaseguros (INdeR), certify that this is a true copy of de original that I had before me today.

Buenos Aires, january 9, 2001





AGENCIA AMORIN
TRADUCCIONES
Avda. de Mayo 982 - 2º B - 1084 Bs.As.
Tel. 343-9337/3318 - Fax 334-0532

TRANSLATION

1998.- Municipalities Year.-------------------------------

893.---------------------------------------------------------

Ministry of Economy and Public Works and Utilities.--------

Buenos Aires, July 31, 1998.-------------------------------

Docket N° 750-005170/97 of the MINISTRY OF ECONOMY AND

PUBLIC WORKS AND UTILITIES having been considered, and ----

WHEREAS: ---------------------------------------------------

Through the above mentioned Docket, the Receiver of CAJA

NACIONAL DE AHORRO Y SEGURO (en liquidación) (National

Savings Fund and Insurance - under winding-up proceedings)

has deemed it desirable to transfer active reinsurances

originated from the foreign private market in which the

above entity has participated·and which completion is still

pending, onto Instituto Nacional de Reaseguros Sociedad del

Estado (en liquidación) (National Institute of Reinsurance

- State-owned company - under winding-up proceedings).-----

And whereas the above measure may be technically and

politically founded on the particular nature of the

transactions in question and on the need of optimizing

resources and structures which are still available for both

entities under winding-up proceedings, thus measure

enabling the winding-up procedure closing of some items of

one of said entities.---------------------------------------

And whereas, as regards this kind of transactions, CAJA

Aldort 127



NACIONAL DE AHORRO Y SEGURO (en liquidación) maintains -in its financial statement dated June 30, 1994, drawn under the provisions of Executive Order N° 1,836, issued on October 14, 1994- a number of debts to assignors of said transactions, the majority of which has been subject to cancellation claims.----------------------------------------

And whereas INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación) also has operations of the same nature and characteristics as those opportunely carried out by CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) pending of conclusion, namely, operations derived from active reinsurances with foreign assignors.----------------

And whereas the juridical, economical and financial nature of this kind of transactions, which render them technically complex, as well as the market impact which any negotiation intended for the conclusion thereof shall produce, make it necessary to carry out a unified handling of such transactions in furtherance of the best defense of the NATIONAL STATE interests.------------------------------------

And whereas both entities are under winding-up proceedings and further, there exist common interests regarding the above mentioned transactions, it is desirable to face the conclusion thereof through a specialized structure able to solve the complex technical aspects involved and according to a univocal and centralized handling.---------------------

Aldort 128



And whereas the essential elements of the negotiation political framework of the above call for a criteria uniformity regarding the attention of international creditors of this line of business, as well as the increase of information regarding negotiations and recoveries and a better technical profile of the negotiating groups.--------
Whereas the unified handling of such transactions by INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación) shall produce economical effects on direct and indirect costs, which shall be noticeably reduced, and further, an increase on the effectiveness of internal and external controls, which costs shall also be reduced.------
Whereas upon centralizing in one of the entities under winding-up proceedings the whole of the transactions connected to active reinsurances with foreign assignors in order to conclude same a higher negotiation power against such creditors shall be attained, by rationally utilizing resources of one of the entities which, even if under liquidation procedures, is certainly specialized in this matter.-------------------------------------------------------
That the handling of said transactions of CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) by INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación)· *shall* provide the means for a more expedient progress regarding the winding up objective of the first named entity, without

FROM :                    PHONE NO. : 2123988600              Jan. 02 2001 12:03AM P10

such action implying a delay of the second entity's winding-up, as the above transactions are similar to those already included in the portfolio thereof and in which there are to be unified the representation and guidelines of the negotiations for the completion thereof.------------

And whereas on the other hand, given the specialization of INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación) regarding the treatment and handling of this kind of transactions, the order herein set forth does not imply neglecting fiscal interests involved but rather, it shall reinforce the defense thereof due to technical and business policy reasons as has been hereinbefore described.-----------------------------------------------

And whereas it is accordingly necessary to set forth the pertinent measures in order to handle the active reinsurances transactions portfolio of the foreign private market belonging to CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) by INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación) within the regulatory framework in force, which governs the winding-up procedures of those entities subject to winding-up proceedings.----------------

And whereas to such end, the appropriate measure consists of the transfer onto the NATIONAL STATE —as per Section 9th of Executive Order N° 2,148 of October 19, 1993- of the determined liabilities and contingent assets and

Aldort 130



liabilities of CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), derived from the foreign assignors active reinsurances portfolio, the handling thereof to be entrusted to INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación).-----------------------------------

And whereas the NATIONAL DIRECTION OF JURIDICAL MATTERS of this MINISTRY has intervened as it has the corresponding jurisdiction thereon.-----------------------------------------

And whereas this instrument is issued under the powers granted by Sections 13 and 15, paragraph 1st of Act N° 23,696, Section 10 of Executive Order N° 171 of January 23, 1992, Section 2nd of Executive Order N° 2,394 of December 15, 1992, Section 9th of Executive Order N° 2,148 of October 19, 1992, and Sections 4th and 15th of Executive Order N° 1,836 of October 14, 1994.------------------------

Therefore: ---------------------------------------------------

THE MINISTRY OF ECONOMY AND PUBLIC WORKS AND UTILITIES RESOLVES AS FOLLOWS: -------------------------------------

SECTION 1st.- It is hereby ordered that the determined liabilities and contingent assets and liabilities of CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), derived from the foreign private market active reinsurance transactions in which said entity participated, and which detail is part of the financial statement drawn on June 30, 1994, in conformity with the provisions of Executive Order N°

Aldort 131



1,836/94, which statement is annexed hereto, be transferred
to the NATIONAL TREASURY.----------------------------------
SECTION 2nd. The INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD
DEL ESTADO (en liquidación) is hereby entrusted with the
handling of the transactions mentioned in the precedent
section until the completion thereof, as well as of those
claims which may hereinafter arise, derived from foreign
private market active reinsurance operations opportunely
handled by CAJA NACIONAL DE AHORRO Y SEGURO, at present
under winding-up proceedings, the former being empowered
with all of the authorities vested on the Receiver of the
latter entity, as per regulations in force which apply to
the winding-up thereof.-----------------------------------
SECTION 3rd.- To the effect of the liquidation of the
transactions with which it has been entrusted, INSTITUTO
NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación)
may offer creditors thereof payment modes which the CAJA
NACIONAL DE AHORRO Y SEGURO (en liquidación) has been
authorized to offer, in accordance to Section 27 of Act N°
24,764.----------------------------------------------------
SECTION 4th.- Involved organisms shall avail from all of
the necessary means for the immediate implementation of
what has been established in this Resolution.--------------
SECTION 5th.- Formal.--------------------------------------
RESOLUTION N° 993.-----------------------------------------



Signed: Dr. ROQUE BENJAMIN FERNANDEZ.- Ministry of Economy
and Public Works and Utilities.----------------------------
There appear several signatures in all of the pages.--------
All of the pages bear a seal of the Ministry of Economy and
Public Works and Utilities, N° 1845.-----------------------
I DO HEREBY CERTIFY the above is a true translation of the
attached photocopy from Spanish into English. Done and
signed in Buenos Aires this sixteenth day of the month of
November of the year one thousand nine hundred and ninety-
eight. (The text in Spanish that follows is the translation
of this paragraph for legalization purposes only). --------
ES TRADUCCION FIEL del castellano al inglés de la fotocopia
adjunta, a la que me remito en Buenos Aires a los dieciséis
días del mes de noviembre de mil novecientos noventa y
ocho.

ANA MARIA AMORIN
TRADUCTORA PUBLICA NACIONAL
IDIOMA INGLES - U.B.A.
T° X - F° 338 - MAT. 3003

Aldort 133





*1998 - Año de los Municipios*

*Ministerio de Economía*
*y Obras y Servicios Públicos*

BUENOS AIRES,    **3 1 JUL 1998**

VISTO el Expediente N° 750-005170/97 del Registro del MINISTERIO DE ECONOMIA Y OBRAS Y SERVICIOS PUBLICOS, y

CONSIDERANDO:

Que en el Expediente referenciado, el Liquidador de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) plantea la conveniencia de transferir los negocios de reaseguros activos del mercado privado del exterior en los que participara el citado ente, aún pendientes de conclusión, al INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación).

Que la medida que se propone encuentra su fundamento técnico y político en la naturaleza particular de los negocios de que se trata y en la necesidad de optimizar los recursos y las estructuras con que aún cuentan ambos entes en liquidación, posibilitando el cierre del proceso liquidatorio de algunos rubros de uno de ellos.

Que respecto de este tipo de negocios, la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) mantiene en su estado patrimonial al 30 de junio de 1994, realizado en los términos del Decreto N° 1.836 del 14 de octubre de 1994, un conjunto de deudas con cedentes de dichos negocios, la mayoría de las cuales tienen reclamos de cancelación.

Que asimismo el INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación) tiene pendientes de conclusión operatorias de la misma naturaleza y características que las realizadas en su momento por la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), esto es, procedentes de reaseguros activos con





cedentes del exterior.

Que la naturaleza jurídica, económica y financiera de este tipo de negocios, determinantes de su complejidad técnica, así como la repercusión que toda negociación tendiente a su conclusión tendrá en el mercado, tornan necesario un manejo unificado de los mismos que posibiliten una mejor defensa de los intereses del ESTADO NACIONAL.

Que encontrándose ambos entes en estado de liquidación y existiendo intereses comunes de los mismos en muchos de los negocios antes indicados, resulta conveniente encarar la conclusión de ellos mediante una estructura especializada en los complejos aspectos técnicos que presentan y conforme a un manejo unívoco y centralizado.

Que las aristas esenciales del marco político negocial antedicho, aconsejan la utilización de uniformidad de criterios para la atención de los acreedores internacionales en este rubro, junto con el aumento del caudal de información para las negociaciones y recuperaciones y un mejor perfil técnico en los equipos de negociación.

Que el manejo unificado de tales negocios por parte del INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación), tendrá efectos de orden económico con incidencia sobre los costos directos e indirectos, los que se verán sensiblemente reducidos, así como el aumento de la eficacia de los controles internos y externos cuyos costos también se reducirán.

Que al concentrar en uno solo de los entes en liquidación la totalidad de los negocios de reaseguros activos con cedentes del exterior a los fines de su conclusión, se adquirirá un mayor poder de negociación frente a los acreedores aludidos, aprovechando racionalmente los recursos mediante la utilización de los que posee un ente que, aún

Aldort 135





*1998 - Año de los Municipios*

*Ministerio de Economía*
*y Obras y Servicios Públicos*

encontrándose en proceso liquidatorio, tiene indudable especialización en el tema.

Que la atención de los citados negocios de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) por el INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación), permitirá avanzar más rápidamente en el objetivo liquidatorio del primero de los entes nombrados, sin que ello traiga aparejada una demora en la liquidación del segundo, en razón de tratarse de negocios similares a los que ya figuran en la cartera de éste y en los que se unificarán la representación y las pautas en las negociaciones destinadas a concluir los mismos.

Que por otra parte, dada la especialización del INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación) en el tratamiento y manejo de este tipo de negocios, la medida que se dispone no implica descuidar los intereses fiscales comprometidos, sino, antes bien, reforzar la defensa de los mismos por las razones técnicas y de política negocial que se describen en los Considerandos precedentes.

Que por ello se hace necesario disponer las medidas pertinentes a los fines de la atención de la cartera de negocios de reaseguros activos del mercado privado del exterior de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) por el INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación), dentro del marco normativo vigente que regula el proceso liquidatorio de los entes que hayan sido declarados en estado de liquidación.

Que a tal fin, la mecánica apropiada es la transferencia al ESTADO NACIONAL, en el marco de lo dispuesto por el artículo 9° del Decreto N° 2.148 del 19 de octubre de 1993, de los pasivos determinados y de los activos y pasivos contingentes de la CAJA NACIONAL





*1998 - Año de los Municipios*

*Ministerio de Economía*
*y Obras y Servicios Públicos*

DE AHORRO Y SEGURO (en liquidación), derivados de la cartera de reaseguros activos con cedentes del exterior, encomendando su atención al INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación).

Que la DIRECCION GENERAL DE ASUNTOS JURIDICOS de este MINISTERIO ha tomado la intervención que le compete.

Que la presente se dicta en uso de las facultades otorgadas por los artículos 13 y 15, inciso 1° de la Ley N° 23.696, el artículo 10 del Decreto N° 171 del 23 de enero de 1992, el artículo 2° del Decreto N° 2.394 del 15 de diciembre de 1992, el artículo 9° del Decreto N° 2.148 del 19 de octubre de 1993 y los artículos 4° y 15 del Decreto N° 1.836 del 14 de octubre de 1994.



Por ello,

EL MINISTRO DE ECONOMIA Y OBRAS Y SERVICIOS PUBLICOS

RESUELVE:

ARTICULO 1°.- Declarar transferidos al TESORO NACIONAL los pasivos determinados y los activos y pasivos contingentes de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), derivados de los negocios de reaseguros activos del mercado privado del exterior en los que participara el citado ente, y cuyo detalle que forma parte del estado patrimonial confeccionado al 30 de junio de 1994 de conformidad con lo establecido por el Decreto N° 1.836/94, figura como Anexo de la presente Resolución.



ARTICULO 2°.- Encomendar al INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación) la atención de los negocios indicados en al artículo anterior

Aldort 137



*Ministerio de Economía*
*y Obras y Servicios Públicos*

*1993 - Año de los Municipios*



hasta la conclusión de los mismos, asi como de los reclamos que pudiesen surgir en el futuro

derivados de operaciones de reaseguros activos del mercado privado del exterior, realizadas en

su momento por la CAJA NACIONAL DE AHORRO Y SEGURO, hoy en liquidación,

ejerciendo la totalidad de las facultades que a su respecto tiene el Liquidador de este último

ente,conforme a las normas vigentes que reglamentan la liquidación del mismo

ARTICULO 3°.- A los fines de la liquidación de los negocios cuya atención se le encomienda,

el INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en

liquidación) podrá ofrecer a los acreedores de los mismos, los medios de pago que se

encuentra facultada a ofrecer la CAJA NACIONAL DE AHORRO Y SEGURO (en

liquidación) conforme al artículo 27 de la Ley N° 24.764.

ARTICULO 4°.- Los organismos involucrados deberán disponer todos los medios necesarios

para la inmediata puesta en práctica de lo establecido en la presente Resolución.

ARTICULO 5°.- Comuníquese, publíquese, dése a la Dirección Nacional del Registro Oficial y

archívese.

RESOLUCION N°    093

Dr. ROQUE BENJAMIN FERNANDEZ
MINISTRO DE ECONOMIA
Y OBRAS Y SERVICIOS PUBLICOS



*Embassy of the United States of America*

## CERTIFICATE OF ACKNOWLEDGMENT OF EXECUTION OF AN INSTRUMENT

*Republic of Argentina* )
*City of Buenos Aires* )
*Embassy of the United* )  Ss.
*States of America* )

John F. Larreo
Vice C---

I, ...................................................... of the United States of
America at Buenos Aires. Argentina duly commissioned and qualified, do
hereby certify that on this ........day of .......................... 2001,
before me personally appeared ...................................................
........................................................................................,
be the individual described in, whose name (s) is/are subscribed to or
who provided ................................................................................,
as evidence of identity and who executed the annexed instrument, who duly
acknowledged to me that he/she/they executed the same freely and
voluntarily for the uses and purposes therein mentioned.

In witness whereof I have hereunto set my hand and
official seal the day and year last above written.

(Seal)

John F. Larreo
Vice Con-

*of the United States of America*

Aldort 139



*Embassy of the United States of America*

## CERTIFICATE OF ACKNOWLEDGMENT OF EXECUTION OF AN INSTRUMENT

*Republic of Argentina* )
*City of Buenos Aires* )
*Embassy of the United* )    *Ss.*
*States of America* )

John F. Larrea
Vice Consul

I, ..................................................... of the United States of
America at Buenos Aires, Argentina duly commissioned and qualified, do
hereby certify that on this .....9......day of ...January......,2001....
before me personally appeared ...Horacio Raul Crespo.........
...................................................................,
be the individual (s) described in, whose name (s) is/are subscribed to or
who provided ...my notary FD............................,
as evidence of identity and who executed the annexed instrument, who duly
acknowledged to me that he/she/they executed the same freely and
voluntarily for the uses and purposes therein mentioned.

In witness whereof I have hereunto set my hand and
official seal the day and year last above written.

(Seal)

*John F. Larrea*
Vice Consul

*of the United States of America*

Aldort 140



**IN THE UNITED STATED DISTRICT COURT**
**FOR THE NOTHER DISTRIC OF ILLINOIS**

| | |
|---|---|
| INTERNATIONAL INSURANCE COMPANY, ) | Civil Action No. 00C2189 |
| For itself and as Successor In Interest to ) | |
| International Surplus Lines Insurance Company, ) | Hon. Joan B. Gottschall |
| The North River Insurance Company, United ) | Magistrate Judge Edward A. Bobrick |
| States Fire Insurance Company and/or Westchester ) | |
| Fire Insurance Company, Industrial Indemnity ) | |
| Company, United States Fire Insurance Company ) | |
| of Canada, Toronto, Ontario and Herald Insurance ) | |
| Company of Canada, Toronto, Ontario, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| Caja Nacional De Ahorro Y Seguro, ) | |
| ) | |
| Defendant. ) | |

**Affidavit**

Buenos Aires
Republica Argentina

I Horacio R. Crespo, Attorney at Law and Legal Counsel for INSTITUTO NACIONAL DE REASEGUROS ("INDER"), itself the appointed administrator of LA CAJA NATIONAL DE AHORRO Y SEGURO ("LA CAJA"), state and declare under oath:

1.  As Attorney for INDER, I am fully familiar with the facts and circumstances surrounding the service of process on the above legal action.

2.  Both Inder and La Caja are wholly owned agencies of the Government of Argentina. La Caja, was liquidated by a law of 1992, and regulation of 1994. In 1998 the reinsurance business administration of La Caja was transferred to INDER.

3.  La Caja and Inder have 2 separate addresses. La Caja has offices at A. Alsina No. 470 P 4, Buenos Aires, Argentina, and Inder maintains offices at Ave. Pte. Gral. Roca #694 Buenos Aires, Argentina.

4.  Over the period of the ongoing administration, some files have been transferred to Inder (which is itself also in process of Liquidation), and some files have remained at La Caja's premises from where they are gradually transferred to Inder as the need or opportunity arises. For that reason sometimes we have had difficulties in processing legal papers received from overseas, particularly when we receive documents in foreign languages, which require translations before they are properly evaluated.

Aldort 141

5. In this particular case, because of the different language of the documents received, and the difficulty in locating and reviewing the records of La Caja, we could not respond in due time to the instant summons and complaint. As soon as we could, we appointed an attorney in the U.S. to represent us.

6. We therefore, submit this affidavit in support of our motion for permission to serve a late answer and to have the opportunity to defend our interests, and to avoid a default judgment against our company.

Dr. Horacio R. Crespo

Exhibit 8

Case: 1:00-cv-06703 Document #: 10 Filed: 03/22/01 Page 1 of 8 PageID #:10

Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6703 | **DATE** | 3/22/2001 |
| **CASE TITLE** | INTL INSURANCE CO. vs. CAJA NACIONAL DE AHORRO Y SEGURO | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order.  Affirmative defense 26 is not
    stricken.

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | MAR 2 3 2001 | |
| ✓ | Docketing to mail notices. | | | date docketed | |
| ✓ | Mail AO 450 form. | | | 15 | |
| | Copy to judge/magistrate judge. | | | docketing deputy initials | |
| | | courtroom deputy's initials | | date mailed notice | |
| | LG | | | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

Aldort 144

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DOCKETED
MAR 2 3 2001

| | |
|---|---|
| INTERNATIONAL INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 00 C 6703 |
| ) | |
| CAJA NACIONAL DE AHORRO Y SEGURO, ) | Judge John W. Darrah |
| ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

In October, 2000, an arbitration panel awarded plaintiff, International Insurance Company, an award of $4,702,428.12 against defendant, Caja Nacional De Ahorro Y Seguro. Later that month, plaintiff filed a petition for confirmation of the arbitration award, and defendant subsequently filed an answer to such petition. Before the Court is plaintiff's motion for an order requiring defendant to post a pre-judgment security and to strike defendant's answer and affirmative defenses.

Plaintiff is a domestic insurance company that purchased reinsurance from defendant, an alien insurance and reinsurance company headquartered in Argentina. Pursuant to two reinsurance contracts between the parties, plaintiff initiated an arbitration due to defendant's failure to pay plaintiff over $2 million in indemnity obligations. Defendant failed to appear at the arbitration, and the arbitration panel entered a final default award against defendant.

Plaintiff argues that defendant's answer to the petition for confirmation of the arbitration award should be stricken because defendant failed to post a security prior to filing the answer as required by Illinois Insurance Code. Defendant argues that, as an instrumentality of a foreign

16

Aldort 145

government, it is not required to post a security pursuant to the Foreign Sovereign Immunities Act,

28 U.S.C. 1600 *et seq.* (FSIA).

Under Illinois insurance law, a foreign or alien company is required to file a pre-judgment

security with the court that is sufficient to secure the payment of any final judgment that may be

rendered prior to filing any pleadings with the court.  215 ILCS 5/123(5).  However, the FSIA

provides foreign states immunity from filing pre-judgment security.  *See* 28 U.S.C. § 1609; *Stephens*

*v. National Distillers & Chemical Corp.*, 69 F.3d 1226, 1230 (2nd Cir. 1995) (*Stephens*).  Section

1609 of the FSIA provides that:

> Subject to existing international agreements to which the United
> States is a party at the time of enactment of this Act the property of
> the United States or a foreign state shall be immune from attachment
> arrest and execution except as provided in sections 1610 and 1611 of
> the chapter.

Defendant, relying on *Stephens*, alleges that as an instrumentality of a foreign state, it is not required

to post a security under the Illinois Insurance Code because the posting of such security is considered

a pre-judgment attachment.  *See Stephens*, 69 F.3d at 1229 (finding the posting of a security bond

under New York insurance law constituted a pre-judgment attachment for purposes of the FSIA).

Section 1609 of the FSIA specifically states that the provision is "subject to existing

international agreements."  In September, 1970, the United States acceded to The Convention on the

Recognition and Enforcement of Foreign Arbitration Awards, commonly known as the New York

Convention, and incorporated into law by 9 U.S.C. § 201 *et seq.*  *See Publicis Communication v.*

*True North Communications Inc.*, 206 F.3d 725, 728 (7th Cir. 2000).  The FSIA was enacted in

October of 1976; therefore, the New York Convention was an existing international agreement at

the time the FSIA was enacted.  Both the United States and Argentina are signatories of the New

2

Aldort 146

Case: 1.00-cv-06703 Document #: 10 Filed: 03/22/01 Page 4 of 8 PageID #:13

York Convention.

The purpose of the New York Convention was to effectuate arbitration proceedings and their enforcement in international contracts and to unify the standards by which arbitration agreements are observed and arbitration awards are enforced. *See Scherk v. Albert-Culver Co.*, 417 U.S. 506, 520 (1974). Article VI of the New York Convention allows this Court to order a party denying enforcement of an award to "give suitable security" if an application for the setting aside or suspension of the award has been made. *See* 9 U.S.C. § 201; *Skandia America Reinsurance Corp. v. Caja Nacional De Ahorro Y Segero*, 1997 WL 278054, No. 96 C 2301 (S.D.N.Y. May 23, 1997) (*Skandia*). Importantly, *Stephens*, relied upon by the defendant as discussed above, did not involve an arbitration award; and the *Stephens* court specifically stated that there was no relevant treaty that predated the FSIA or that would preempt the provision of the FSIA. *Stephens*, 69 F.3d at 1229.

Here, plaintiff filed a petition for the confirmation of the arbitration award, and defendant filed an answer indicating that it lacked knowledge and information to form a belief as to any of the allegations made against it. Defendant also filed 26 affirmative defenses, alleging, in part, that coverage is barred for numerous reasons and that plaintiff's claims are barred by several doctrines, *i.e.*, waiver, estoppel, and unclean hands. Defendant has also failed to pay the arbitration award. Therefore, the Court finds that defendant has in effect moved to suspend or set aside the award, and Article VI of the New York Convention applies to the present case. *See Skandia*, 1997 WL 278054 at * 5 (finding respondents in effect moved to suspend the award based on respondent's failure to pay the award and responsive pleadings).

Accordingly, pursuant to the New York Convention, defendant is not immune from the posting requirement of the Illinois Insurance Law. Defendant's answer and affirmative defenses are

3

stricken. Plaintiff is ordered to post adequate security in an amount no less than $4,702,428.12 before filing a new answer and any affirmative defenses pursuant to the Illinois Insurance Code.

Plaintiff also seeks to strike all of defendant's affirmative defenses because they do not constitute grounds to vacate the arbitration award under the applicable statutes and/or treaties. While the security issue addressed above is dispositive, in the interest of judicial economy, the issue regarding defendant's affirmative defenses will be addressed to aid defendant in the event security and a valid answer are filed.

Federal Rules of Civil Procedure 8(c) requires a party to set forth affirmative defenses in a responsive pleading. Fed. R. Civ. P. 8(c). Under Rule 12(f), "the court may order stricken from any pleading any insufficient defense." Fed. R. Civ. P. 12(f). Generally, motions to strike affirmative defenses are disfavored because they potentially serve only to cause delay. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (*Heller*). Such motions are generally granted only when the affirmative defenses are "patently defective and could not succeed under any circumstances." *Mobey v. Kelly Kean Nissan, Inc.*, 864 F.Supp. 726, 732 (N.D.Ill. 1993).

Affirmative defenses, as pleadings, are subject to the pleading requirements of the Federal Rules of Civil Procedure. *See Heller*, 883 F.2d at 1294. Therefore, affirmative defenses must set forth a "short and plain statement." Fed. R. Civ. Proc. 8(a). The allegation must include either direct or inferential allegations respecting all material elements of the defense asserted. Narrated facts with bare legal conclusions are not sufficient. *Renalds v. S.R.G. Restaurant Group*, 119 F.Supp.2d 800, 802 (N.D.Ill. 2000) (*Renalds*).

In the present case, plaintiff seeks enforcement of an arbitration award. Therefore, defendant's affirmative defenses must be related to the modification or vacation of an arbitration

4

Aldort 148

award.  Under the New York Convention, an award may be vacated if: (1) the parties to the

agreement were under some incapacity or the agreement was not valid under the applicable law; (2)

the party to whom the award is invoked was not given proper notice of the arbitration proceedings;

(3) the award deals with a difference not contemplated by the parties or not falling within the terms

of the arbitration; (4) the arbitration panel was not in accordance with the agreement or applicable

laws; (5) the award is not yet binding on the parties or has been set aside; (6) the subject matter of

the difference is not capable of settlement by arbitration under the applicable law; or (7) the

recognition or enforcement of the award would be contrary to public policy of that country. 9 U.S.C.

§ 201, art. 5. The grounds for vacating an arbitration award under the Inter-American Convention

on International Commercial Arbitration are essentially the same as those stated above for the New

York Convention. *See* 9 U.S.C. § 301, art. 5.

Pursuant to the Federal Arbitration Act (FAA), an arbitration award may be vacated if: (1)

the award was procured by corruption, fraud, or undue means; (2) there was evidence of partiality

or corruption in the arbitrators; (3) the arbitrators were guilty of certain types of misconduct; or (4)

the arbitrators exceeded their powers. 9 U.S.C. § 10 (a)(1)-(5).  An arbitration award may be

modified under the FAA if: (1) there is evidence of material miscalculation or mistake in the

description of any person, thing, or property referred to in the award; (2) or the arbitrators awarded

on a subject not before them; or (3) the award is imperfect in matter of form not affecting the merits

of the controversy. 9 U.S.C. § 11 (a)-(c).

I. Affirmative Defense No. 1.

Defendant's first affirmative defense states, "The petition fails to state facts sufficient to

allege claims against Caja upon which relief may be granted."  This first defense is a recitation of

Aldort 149

the standard for a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6). The defense identifies the legal theory without indicating how it is connected to the present case. While the Federal Rules of Civil Procedure allow liberal pleadings, they do not allow a claimant to merely recite the standard for a motion to dismiss under Rule 12(b)(6). *See Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 353 (7th Cir. 1982); *Renalds*, 119 F.Supp.2d at 803-04. Accordingly, defendant's first affirmative defense is stricken.

II. Affirmative Defenses Nos. 2-7 and 10-19

Defendant's affirmative defenses numbered 2-7 and 10-19 can be categorized as defenses related to coverage under the policies. As written, and interpreted broadly, these defenses do not fall within any of the categories for the vacation or modification of an award. Defendant cannot make arguments related to the coverage of the policies. The affirmative defenses to the applicable coverage should have been made at the time of arbitration, not during proceedings for the enforcement of the arbitration award. Accordingly, affirmative defenses 2-7 and 10-19 are stricken.

III. Affirmative Defenses Nos. 8 and 9

Defendant's affirmative defenses numbered 8 and 9 argue that liability is barred for public policy reasons. These grounds are included in the applicable statutes and are not stricken. *See* 9 U.S.C. § 201, art. 5 (2)(b); 9 U.S.C. § 301, art. 5 (2)(b).

IV. Affirmative Defenses Nos. 20-25

Defendant's affirmative defenses numbered 20-25 aver that plaintiff's claims are barred by the statute of limitations, laches, waiver, estoppel, and unclean hands. While these defenses may not fall within grounds for vacating the arbitration, they may be defenses to plaintiff's suit for enforcement. Accordingly, affirmative defenses 20-25 are not stricken.

6

Aldort 150

V. Affirmative Defense No. 26

Defendant's 26th affirmative defense reserves the right to amend its answer to assert any additional affirmative defenses as may become apparent through discovery. This is a proper affirmative defense under Rule 15(a), which allows the courts to grant leave to amend pleadings. This Rule applies to answers and affirmative defenses as well as complaints. *See Renalds*, 119 F.Supp.2d at 803. Accordingly, affirmative defense 26 is not stricken.

Dated:

JOHN W. DARRAH
United States District Judge

7

Aldort 151

Case: 1:00-cv-06703 Document #: 11 Filed: 03/22/01 Page 1 of 1 PageID #:18

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

DOCKETED

MAR 2 3 2001

INTERNATIONAL INSURANCE CO.

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 00 C 6703

CAJA NACIONAL DE AHORRO Y SEGURO

☐   Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

☐   Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Defendant's 26th affirmative defense reserves the right to amend its answer to assert any additional affirmative defenses as may become apparent through discovery. This is a proper affirmative defense under Rule 15(a), which allows the courts to grant leave to amend pleadings. This Rule applies to answers and affirmative defenses as well as complaints. See Renalds, 110 F.Supp.2d at 803. Accordingly, affirmative defense 26 is not stricken.

Michael W. Dobbins, Clerk of Court

Date: 3/22/2001

Linda Garth, Deputy Clerk

Aldort 152

# Exhibit 9

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6703 | **DATE** | 3/26/2001 |
| **CASE TITLE** | INTERNATIONAL INS. CO. vs. CAJA NACIONAL DE AHORRO Y SEGURO | | |

**MOTION:**   [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]



**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter amended memorandum opinion and order. Defendant's 26th affirmative defense reserves the right to amend its answer to assert any additional affirmative defenses as may become apparent through discovery. This is a proper affirmative defense under Rule 15(a), which allows the courts to grant leave to amend pleadings. This Rule applies to answers and affirmative defenses as well as complaints. See Renalds, 119 F.Supp.2d at 803. Accordingly, affirmative defense 26 is not stricken.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | APR 0 2 2001 | | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| LG | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

Aldort 154

Case: 1:00-cv-06703 Document #: 12 Filed: 03/26/01 Page 2 of 9 PageID #:20

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

INTERNATIONAL INSURANCE COMPANY, )
)
    Plaintiff, )
)
    v. )
)   No. 00 C 6703
CAJA NACIONAL DE AHORRO Y SEGURO, )
)   Judge John W. Darrah
)
    Defendant. )

## AMENDED MEMORANDUM OPINION AND ORDER

In October, 2000, an arbitration panel awarded plaintiff, International Insurance Company, an award of $4,702,428.12 against defendant, Caja Nacional De Ahorro Y Seguro. Later that month, plaintiff filed a petition for confirmation of the arbitration award, and defendant subsequently filed an answer to such petition. Before the Court is plaintiff's motion for an order requiring defendant to post a pre-judgment security and to strike defendant's answer and affirmative defenses.

Plaintiff is a domestic insurance company that purchased reinsurance from defendant, an alien insurance and reinsurance company headquartered in Argentina. Pursuant to two reinsurance contracts between the parties, plaintiff initiated an arbitration due to defendant's failure to pay plaintiff over $2 million in indemnity obligations. Defendant failed to appear at the arbitration, and the arbitration panel entered a final default award against defendant.

Plaintiff argues that defendant's answer to the petition for confirmation of the arbitration award should be stricken because defendant failed to post a security prior to filing the answer as required by Illinois Insurance Code. Defendant argues that, as an instrumentality of a foreign

Aldort 155

government, it is not required to post a security pursuant to the Foreign Sovereign Immunities Act,

28 U.S.C. 1600 *et seq.* (FSIA).

Under Illinois insurance law, a foreign or alien company is required to file a pre-judgment

security with the court that is sufficient to secure the payment of any final judgment that may be

rendered prior to filing any pleadings with the court. 215 ILCS 5/123(5). However, the FSIA

provides foreign states immunity from filing pre-judgment security. *See* 28 U.S.C. § 1609; *Stephens*

*v. National Distillers & Chemical Corp.*, 69 F.3d 1226, 1230 (2nd Cir. 1995) (*Stephens*). Section

1609 of the FSIA provides that:

> Subject to existing international agreements to which the United
> States is a party at the time of enactment of this Act the property of
> the United States or a foreign state shall be immune from attachment
> arrest and execution except as provided in sections 1610 and 1611 of
> the chapter.

Defendant, relying on *Stephens*, alleges that as an instrumentality of a foreign state, it is not required

to post a security under the Illinois Insurance Code because the posting of such security is considered

a pre-judgment attachment. *See Stephens*, 69 F.3d at 1229 (finding the posting of a security bond

under New York insurance law constituted a pre-judgment attachment for purposes of the FSIA).

Section 1609 of the FSIA specifically states that the provision is "subject to existing

international agreements." In September, 1970, the United States acceded to The Convention on the

Recognition and Enforcement of Foreign Arbitration Awards, commonly known as the New York

Convention, and incorporated into law by 9 U.S.C. § 201 *et seq. See Publicis Communication v.*

*True North Communications Inc.*, 206 F.3d 725, 728 (7th Cir. 2000). The FSIA was enacted in

October of 1976; therefore, the New York Convention was an existing international agreement at

the time the FSIA was enacted. Both the United States and Argentina are signatories of the New

2

Aldort 156

York Convention.

The purpose of the New York Convention was to effectuate arbitration proceedings and their enforcement in international contracts and to unify the standards by which arbitration agreements are observed and arbitration awards are enforced. *See Scherk v. Albert-Culver Co.*, 417 U.S. 506, 520 (1974). Article VI of the New York Convention allows this Court to order a party denying enforcement of an award to "give suitable security" if an application for the setting aside or suspension of the award has been made. *See* 9 U.S.C. § 201; *Skandia America Reinsurance Corp. v. Caja Nacional De Ahorro Y Segero*, 1997 WL 278054, No. 96 C 2301 (S.D.N.Y. May 23, 1997) (*Skandia*). Importantly, *Stephens*, relied upon by the defendant as discussed above, did not involve an arbitration award; and the *Stephens* court specifically stated that there was no relevant treaty that predated the FSIA or that would preempt the provision of the FSIA. *Stephens*, 69 F.3d at 1229.

Here, plaintiff filed a petition for the confirmation of the arbitration award, and defendant filed an answer indicating that it lacked knowledge and information to form a belief as to any of the allegations made against it. Defendant also filed 26 affirmative defenses, alleging, in part, that coverage is barred for numerous reasons and that plaintiff's claims are barred by several doctrines, *i.e.*, waiver, estoppel, and unclean hands. Defendant has also failed to pay the arbitration award. Therefore, the Court finds that defendant has in effect moved to suspend or set aside the award, and Article VI of the New York Convention applies to the present case. *See Skandia*, 1997 WL 278054 at * 5 (finding respondents in effect moved to suspend the award based on respondent's failure to pay the award and responsive pleadings).

Accordingly, pursuant to the New York Convention, defendant is not immune from the posting requirement of the Illinois Insurance Law. Defendant's answer and affirmative defenses are

3

Aldort 157

stricken. Defendant is ordered to post adequate security in an amount no less than $4,702,428.12 before filing a new answer and any affirmative defenses pursuant to the Illinois Insurance Code.

Plaintiff also seeks to strike all of defendant's affirmative defenses because they do not constitute grounds to vacate the arbitration award under the applicable statutes and/or treaties. While the security issue addressed above is dispositive, in the interest of judicial economy, the issue regarding defendant's affirmative defenses will be addressed to aid defendant in the event security and a valid answer are filed.

Federal Rules of Civil Procedure 8(c) requires a party to set forth affirmative defenses in a responsive pleading. Fed. R. Civ. P. 8(c). Under Rule 12(f), "the court may order stricken from any pleading any insufficient defense." Fed. R. Civ. P. 12(f). Generally, motions to strike affirmative defenses are disfavored because they potentially serve only to cause delay. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (*Heller*). Such motions are generally granted only when the affirmative defenses are "patently defective and could not succeed under any circumstances." *Mobey v. Kelly Kean Nissan, Inc.*, 864 F.Supp. 726, 732 (N.D.Ill. 1993).

Affirmative defenses, as pleadings, are subject to the pleading requirements of the Federal Rules of Civil Procedure. *See Heller*, 883 F.2d at 1294. Therefore, affirmative defenses must set forth a "short and plain statement." Fed. R. Civ. Proc. 8(a). The allegation must include either direct or inferential allegations respecting all material elements of the defense asserted. Narrated facts with bare legal conclusions are not sufficient. *Renalds v. S.R.G. Restaurant Group*, 119 F.Supp.2d 800, 802 (N.D.Ill. 2000) (*Renalds*).

In the present case, plaintiff seeks enforcement of an arbitration award. Therefore, defendant's affirmative defenses must be related to the modification or vacation of an arbitration

4

Aldort 158

award. Under the New York Convention, an award may be vacated if: (1) the parties to the

agreement were under some incapacity or the agreement was not valid under the applicable law; (2)

the party to whom the award is invoked was not given proper notice of the arbitration proceedings;

(3) the award deals with a difference not contemplated by the parties or not falling within the terms

of the arbitration; (4) the arbitration panel was not in accordance with the agreement or applicable

laws; (5) the award is not yet binding on the parties or has been set aside; (6) the subject matter of

the difference is not capable of settlement by arbitration under the applicable law; or (7) the

recognition or enforcement of the award would be contrary to public policy of that country. 9 U.S.C.

§ 201, art. 5. The grounds for vacating an arbitration award under the Inter-American Convention

on International Commercial Arbitration are essentially the same as those stated above for the New

York Convention. *See* 9 U.S.C. § 301, art. 5.

Pursuant to the Federal Arbitration Act (FAA), an arbitration award may be vacated if: (1)

the award was procured by corruption, fraud, or undue means; (2) there was evidence of partiality

or corruption in the arbitrators; (3) the arbitrators were guilty of certain types of misconduct; or (4)

the arbitrators exceeded their powers. 9 U.S.C. § 10 (a)(1)-(5). An arbitration award may be

modified under the FAA if: (1) there is evidence of material miscalculation or mistake in the

description of any person, thing, or property referred to in the award; (2) or the arbitrators awarded

on a subject not before them; or (3) the award is imperfect in matter of form not affecting the merits

of the controversy. 9 U.S.C. § 11 (a)-(c).

I. Affirmative Defense No. 1.

Defendant's first affirmative defense states, "The petition fails to state facts sufficient to

allege claims against Caja upon which relief may be granted." This first defense is a recitation of

Aldort 159

the standard for a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6). The defense identifies the legal theory without indicating how it is connected to the present case. While the Federal Rules of Civil Procedure allow liberal pleadings, they do not allow a claimant to merely recite the standard for a motion to dismiss under Rule 12(b)(6). *See Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 353 (7th Cir. 1982); *Renalds*, 119 F.Supp.2d at 803-04. Accordingly, defendant's first affirmative defense is stricken.

II. Affirmative Defenses Nos. 2-7 and 10-19

Defendant's affirmative defenses numbered 2-7 and 10-19 can be categorized as defenses related to coverage under the policies. As written, and interpreted broadly, these defenses do not fall within any of the categories for the vacation or modification of an award. Defendant cannot make arguments related to the coverage of the policies. The affirmative defenses to the applicable coverage should have been made at the time of arbitration, not during proceedings for the enforcement of the arbitration award. Accordingly, affirmative defenses 2-7 and 10-19 are stricken.

III. Affirmative Defenses Nos. 8 and 9

Defendant's affirmative defenses numbered 8 and 9 argue that liability is barred for public policy reasons. These grounds are included in the applicable statutes and are not stricken. *See* 9 U.S.C. § 201, art. 5 (2)(b); 9 U.S.C. § 301, art. 5 (2)(b).

IV. Affirmative Defenses Nos. 20-25

Defendant's affirmative defenses numbered 20-25 aver that plaintiff's claims are barred by the statute of limitations, laches, waiver, estoppel, and unclean hands. While these defenses may not fall within grounds for vacating the arbitration, they may be defenses to plaintiff's suit for enforcement. Accordingly, affirmative defenses 20-25 are not stricken.

6

V. Affirmative Defense No. 26

Defendant's 26th affirmative defense reserves the right to amend its answer to assert any additional affirmative defenses as may become apparent through discovery. This is a proper affirmative defense under Rule 15(a), which allows the courts to grant leave to amend pleadings. This Rule applies to answers and affirmative defenses as well as complaints. *See Renalds*, 119 F.Supp.2d at 803. Accordingly, affirmative defense 26 is not stricken.

Dated: March 26, 2001

J. HR. W. DARRAH
United States District Judge

7



**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS
219 SOUTH DEARBORN STREET
CHICAGO, ILLINOIS 60604

CHAMBERS OF
JOHN W. DARRAH
JUDGE

(312) 435-5619

March 28, 2001

James I. Rubin                                 Richard M. Clark
Butler, Rubin, Saltarelli & Boyd              McKenna, Storer, Rowe, White & Farrug
Three First National Plaza                    200 North LaSalle Street
70 West Madison Street                        Suite 3000
Chicago, IL 60602                             Chicago, IL 60601

Jorge W. Moreira
130 West 142nd Street
Suite 501
New York, NY 10036

Re:     **International Insurance Company v. Caja Nacional De Ahorro Y Seguro**
        **Case No.  00 C 6703**

Dear Counsel:

Enclosed please find a copy of an Amended Memorandum Opinion and Order which has been
entered by Judge John W. Darrah on March 26, 2001 in the above-captioned matter.

Please be advised that a scrivener's error has been corrected in the first line of Page 4 in that the
word "Plaintiff" has been changed to "Defendant". The correct wording is "Defendant is ordered
to post adequate security . . ."

Very truly yours,

Kathryn E. Bianchetti
Secretary to Judge John W. Darrah

Enclosure



**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS
219 SOUTH DEARBORN STREET
CHICAGO, ILLINOIS 60604

CHAMBERS OF
JOHN W. DARRAH
JUDGE

(312) 435-5619

March 28, 2001

James I. Rubin                              Richard M. Clark
Butler, Rubin, Saltarelli & Boyd           McKenna, Storer, Rowe, White & Farrug
Three First National Plaza                 200 North LaSalle Street
70 West Madison Street                     Suite 3000
Chicago, IL 60602                          Chicago, IL 60601

Jorge W. Moreira
130 West 142nd Street
Suite 501
New York, NY 10036

Re:   <u>International Insurance Company v. Caja Nacional De Ahorro Y Seguro</u>
      Case No.  00 C 6703

Dear Counsel:

Enclosed please find a copy of an Amended Memorandum Opinion and Order which has been
entered by Judge John W. Darrah on March 26, 2001 in the above-captioned matter.

Please be advised that a scrivener's error has been corrected in the first line of Page 4 in that the
word "Plaintiff" has been changed to "Defendant". The correct wording is "Defendant is ordered
to post adequate security . . ."

Very truly yours,

Kathryn E. Bianchetti
Secretary to Judge John W. Darrah

Enclosure

**Exhibit 3**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

INTERNATIONAL INSURANCE COMPANY,       )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )
                                       )   No. 00 C 6703
CAJA NACIONAL DE AHORRO Y SEGURO,      )
                                       )   Judge John W. Darrah
                                       )
            Defendant.                 )

AMENDED MEMORANDUM OPINION AND ORDER

In October, 2000, an arbitration panel awarded plaintiff, International Insurance Company, an award of $4,702,428.12 against defendant, Caja Nacional De Ahorro Y Seguro. Later that month, plaintiff filed a petition for confirmation of the arbitration award, and defendant subsequently filed an answer to such petition. Before the Court is plaintiff's motion for an order requiring defendant to post a pre-judgment security and to strike defendant's answer and affirmative defenses.

Plaintiff is a domestic insurance company that purchased reinsurance from defendant, an alien insurance and reinsurance company headquartered in Argentina. Pursuant to two reinsurance contracts between the parties, plaintiff initiated an arbitration due to defendant's failure to pay plaintiff over $2 million in indemnity obligations. Defendant failed to appear at the arbitration, and the arbitration panel entered a final default award against defendant.

Plaintiff argues that defendant's answer to the petition for confirmation of the arbitration award should be stricken because defendant failed to post a security prior to filing the answer as required by Illinois Insurance Code. Defendant argues that, as an instrumentality of a foreign

Aldort 164

government, it is not required to post a security pursuant to the Foreign Sovereign Immunities Act,

28 U.S.C. 1600 *et seq.* (FSIA).

Under Illinois insurance law, a foreign or alien company is required to file a pre-judgment

security with the court that is sufficient to secure the payment of any final judgment that may be

rendered prior to filing any pleadings with the court. 215 ILCS 5/123(5). However, the FSIA

provides foreign states immunity from filing pre-judgment security. *See* 28 U.S.C. § 1609; *Stephens*

*v. National Distillers & Chemical Corp.*, 69 F.3d 1226, 1230 (2nd Cir. 1995) (*Stephens*). Section

1609 of the FSIA provides that:

> Subject to existing international agreements to which the United
> States is a party at the time of enactment of this Act the property of
> the United States or a foreign state shall be immune from attachment
> arrest and execution except as provided in sections 1610 and 1611 of
> the chapter.

Defendant, relying on *Stephens*, alleges that as an instrumentality of a foreign state, it is not required

to post a security under the Illinois Insurance Code because the posting of such security is considered

a pre-judgment attachment. *See Stephens*, 69 F.3d at 1229 (finding the posting of a security bond

under New York insurance law constituted a pre-judgment attachment for purposes of the FSIA).

Section 1609 of the FSIA specifically states that the provision is "subject to existing

international agreements." In September, 1970, the United States acceded to The Convention on the

Recognition and Enforcement of Foreign Arbitration Awards, commonly known as the New York

Convention, and incorporated into law by 9 U.S.C. § 201 *et seq. See Publicis Communication v.*

*True North Communications Inc.*, 206 F.3d 725, 728 (7th Cir. 2000). The FSIA was enacted in

October of 1976; therefore, the New York Convention was an existing international agreement at

the time the FSIA was enacted. Both the United States and Argentina are signatories of the New

2

Aldort 165

York Convention.

The purpose of the New York Convention was to effectuate arbitration proceedings and their enforcement in international contracts and to unify the standards by which arbitration agreements are observed and arbitration awards are enforced. *See Scherk v. Albert-Culver Co.*, 417 U.S. 506, 520 (1974). Article VI of the New York Convention allows this Court to order a party denying enforcement of an award to "give suitable security" if an application for the setting aside or suspension of the award has been made. *See* 9 U.S.C. § 201; *Skandia America Reinsurance Corp. v. Caja Nacional De Ahorro Y Segero*, 1997 WL 278054, No. 96 C 2301 (S.D.N.Y. May 23, 1997) (*Skandia*). Importantly, *Stephens*, relied upon by the defendant as discussed above, did not involve an arbitration award; and the *Stephens* court specifically stated that there was no relevant treaty that predated the FSIA or that would preempt the provision of the FSIA. *Stephens*, 69 F.3d at 1229.

Here, plaintiff filed a petition for the confirmation of the arbitration award, and defendant filed an answer indicating that it lacked knowledge and information to form a belief as to any of the allegations made against it. Defendant also filed 26 affirmative defenses, alleging, in part, that coverage is barred for numerous reasons and that plaintiff's claims are barred by several doctrines, *i.e.*, waiver, estoppel, and unclean hands. Defendant has also failed to pay the arbitration award. Therefore, the Court finds that defendant has in effect moved to suspend or set aside the award, and Article VI of the New York Convention applies to the present case. *See Skandia*, 1997 WL 278054 at * 5 (finding respondents in effect moved to suspend the award based on respondent's failure to pay the award and responsive pleadings).

Accordingly, pursuant to the New York Convention, defendant is not immune from the posting requirement of the Illinois Insurance Law. Defendant's answer and affirmative defenses are

3

stricken. Defendant is ordered to post adequate security in an amount no less than $4,702,428.12 before filing a new answer and any affirmative defenses pursuant to the Illinois Insurance Code.

Plaintiff also seeks to strike all of defendant's affirmative defenses because they do not constitute grounds to vacate the arbitration award under the applicable statutes and/or treaties. While the security issue addressed above is dispositive, in the interest of judicial economy, the issue regarding defendant's affirmative defenses will be addressed to aid defendant in the event security and a valid answer are filed.

Federal Rules of Civil Procedure 8(c) requires a party to set forth affirmative defenses in a responsive pleading. Fed. R. Civ. P. 8(c). Under Rule 12(f), "the court may order stricken from any pleading any insufficient defense." Fed. R. Civ. P. 12(f). Generally, motions to strike affirmative defenses are disfavored because they potentially serve only to cause delay. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (*Heller*). Such motions are generally granted only when the affirmative defenses are "patently defective and could not succeed under any circumstances." *Mobey v. Kelly Kean Nissan, Inc.*, 864 F.Supp. 726, 732 (N.D.Ill. 1993).

Affirmative defenses, as pleadings, are subject to the pleading requirements of the Federal Rules of Civil Procedure. *See Heller*, 883 F.2d at 1294. Therefore, affirmative defenses must set forth a "short and plain statement." Fed. R. Civ. Proc. 8(a). The allegation must include either direct or inferential allegations respecting all material elements of the defense asserted. Narrated facts with bare legal conclusions are not sufficient. *Renalds v. S.R.G. Restaurant Group*, 119 F.Supp.2d 800, 802 (N.D.Ill. 2000) (*Renalds*).

In the present case, plaintiff seeks enforcement of an arbitration award. Therefore, defendant's affirmative defenses must be related to the modification or vacation of an arbitration

4

award.  Under the New York Convention, an award may be vacated if: (1) the parties to the

agreement were under some incapacity or the agreement was not valid under the applicable law; (2)

the party to whom the award is invoked was not given proper notice of the arbitration proceedings;

(3) the award deals with a difference not contemplated by the parties or not falling within the terms

of the arbitration; (4) the arbitration panel was not in accordance with the agreement or applicable

laws; (5) the award is not yet binding on the parties or has been set aside; (6) the subject matter of

the difference is not capable of settlement by arbitration under the applicable law; or (7) the

recognition or enforcement of the award would be contrary to public policy of that country.  9 U.S.C.

§ 201, art. 5.  The grounds for vacating an arbitration award under the Inter-American Convention

on International Commercial Arbitration are essentially the same as those stated above for the New

York Convention.  *See* 9 U.S.C. § 301, art. 5.

Pursuant to the Federal Arbitration Act (FAA), an arbitration award may be vacated if: (1)

the award was procured by corruption, fraud, or undue means; (2) there was evidence of partiality

or corruption in the arbitrators; (3) the arbitrators were guilty of certain types of misconduct; or (4)

the arbitrators exceeded their powers.  9 U.S.C. § 10 (a)(1)-(5).  An arbitration award may be

modified under the FAA if: (1) there is evidence of material miscalculation or mistake in the

description of any person, thing, or property referred to in the award; (2) or the arbitrators awarded

on a subject not before them; or (3) the award is imperfect in matter of form not affecting the merits

of the controversy.  9 U.S.C. § 11 (a)-(c).

I. Affirmative Defense No. 1.

Defendant's first affirmative defense states, "The petition fails to state facts sufficient to

allege claims against Caja upon which relief may be granted."  This first defense is a recitation of

Aldort 168

the standard for a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6). The defense identifies the legal theory without indicating how it is connected to the present case. While the Federal Rules of Civil Procedure allow liberal pleadings, they do not allow a claimant to merely recite the standard for a motion to dismiss under Rule 12(b)(6). *See Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 353 (7th Cir. 1982); *Renalds*, 119 F.Supp.2d at 803-04. Accordingly, defendant's first affirmative defense is stricken.

II. Affirmative Defenses Nos.2-7 and 10-19

Defendant's affirmative defenses numbered 2-7 and 10-19 can be categorized as defenses related to coverage under the policies. As written, and interpreted broadly, these defenses do not fall within any of the categories for the vacation or modification of an award. Defendant cannot make arguments related to the coverage of the policies. The affirmative defenses to the applicable coverage should have been made at the time of arbitration, not during proceedings for the enforcement of the arbitration award. Accordingly, affirmative defenses 2-7 and 10-19 are stricken.

III. Affirmative Defenses Nos. 8 and 9

Defendant's affirmative defenses numbered 8 and 9 argue that liability is barred for public policy reasons. These grounds are included in the applicable statutes and are not stricken. *See* 9 U.S.C. § 201, art. 5 (2)(b); 9 U.S.C. § 301, art. 5 (2)(b).

IV. Affirmative Defenses Nos. 20-25

Defendant's affirmative defenses numbered 20-25 aver that plaintiff's claims are barred by the statute of limitations, laches, waiver, estoppel, and unclean hands. While these defenses may not fall within grounds for vacating the arbitration, they may be defenses to plaintiff's suit for enforcement. Accordingly, affirmative defenses 20-25 are not stricken.

6

V. Affirmative Defense No. 26

Defendant's 26th affirmative defense reserves the right to amend its answer to assert any additional affirmative defenses as may become apparent through discovery. This is a proper affirmative defense under Rule 15(a), which allows the courts to grant leave to amend pleadings. This Rule applies to answers and affirmative defenses as well as complaints. *See Renalds*, 119 F.Supp.2d at 803. Accordingly, affirmative defense 26 is not stricken.

Dated: *March 26, 2001*

JOHN W. DARRAH
United States District Judge

7

# Exhibit 10

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6703 | **DATE** | 4/18/2001 |
| **CASE TITLE** | Intl Insurance Co. Vs. Caja Naacional De Ahorro Y Seguro | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    Plaintiff's motion to correct judgment is granted. Defendant's answer and affirmative defenses are stricken. Defendant is ordered to post adequate security in an amount no less than $4,702,428.12 before filing a new answer and any affirmative defenses. The court's minute dated March 22, 2001 is stricken.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | APR 19 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 15 |
| | Mail A 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

Aldort 172

# Exhibit 11

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

INTERNATIONAL INSURANCE COMPANY )
for itself and as Successor In Interest to )
International Surplus Lines Insurance Company, )
The North river Insurance Company, United )
States Fire Insurance Company and/or Westchester )
Fire Insurance Company, Industrial Indemnity )        Civil Action No. 00 C 6703
Company, United States Fire Insurance Company )
of Canada, Toronto, Ontario, and Herald Insurance )   Judge John W. Darrah
Company of Canada, Toronto, Ontario, )
                                          )
                                          )           Magistrate Judge Martin Ashman
                        Plaintiff, )
                                          )
        v.                                )
                                          )
CAJA NACIONAL DE AHORRO Y SEGURO,         )
                                          )
                        Defendant.        )

## NOTICE OF MOTION AND CERTIFICATE OF SERVICE

To:   **Via U.S. Mail**                    **Via U.S. Mail**
      Jorge W. Moreira                     Richard M. Clark
      The Moreira Law Firm, P.C.           Richard J. Rettberg
      130 W. 42nd Street, Suite 501        McKenna, Storer, Rowe, White & Farrug
      New York, NY 10036                   200 N. LaSalle Street, Suite 3000
                                           Chicago, IL 60601

        PLEASE TAKE NOTICE that on Monday, the 23rd day of April, 2001, at 9:30 a.m., we
shall appear before the Honorable John W. Darrah of the United States District Court for the
Northern District of Illinois and shall then and there present **Plaintiff's Motion For Judgment
By Default And For Confirmation Of Arbitration Award** which we filed today, copies of
which are hereby served upon you.

        The undersigned hereby certifies that this Notice and the aforementioned documents were
served on April 12, 2001, by U.S. Mail.

                                            *R. Douglass Bond*
                                            _____
                                            One of the Attorneys for Plaintiff

R. Douglass Bond
Randi L. Ellias
Butler, Rubin, Saltarelli & Boyd
Three First National Plaza
70 West Madison Street, Suite 1800
Chicago, Illinois 60602
(312) 444-9660
Firm I.D.: 01765

Aldort 174

RECEIVED

APR 12 2001

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

INTERNATIONAL INSURANCE COMPANY, )
for itself and as Successor In Interest to )
International Surplus Lines Insurance Company, )
The North River Insurance Company, United )
States Fire Insurance Company and/or Westchester )
Fire Insurance Company, Industrial Indemnity )
Company, United States Fire Insurance Company )
of Canada, Toronto, Ontario, and Herald Insurance )
Company of Canada, Toronto, Ontario, )
                                                )
                              Plaintiff,        )
           v.                                   )
                                                )
CAJA NACIONAL DE AHORRO Y SEGURO,               )
                                                )
                              Defendant.        )

Civil Action No. 00 C 6703

Judge John W. Darrah

Magistrate Judge Martin Ashman

## PLAINTIFF'S MOTION FOR JUDGMENT BY DEFAULT
## AND FOR CONFIRMATION OF ARBITRATION AWARD

Pursuant to Fed. R. Civ. P. 55, Plaintiff International Insurance Company ("IIC")

respectfully moves this Court to enter a judgment by default against Defendant Caja Nacional de

Ahorro y Seguro ("Caja"), and to confirm the arbitration award entered against Caja by default

on October 17, 2000.  In support of its motion, IIC states as follows:

1.    IIC is a domestic insurance company that purchased reinsurance from Caja, an

alien insurance and reinsurance company domiciled in Argentina.  (See Petition for Confirmation

of Arbitration Panel's Award, attached hereto as Exhibit 1.)  Pursuant to the terms of two

reinsurance contracts entered into between the parties, IIC initiated an arbitration for Caja's

failure to pay IIC over two million dollars in indemnity obligations.  (Exh. 1, ¶10)

2.    Despite being properly served with process, and notified of every step in the

arbitration proceedings, Caja failed to appear or participate in the proceedings in any way.  (Exh.

Aldort 175

1, ¶¶10-16)

3.      On October 17, 2000, the arbitration panel entered a default award ("Arbitration Award") against Caja in the amount of $2,009,061.72 in overdue balances, $1,310,559.90 in interest; $15,000 in arbitration costs and arbitrator costs; and $46,890.50 in attorneys' fees incurred by IIC in this matter.  In addition, the arbitration panel ordered Caja to pay a cash advance in the amount of $1,320,916 for its share of case reserves under the reinsurance contracts at issue in the arbitration.  Attached to the Petition to Confirm as Exhibit A, the Arbitration Award requires Caja to pay IIC a total amount of $4,702,428.12.

4.      Caja has not paid anything to IIC pursuant to the Arbitration Award.

5.      IIC filed its petition for confirmation of the Arbitration Award on October 27, 2000.  The Petition was filed pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.*, and the Inter-American Convention on International Commercial Arbitration and its implementing legislation, 9 U.S.C. § 301, *et. Seq.*  (Exh. 1, ¶1)

6.      On November 24, 2000, Caja filed an appearance and an answer.  Caja did not post security sufficient to secure the potential final judgment against it, as required by the Illinois Insurance Code.  215 ILCS 125(3).

7.      On December 18, 2000, IIC filed a motion to strike Caja's answer and for an order requiring Caja to post pre-judgment security pursuant to 215 ILCS 125(3).  In addition, IIC's motion to strike requested this Court to strike Caja's affirmative defenses for failure to assert proper grounds for vacatur of an arbitration award pursuant to the Federal Arbitration Act, the Convention on the Recognition and Enforcement of Arbitral Awards (the "New York Convention"), or the Inter-American Convention on International Commercial Arbitration.  IIC

-2-

also submitted a memorandum of law in support of its motion to strike, and the issues were fully

briefed by the parties.

8.      In its papers filed in this Court, Caja claimed that it is an instrumentality of a

foreign sovereign (Argentina), and argued that under the Foreign Sovereign Immunities Act, 28

U.S.C. 1600 et seq. ("FISA"), it was not required to post prejudgment security.

9.      On March 22, 2001, this Court, following *Skandia America Reinsurance Corp. v.*

*Caja Nacional De Ahorro y Seguro*, 1997 WL 278054, No. 96 C 2301 (S.D.N.Y. May 23, 1997),

ruled that the FSIA's protection against prejudgment security would not apply to Caja because

Argentina had essentially waived that protection when it signed the New York Convention,

which permits courts to require security from a party such as Caja who is trying to set aside an

arbitration award.  (See Memorandum Opinion and Order  ("the Order") dated March 22, 2001,

attached hereto as Exhibit 2.)1

10.     Granting IIC's motion, this Court struck Caja's answer and affirmative defenses,

and, pursuant to the Illinois Insurance Code, ordered Caja to post security in an amount no less

than $4,702,428.12 before filing a new answer and any affirmative defenses.2  (Exhibit 2.)

11.     Pursuant to Fed. R. Civ. P. 12(a)(1)(A), a party must file an answer within 20

days of being served with the summons and complaint.  Pursuant to Fed. R. Civ. P. 12(a)(4)(A),

a party whose Rule 12 motion is denied or postponed is given 10 days to file a responsive

pleading.  Therefore, Caja would be entitled, at most, to 20 days in which to file a new answer

---

1 Attached to the Order is a Judgment dated March 22, 2001.  That Judgment does not accurately reflect the Court's order in that it merely recites the Order's final paragraph, which was of an advisory nature and pertinent only in the event that Caja were to file a new answer.  IIC will be filing a separate motion pursuant to Fed. R. Civ. P. 60 to correct the Judgment.

2 The Order was amended on March 26, 2001 to correct a scrivener's error and to clarify that Caja, not IIC, was

after the date on which its original answer was stricken.

12.    Caja has failed to post the security ordered by this Court within 20 days of the

order.  As this security must be posted before Caja may file an answer, Caja is in default.

13.    Because Caja has defaulted by failing to post security and failing to answer, Caja

has failed to present any reason to this Court why the arbitration award should not be confirmed.

WHEREFORE, International Insurance Company respectfully requests that this Court

enter a judgment by default against Caja Nacional de Ahorro y Seguro, confirm the award of the

arbitration panel, and enter judgment against Caja in accordance with the terms of that award.

INTERNATIONAL INSURANCE COMPANY,
for itself and as successor in interest to International
Surplus Lines Insurance Company, The North River
Insurance Company, United States Fire Insurance
Company and/or Westchester Fire Insurance
Company, Industrial Indemnity Company, United
States Fire Insurance Company of Canada, Toronto,
Ontario, and Herald Insurance Company of Canada,
Toronto, Ontario

By:  _R. Douglass Bond_____
                One of its Attorneys

James I. Rubin (Attorney I.D. No. 02413191)
R. Douglass Bond (Attorney I.D. No. 06203843)
Randi Ellias (Attorney I.D. No. 06237021)
Butler, Rubin, Saltarelli & Boyd
1800 Three First National Plaza
Chicago, Illinois 60602
(312) 444-9660

required to post security.  (See Amended Order attached hereto as Exhibit 3.)

-4-

Aldort 178

# Exhibit 12

5/7/01

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED

APR 2 4 2001

File Number:  00 C 6703

| | | |
|---|---|---|
| INTERNATIONAL INSURANCE COMPANY, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| vs. | ) | NOTICE OF APPEAL |
| | ) | |
| CAJA NACIONAL DE AHORRO Y SEGURO, | ) | |
| Defendant-Appellant. | ) | |

FILED-ED5
01 APR 23 PH 4: 09
CLERK
U.S. DISTRICT COURT

Notice is hereby given that Caja Nacional De Ahorro Y Seguro, the defendant in the above-named case, hereby appeals to the United States Court of Appeals for the Seventh Circuit from the orders requiring the posting of pre-judgment security and striking defendant's Answer and Affirmative Defenses entered in this action on the 22nd day of March, 2001, the 26th day of March, 2001 and the 10th day of April 2001.

Jorge W. Moreira, Esq.
**Attorney for Defendant/Appellant:**
**Caja Nacional De Ahorro Y Segurro**
The Moreira Law Firm, P.C.
130 West 42nd Street, Suite 501
New York, NY 10036
212-398-8600

Local Counsel:

Richard M. Clark - ARDC #0452823
Richard J. Rettberg - ARDC #02318989
McKenna, Storer, Rowe, White & Farrug
200 North La Salle Street - Suite 3000
Chicago, IL 60601-1083
312/558-3900
Fax: 312/558-8348

103 9489
P A I D

APR 2 3 2001

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

16

Aldort 180

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

INTERNATIONAL INSURANCE COMPANY, et al..,

                                 Plaintiff,

v.

CAJA NACIONAL DE AHORRO Y SEGURO,

                                 Defendant.

NO:  00 C 6703

Judge John W. Darrah

Magistrate Judge Martin Ashman

**DOCKETED**

APR 2 4 2001

FILED
01 APR 23 PM 4 09
CLERK
U.S. DISTRICT COURT

## NOTICE OF FILING

TO:    James I. Rubin
       Renton Douglass bond
       Randi L. Ellias
       Butler, Rubin, Saltarelli & Boyd
       Three First National Plaza
       70 W. Madison Street
       Chicago, IL 60602

**PLEASE TAKE NOTICE** that on April 23, 2001, the undersigned has filed the following documents:

- Notice of Appeal

in the United States District Court For the Northern District of Illinois, Eastern Division, a copy of which is attached hereto.

                                 Respectfully submitted,

                                 CAJA NACIONAL DE AHORRO Y SEGURO

                                 BY:  _____
                                      Jorge Moreira

Jorge W. Moreira
The Moreira Law Firm P.C.
130 W. 42nd Street, Suite 501
New York, NY 10036
212-398-8600
Fax: 212-398-9425

Richard M. Clark - ARDC #0452823
Richard J. Rettberg - ARDC #02318989
McKenna, Storer, Rowe, White & Farrug
200 North La Salle Street - Suite 3000
Chicago, IL 60601-1083
312/558-3900
Fax: 312/558-8348

Aldort 181

STATE OF ILLINOIS )
)
COUNTY OF COOK )

### CERTIFICATE OF SERVICE

The undersigned states that she served the foregoing Notice of Filing and the above-listed document(s) referred to therein by mailing a copy to the above-named attorney(s) at the address(es) indicated and depositing same in the U.S. Mail at 200 North LaSalle Street, Chicago, Illinois, at 5:00 p.m. on April 23, 2001, with proper postage prepaid.

*Roberta C. White*

Sworn before me on April 23, 2001

*Mary Ann Nauyokas*
NOTARY PUBLIC

"OFFICIAL SEAL"
MARY ANN NAUYOKAS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8/16/2003

Aldort 182

# Exhibit 13

Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6703 | **DATE** | July 5, 2001 |
| **CASE TITLE** | International Insurance Company v. Caja Nacional De Ahorro Y Seguro | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Motion For Default Judgment and Confirmation of Arbitration Award

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  Plaintiff's Motion for Judgment by Default and for Confirmation of Arbitration Award is granted.

(11)  ■  [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| √ | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUL 0 9 2001 | |
| | Notified counsel by telephone. | | date docketed | 28 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | ED-7 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | | |
| LC/RH | courtroom deputy's initials | 01 JUL -5 PM 5: 50 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

## ORDER

On March 22, 2001, this Court struck defendant's answer and affirmative defenses for failing to file the post-security bond as required by the Illinois Insurance Code. The Court ordered defendant to post security before filing a new answer and affirmative defenses. Defendant did not file a new answer or affirmative defenses and has appealed the Court's Order to the Seventh Circuit Court of Appeals.

Plaintiff has moved for default judgment based on defendant's failure to file an answer or other affirmative defenses. Defendant argues that default judgment is not proper because it has not willfully failed to comply with the Court's Order. Instead, it has filed a meritorious timely appeal, and posting security would render its appeal moot.

The entry of defaults has become "a common sanction for late filings by defendants, especially in collection suits ... against sophisticated obligors." *See In re State Exchange Fin. Co.*, 896 F.2d 1104, 1106 (7th Cir. 1990). In the present case, defendant admits that it has not filed an answer. In its brief in opposition of default judgment, defendant asks this Court to deny the plaintiff's motion and allow the appeal to go forward without requiring defendant to file an answer until the appeal is finished. In essence, defendant is asking the Court to stay the present litigation due to the pending appeal. However, defendant has not filed a motion and the necessary supersedeas bond to stay the litigation pursuant to Fed. R. Civ. 62(d).

Defendant admits that it has not filed an answer. Defendant does not indicate that it plans to file an answer or the required security for filing such answer. Defendant has not sought to stay the present litigation while the appeal is pending. Accordingly, defendant has willfully failed to answer plaintiff's complaint for confirmation of an arbitration agreement. Plaintiff's Motion for Default Judgment is granted. The October 17, 2000 arbitration award of $4,702,428.12 is confirmed.

Aldort 185

# Exhibit 14

Case: 1:00-cv-06703 Document #: 32 Filed: 08/03/01 Page 1 of 1 PageID #:39

48609-33-30        ARDC #02318989

**DOCKETED**

**AUG 0 6 2001**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**PAID**

File Number: 00 C 6703

**AUG - 3 2001**

INTERNATIONAL INSURANCE COMPANY,        )
    Plaintiff-Appellee,        )

MICHAEL W. DOBBINS
CLERK, U. S. DISTRICT COURT

vs.        )

)        NOTICE OF APPEAL  *1048622*

CAJA NACIONAL DE AHORRO Y SEGURO,        )
    Defendant-Appellant.        )

Notice is hereby given that Caja Nacional De Ahorro Y Seguro, the defendant in the above-named case, hereby appeals to the United States Court of Appeals for the Seventh Circuit from the order granting Plaintiff's Motion for Default Judgment against Caja Nacional De Ahorro Y Seguro, and confirming the arbitration award of $4,702,428.12 entered in this action on the 5th day of July, 2001.

Jorge W. Moreira, Esq.
**Attorney for Defendant/Appellant:**
    **Caja Nacional De Ahorro Y Seguro**
The Moreira Law Firm, P. C.
130 West 42nd Street, Suite 501
New York, NY 10036
212-398-8600

Local Counsel:

Richard M. Clark - ARDC #0452823
Richard J. Rettberg - ARDC #02318989
McKenna, Storer, Rowe, White & Farrug
200 North La Salle Street - Suite 3000
Chicago, IL 60601-1083
312/558-3900
Fax: 312/558-8348

Aldort 187

# Exhibit 15

Aldort 188

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL INSURANCE COMPANY, **Et al,** | No. 00 C 6703 |
| Plaintiff, | |
| | Judge John W. Darrah |
| v. | |
| | Magistrate Judge Martin Ashman |
| CAJA NACIONAL DE AHORRO Y SEGURO | |
| Defendant. | |

**MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FRCP 60(b)**

Now Comes Defendant Caja Nacional de Ahorro y Seguro (hereinafter "Caja"), through its Counsel, Jorge W. Moreira, The Moreira Law Firm, P.C., and in support of its motion pursuant to FRCP 60(b) for relief from judgment, states as follows:

1. On July 5, 2001, this Court issued a decision, with entry date of July 6, 2001, awarding a default judgment confirming an arbitration award against Caja and in favor of plaintiff International Insurance Company (hereinafter "IIC"). In its decision, this Court determined, among other things, that Caja was not immune from the requirements of State law to post prejudgment security.

2. Caja seeks relief pursuant to FRCP 60(b)(1) on the grounds of inadvertance.

3. Caja respectfully submits that this Court misapplied the effective dates of two international treaties, the provisions of which were fundamental to and determinative of the Court's decision in this case. Caja submits that by applying the actual effective dates, Caja is immune from requirements of State law to post prejudgment security.

4. A Memorandum of Law is filed contemporaneously with this Motion and incorporated herein.

WHEREFORE, Defendant Caja Nacional de Ahorro y Seguro respectfully requests that this Court request that the United States Court of Appeals for the Seventh Circuit remand this matter to this Court and, upon remand, that the Court vacate its Order of July 6, 2001 granting a default judgment confirming the arbitration award against Caja and in favor of IIC, that it vacate so much of its Memorandum Opinion and Order of March 26, 2001 that directed Caja to post prejudgment security as a condition to filing its Answer, that the Court issue an Order permitting Caja to file its Answer without any condition requiring prejudgment security and that the Court grant such other and further relief as the Court deems just, equitable and proper.

CAJA NACIONAL DE AHORRO Y SEGURO

By: _____ (Local Cunsl)
                    One of its Attorneys

Jorge W. Moreira
The Moreira Law Firm, P.C.
130 W. 42nd Street
New York, NY 10036
Telephone 212-398-8600
Fax: 212-398-9425

Local Counsel:
Richard M. Clark
ARDC #045283
Richard J. Rettberg
ARDC #2318989
McKenna, Storer, Rowe, White & Farrug
200 N. LaSalle Street, Suite 3000
Chicago, IL 60601-1083
Telephone: 312-558-3900
Fax: 312-558-8348

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

INTERNATIONAL INSURANCE COMPANY,
*Et al,*
                              Plaintiff,                No. 00 C 6703

                                                       Judge John W. Darrah

v.

                                                       Magistrate Judge Martin Ashman

CAJA NACIONAL DE AHORRO Y SEGURO
                              Defendant.

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FRCP 60(b)

Defendant Caja Nacional de Ahorro y Seguro (hereinafter "Caja") respectfully submits this memorandum in support of its motion, pursuant to FRCP 60(b) for relief from the judgment of this Court issued July 5, 2001 (entry date July 6, 2001) awarding a default judgment confirming an arbitration award against Caja and in favor of plaintiff International Insurance Company (hereinafter "IIC"). The said default judgment was based on the Court's Amended Memorandum Opinion and Order of March 26, 2001. The Court may entertain a Rule 60(b) motion for relief from judgment even where, as in this case, an appeal of the judgment is pending. A copy of the Notice of Appeal in this matter is annexed hereto as Exhibit A

Relief is sought, pursuant to FRCP 60(b)(1) on the grounds of inadvertence, in that, the Court misapplied the effective dates of two international treaties the provisions of which were fundamental to and determinative of the Court's decision in this case that Caja is not immune from requirements of State law to post prejudgment security. For failure to post such security, the default judgment was issued. The two treaties in question are the

Aldort 191

Convention On the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") and the Inter-American Convention on International Commercial Arbitration (the "Inter-American Convention"). The Court found that the United States had acceded to the New York Convention in 1970, prior to the enactment of the Foreign Sovereign Immunities Act ("FSIA") in 1976 and that the New York Convention was, therefore, an existing agreement for purposes of the FSIA. In fact, Argentina did not accede to the Convention until 1989. Moreover, the Inter-American Convention actually applies in this case and the United States did not accede to it until 1990. Copies of the New York Convention and the Inter-American Convention are annexed hereto respectively as Exhibits B and C.

## FACTUAL BACKGROUND

Caja seeks relief from the Order of this Court issued July 5, 2001 (entry date July 6, 2001) awarding a default judgment, confirming an arbitration award, in favor of IIC and against Caja. The foregoing Order was based on the Court's Amended Opinion and Order of March 26 2001. Copies of the July 5, 2001 Order and of the March 26, 2001 Amended Memorandum Opinion and Order are annexed hereto respectively as Exhibits D and E.

This matter first came to this Court on a petition for confirmation of an arbitration award, on or about October 27, 2000. The award was based on a default so the merits of this matter have never been contested. The arbitration award was issued on October 17, 2000, for a total amount of $4,702, 428.12. A copy of IIC's summons and complaint is annexed hereto as Exhibit F; a copy of the said arbitration award is annexed hereto as Exhibit G.

Caja filed an Answer to the Petition on or about November 24, 2000. A copy of

Aldort 192

Caja's answer is annexed hereto as Exhibit H.

IIC moved to strike the Answer on the grounds that Caja failed to post security prior to filing an Answer, as required by the Illinois Insurance Code, 215 ILCS 5/123(5). Caja argued in opposition that, as an instrumentality of a foreign sovereign, it is immune from prejudgment / pre-Answer security pursuant to section 1609 of the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. sec. 1602, *et seq.*

The Court issued its Amended Opinion and Order on March 26, 2001. The Court noted that under the FSIA and relevant case law, a foreign state is provided with immunity from filing prejudgment security. Such security requirement is considered an attachment and forbidden.

The Court went further, however, and noted that section 1609 of the FSIA makes the FSIA subject to existing international agreements. Both the United States and Argentina are signatories to the New York Convention which predated the FSIA. The New York Convention, Article VI, allows a court, where a party makes application for setting aside an arbitration award, to order such party to give "suitable security." The Court found that Caja had applied to set aside the award.

The Court then followed an unpublished Opinion and Order, *Skandia*, and determined that Caja is "not immune from the posting requirement of the Illinois Insurance Law." The Court struck Caja's Answer and Affirmative Defenses and ordered Caja to post security in an amount no less than $4,702,428.12 before filing a new answer. The Court also went on to determine which of Caja's Affirmative Defenses are to be stricken on other grounds if Caja files a new Answer.

Subsequently, IIC moved the Court for a default judgment. Caja argued that a

Aldort 193

default judgment was not proper because Caja had not willfully failed to comply. If Caja posted security, it would render its appeal moot (because the immunity from the requirement to post security was itself at issue). The Court granted the default judgment to IIC and confirmed the underlying arbitration award by Order dated July 5, 2001 (entry date July 6, 2001). Caja's appeal is pending.[1] *See* Exhibit D.

The inadvertant error occurred where the Court noted that the United States acceded to the New York Convention in September 1970 and the FSIA was enacted October 1976. The Court took that to mean that the New York Convention was an existing international agreement pursuant to the §1609 of the FSIA. However, although September 1970 is the correct month and year of accession of the United States, Argentina did not accede to the Convention until 1989. *See* New York Convention, fn1b, Exhibit C. Thus, as between the United States and Argentina, the New York Convention was not in effect until 1989 and not an "existing international agreement" for purposes of the FSIA in September 1976.

There was a further technical error in that the United States and Argentina are also parties to another convention that governs the enforcement of arbitrations, the Inter-American Convention. A provision of the Inter-American Convention states that if the parties are signatories to both the New York Convention and the Inter-American Convention, the Inter-American Convention will govern. *See* Inter-American Convention, fn 1, Exhibit C.

---

[1] Caja's appeal, in addition to the grounds set forth herein, is based on the further grounds that Article VI of either of the arbitral conventions (which are very similar) gives the court discretion to impose security but does not defer to State law while the Court's Memorandum Opinion and Order relied on the provisions of State law. However, such additional grounds are not amenable to a Rule 60(b) motion, are being properly addressed in Caja's appeal and, in any case, will be mooted once the errors as to the effective dates of the conventions are corrected.

4

Argentina acceded to the Inter-American Convention at its outset in January 1975. *See* Exhibit C.  The United States, however, acceded to the Inter-American Convention in September 1990.  See Inter-American Convention, fn 1, Exhibit C.  Thus, even if the technically correct convention were applied, it still would not be an existing international agreement in October 1976 for the purposes of the FSIA.[2]

## ARGUMENT

THE COURT MAY ENTERTAIN THIS MOTION WHILE THE APPEAL IS PENDING

A party may file a Rule 60(b) motion for relief from a judgment while an appeal is pending.  *Brown v. U.S.,* 976 F.2d 1104, 1110-11 (7th Cir. 1992) ("Parties may file motions under Rule 60(b) in the district court while an appeal is pending.")  The procedure is that if the district court is inclined to grant the motion, it can apply to the appellate court to remand the matter.  *Washington, et al v. Board of Education, School Dist. 89,* 498 F.2d 11, 14 (7th Cir. 1974); *Binks Manufacturing Co. v. Ransburg Electrocoating Corp.*, 281 F.2d 252, 260 (7th Cir. 1960).  The Seventh Circuit has directed district courts to review such motions promptly.  *Brown, supra,* 976 F.2d at 1110-11.

In the instant case, the Notice of Appeal was filed August 3, 2001.  At this time, Caja has already filed and served its appellate brief.  The judgment from which relief is sought having been entered July 6, 2001, this FRCP 60(b) motion is made a reasonable time and less than one year thereafter.

---

[2] The error in selection of the convention is characterized as technical because the substantive provisions of the two conventions are similar and the result, in this particular case, is the same in that neither convention was an existing agreement between the United States and Argentina in 1976. However, it is possible where another foreign sovereign is involved that the differences in effective dates may significantly change the result.

5

Aldort 195

RULE 60(b) PERMITS THE COURT TO GRANT RELIEF FROM ITS JUDGMENT ON THE GROUNDS, *INTER ALIA,* OF MISTAKE AND Inadvertence

FRCP 60 regulates the procedures for obtaining relief from final judgments.    *Wesco Prod'ts Co. v. Alloy Automotive Co.*, 880 F.2d 981, 983 (7th Cir. 1989).  Rule 60(a) provides relief from essentially clerical errors.  *Id.*  Rule 60(b) provides six categories of grounds for granting relief from a judgment (including a "catch-all" category) but most relevant to the instant case is 60(b)(1), which includes mistake and inadvertence (along with surprise and excusable neglect which are not applicable to this case).  The inadvertence that forms the grounds for relief may be the Court's rather than the parties'.  *Wesco*, 880 F.2d at 986 ("This provision [Rule 60(b)(1)] applies to errors by judicial officers as well as parties."); *Bank of California, N.A. v. Arthur Andersen & Co.*, 709 F.2d 1174, 1176 (7th Cir. 1983) ("The inadvertence can be the court's rather than the parties' . . . ").

In *Bank of California,* several banks filed suit against several accounting firms and the district court dismissed the complaints in separate judgments "on the merits."  *Id.* at 1175.  The Seventh Circuit observed that the dismissal on the merits was an obvious error. *Id.*  The Court further noted the purpose of Rule 60(b) was to "allow clear errors to be corrected without the cost and delay of an appeal" and affirmed the district court's order of clarification correcting its judgment.  *Id.* at 1177.

*Bank of California* involved a question of law (dismissal on the merits or not) but the error was held to be one of inadvertence.  Similarly, in the instant case, there is a question of law (whether the treaties are "existing international agreements" under the FSIA, etc.) but the error is inadvertent, not one of interpretation.  As shown fully below, the Court inadvertently applied the wrong effective dates of the applicable international treaties in making its determinations.  Also, the Court inadvertently made a second technical error

6

Aldort 196

(which does not affect the result) in which of the two very similar treaties actually apply to the United States and Argentina. However, there was no error of interpretation. Hence, the errors are properly considered to be "inadvertent" and subject to Rule 60(b)(1).[3]

THE IMPOSITION OF PREJUDGMENT SECURITY ON FOREIGN SOVEREIGNS IS FORBIDDEN BY STATUTORY AND CASE LAW; THE EXCEPTION BASED ON THE INCORPORATION OF INTERNATIONAL ARBITRAL CONVENTIONS INTO THE FSIA DOES NOT APPLY IN THIS CASE

Section 1603 of the FSIA provides that a "foreign state" includes, *inter alia*, an agency or instrumentality of a foreign state and that the latter means any entity that is a separate legal person and is an organ of a foreign state or a majority of whose shares or ownership interests are owned by a foreign state or political subdivision thereof. 28 U.S.C. §1603. Caja, a corporation in the business of insurance and reinsurance that is wholly owned by the Republic of Argentina is a "foreign state" for the purposes of the FSIA. *See* Caja's Answer to Petition to Confirm Arbitration Award, annexed hereto as Exhibit H.

The FSIA further provides in section 1609 as follows:

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act, the property in the United States of a foreign state shall be immune from attachment, arrest and execution except as provided in sections 1610 and 1611 of this chapter. 28 U.S.C. §1609.

Section 1610(a)(1) of the FSIA provides as follows:

The property of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States shall not be immune from attachments prior to entry of judgments in any action brought in a court of the United States or of a State, or prior to elapse of the period of time provided in subsection (c) if the

---

[3] In its appeal, Caja presented the issue as one of law requiring *de novo* review. Caja believes that is correct in the appellate context because there was no clear factual error. The appellate court would review the law *de novo* and apply the correct effective dates.

Aldort 197

foreign state *has explicitly waived* its immunity from attachment prior to judgment. (Emphasis added). 28 U.S.C. 1610(a)(1).

In the instant case, Caja has not explicitly waived its immunity. In fact, the instant case went no further procedurally than the filing of Caja's Answer and then motions to strike its Answer unless it posted security. Caja has vigorously defended its immunity rather than waived it.

Courts have declined to make exceptions to the prohibition against imposing prejudgment attachment on a foreign sovereign. In *Moore v. Nat'l Distillers and Chemical Corp.,* 143 F.R.D. 526 (S.D.N.Y. 1992),   the plaintiff sought an order directing alien insurers to post prejudgment security pursuant to the provisions of the State Insurance Law. The court found that three of the defendants were exempt as foreign sovereigns. *Id.*  The Commissioner of Insurance appealed and in *Stephens v. Nat'l Distillers & Chemical Corp.,* 69 F.3d 1226 (2d Cir. 1995) the Second Circuit held that the prejudgment security requirement of State law was, in effect, a prejudgment attachment for purposes of the FSIA. The Second Circuit went further and also held that the FISA pre-empted the prejudgment, pre-Answer security requirement of the State insurance law notwithstanding the McCarran-Ferguson Act. *Id.* at 1232.

Appellate Courts have also been clear, in interpreting the FSIA, that exceptions are not to be made lightly to Congress' grant of immunity to foreign sovereigns from prejudgment attachment. In *S&S Machinery v. Masinexportimport, et al,* 706 F.2d 411 (2d Cir. 1983) the plaintiff attached letters of credit against a Romanian government-owned company and obtained an injunction against it not to negotiate other letters of credit. The district court vacated the attachment and on appeal, the Court held that the immunity from prejudgment attachment can be waived only explicitly and never implicitly. *Id.* at 49-50 &

8

Aldort 198

n.4 (discussing statute and legislative history). The court elaborated as follows:

> The requirement that the waiver of immunity from prejudgment attachment be *explicitly* made is underscored both by the plain language of §1610(d) and by the contrast between §1610(d) and §1619(a). A foreign state's immunity from attachment as an aid in the execution of judgment can be waived implicitly as well as explicitly, while the immunity from *prejudgment attachment* can be waived only by unmistakable and plain language. *S&S Machinery* 706 F.2d at *Id.*

A similar point was made as part of the concurring opinion in *Caribbean Trading and Fidelity Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111 (2d Cir. 1991):

> Congress valued the protection against prejudgment attachment so highly, furthermore, that it specified that such immunity may only be "explicitly" waived [citations omitted] On the other hand, section 1604 immunity from subject matter jurisdiction, as well as immunity from execution of judgment and attachment in aid of execution, may be waived "either explicitly or by implication." *Id.* at 116.

The Second Circuit also indicated, in commenting on the lower court ruling in *S&S Machinery,* that the requirement of explicitness would not be taken lightly:

> Once the district court held – correctly so in our opinion – that the Romanian Bank and Masin were protected from prejudgment attachment by the FSIA, the court properly refused to sanction any other means to effect the same result. *The FSIA would become meaningless if courts could eviscerate its protections merely by denominating the restraints as injunctions against the negotiation or use of property rather than as attachments against that property.* (Emphasis added) *S&S Machinery* 706 F.2d at 418.

In the instant case, the Court, although acknowledging *Stephens*, observed, in its Amended Memorandum Opinion and Order of March 26, 2001, that *Stephens* did not involve an arbitration and that section 1609 of the FSIA makes the FSIA subject to existing international agreements that predated the FSIA. Relying on *Skandia America Reinsurance Corp. v. Caja Nacional de Ahorro Y Seguro*, 1997 WL 278054 (S.D.N.Y.), the court noted that the New York Convention allows the court to order a party denying enforcement of an arbitration award to give suitable security. Further, the court noted that in September 1970

9

the United States acceded to the New York Convention. The court then noted that the FSIA was enacted in October 1976, therefore, the court erroneously held that the New York Convention was an existing international agreement at the time the FSIA was enacted. *See* Exhibit E.

In fact, although the United States acceded to the New York Convention in September 1970, Argentina did not accede to it until 1989.[4] *See* New York Convention, 9 U.S.C. §201, fn. 1b, Exhibit B. Hence, the New York Convention was not an existing international agreement as to the United States and Argentina in 1976 when the FSIA was enacted. As a result, the New York Convention is not incorporated into the FSIA by section 1609 thereof and does not provide authority to require prejudgment security of a foreign sovereign.

To be precise, the United States and Argentina are also parties to the Inter-American Convention which provides that if the parties accede to both the New York Convention and the Inter-American Convention, the Inter-American Convention will apply.[5] *See* Inter-American Convention, 9 U.S.C. §301, fn 1, Exhibit B. The United States, however, did not accede to the Inter-American Convention until 1990. *See Id.*

As between the specific sovereigns involved in this matter, the United States and Argentina, the New York Convention is not relevant because the Inter-American Convention would apply as to any arbitration between them. However, the Inter-American Convention was not an existing international agreement, as between these sovereigns, when the FSIA was enacted. The end result is the same in the case of either Convention, it was not an

---

[4] Argentina deposited the ratifying documents on March 14, 1989 with a stipulation that its accession would become effective on the 90th day after the deposit, June 12, 1989.
[5] In fact, IIC pleaded the Inter-American Convention. *See* Complaint, Exhibit F.

10

existing agreement at the time the FSIA was enacted and hence does not provide authority to require a Argentina, or its instrumentality, in this case Caja, to post prejudgment security. If prejudgment security may not be imposed on Caja as a condition to file its Answer, then its Answer should not have been stricken and there was no justification to award the default judgment against Caja.

The fact that the Court followed *Skandia* does not change the nature of the error from one of inadvertence. First, *Skandia* is an unpublished order and the Court, most likely, did not follow it for its precedential value but simply adopted its reasoning. Secondly, Caja does not at this time question any of the legal rules or reasoning applied by the Court. In the proper case and as between the United States and one of the other sovereign states that is a party to either treaty, depending on the respective dates of accession, the reasoning in *Skandia* may very well make good law.[6] Caja's argument on this motion is simply that there was an inadvertent error in applying the effective dates appropriate to the United States and Argentina.

---

[6] Caja believes the decision of this Court may be subject to question to the extent it deferred to State law; this issue is not involved in this motion and will be either mooted by a decision favorable to Caja on this motion or argued properly at the appellate level.

11

Aldort 201

## CONCLUSION

For all the foregoing reasons, the Court is respectfully requested to request that the United States Court of Appeals for the Seventh Circuit remand this matter to this Court and, upon remand, that the Court vacate its Order of July 6, 2001 granting a default judgment confirming the arbitration award against Caja and in favor of IIC, that it vacate so much of its Memorandum Opinion and Order of March 26, 2001 that directed Caja to post prejudgment security as a condition to filing its Answer, that the Court issue an Order permitting Caja to file its Answer without any condition requiring prejudgment security and that the Court  grant such other and further relief as the Court deems just, equitable and proper.

Dated: October 8, 2001

CAJA NACIONAL DE AHORRO Y SEGURO

By: _____
One of its Attorneys

Jorge W. Moreira
The Moreira Law Firm, P.C.
130 W. 42nd Street
New York, NY 10036
Telephone 212-398-8600
Fax: 212-398-9425

Local Counsel:

Richard M. Clark
ARDC #045283
Richard J. Rettberg
ARDC #2318989
McKenna, Storer, Rowe, White & Farrug
200 N. LaSalle Street, Suite 3000
Chicago, IL 60601-1083
Telephone: 312-558-3900
Fax: 312-558-8348

12

Aldort 202

# **Exhibit A**

*A - 1*

48609-33-30        ARDC #02318989

**DOCKETED**

AUG 0 6 2001

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**PAID**

File Number: 00 C 6703

AUG - 3 2001

INTERNATIONAL INSURANCE COMPANY,        )
    Plaintiff-Appellee,        )

                   MICHAEL W. DOBBINS
                  CLERK, U. S. DISTRICT COURT

vs.        )  NOTICE OF APPEAL 1048622

CAJA NACIONAL DE AHORRO Y SEGURO,        )
    Defendant-Appellant.        )

        Notice is hereby given that Caja Nacional De Ahorro Y Seguro, the defendant in the above-named case, hereby appeals to the United States Court of Appeals for the Seventh Circuit from the order granting Plaintiff's Motion for Default Judgment against Caja Nacional De Ahorro Y Seguro, and confirming the arbitration award of $4,702,428.12 entered in this action on the 5th day of July, 2001.

                        Jorge W. Moreira, Esq.
                        **Attorney for Defendant/Appellant:**
                            **Caja Nacional De Ahorro Y Seguro**
                        The Moreira Law Firm, P. C.
                        130 West 42nd Street, Suite 501
                        New York, NY 10036
                        212-398-8600

Local Counsel:

Richard M. Clark - ARDC #0452823
Richard J. Rettberg - ARDC #02318989
McKenna, Storer, Rowe, White & Farrug
200 North La Salle Street - Suite 3000
Chicago, IL 60601-1083
312/558-3900
Fax: 312/558-8348

Aldort 204

# **<u>Exhibit B</u>**

ADD-6

UNITED STATES CODE ANNOTATED
TITLE 9. ARBITRATION
CHAPTER 2--CONVENTION ON THE RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRAL
AWARDS

Copr. © West Group 2001.  No claim to Orig. U.S. Govt. Works.

Current through P.L. 107-19, approved 7-10-01

§ 201. Enforcement of Convention

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be
enforced in United States courts in accordance with this chapter.

CREDIT(S)

1999 Main Volume

(Added Pub.L. 91-368, § 1, July 31, 1970, 84 Stat. 692.)

< General Materials (GM) - References, Annotations, or Tables >

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports ▸

1970 Acts. House Report No. 91-1181, see 1970 U.S. Code Cong. and Adm. News, p. 3601.

Effective and Applicability Provisions

1970 Acts. Section 4 of Pub.L. 91-368 provided that:  "This Act [enacting this chapter] shall be effective upon the
entry into force of the Convention on Recognition and Enforcement of Foreign Arbitral Awards with respect to the
United States [the Convention was entered into force for the United States on Dec. 29, 1970]."

CONVENTION ON THE RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRAL AWARDS

Article I

1. This Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State
other than the State where the recognition and enforcement of such awards are sought, and arising out of differences
between persons, whether physical or legal.  It shall also apply to arbitral awards not considered as domestic awards
in the State where their recognition and enforcement are sought.

2. The term "arbitral awards" shall include not only awards made by arbitrators appointed for each case but also
those made by permanent arbitral bodies to which the parties have submitted.

3. When signing, ratifying or acceding to this Convention, or notifying extension under article X hereof, any State
may on the basis of reciprocity declare that it will apply the Convention to the recognition and enforcement of
awards made only in the territory of another Contracting State.  It may also declare that it will apply the Convention
only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial
under the national law of the State making such declaration.

Article II

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Aldort 206

*ADD · 7*
~~Page 12~~

9 USCA S 201

1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

3. The court of a Contracting State, when seized of an action in a matter in respect to which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

## Article III

Each Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles. There shall not be imposed substantially more onerous conditions or higher fees or charges on the recognition or enforcement of arbitral awards to which this Convention applies than are imposed on the recognition or enforcement of domestic arbitral awards.

## Article IV

1. To obtain the recognition and enforcement mentioned in the preceding article, the party applying for recognition and enforcement shall, at the time of the application, supply:

(a) The duly authenticated original award or a duly certified copy thereof;

(b) The original agreement referred to in article II or a duly certified copy thereof.

2. If the said award or agreement is not made in an official language of the country in which the award is relied upon, the party applying for recognition and enforcement of the award shall produce a translation of these documents into such language. The translation shall be certified by an official or sworn translator or by a diplomatic or consular agent.

## Article V

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

(a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

ADD-8

9 USCA S 201

Page 13

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

### Article VI

If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1) (e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

### Article VII

1. The provisions of the present Convention shall not affect the validity of multilateral or bilateral agreements concerning the recognition and enforcement of arbitral awards entered into by the Contracting States nor deprive any interest party of any right he may have to avail himself of an arbitral award in the manner and to the extent allowed by the law or the treaties of the country where such award is sought to be relied upon.

2. The Geneva Protocol on Arbitration Clauses of 1923 and the Geneva Convention on the Execution of Foreign Arbitral Awards of 1927 [27 LNTS 157;  92 LNTS 301] shall cease to have effect between Contracting States on their becoming bound and to the extent that they become bound, by this Convention.

### Article VIII

1. This Convention shall be open until 31 December 1958 for signature on behalf of any Member of the United Nations and also on behalf of any other State which is or hereafter becomes a member of any specialized agency of the United Nations, or which is or hereafter becomes a party to the Statute of the International Court of Justice [T.S. 993;  59 Stat. 1055], or any other State to which an invitation has been addressed by the General Assembly of the United Nations.

2. This Convention shall be ratified and the instrument of ratification shall be deposited with the Secretary-General of the United Nations.

### Article IX

1. This Convention shall be open for accession to all States referred to in article VIII.

2. Accession shall be effected by the deposit of an instrument of accession with the Secretary-General of the United Nations.

### Article X

1. Any State may, at the time of signature, ratification or accession, declare that this Convention shall extend to all or any of the territories for the international relations of which it is responsible.  Such a declaration shall take effect when the Convention enters into force for the State concerned.

2. At any time thereafter any such extension shall be made by notification addressed to the Secretary-General of the United Nations and shall take effect as from the ninetieth day after the day of receipt by the Secretary-General of the

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

*n v D - 7*

United Nations of this notification, or as from the date of entry into force of the Convention for the State concerned, whichever is the later.

3. With respect to those territories to which this Convention is not extended at the time of signature, ratification or accession, each State concerned shall consider the possibility of taking the necessary steps in order to extend the application of this Convention to such territories, subject, where necessary for constitutional reasons, to the consent of the Governments of such territories.

### Article XI

In the case of a federal or non-unitary State the following provisions shall apply:

(a) With respect to those articles of this Convention that come within the legislative jurisdiction of the federal authority, the obligations of the federal Government shall to the extent be the same as those of Contracting States which are not federal States;

(b) With respect to those articles of this Convention that come within the legislative jurisdiction of constituent states or provinces which are not, under the constitutional system of the federation, bound to take legislative action, the federal Government shall bring such articles with a favourable recommendation to the notice of the appropriate authorities of constituent states or provinces at the earliest possible moment;

(c) A federal State Party to this Convention shall, at the request of any other Contracting State transmitted through the Secretary-General of the United Nations, supply a statement of the law and practice of the federation and its constituent units in regard to any particular provision of this Convention, showing the extent to which effect has been given to that provision by legislative or other action.

### Article XII

1. This Convention shall come into force on the ninetieth day following the date of deposit of the third instrument of ratification or accession.

2. For each State ratifying or acceding to this Convention after the deposit of the third instrument of ratification or accession, this Convention shall enter into force on the ninetieth day after deposit by such State of its instrument of ratification or accession.

### Article XIII

1. Any Contracting State may denounce this Convention by a written notification to the Secretary-General of the United Nations. Denunciation shall take effect one year after the date of receipt of the notification by the Secretary-General.

2. Any State which has made a declaration or notification under article X may, at any time thereafter, by notification to the Secretary-General of the United Nations, declare that this Convention shall cease to extend to the territory concerned one year after the date of the receipt of the notification by the Secretary-General.

3. This Convention shall continue to be applicable to arbitral awards in respect of which recognition or enforcement proceedings have been instituted before the denunciation takes effect.

### Article XIV

A Contracting State shall not be entitled to avail itself of the present Convention against other Contracting States except to the extent that it is itself bound to apply the Convention.

### Article XV

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

9 USCA S 201

*A D P - 10*

The Secretary-General of the United Nations shall notify the States contemplated in article VIII of the following:

(a) Signatures and ratifications in accordance with article VIII;

(b) Accessions in accordance with article IX;

(c) Declarations and notifications under articles I, X and XI;

(d) The date upon which this Convention enters into force in accordance with article XII;

(e) Denunciations and notifications in accordance with article XIII.

Article XVI

1. This Convention, of which the Chinese, English, French, Russian and Spanish texts shall be equally authentic, shall be deposited in the archives of the United Nations.

2. The Secretary-General of the United Nations shall transmit a certified copy of this Convention to the States contemplated in article VIII.

Convention on the Recognition and Enforement of Foreign Arbitral Awards. Done at New York June 10, 1958; entered into force for the United States December 29, 1970, subject to declarations.

Implementing Legislation Pub.L. 91-368, 84 Stat. 692, 9 USC 201- 208

States which are parties:

Algeria [FN1]

Antigua and Barbuda [FN1a]

Argentina [FN1b]

Australia [FN1c]

Austria [FN1d]

Bahrain [FN1e]

Bangladesh

Barbados [FN1f]

Belarus [FN1g]

Belgium [FN2]

Bolivia

Bosnia and Herzegovina [FN2a]

Botswana [FN2b]

Brunei

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

*ADD-H*
~~Page 16~~

9 USCA S 201

Bulgaria [FN3]

Burkina Faso

Cambodia

Cameroon

Canada [FN4]

Central African Republic [FN5]

Chile

China [FN5a]

Colombia

Costa Rica

Cote d'Ivoire

Croatia

Cuba [FN5b]

Cyprus [FN5c]

Czech Republic [FN6]

Dahomey

Denmark [FN7]

Djibouti

Dominica

Ecuador [FN8]

Egypt

Estonia

Finland

France [FN9]

Georgia

German Democratic Republic [FN9a]

Germany, Fed. Rep. [FN10]

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

9 USCA S 201

Ghana

Greece  [FN10a]

Guatemala  [FN10b]

Guinea

Haiti

Holy See  [FN10c]

Hungary  [FN11]

India  [FN12]

Indonesia  [FN12a]

Ireland  [FN12b]

Israel

Italy

Japan  [FN13]

Jordan  [FN13a]

Kazakstan

Kenya [FN13b]

Korea  [FN14]

Kuwait  [FN14a]

Kyrgyzstan

Latvia

Lesotho

Lithuania  [FN14b]

Luxembourg  [FN14c]

Former Yugoslav Republic of Macedonia

Madagascar  [FN15]

Malaysia  [FN15a]

Mali

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Aldort 212

*ADD - 13*
~~Page 18~~

9 USCA S 201

Mauritania

Mauritius

Mexico

Monaco [FN15b]

Mongolia [FN15c]

Morocco [FN16]

Netherlands [FN17]

New Zealand [FN17a]

Niger

Nigeria [FN18]

Norway [FN19]

Panama

Peru

Philippines [FN20]

Poland [FN21]

Portugal [FN21a]

Romania [FN21b]

Russian Federation [FN22]

San Marino

Saudia Arabia [FN22a]

Senegal

Singapore [FN22b]

Slovakia [FN22c]

Slovenia

South Africa

Spain

Sri Lanka (Ceylon)

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Aldort 213

DD - 13
18

ADD - 14
Page 19

9 USCA S 201

Sweden

Switzerland  [FN23]

Syrian Arab Rep.

Tanzania  [FN24]

Thailand

Trinidad and Tobago  [FN25]

Tunisia  [FN25a]

Turkey  [FN26]

Uganda  [FN26a]

Ukraine  [FN27]

United Kingdom  [FN28]

United States  [FN29]

Uruguay

Uzbekistan

Venezuela  [FN29a]

Vietnam  [FN29b]

Yugoslavia  [FN30]

Zimbabwe

 [FN1]  On February 7, 1989, an instrument of accession was deposited with the Secretary General of the United Nations by Algeria.

  Referring to the possibility offered by article I, paragraph 3, of the Convention, the People's Democratic Republic of Algeria declares that it will apply the Convention, on the basis of reciprocity, to the recognition and enforcements of arbitral awards made only in the territory of another Contracting State and only where such awards have been made with respect to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under Algerian law.

  In accordance with Article XII(2), the Convention will enter into force for Algeria on May 8, 1989.

 [FN1a]  On February 2, 1989, an instrument of accession was deposited with the Secretary General of the United Nations by Antigua and Barbuda.

  "In accordance with Article I, the Government of Antigua and Barbuda declares that it will apply the Convention on the basis of reciprocity only to the recognition and enforcement of awards made in the territory of another contracting state.

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Aldort 214

9 USCA S 201

"The Government of Antigua and Barbuda also declares that it will apply the Convention only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under the laws of Antigua and Barbuda."

In accordance with Article XII(2), the Convention will enter into force for Antigua and Barbuda on May 3, 1989.

[FN1b] On 14 March 1989, the instrument of ratification by the Government of Argentina of the above-mentioned Convention was deposited with the Secretary-General.

The instrument of ratification contains the following declaration:

On the basis of reciprocity, the Republic of Argentina will apply the Convention only to the recognition and enforcement of foreign arbitral awards made in the territory of another Contracting State. It will also apply the Convention only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under its national law.

The Convention will be interpreted in accordance with the principles and clauses of the National Constitution in force or those resulting from modification made by virtue of the Constitution.

In accordance with Article XII(2), the Convention will enter into force for Argentina on 12 June 1989, i.e. the ninetieth day after the date of the deposit of its instrument.

[FN1c] With the following declaration in accordance with the provisions of article X(1):

"... the Convention shall extend to all the external Territories for the international relations of which it [Australia] is responsible other than Papua New Guinea."

[FN1d] Subject to the following reservations and declarations:

The Republic of Austria will apply the Convention, in accordance with the first sentence of article I(3) thereof, only to the recognition and enforcement of arbitral awards made in the territory of another Contracting State.

In a communication received on 25 February 1988, the Government of Austria notified the Secretary-General of its decision to withdraw the following reservation, made upon accession to the above-mentioned Convention:

(Translation) (Original: German)

The Republic of Austria will apply the Convention, in accordance with the first sentence of article I(3), thereof, only to the recognition and enforcement of arbitral awards made in the territory of another Contracting State.

The said withdrawal took effect on 25 February 1988, the date of receipt of the notification.

12 May 1988

[FN1e] On 6 April 1988, the instrument of accession by the Government of Bahrain to the above-mentioned Convention was deposited with the Secretary- General.

The instrument of accession contains the following declarations:

(Original: English)

"1. The accession by the State of Bahrain to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 1958 shall in no way constitute recognition of Israel or be a cause for the establishment of any relations of any kind therewith.

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

# **Exhibit C**

*ADD-16*
~~Page 6~~

9 USCA S 301
9 U.S.C.A. § 301

UNITED STATES CODE ANNOTATED
TITLE 9. ARBITRATION
CHAPTER 3--INTER-AMERICAN CONVENTION ON INTERNATIONAL COMMERCIAL ARBITRATION

Copr. © West Group 2001.  No claim to Orig. U.S. Govt. Works.

Current through P.L. 107-19, approved 7-10-01

§ 301. Enforcement of Convention

 The Inter-American Convention on International Commercial Arbitration of January 30, 1975, shall be enforced in United States courts in accordance with this chapter.

CREDIT(S)

1999 Main Volume

(Added Pub.L. 101-369, § 1, Aug. 15, 1990, 104 Stat. 448.)

< General Materials (GM) - References, Annotations, or Tables >

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

 1990 Acts. House Report No. 101-501, see 1990 U.S. Code Cong. and Adm. News, p. 675.

Effective and Applicability Provisions

 1990 Acts. Section 3 of Pub.L. 101-369 provided that:  "This Act [enacting this chapter] shall take effect upon the entry into force of the Inter-American Convention on International Commercial Arbitration of January 30, 1975, with respect to the United States [the Convention was entered into force for the United States on Oct. 27, 1990]."

INTER-AMERICAN CONVENTION ON INTERNATIONAL COMMERCIAL ARBITRATION

 The Governments of the Member States of the Organization of American States, desirous of concluding a convention on international commercial arbitration, have agreed as follows:

Article 1

 An agreement in which the parties undertake to submit to arbitral decision any differences that may arise or have arisen between them with respect to a commercial transaction is valid.  The agreement shall be set forth in an instrument signed by the parties, or in the form of an exchange of letters, telegrams, or telex communications.

Article 2

 Arbitrators shall be appointed in the manner agreed upon by the parties.  Their appointment may be delegated to a third party, whether a natural or juridical person.

 Arbitrators may be nationals or foreigners.

Article 3

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

9 USCA S 301

*ADD-17*
*Page 7*

In the absence of an express agreement between the parties, the arbitration shall be conducted in accordance with the rules of procedure of the Inter- American Commercial Arbitration Commission.

Article 4

An arbitral decision or award that is not appealable under the applicable law or procedural rules shall have the force of a final judicial judgment. Its execution or recognition may be ordered in the same manner as that of decisions handed down by national or foreign ordinary courts, in accordance with the procedural laws of the country where it is to be executed and the provisions of international treaties.

Article 5

1. The recognition and execution of the decision may be refused, at the request of the party against which it is made, only if such party is able to prove to the competent authority of the State in which recognition and execution are requested:

a. That the parties to the agreement were subject to some incapacity under the applicable law or that the agreement is not valid under the law to which the parties have submitted it, or, if such law is not specified, under the law of the State in which the decision was made; or

b. That the party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was unable, for any other reason, to present his defense; or

c. That the decision concerns a dispute not envisaged in the agreement between the parties to submit to arbitration; nevertheless, if the provisions of the decision that refer to issues submitted to arbitration can be separated from those not submitted to arbitration, the former may be recognized and executed; or

d. That the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the terms of the agreement signed by the parties or, in the absence of such agreement, that the constitution of the arbitral tribunal or the arbitration procedure had not been carried out in accordance with the law of the State where the arbitration took place; or

e. That the decision is not yet binding on the parties or has been annulled or suspended by a competent authority of the State in which, or according to the law of which, the decision has been made.

2. The recognition and execution of an arbitral decision may also be refused if the competent authority of the State in which the recognition and execution is requested finds:

a. That the subject of the dispute cannot be settled by arbitration under the law of that State; or

b. That the recognition or execution of the decision would be contrary to the public policy ("ordre public") of that State.

Article 6

If the competent authority mentioned in Article 5.1.e has been requested to annul or suspend the arbitral decision, the authority before which such decision is invoked may, if it deems it appropriate, postpone a decision on the execution of the arbitral decision and, at the request of the party requesting execution, may also instruct the other party to provide appropriate guaranties.

Article 7

This Convention shall be open for signature by the Member States of the Organization of American States.

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Aldort 218

9 USCA S 301

*ADD-18*
*Page 8*

## Article 8

This Convention is subject to ratification. The instruments of ratification shall be deposited with the General Secretariat of the Organization of American States.

## Article 9

This Convention shall remain open for accession by any other State. The instruments of accession shall be deposited with the General Secretariat of the Organization of American States.

## Article 10

This Convention shall enter into force on the thirtieth day following the date of deposit of the second instrument of ratification.

For each State ratifying or acceding to the Convention after the deposit of the second instrument of ratification, the Convention shall enter into force on the thirtieth day after deposit by such State of its instrument of ratification or accession.

## Article 11

If a State Party has two or more territorial units in which different systems of law apply in relation to the matters dealt with in this Convention, it may, at the time of signature, ratification or accession, declare that this Convention shall extend to all its territorial units or only to one or more of them.

Such declaration may be modified by subsequent declarations, which shall expressly indicate the territorial unit or units to which the Convention applies. Such subsequent declarations shall be transmitted to the General Secretariat of the Organization of American States, and shall become effective thirty days after the date of their receipt.

## Article 12

This Convention shall remain in force indefinitely, but any of the States Parties may denounce it. The instrument of denunciation shall be deposited with the General Secretariat of the Organization of American States. After one year from the date of deposit of the instrument of denunciation, the Convention shall no longer be in effect for the denouncing State, but shall remain in effect for the other States Parties.

## Article 13

The original instrument of this Convention, the English, French, Portuguese and Spanish texts of which are equally authentic, shall be deposited with the General Secretariat of the Organization of American States. The Secretariat shall notify the Member States of the Organization of American States and the States that have acceded to the Convention of the signatures, deposits of instruments of ratification, accession, and denunciation as well as of reservations, if any. It shall also transmit the declarations referred to in Article 11 of this Convention.

IN WITNESS WHEREOF the undersigned Plenipotentiaries, being duly authorized thereto by their respective Governments, have signed this Convention.

DONE AT PANAMA CITY, Republic of Panama, this thirtieth day of January one thousand nine hundred and seventy-five.

[Signatures omitted]

----------

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Aldort 219

9 USCA S 301

*cbb-19*
~~Page 9~~

Inter-American Convention on International Commercial Arbitration.   Done at Panama City January 30, 1975; entered into force for the United States October 27, 1990.

[Implementing legislation: Pub.L. 101-369, Aug. 15, 1990, 104 Stat. 448.]

States which are parties:

Argentina

Brazil

Chile

Columbia

Costa Rica

Ecuador

El Salvador

Guatemala

Honduras

Mexico

Panama

Paraguay

Peru

United States [FN1]

Uraguay

Venezuela

---------------

[FN1]  In accordance with Article 8 of the Convention, the Instrument of Ratification of the Government of the United States of America was deposited with the Secretary General of the Organization of American States on September 27, 1990.

In ratifying the aforesaid Convention, the Government of the United States of America made the following reservations:

"1. Unless there is an express agreement among the parties to an arbitration agreement to the contrary, where the requirements for application of both the Inter-American Convention on International Commercial Arbitration and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards are met, if a majority of such parties are citizens of a state or states that have ratified or acceded to the Inter-American Convention and are member states of the Organization of American States, the Inter-American Convention shall apply.  In all other cases, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards shall apply.

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

"2. The United States of America will apply the rules of procedure of the Inter-American Commercial Arbitration Commission which are in effect on the date that the United States of America deposits its instrument of ratification, unless the United States of America makes a later official determination to adopt and apply subsequent amendments to such rules.

"3. The United States of America will apply the Convention, on the basis of reciprocity, to the recognition and enforcement of only those awards made in the territory of another Contracting State."

## LIBRARY REFERENCES

American Digest System

Arbitration ☞ 1.

Treaties ☞ 7 to 14.

Encyclopedias

C.J.S. Arbitration §§ 2, 3.

C.J.S. Taxation § 1131.

C.J.S. Treaties §§ 12 to 16, 22, 23.

Forms

3 Fed Procedural Forms L Ed; Arbitration, § 4:306.

Law Review and Journal Commentaries

Broker churning: who is punished? Vicariously assessed punitive damages in the context of brokerage houses and their agents. Comment, 30 Hous.L.Rev. 1775 (1993).

Gilmer v. Interstate: Liberal policy favoring arbitration trammels policy against employment discrimination. Maria C. Whittaker, 56 Alb.L.Rev. 273 (1992).

Prospects for satisfactory dispute resolution of private commercial disputes under the North American Free Trade Agreement. 21 Pepp.L.Rev. 1313 (1994).

Texts and Treatises

Business and Commercial Litigation in Federal Courts § 9.10 (Robert L. Haig ed.) (West Group & ABA 1998).

## NOTES OF DECISIONS

Jurisdiction over awards 1

1. Jurisdiction over awards

Inter-American Convention on International Commercial Arbitration gives district courts jurisdiction to confirm arbitration awards rendered in United States, not just to enforce awards rendered in foreign countries that are signatories to Convention.

Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc., C.A.2 (N.Y.) 1994, 23 F.3d 41.

9 U.S.C.A. § 301

9 USCA § 301

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Aldort 221

# **Exhibit D**

(Reserved for use by the Court)

A-3

## ORDER

On March 22, 2001, this Court struck defendant's answer and affirmative defenses for failing to file the post-security bond as required by the Illinois Insurance Code. The Court ordered defendant to post security before filing a new answer and affirmative defenses. Defendant did not file a new answer or affirmative defenses and has appealed the Court's Order to the Seventh Circuit Court of Appeals.

Plaintiff has moved for default judgment based on defendant's failure to file an answer or other affirmative defenses. Defendant argues that default judgment is not proper because it has not willfully failed to comply with the Court's Order. Instead, it has filed a meritorious timely appeal, and posting security would render its appeal moot.

The entry of defaults has become "a common sanction for late filings by defendants, especially in collection suits ... against sophisticated obligors." *See In re State Exchange Fin Co.*, 896 F.2d 1104, 1106 (7th Cir. 1990). In the present case, defendant admits that it has not filed an answer. In its brief in opposition of default judgment, defendant asks this Court to deny the plaintiff's motion and allow the appeal to go forward without requiring defendant to file an answer until the appeal is finished. In essence, defendant is asking the Court to stay the present litigation due to the pending appeal. However, defendant has not filed a motion and the necessary supersedeas bond to stay the litigation pursuant to Fed. R. Civ. 62(d).

Defendant admits that it has not filed an answer. Defendant does not indicate that it plans to file an answer or the required security for filing such answer. Defendant has not sought to stay the present litigation while the appeal is pending. Accordingly, defendant has willfully failed to answer plaintiff's complaint for confirmation of an arbitration agreement. Plaintiff's Motion for Default Judgment is granted. The October 17, 2000 arbitration award of $4,702,428.12 is confirmed.

United States District Court, Northern District of Illinois    A-4

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 6703 | DATE | July 5, 2001 |
| CASE TITLE | International Insurance Company v. Caja Nacional De Ahorro Y Seguro | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

| Motion For Default Judgment and Confirmation of Arbitration Award |
|---|

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____.   Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Plaintiff's Motion for Judgment by Default and for Confirmation of Arbitration Award is granted.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| √ | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff | | | | |
| | Notified counsel by telephone | | | date docketed | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | | courtroom deputy's initials | | date mailed notice | |
| | | | Date/time received in central Clerk's Office | | mailing deputy initials |

Aldort 224

# **<u>Exhibit E</u>**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
219 SOUTH DEARBORN STREET
CHICAGO, ILLINOIS 60604

*A-5*



CHAMBERS OF
JOHN W. DARRAH
JUDGE

(312) 435-5614

March 28, 2001

James I. Rubin
Butler, Rubin, Saltarelli & Boyd
Three First National Plaza
70 West Madison Street
Chicago, IL 60602

Richard M. Clark
McKenna, Storer, Rowe, White & Farrug
200 North LaSalle Street
Suite 3000
Chicago, IL 60601

Jorge W. Moreira
130 West 142nd Street
Suite 501
New York, NY 10036

Re:  **International Insurance Company v. Caja Nacional De Ahorro Y Seguro**
     Case No.  00 C 6703

Dear Counsel:

Enclosed please find a copy of an Amended Memorandum Opinion and Order which has been
entered by Judge John W. Darrah on March 26, 2001 in the above-captioned matter.

Please be advised that a scrivener's error has been corrected in the first line of Page 4 in that the
word "Plaintiff" has been changed to "Defendant".  The correct wording is "Defendant is ordered
to post adequate security . . ."

Very truly yours,

Kathryn E. Bianchetti
Secretary to Judge John W. Darrah

Enclosure

Aldort 226

A-6

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 00 C 6703 |
| CAJA NACIONAL DE AHORRO Y SEGURO, | ) | |
| | ) | Judge John W. Darrah |
| | ) | |
| Defendant. | ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

In October, 2000, an arbitration panel awarded plaintiff, International Insurance Company, an award of $4,702,428.12 against defendant, Caja Nacional De Ahorro Y Seguro. Later that month, plaintiff filed a petition for confirmation of the arbitration award, and defendant subsequently filed an answer to such petition. Before the Court is plaintiff's motion for an order requiring defendant to post a pre-judgment security and to strike defendant's answer and affirmative defenses.

Plaintiff is a domestic insurance company that purchased reinsurance from defendant, an alien insurance and reinsurance company headquartered in Argentina. Pursuant to two reinsurance contracts between the parties, plaintiff initiated an arbitration due to defendant's failure to pay plaintiff over $2 million in indemnity obligations. Defendant failed to appear at the arbitration, and the arbitration panel entered a final default award against defendant.

Plaintiff argues that defendant's answer to the petition for confirmation of the arbitration award should be stricken because defendant failed to post a security prior to filing the answer as required by Illinois Insurance Code. Defendant argues that, as an instrumentality of a foreign

A-7

government, it is not required to post a security pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. 1600 *et seq.* (FSIA).

Under Illinois insurance law, a foreign or alien company is required to file a pre-judgment security with the court that is sufficient to secure the payment of any final judgment that may be rendered prior to filing any pleadings with the court. 215 ILCS 5/123(5). However, the FSIA provides foreign states immunity from filing pre-judgment security. *See* 28 U.S.C. § 1609; *Stephens v. National Distillers & Chemical Corp.*, 69 F.3d 1226, 1230 (2nd Cir. 1995) (*Stephens*). Section 1609 of the FSIA provides that:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property of the United States or a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of the chapter.

Defendant, relying on *Stephens*, alleges that as an instrumentality of a foreign state, it is not required to post a security under the Illinois Insurance Code because the posting of such security is considered a pre-judgment attachment. *See Stephens*, 69 F.3d at 1229 (finding the posting of a security bond under New York insurance law constituted a pre-judgment attachment for purposes of the FSIA).

Section 1609 of the FSIA specifically states that the provision is "subject to existing international agreements." In September, 1970, the United States acceded to The Convention on the Recognition and Enforcement of Foreign Arbitration Awards, commonly known as The New York Convention, and incorporated into law by 9 U.S.C. § 201 *et seq. See Publicis Communication v. True North Communications Inc.*, 206 F.3d 725, 728 (7th Cir. 2000). The FSIA was enacted in October of 1976; therefore, the New York Convention was an existing international agreement at the time the FSIA was enacted. Both the United States and Argentina are signatories of the New

2

*A-8*

York Convention.

The purpose of the New York Convention was to effectuate arbitration proceedings and their enforcement in international contracts and to unify the standards by which arbitration agreements are observed and arbitration awards are enforced. *See Scherk v. Albert-Culver Co.*, 417 U.S. 506, 520 (1974). Article VI of the New York Convention allows this Court to order a party denying enforcement of an award to "give suitable security" if an application for the setting aside or suspension of the award has been made. *See* 9 U.S.C. § 201; *Skandia America Reinsurance Corp. v. Caja Nacional De Ahorro Y Segero*, 1997 WL 278054, No. 96 C 2301 (S.D.N.Y. May 23, 1997) (*Skandia*). Importantly, *Stephens*, relied upon by the defendant as discussed above, did not involve an arbitration award; and the *Stephens* court specifically stated that there was no relevant treaty that predated the FSIA or that would preempt the provision of the FSIA. *Stephens*, 69 F.3d at 1229.

Here, plaintiff filed a petition for the confirmation of the arbitration award, and defendant filed an answer indicating that it lacked knowledge and information to form a belief as to any of the allegations made against it. Defendant also filed 26 affirmative defenses, alleging, in part, that coverage is barred for numerous reasons and that plaintiff's claims are barred by several doctrines, *i.e.*, waiver, estoppel, and unclean hands. Defendant has also failed to pay the arbitration award. Therefore, the Court finds that defendant has in effect moved to suspend or set aside the award, and Article VI of the New York Convention applies to the present case. *See Skandia*, 1997 WL 278054 at * 5 (finding respondents in effect moved to suspend the award based on respondent's failure to pay the award and responsive pleadings).

Accordingly, pursuant to the New York Convention, defendant is not immune from the posting requirement of the Illinois Insurance Law. Defendant's answer and affirmative defenses are

3

A-9

stricken. Defendant is ordered to post adequate security in an amount no less than $4,702,428.12 before filing a new answer and any affirmative defenses pursuant to the Illinois Insurance Code.

Plaintiff also seeks to strike all of defendant's affirmative defenses because they do not constitute grounds to vacate the arbitration award under the applicable statutes and/or treaties. While the security issue addressed above is dispositive, in the interest of judicial economy, the issue regarding defendant's affirmative defenses will be addressed to aid defendant in the event security and a valid answer are filed.

Federal Rules of Civil Procedure 8(c) requires a party to set forth affirmative defenses in a responsive pleading. Fed. R. Civ. P. 8(c). Under Rule 12(f), "the court may order stricken from any pleading any insufficient defense." Fed. R. Civ. P. 12(f). Generally, motions to strike affirmative defenses are disfavored because they potentially serve only to cause delay. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (*Heller*). Such motions are generally granted only when the affirmative defenses are "patently defective and could not succeed under any circumstances." *Mobey v. Kelly Kean Nissan, Inc.*, 864 F.Supp. 726, 732 (N.D.Ill. 1993).

Affirmative defenses, as pleadings, are subject to the pleading requirements of the Federal Rules of Civil Procedure. *See Heller*, 883 F.2d at 1294. Therefore, affirmative defenses must set forth a "short and plain statement." Fed. R. Civ. Proc. 8(a). The allegation must include either direct or inferential allegations respecting all material elements of the defense asserted. Narrated facts with bare legal conclusions are not sufficient. *Renalds v. S.R.G. Restaurant Group*, 119 F.Supp.2d 800, 802 (N.D.Ill. 2000) (*Renalds*).

In the present case, plaintiff seeks enforcement of an arbitration award. Therefore, defendant's affirmative defenses must be related to the modification or vacation of an arbitration

4

Aldort 230

A-10

award. Under the New York Convention, an award may be vacated if: (1) the parties to the

agreement were under some incapacity or the agreement was not valid under the applicable law; (2)

the party to whom the award is invoked was not given proper notice of the arbitration proceedings;

(3) the award deals with a difference not contemplated by the parties or not falling within the terms

of the arbitration; (4) the arbitration panel was not in accordance with the agreement or applicable

laws; (5) the award is not yet binding on the parties or has been set aside; (6) the subject matter of

the difference is not capable of settlement by arbitration under the applicable law; or (7) the

recognition or enforcement of the award would be contrary to public policy of that country. 9 U.S.C.

§ 201, art. 5. The grounds for vacating an arbitration award under the Inter-American Convention

on International Commercial Arbitration are essentially the same as those stated above for the New

York Convention. *See* 9 U.S.C. § 301, art. 5.

      Pursuant to the Federal Arbitration Act (FAA), an arbitration award may be vacated if: (1)

the award was procured by corruption, fraud, or undue means; (2) there was evidence of partiality

or corruption in the arbitrators; (3) the arbitrators were guilty of certain types of misconduct; or (4)

the arbitrators exceeded their powers. 9 U.S.C. §-10 (a)(1)-(5). An arbitration award may be

modified under the FAA if: (1) there is evidence of material miscalculation or mistake in the

description of any person, thing, or property referred to in the award; (2) or the arbitrators awarded

on a subject not before them; or (3) the award is imperfect in matter of form not affecting the merits

of the controversy. 9 U.S.C. § 11 (a)-(c).

I. Affirmative Defense No. 1.

      Defendant's first affirmative defense states, "The petition fails to state facts sufficient to

allege claims against Caja upon which relief may be granted." This first defense is a recitation of

Aldort 231

*A-II*

the standard for a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6). The defense identifies the legal theory without indicating how it is connected to the present case. While the Federal Rules of Civil Procedure allow liberal pleadings, they do not allow a claimant to merely recite the standard for a motion to dismiss under Rule 12(b)(6). *See Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 353 (7th Cir. 1982); *Renalds*, 119 F.Supp.2d at 803-04. Accordingly, defendant's first affirmative defense is stricken.

II.  Affirmative Defenses Nos. 2-7 and 10-19

Defendant's affirmative defenses numbered 2-7 and 10-19 can be categorized as defenses related to coverage under the policies. As written, and interpreted broadly, these defenses do not fall within any of the categories for the vacation or modification of an award. Defendant cannot make arguments related to the coverage of the policies. The affirmative defenses to the applicable coverage should have been made at the time of arbitration, not during proceedings for the enforcement of the arbitration award. Accordingly, affirmative defenses 2-7 and 10-19 are stricken.

III. Affirmative Defenses Nos. 8 and 9

Defendant's affirmative defenses numbered 8 and 9 argue that liability is barred for public policy reasons. These grounds are included in the applicable statutes and are not stricken. *See* 9 U.S.C. § 201, art. 5 (2)(b); 9 U.S.C. § 301, art. 5 (2)(b).

IV. Affirmative Defenses Nos. 20-25

Defendant's affirmative defenses numbered 20-25 aver that plaintiff's claims are barred by the statute of limitations, laches, waiver, estoppel, and unclean hands. While these defenses may not fall within grounds for vacating the arbitration, they may be defenses to plaintiff's suit for enforcement. Accordingly, affirmative defenses 20-25 are not stricken.

6

A-12

V. Affirmative Defense No. 26

Defendant's 26th affirmative defense reserves the right to amend its answer to assert any additional affirmative defenses as may become apparent through discovery. This is a proper affirmative defense under Rule 15(a), which allows the courts to grant leave to amend pleadings. This Rule applies to answers and affirmative defenses as well as complaints. *See Renalds*, 119 F.Supp.2d at 803. Accordingly, affirmative defense 26 is not stricken.

Dated: *March 26, 2001*

JOHN W. DARRAH
United States District Judge

7

Aldort 233

# **Exhibit F**

A-16

**BUTLER, RUBIN, SALTARELLI & BOYD**
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
THREE FIRST NATIONAL PLAZA · SUITE 1800
70 WEST MADISON STREET
CHICAGO, ILLINOIS 60602
(312) 444-9660
—
TELECOPIER (312) 444-9287

104777

October 27, 2000

**BY MESSENGER**

Lord Bissell & Brook
115 South LaSalle Street
Chicago, Illinois 60603

Re:   International Insurance Company v. Caja Nacional de Ahorro y Seguro
Civil Case No. 00 C 6703

Dear Sir or Madam:

Enclosed please find a copy of the summons and complaint in the above-referenced litigation filed in the United States District Court for the Northern District of Illinois, served upon you in your capacity as agent for the defendant, Caja Nacional de Ahorro y Seguro.

Very truly yours,

Randi Ellias

Enclosures

# Exhibit G

A-13

BUTLER, RUBIN, SALTARELLI & BOYD
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
THREE FIRST NATIONAL PLAZA · SUITE 1800
70 WEST MADISON STREET
CHICAGO, ILLINOIS 60602
(312) 444-9660

TELECOPIER (312) 444-9287    *104792*

October 17, 2000

BY FEDERAL EXPRESS INTERNATIONAL &          BY MAIL & FACSIMILE
EXPRESS MAIL INTERNATIONAL

President                                    Anthony B. Sherman
Caja National de Ahorro y Seguro             Jane Veldman
Aldolfo Alsina, 470 Piso 4                    Lord Bissell & Brook
(1087) Capital Federal                        115 South LaSalle Street
Buenos Aires, Argentina                       Chicago, Illinois 60603

        Re:    In the Matter of the Arbitration Between
               International Insurance Company and
               Caja National De Ahorro y Seguro

Dear Sirs and Madam:

        Enclosed please find the Final Award in the above-referenced arbitration, entered by the
Panel on October 17, 2000.

                        Very truly yours,

                        R. Douglass Bond

                        R. Douglass Bond

RDB:
Enclosures

Aldort 237

A-14

In the Matter of the Arbitration Between )
)
INTERNATIONAL INSURANCE COMPANY for itself )
and as Successor in Interest to INTERNATIONAL )
SURPLUS LINES INSURANCE COMPANY and THE )
NORTH RIVER INSURANCE COMPANY, UNITED )
STATES FIRE INSURANCE COMPANY and/or )
WESTCHESTER FIRE INSURANCE COMPANY, )
INDUSTRIAL INDEMNITY COMPANY, UNITED )
STATES FIRE INSURANCE COMPANY of CANADA, )
TORONTO, ONTARIO, and HERALD INSURANCE )
COMPANY OF CANADA, TORONTO, ONTARIO, )
)
Claimant, )    Mr. Martin D. Haber
)    Mr. Daniel E. Schmidt IV
and )    Mr. Peter C. Clemente
)
CAJA NACIONAL DE AHORRO Y SEGURO, )
)
Respondent. )

## FINAL AWARD

We, the undersigned, duly appointed arbitrators (the "Panel") in the above-captioned matter, after reviewing all the submissions made to Panel in this matter, including all briefs, exhibits, and authorities, and after hearing live testimony and oral presentation, do hereby rule as follows:

1.    The motion for default judgment brought by Claimant International Insurance Company ("IIC") is granted.

2.    Within fifteen days of the date of this Final Award, Respondent Caja Nacional de Ahorro y Seguro ("Caja") shall pay to IIC:

(a) $2,009,061.72 in overdue balances;

(b) $1,310,559.90 in interest;

(c) $15,000 in arbitration costs and arbitrator costs; and

(d) $46,890.50 in attorneys' fees incurred by IIC in this matter.

Aldort 238

A-15

3.    Within fifteen days of the date of this Final Award, consistent with the provisions for cash advances in Article XVI of the reinsurance treaties at issue in this arbitration, Caja shall pay $1,320,916 (as Caja's share of case reserves) to a separate account to be maintained by IIC.  IIC may draw down funds from this account as reimbursement to IIC for Caja's share of any liability for loss reinsured by the reinsurance treaties at issue in this arbitration.

4.    Caja shall comply in the future with all of its obligations under the reinsurance treaties at issue in this arbitration.

This award reflects the Panel's final, unanimous decision with respect to the issues submitted to it in this matter.

So ordered this  17th  day of October, 2000.

Martin D. Haber

Daniel E. Schmidt, IV

Peter C. Clemente

2

Aldort 239

# **Exhibit H**

A.24

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS



INTERNATIONAL INSURANCE COMPANY,  )
for itself and as Successor In Interest to  )
International Surplus Lines Insurance Company,  )
The North River Insurance Company, United  )
States Fire Insurance Company and/or Westchester  )
Fire Insurance Company, Industrial Indemnity  )
Company, United States Fire Insurance Company  )
of Canada, Toronto, Ontario, and Herald Insurance  )
Company of Canada, Toronto, Ontario,  )
                                      )
                            Plaintiff,  )
                                      )
         v.                           )
                                      )
CAJA NACIONAL DE AHORRO Y SEGURO,  )
                                      )
                           Defendant.  )

Civil Action No. 00 C 6703

Hon. John W. Darrah

Magistrate Judge Ashman

## ANSWER TO PETITION TO CONFIRM ARBITRATION AWARD

Caja Nacional de Ahorro y Seguro ("Caja") as and for its Answer to the Petition

for Confirmation of Arbitration Award of International Insurance Company ("IIC"), for

itself and as Successor in interest to the above-captioned companies, alleges, on

information and belief, as follows:

### Nature of Action

1.    This is an action pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.*,

and the Inter-American Convention on International Commercial Arbitration (the

"Convention") and its implementing legislation, 9 U.S.C. § 3Ol, *et. seq.*, to confirm an

arbitration award. IIC is a domestic insurance company that purchased reinsurance from

Caja Nacional de Ahorro y Seguro ("Caja"), an alien insurance and reinsurance company

domiciled in Argentina. Pursuant to the terms of two reinsurance contracts entered into

1

Aldort 241

A·25

between the parties, IIC initiated an arbitration for Caja failure to pay IIC over two million dollars in indemnity obligations. Caja failed to appear in the arbitration proceeding. On October 17, 2000, the arbitration panel entered a default award against Caja in the amount of $2,009,061.72 in overdue balances, $1,310,559.90 in interest; $15,000 in arbitration costs and arbitrator costs; and $46,890.50 in attorneys' fees incurred by IIC in this matter. In addition, the arbitration panel ordered Caja to pay a cash advance in the amount of $1,320,916 for its share of case reserves under the reinsurance contracts at issue in the arbitration.

1.     **RESPONSE**: Defendant Caja is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "1".

### The Parties

2.     IIC is a corporation organized and existing under the laws of the State of Illinois with its current principal place of business in Manchester, New Hampshire. At the time the contracts were negotiated, IIC's principal place of business was in Chicago, Illinois.

2.     **RESPONSE**: On information and belief, Defendant Caja admits the allegations of Paragraph "2".

3.     Upon information and belief, Caja is a corporation organized and existing under the laws of Argentina with its principal place of business in Buenos Aires, Argentina. Caja was formerly wholly owned by the government of Argentina, but, upon information and belief, is now privately owned.

Aldort 242

*A-26*

3.    RESPONSE: Defendant Caja admits the allegations of the first sentence of

Paragraph "3" and admits that at all times Caja was and is wholly owned by the

Government of Argentina and denies the rest of the second sentence.

### Jurisdiction

4.    Jurisdiction of this Court is proper pursuant to 9 U.S.C. § 203 and 9 U.S.C. § 302

inasmuch as this is an action or proceeding falling under the convention.

5.    Venue is properly maintained in this district pursuant to 9 U.S.C. § 204 and 9

U.S.C. § 302.

4.-5.    RESPONSE: Defendant Caja admits the allegations  contained in Paragraphs "4"

and "5".

### Facts

6.    IJC and Caja entered into two reinsurance treaties at issue in the arbitration, the

Casualty Reinsurance Agreement incepting on January 1, 1979 and terminating on

December 31, 1983, and the Casualty Excess Reinsurance Agreement incepting on

March *15,* 1979 and terminating on December 31, 1981 (the "Treaties").

6.    RESPONSE: Defendant Caja is without knowledge or information sufficient to

form a belief as to the truth of the allegations set forth in Paragraph "6".

7.    Article XXI of each Treaty contains an arbitration clause, requiring the arbitration

of "any dispute.  with reference to the interpretation of this Agreement or the rights of

either party with respect to any transaction under this Agreement..."

7.    RESPONSE: Defendant Caja is without knowledge or information sufficient to

form a belief as to the truth of the allegations set forth in Paragraph "7"

3

Aldort 243

A-27

8.    Article XXI of each Treaty further provides that any such dispute shall be referred to three Arbitrators, "one to be chosen by each party and the third by the two so chosen." Finally, the Treaties provide that "[i]f either party refuses or neglects to appoint an Arbitrator within thirty days after receipt of written notice from the other party requesting it to do so, the requesting party may nominate two arbitrators who shall choose the third."

8.    RESPONSE: Defendant Caja is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "8".

9.    Article XVI of each Treaty obligated Caja, as an unauthorized reinsurer, to provide cash advances or fund letters of credit or escrow accounts "if a penalty would accrue to the Company on its statement without such funding."

9.    RESPONSE: Defendant Caja is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "9".

10.    On April 10, 2000, IIC demanded arbitration with Caja with respect to amounts due under the Treaties. IIC appointed its arbitrator in its demand letter. The arbitration demand was served on Caja via Express Mail International and Federal Express International, and also by certified mail on Lord Bissell and Brook of Chicago, Illinois ("Lord Bissell"), specified as Caja's agent for service of process in Article XX of each Treaty.

10.    RESPONSE: Defendant Caja is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "10".

11.    Caja did not respond to IIC's arbitration demand, failing to name its arbitrator within thirty days of its receipt of the arbitration demand, as required by the arbitration provision of each Treaty. Accordingly, IIC named a second arbitrator on May 26, 2000.

4

*A-28*

IIC notified Caja that it had appointed a second arbitrator via correspondence dated May 26, 2000 and sent by Express Mail International and Federal Express International. This correspondence was also sent via certified mail to Lord Bissell, designated as Caja's agent. The two arbitrators appointed a third arbitrator.

11.    RESPONSE:  Defendant Caja is without knowledge or information sufficient to

form a belief as to the truth of the allegations set forth in Paragraph "11".

12.    Article XXI of the Treaties required the parties to submit their case to the arbitration panel within thirty days of the formation of the panel. The panel was formed as of July 21, 2000 when the third arbitrator notified the parties that he had been selected by the other two. IIC submitted its Statement of Issues to the Panel on August 4, 2000, serving its Statement of Issues upon Caja by Féderal Express International and Express Mail International and upon Lord Bissell by facsimile, on that same day. Caja failed to submit its case.

12.    RESPONSE:  Defendant Caja is without knowledge or information sufficient to

form a belief as to the truth of the allegations set forth in Paragraph "12".

13.    Following their appointment, the arbitration panel scheduled a telephonic hearing with the parties and their counsel to discuss issues, potential discovery, and a schedule for the proceedings. Caja was notified of the scheduled hearing via correspondence dated July 31, 2000 and August 4, 2000. That correspondence was sent to Caja by Express Mail International and Federal Express International. The July 31, 2000 correspondence was sent to Lord Bissell via Federal Express, and the August 4, 2000 correspondence was sent to Lord Bissell via facsimile. The telephonic hearing took place on August 14, 2000. Caja failed to participate.

5

A-29

13.    RESPONSE: Defendant Caja is without knowledge or information sufficient to
form a belief as to the truth of the allegations set forth in Paragraph "13".

14.    During the August 14, 2000 telephonic hearing, IIC accepted the arbitration panel.
After acceptance of the panel by IIC, the panel set a schedule for the arbitration
proceeding. The schedule required IIC to make its pre-hearing submissions to the panel
and Caja by September 18, 2000, and Caja to make its pre-hearing submissions to the
panel and IIC by October 2, 2000. The panel also scheduled the arbitration hearing in this
matter for October 17, 2000. A transcript of the telephonic hearing, along with additional
correspondence outlining the schedule, was sent on August 21, 2000 to Caja via Federal
Express International and Express Mail International and to Lord Bissell by U.S. mail.

14.    RESPONSE: Defendant Caja is without knowledge or information sufficient to
form a belief as to the truth of the allegations set forth in Paragraph "14".

15.    IIC made its pre-hearing submission as required on September 18, 2000, serving
copies on Caja by Federal Express International and Express Mail International and on
Lord Bissell by facsimile and messenger on that same day. Caja failed to provide any pre-
hearing submission.

15.    RESPONSE: Defendant Caja is without knowledge or information sufficient to
form a belief as to the truth of the allegations set forth in Paragraph "15".

16.    On October 17, 2000, the arbitration hearing was held in Chicago, Illinois. Caja
failed to appear.

16.    RESPONSE: Defendant Caja is without knowledge or information sufficient to
form a belief as to the truth of the allegations set forth in Paragraph "16".

**Cause of Action**

6

Aldort 246

A-30

17.    On October 17, 2000, the panel entered its written Final Award, attached as

Exhibit A hereto. The Final Award requires, *inter alia*, that:

        a.    Caja pay to IIC $2,009,061.72 in overdue balances;

        b.    Caja pay to IIC $1,310,559.90 in interest;

        c.    Caja pay to IIC $15,000 in arbitration costs and arbitrator costs;

        d.    Caja pay to IIC *$46,890.50* in attorneys' fees incurred by IIC in this
            matter;

        e.    Caja to pay $1,320,916 as a cash advance to cover Caja's share of
            case reserves under the Treaties; and

        f.    The amounts to be paid under paragraphs (a) through (e) be paid
            within fifteen days of the date of the Final Award, or by November
            1, 2000.

17.    **RESPONSE:** Defendant Caja is without knowledge or information sufficient to

form a belief as to the truth of the allegations set forth in Paragraph "17".

18.    The total amount to be paid by Caja to IIC pursuant to the Final Award is

$4,702,428.12.

18.    **RESPONSE:** Defendant Caja is without knowledge or information sufficient to

form a belief as to the truth of the allegations set forth in Paragraph "18".

19.    Article XXI of each Treaty provides that "judgment may be entered upon the

award of the Arbitrators in any court having jurisdiction."

19.    **RESPONSE:** Defendant Caja is without knowledge or information sufficient to

form a belief as to the truth of the allegations set forth in Paragraph "19".

Aldort 247

A-31

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Petition fails to state facts sufficient to allege claims against Caja upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

To the extent that Defendant Caja has not been presented with facts sufficient to demonstrate that IIC is entitled to coverage under the policies issued by Caja to IIC, coverage, if any, is barred.

### THIRD AFFIRMATIVE DEFENSE

Coverage, if any, is barred by the terms, exclusions, conditions, and limitations contained in the policies issued by Defendant Caja

### FOURTH AFFIRMATIVE DEFENSE

To the extent that the Petition alleges claims for indemnification of entities that do not qualify as "insureds" or as persons insured under the policies issued by Defendant Caja, coverage, if any, is barred.

### FIFTH AFFIRMATIVE DEFENSE

To the extent that the alleged claims asserted against IIC do not involve "personal injury" as that term is defined or used in the policies issued by Defendant Caja, coverage, if any, is barred.

8

Aldort 248

A-32

## SIXTH AFFIRMATIVE DEFENSE

To the extent that the alleged claims asserted against IIC did not result from an "occurrence" as that term is defined or used in the policies issued by Defendant Caja, coverage, if any, is barred.

## SEVENTH AFFIRMATIVE DEFENSE

To the extent that the alleged claims asserted against IIC do not seek relief in the form of "damages" as that term is defined or used in the policies issued by Defendant Caja, coverage, if any, is barred.

## EIGHTH AFFIRMATIVE DEFENSE

The policies issued by Defendant Caja provide coverage only for damages that takes place during the policy period. To the extent that any of the alleged damages took place prior to or after the expiration of the applicable policy periods, coverage, if any, is barred.

## NINTH AFFIRMATIVE DEFENSE

To the extent that IIC seeks coverage for governmental, civil, or criminal fines or penalties, such liability is barred by the terms and conditions of the policies issued by Defendant Caja and by public policy.

## TENTH AFFIRMATIVE DEFENSE

To the extent that IIC expected or intended (or a reasonable insured should have expected or intended) the damages alleged in the underlying claims, coverage, if any, is barred.

## ELEVENTH AFFIRMATIVE DEFENSE

To the extent that IIC has waived any rights it may have had under the policies issued by Defendant Caja, at law or in equity, coverage, if any, is barred.

9

Aldort 249

A·33

## TWELFTH AFFIRMATIVE DEFENSE

To the extent that IIC has failed to perform all of its obligations under the policies issued by Defendant Caja, coverage, if any, is barred.

## THIRTEENTH AFFIRMATIVE DEFENSE

To the extent that IIC was aware of an alleged occurrence or claim described in the Petition, and failed to give timely notice to Defendant Caja in accordance with the terms of the policies issued by defendant Caja, coverage, if any, is barred.

## FOURTEENTH AFFIRMATIVE DEFENSE

To the extent that IIC failed to cooperate with Defendant Caja in the investigation, settlement, defense, or control of any underlying claim, coverage, if any, is barred.

## FIFTEENTH AFFIRMATIVE DEFENSE

Any coverage otherwise available under the policies issued by Defendant Caja to IIC does not apply for a greater proportion of the alleged loss than that stated in the applicable contribution provision when other insurance applies to the alleged loss.

## SIXTEENTH AFFIRMATIVE DEFENSE

To the extent that IIC's alleged liability for the underlying claims has not been fixed and rendered certain either by final judgement against IIC after an adjudicatory proceeding or by settlement approved in writing by Defendant Caja, coverage, if any, is barred.

## SEVENTEENTH AFFIRMATIVE DEFENSE

To the extent that IIC did not make a written demand for payment in accordance with the terms of the policies issued by Defendant Caja, coverage, if any, is barred.

Aldort 250

A.34

## EIGHTEENTH AFFIRMATIVE DEFENSE

Insurance provides coverage only for matters that are contingent, unknown, or fortuitous. To the extent that the underlying claims of IIC were not contingent, unknown, or fortuitous, there is no coverage under the policies issued by Defendant Caja.

## NINETEENTH AFFIRMATIVE DEFENSE

To the extent that IIC negligently or intentionally failed to disclose, concealed, or misrepresented facts known by it to be material to the risks underwritten by Defendant Caja in the policies issued by Defendant Caja, coverage, if any, is barred.

## TWENTIETH AFFIRMATIVE DEFENSE

IIC's claims are barred in whole or in part by the applicable statute of limitations.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

IIC's claims are barred in whole or in part based upon the doctrine of laches.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

IIC's rights and claims against Defendant Caja, if any, are barred in whole or in part based upon the doctrine of waiver.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

IIC's claims are barred in whole or in part based upon the doctrine of estoppel.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

IIC's claims are barred in whole or in part based upon the doctrine of unclean hands.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

IIC's claims are barred in whole or in part based upon the doctrine of judicial estoppel.

Aldort 251

A-35

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Defendant Caja reserves the right to amend its Answer to the Petition to assert such additional Affirmative Defenses, Cross-Claims, and Counterclaims as may become apparent in the course of discovery in this matter, including those arising out of the Foreign Sovereign Immunities Act.

WHEREFORE, Caja Nacional de Ahorro y Seguro respectfully requests that this Court deny the Petition and enter Judgment in favor of Caja Nacional de Ahorro y Seguro.

CAJA NACIONAL DE AHORRO Y SEGURO

By: _____

Jorge Moreira
One of its attorneys

Jorge Moreira
130 W. 42d Street
New York, NY 10036
Telephone 212-398-8600
Fax: 212-398-9425

Local Counsel:

Richard M. Clark
ARDC #0452823
Richard J. Rettberg
ARDC #2318989
McKenna, Storer, Rowe, White & Farrug
200 N. LaSalle Street, Suite 3000
Chicago, Illinois 60601-1083
Telephone: 312-558-3900
Fax:    312-558-8348

12

Aldort 252

# Exhibit 16

Case: 1:00-cv-06703 Document #: 45 Filed: 11/27/01 Page 1 of 7 PageID #:42

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6703 | **DATE** | 11/27/2001 |
| **CASE TITLE** | International Insurance Company vs. CAJA Nacional De Ahorro Y Seguro | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____.  Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ■  Status hearing held.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER.  Defendant's motion
       for relief of judgment pursuant to Rule 60(b) is denied.  Defendant's motion to quash citation to discover
       assets is granted.  The rule to show cause issued against defendant is stricken.

(11)  ■  [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| ☒ | No notices required, advised in open court. | | number of notices | | |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | NOV 28 2001 | | 45 |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| JD | courtroom deputy's initials | | 01 NOV 27 PM 4:35 | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

Aldort 254

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 00 C 6703 |
| CAJA NACIONAL DE AHORRO Y SEGURO, | ) | |
| | ) | Judge John W. Darrah |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

In October 2000, an arbitration panel awarded plaintiff, International Insurance Company, an award of $4,702,428.12 against defendant, Caja Nacional De Ahorro Y Seguro (Caja), an Argentina entity. In its March 26, 2001 Amended Memorandum Opinion and Order, this Court ordered defendant to post a pre-judgment security and struck defendant's answer to the petition. Defendant failed to post a pre-judgment security and answer to plaintiff's petition. Default judgment was issued against defendant on July 5, 2001. On September 5, 2001, plaintiff filed a citation to discover assets as a supplementary proceeding for aid in enforcing its judgment against defendant. The citation had a return date of October 2, 2001. Defendant did not file a response to the citation and failed to produce witnesses or documents on October 2, 2001. This Court entered a rule to show cause against defendant and set a rule to show cause hearing for October 31, 2001.

On October 24, 2001, defendant filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). On October 29, 2001, defendant filed a motion to quash the citation to discover assets.

Case: 1:00-cv-06703 Document #: 45 Filed: 11/27/01 Page 3 of 7 PageID #:44

I. Motion for Relief of Judgment

Defendant seeks relief from the default judgment awarded on July 5 2001, arguing that the judgment was based on the Court's March 26, 2001 Order, in which the Court "inadvertently" misapplied the effective dates of two international treaties, the application of which were fundamental to and determinative of the Court's decision that defendant was required to post a pre-judgment security.

In the March 26 2001 Order, the Court quoted Section 1609 of the Foreign Sovereign Immunities Act (FSIA), which provides that:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property of the United States or a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of the chapter.

The Court found that an existing international agreement to which the United States was a party existed at the time the Act was enacted, finding:

> In September, 1970, the United States acceded to The Convention on the Recognition and Enforcement of Foreign Arbitration Awards, commonly known as the New York Convention, and incorporated into law by 9 U.S.C. § 201 *et seq. See Publicis Communication v. True North Communications Inc.*, 206 F.3d 725, 728 (7th Cir. 2000). The FSIA was enacted in October of 1976; therefore, the New York Convention was an existing international agreement at the time the FSIA was enacted. Both the United States and Argentina are signatories of the New York Convention.

Defendant alleges that the Court inadvertently found that an international agreement existed because Argentina did not accede to the convention until 1989; therefore, as between the United States and Argentina, the New York Convention was not in effect until 1989 and not an existing

2

Aldort 256

international agreement for purposes of the FSIA in October 1976 when the FSIA was enacted. Defendant has also filed an appeal to the Seventh Circuit, in which defendant argues that the Court's above finding was a legal error.

Rule 60(b) allows a party to move to relieve a party of a final judgment due to mistake or inadvertence. Fed. R. Civ. P. 60(b). A motion brought pursuant to Rule 60 alleging mistake or inadvertence must be filed within a reasonable time and not more than one year after the judgment. Fed. R. Civ. P. 60(b). However, courts have not construed "mistake or inadvertence" pursuant to Rule 60(b) as used by the defendants. For example, a mistake or inadvertence has been found where the court mistakenly dismissed pendent claims on the merits when the court actually intended to dismiss the pendent claims without prejudice, *Bank of California v. Arthur Anderson & Co.*, 709 F.2d 1174, 1178 (7th Cir. 1983), and where the court mistakenly dismissed the suit with prejudice when it intended to dismiss the suit without prejudice, *Wesco Prod. Co. v. Alloy Automotive Co.*, 880 F.2d 981, 985 (7th Cir. 1989).

Rule 59(e) also allows a party to move to alter or amend a judgment. A motion brought pursuant to Rule 59 must be filed no later than ten days after the entry of the judgment. Fed. R. Civ. P. 59(e). Alleged mistakes of law committed by a trial court are corrected through a motion for a new trial (Rule 59) or appeal, rather than Rule 60(b). *Parke-Chapley Const. Co. v. Cherrington*, 865 F.2d 907, 915 (7th Cir. 1989).

Here, defendant labels the Court's finding of an existing international agreement as an indavertance because Argentina had not acceded to the New York Convention until a date after the FSIA was enacted. However, defendant's argument is essentially that the court made a legal error in finding that an existing international agreement existed at the time the FSIA was enacted.

3

Defendant argues, for the first time, that both the United States and Argentina had to have acceded to the New York Convention to be "an existing international agreement[] to which the United States is a party at the time of enactment of this Act" under Section 1609 of the FSIA. Such argument represents a challenge to the correctness of legal findings of the Court, not a mere inadvertence by the Court. Therefore, defendant was required to request an amendment from the default judgment pursuant to Rule 59(e) within ten days of the issuance of the judgment and/or appeal the Court's judgment. Defendant failed to bring a motion under Rule 59(e) in a timely manner. Defendant did appeal the Court's ruling, which is presently pending before the Seventh Circuit, in which defendant makes the same *legal* argument.

Based on the above facts, defendant's Motion for Relief of Judgment Pursuant to FRCP 60(b) is untimely and is denied.

II. Motion to Quash Citation to Discover Assets

Defendant also seeks to quash plaintiff's citation to discover assets, alleging several fatal defects in the citation.

Defendant argues that the citation should be quashed because the citation does not indicate that it was issued by the clerk of the court as required by Illinois Civil Procedure and Illinois Supreme Court Rule 277.

Rule 69 of the Federal Rules of Civil Procedure provides, in pertinent part, that supplemental proceedings to enforce a judgment are to be made in accordance with the practice and procedure of the state in which the district court resides. Fed. R. Civ. P. 69. The Illinois Code of Civil Procedure requires that all "supplemental proceedings shall be commenced by the service of a citation issued by the clerk of the court..." 735 ILCS 5/2-1402. Illinois Supreme Court Rule 2777 provides, in

4

Aldort 258

pertinent part, that a supplemental proceeding is commenced by the service of a citation and the "clerk shall issue a citation upon oral request..."

Plaintiff filed the present citation with the Clerk of the United States District Court on September 5, 2001; and the citation contains the "received" stamp, date, and designation of the Clerk of the Court. The citation does not contain a designated signature/date line for the Clerk of Court or contain such a signature or seal of the Clerk's Office.

In support of its argument that merely filing the citation with the Clerk of the Court and not having the citation "issued" by the Clerk of the Court is improper, defendant has enclosed a copy of the form for the Citation to Discover Assets used in the Circuit Court of Cook County, Illinois. The form contains a signature line for the clerk of the court and an area designated for the clerk's seal. Defendant also avers through affidavit that the Intake Supervisor of the Clerk's Office of this Court informed defendant that a citation must be prepared in accordance with Illinois law and that for such citation to be issued by the Clerk's Office, it must contain a signature and date line for the Clerk of the Court. The Intake Supervisor informed defendant that when a citation is presented to the Clerk's Office, the clerk verifies the amount of the judgment, signs the citation, and places the embossed seal of court upon the document; then the original citation is returned to the party for proper service.

Section 5/2-1402 does not define the term "issue" and does not specify what constitutes an issuance. However, all writs and processes issued from United States courts "shall be made under seal of the court and signed by the clerk thereof." *See* 28 U.S.C. 1691. The Clerk of the Court also "issues" other documents. For example, the Clerk's Office issues a summons pursuant to Federal Rule of Civil Procedure 4. Rule 4(b), entitled "Issuance", states, in pertinent part:

the plaintiff may present a summons to the clerk for signature and

5

Aldort 259

seal. If the summons is in the proper form, the clerk shall sign, seal, and issue it to the plaintiff for service on the defendant.

Black's Law Dictionary defines "issue" as "[t]o put forth officially ... [t]o send out or distribute officially." Black's Law Dictionary 836 (7th ed.1999).

The issuance of a citation, as described by the Intake Supervisor, complies with the requirements for the issuance of a summons pursuant to federal statute and rule. Furthermore, requiring an indicia that the Clerk's Office did more than merely accept a filing; instead, demonstrating that the Clerk's Office reviewed, signed, and placed the Court's seal on the documents, is consistent with putting forth such document officially. *See* Black's Law Dictionary 836 (7th ed.1999). Accordingly, plaintiff, in the present case, was required to have the Clerk's Office issue the citation to discover assets. Such issuance included a review of the citation and a signature, date, and court seal, indicating that the citation was correct and "issued". Plaintiff failed to do so. Therefore, plaintiff's citation was not properly served, and defendant's Motion to Quash Citation To Discover assets is granted.

Furthermore, the Court's Rule to Show was issued because defendant failed to appear to the citation to discover assets. The citation was not properly served on defendant and, as stated above, is stricken. Accordingly, the rule to show cause is also stricken.

For the reasons stated above, defendant's Motion for Relief of Judgment Pursuant to Rule 60(b) is denied. Defendant's Motion to Quash Citation to Discover Assets is granted. The rule to show cause issued against defendant is stricken.

Dated:  11/27/01

JOHN W. DARRAH
United States District Judge

6

# Exhibit 17



July 25, 2017

Julie Rodriguez Aldort
Direct Dial: 312-696-4478
Direct Fax: 312-873-4382
jaldort@butlerrubin.com

**VIA HAND DELIVERY, PROCESS SERVER**

Jennifer Hammer, Director
Illinois Department of Insurance
122 South Michigan Avenue
19th Floor
Chicago, IL 60603

      Re:    Service of Judicial Documents on Unauthorized Foreign Reinsurer in Connection
              with *International Insurance Co.v. Caja Nacional de Ahorro y Seguro*,
              No. 00-cv-02189 (N.D. Ill. 2001)

Dear Director Hammer:

      On behalf of our client, TIG Insurance Company, successor in interest to the International Insurance Co., a corporation authorized to do business in Illinois, we hereby serve the attached judicial documents on you in your capacity as the designated agent for service for Caja Nacional de Ahorro y Seguro, an unauthorized foreign re-insurer that transacted business in Illinois with International Insurance Co. At all times relevant to the above-captioned court proceeding, Caja Nacional de Ahorro y Seguro was owned by the Republic of Argentina.

      The referenced court proceeding relates to two reinsurance contracts between Caja Nacional de Ahorro y Seguro, on the one hand, and International Insurance Company and International Surplus Lines (and other affiliated companies) on the other. True copies of those reinsurance contracts are attached hereto as Exhibit A.

      Article XX of both reinsurance contracts provides a special arrangement between the parties for the service of judicial documents upon foreign reinsurers such as Caja Nacional de Ahorro y Seguro, as follows:

      [P]ursuant to any statute of any state, territory, or district of the United States which makes provisions therefor, Reinsurers hereon designate the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Company or any beneficiary hereunder arising out of this Agreement of

BUTLER RUBIN SALTARELLI & BOYD LLP  321 NORTH CLARK STREET | SUITE 400 | CHICAGO, IL  60654 | TEL 312-444-9660 | WWW.BUTLERRUBIN.COM

Aldort 262

Jennifer Hammer
Department of Insurance
July 25, 2017
Page 2

reinsurance, and hereby designate the above-named as the person to whom said officer is
authorized to mail such process or a true copy thereof.

Further, Section 215 ILCS 5/123 of the Illinois Insurance Code provides that service of
judicial documents upon an unauthorized foreign company, such as Caja Nacional de Ahorro y
Seguro, shall be made upon the Director of the Department of Insurance.

Accordingly, by hand-delivery to your office by process server, and in accordance with
Illinois Insurance Code 215 ILCS 5/123, TIG Insurance Company, hereby serves Caja Nacional
de Ahorro y Seguro with a judgment and two orders of the United States District Court for the
Northern District of Illinois EASTERN DIVISION, Everett McKinley Dirksen United States
Courthouse, 219 South Dearborn Street, Chicago, IL 60604 in the case of *International
Insurance Co. v. Caja Nacional de Ahorro y Seguro*, No. 00-cv-02189 (N.D. Ill. 2001).

The three enclosed documents being served are as follows:

- Certified copy of Default Judgment (July 5, 2001);
- Certified copy of Sanctions Order (March 17, 2005);
- Certified copy of Court Order Reviving Default Judgment (Minute Entry to Court
  Docket) (July 11, 2014).

We ask that you send the service copies of the enclosed three documents to Caja
Nacional de Ahorro y Seguro by Federal Express and provide us with a copy of the tracking
number so that we can confirm delivery. If that is not possible, then we ask that you send the
service copies to Caja Nacional de Ahorro y Seguro by U.S. Mail, return-receipt-requested, and
that you send us a copy of the outer envelope showing how the documents were addressed and
showing the U.S. Mail receipt. Further, we ask that when you receive proof of service (from
Federal Express or the U.S. Postal Service) that you scan and send a copy to the undersigned at
the e-mail shown at the top of this letter.

We have two different addresses for Caja Nacional de Ahorro y Seguro and therefore
have included two identical sets of the service copies of the enclosed three documents; one set to
be addressed as follows:

Caja Nacional de Ahorro y Seguro c/o
Dr. Silvina Gonzalez Napolitano
National Directorate for International Affairs and Controversies
Office of the Treasury Attorney for the Nation
Posadas 1641 - CP1112
BUENOS AIRES
ARGENTINA

Jennifer Hammer
Department of Insurance
July 25, 2017
Page 3

    Caja Nacional de Ahorro y Seguro c/o
    Ministry of Economy and Public Finances
    Hipólito Yrigoyen 250
    C1086AAB BUENOS AIRES
    ARGENTINA

Sincerely,

Julie Rodriguez Aldort

Enclosures

546643

Aldort 264

# Affidavit of Process Server

*International Insurance* vs *Caja Nacional, et al*    *00CV6703*

Plaintiff/Petitioner — Defendant/Respondent — Case#

Being duly sworn, on my oath, I *Trinity McHatten*
declare that I am a citizen of the United States, over the age of eighteen and not a party to this action.

**Service:**     I served *Caja Nacional de Ahorro y Seguro*

NAME OF PERSON/ENTITY BEING SERVED

with the (documents)    □ Subpoena with $ _____ witness fee and mileage

*Letter, Clerk's Certification of a Judgment, to be Registered in Another District and Check # 21008 for $20, Motion for Default Judgment & Confirmation of Arbitration Award Robert J Planthold Asst General Counsel*

by serving (NAME)

at □ Home

☒ Business    *122 S. Michigan Ave. 19th FL    Chicago Il*

☒ on (DATE)   *7/25/17*     at (TIME) *2:27p*

Thereafter copies of the documents were mailed by prepaid, first class mail on (DATE) _____

From (CITY) _____ (STATE) _____

**Manner of Service:**

   □ By Personal Service

   ☒ By delivering, during office hours, copies at the office of the person/entity being served, leaving same with the person
     apparently in charge thereof, namely, *Robert Planthold: Asst Gen. Cons: Authorized to Accept Service*

   □ By leaving a copy at the defendant's usual place of abode, with some person of the family or a person
     residing there, of the age of 13 years or upwards, and informing that person of the general nature of the papers

   □ By posting copies in a conspicuous manner to the address of the person/entity being served.

**Non-Service:**   After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been
   unable to effect process upon the person/entity being served because of the following reason(s):

   □ Unknown at Address    □ Evading    □ Other: _____
   □ Address does not exist    □ Service cancelled by litigant
   □ Moved, Left no forwarding    □ Unable to serve in a timely fashion

**Service Attempts:**   Service was attempted on: ( ) _____ ,( ) _____ ,( ) _____

| | DATE | TIME | | DATE | TIME | | DATE | TIME |
|---|---|---|---|---|---|---|---|---|
| ( ) | | | ,( ) | | | ,( ) | | |
| DATE | TIME | | DATE | TIME | | DATE | TIME | |

**Description:**

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ Male | ☒ White Skin | □ Black Hair | □ White Hair | □ 14-20 Yrs. | □ Under 5' | □ Under 100 Lbs. |
| □ Female | □ Black Skin | ☒ Brown Hair | □ Balding | □ 21-35 Yrs. | □ 5'-5'3" | □ 100-130 Lbs. |
| | □ Brown Skin | □ Blond Hair | | ☒ 36-50 Yrs. | □ 5'4"-5'8" | □ 131-160 Lbs. |
| □ Glasses | □ Yellow Skin | □ Gray Hair | □ Mustache | □ 51-65 Yrs. | □ 5'9"-6' | ☒ 161-200 Lbs. |
| | □ Red Skin | □ Red Hair | □ Beard | □ Over 65 Yrs. | ☒ Over 6' | □ Over 200 Lbs. |

OTHER IDENTIFYING FEATURES:

State of Illinois   County of Cook

Subscribed and sworn to before me
A notary public, this *25* day of *July* 20___

Notary Public _____

SERVED BY
LASALLE PROCESS SERVERS
ILLINOIS PRIVATE DETECTIVE LICENSE# 117-001432

OFFICIAL SEAL
ANDREW RAPHAEL
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES

CHARTER MEMBER NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS

# Exhibit 18

Aldort 266

# **<u>EXHIBIT 3</u>**



BUTLER RUBIN

July 1, 2016

Julie Rodriguez Aldort
Direct Dial: 312-696-4478
Direct Fax: 312-873-4382
jaldort@butlerrubin.com

**VIA HAND DELIVERY AND ELECTRONIC MAIL**

INSTITUTO NACIONAL DE REASEGUROS S.E. (en liquidación) - INDER
Sr. Contador Miguel Ángel Melillo, Liquidador
Av. Julio Argentino Roca 694, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

Dirección Nacional de Normalización Patrimonial
MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
Sr. Director Ingeniero Guillermo Mardarás
Pte. Hipólito Yrigoyen 250, Piso 6º, Of. 629, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

> Re:    In the Matter of the Arbitration Between TIG Insurance Company (as successor to
>         International Insurance Company) and Caja Nacional De Ahorro y Seguro

Dear Messrs. Melillo and Mardarás:

    This firm represents TIG Insurance Company ("TIG"), as successor by merger to
International Insurance Company ("IIC") and International Surplus Lines Insurance Company,
with respect to two reinsurance agreements between TIG and Caja Nacional de Ahorro y Seguro
("Caja"): the Casualty Reinsurance Agreement, effective January 1979 ("First Casualty
Excess"), and the Casualty Excess Reinsurance Agreement, effective March 1979 ("Second
Casualty Excess") (collectively, the "Reinsurance Agreements"). Copies of the Reinsurance
Agreements are enclosed. Pursuant to the arbitration clauses contained in each of the
agreements, TIG hereby demands arbitration against Caja to resolve TIG's right to
reimbursement for, and Caja's obligation to pay, the amounts listed below:

Aldort 268

July 1, 2016
Page 2

| Agreement | Treaty Term | Balance Past Due |
|---|---|---|
| First Casualty Excess | 01/01/79-12/31/83 | $114,401 |
| Second Casualty Excess | 03/15/79-12/31/81 | $2,084,310 |
| **TOTAL AMOUNT DUE** | | $2,198,711 |

This demand is directed to Instituto Nacional de Reaseguros ("INdeR") as the administrator of the reinsurance business and liquidation of Caja and as the entity to which Caja's business was transferred for such purposes.

TIG will seek an order from the arbitration panel requiring Caja to comply with its obligations under the Reinsurance Agreements, including payment of the amounts past due, plus interest, costs, and attorneys' fees. In addition, pursuant to Article XVI of the Reinsurance Agreements, TIG will seek from Caja a letter of credit sufficient to cover the future amounts due under the Reinsurance Agreements.

TIG suggests that the parties agree to have this dispute heard in a single, consolidated proceeding. Should Caja insist, however, on a separate arbitration under each agreement, then this letter constitutes a demand for a separate arbitration under each agreement.

TIG hereby appoints Daniel E. Schmidt IV as its arbitrator, whether in a consolidated proceeding or in separate proceedings. A copy of Mr. Schmidt's biography is enclosed. Mr. Schmidt can be reached at:

> Daniel E. Schmidt IV
> 628 Little Silver Point
> Little Silver, New Jersey 07739
> 480-284-6775
> dan@des4adr.com

Pursuant to the Reinsurance Agreements, TIG demands that Caja appoint an arbitrator within thirty (30) days of receipt of this demand. If Caja fails to appoint an arbitrator, TIG will exercise its right to appoint a second arbitrator.

The disputed rights and obligations at issue in this demand are in addition to and separate from those amounts previously awarded to TIG by an arbitration panel in the Final Award dated October 17, 2000, which was subsequently confirmed by the United States Federal District Court in July 2001 and affirmed by the United States Seventh Circuit Court of Appeals in June 2002.

July 1, 2016
Page 3

Please direct all future correspondence to the undersigned.

Regards,

Julie Rodriguez Aldort

cc:    Subsecretaría de Administración y Normalización Patrimonial
       MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
       Sr. Subsecretario Guillermo García Eleisequi
       Pte. Hipólito Yrigoyen 250, Piso 5°, Of. 529, Ciudad Autónoma de Buenos Aires
       ARGENTINA

       Secretaría  Legal y Administrativa
       MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
       Sr. Secretario Dr. Marcelo Eugenio Griffi
       Pte. Hipólito Yrigoyen 250, 5°, Of 506, Ciudad Autónoma de Buenos Aires
       ARGENTINA

       PROCURACIÓN DEL TESORO DE LA NACIÓN
       Sr. Procurador General: Dr. Carlos Francisco Balbín
       Posadas 1641, Ciudad Autónoma de Buenos Aires
       ARGENTINA

       PROCURACIÓN DEL TESORO DE LA NACIÓN
       Dirección Nacional de Asuntos y Controversias Internacionales (DNACI)
       Directora Dra. Silvina González Napolitano
       Posadas 1641, Ciudad Autónoma de Buenos Aires
       ARGENTINA



July 1, 2016
Page 4


      David Guy (*via electronic mail*)
      RiverStone Management Ltd
      No. 2 Minster Court
      Mincing Lane
      London
      EC3R 7BB
      UK
      david.guy@rsml.co.uk

      Locke Lord (as successor to Lord Bissell & Brook) (*via certified mail*)
      111 South Wacker Drive, Suite 4100
      Chicago, IL 60606
      USA

      Illinois Secretary of State (*via certified mail*)
      State of Illinois Center
      100 West Randolph Street
      Chicago, IL 60601


Enclosures

 

July 1, 2016

Julie Rodriguez Aldort
Direct Dial: 312-696-4478
Direct Fax: 312-873-4382
jaldort@butlerrubin.com

**VIA HAND DELIVERY AND ELECTRONIC MAIL**

INSTITUTO NACIONAL DE REASEGUROS S.E. (en liquidación) - INDER
Sr. Contador Miguel Ángel Melillo, Liquidador
Av. Julio Argentino Roca 694, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

Dirección Nacional de Normalización Patrimonial
MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
Sr. Director Ingeniero Guillermo Mardarás
Pte. Hipólito Yrigoyen 250, Piso 6º, Of. 629, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

> Re:   In the Matter of the Arbitration Between TIG Insurance Company (as successor to
> International Insurance Company) and Caja Nacional De Ahorro y Seguro

Dear Messrs. Melillo and Mardarás:

This firm represents TIG Insurance Company ("TIG"), as successor by merger to
International Insurance Company ("IIC") and International Surplus Lines Insurance Company,
with respect to two reinsurance agreements between TIG and Caja Nacional de Ahorro y Seguro
("Caja"): the Casualty Reinsurance Agreement, effective January 1979 ("First Casualty
Excess"), and the Casualty Excess Reinsurance Agreement, effective March 1979 ("Second
Casualty Excess") (collectively, the "Reinsurance Agreements"). Copies of the Reinsurance
Agreements are enclosed. Pursuant to the arbitration clauses contained in each of the
agreements, TIG hereby demands arbitration against Caja to resolve TIG's right to
reimbursement for, and Caja's obligation to pay, the amounts listed below:

0 1 JUL 2016

Aldort 272

July 1, 2016
Page 2

| Agreement | Treaty Term | Balance Past Due |
|---|---|---|
| First Casualty Excess | 01/01/79-12/31/83 | $114,401 |
| Second Casualty Excess | 03/15/79-12/31/81 | $2,084,310 |
| **TOTAL AMOUNT DUE** | | **$2,198,711** |

This demand is directed to Instituto Nacional de Reaseguros ("INdeR") as the administrator of the reinsurance business and liquidation of Caja and as the entity to which Caja's business was transferred for such purposes.

TIG will seek an order from the arbitration panel requiring Caja to comply with its obligations under the Reinsurance Agreements, including payment of the amounts past due, plus interest, costs, and attorneys' fees. In addition, pursuant to Article XVI of the Reinsurance Agreements, TIG will seek from Caja a letter of credit sufficient to cover the future amounts due under the Reinsurance Agreements.

TIG suggests that the parties agree to have this dispute heard in a single, consolidated proceeding. Should Caja insist, however, on a separate arbitration under each agreement, then this letter constitutes a demand for a separate arbitration under each agreement.

TIG hereby appoints Daniel E. Schmidt IV as its arbitrator, whether in a consolidated proceeding or in separate proceedings. A copy of Mr. Schmidt's biography is enclosed. Mr. Schmidt can be reached at:

Daniel E. Schmidt IV
628 Little Silver Point
Little Silver, New Jersey 07739
480-284-6775
dan@des4adr.com

Pursuant to the Reinsurance Agreements, TIG demands that Caja appoint an arbitrator within thirty (30) days of receipt of this demand. If Caja fails to appoint an arbitrator, TIG will exercise its right to appoint a second arbitrator.

The disputed rights and obligations at issue in this demand are in addition to and separate from those amounts previously awarded to TIG by an arbitration panel in the Final Award dated October 17, 2000, which was subsequently confirmed by the United States Federal District Court in July 2001 and affirmed by the United States Seventh Circuit Court of Appeals in June 2002.

July 1, 2016
Page 3

Please direct all future correspondence to the undersigned.

Regards,

Julie Rodriguez Aldort

cc:   Subsecretaría de Administración y Normalización Patrimonial
      MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
      Sr. Subsecretario Guillermo García Eleisegui
      Pte. Hipólito Yrigoyen 250, Piso 5°, Of. 529, Ciudad Autónoma de Buenos Aires
      ARGENTINA

      Secretaría Legal y Administrativa
      MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
      Sr. Secretario Dr. Marcelo Eugenio Griffi
      Pte. Hipólito Yrigoyen 250, 5°, Of 506, Ciudad Autónoma de Buenos Aires
      ARGENTINA

      PROCURACIÓN DEL TESORO DE LA NACIÓN
      Sr. Procurador General: Dr. Carlos Francisco Balbín
      Posadas 1641, Ciudad Autónoma de Buenos Aires
      ARGENTINA

      PROCURACIÓN DEL TESORO DE LA NACIÓN
      Dirección Nacional de Asuntos y Controversias Internacionales (DNACI)
      Directora Dra. Silvina González Napolitano
      Posadas 1641, Ciudad Autónoma de Buenos Aires
      ARGENTINA

Aldort 274

July 1, 2016
Page 4


David Guy (*via electronic mail*)
RiverStone Management Ltd
No. 2 Minster Court
Mincing Lane
London
EC3R 7BB
UK
david.guy@rsml.co.uk

Locke Lord (as successor to Lord Bissell & Brook) (*via certified mail*)
111 South Wacker Drive, Suite 4100
Chicago, IL 60606
USA

Illinois Secretary of State (*via certified mail*)
State of Illinois Center
100 West Randolph Street
Chicago, IL 60601


Enclosures



BUTLER RUBIN

July 1, 2016

Julie Rodriguez Aldort
Direct Dial: 312-696-4478
Direct Fax: 312-873-4382
jaldort@butlerrubin.com

**VIA HAND DELIVERY AND ELECTRONIC MAIL**

INSTITUTO NACIONAL DE REASEGUROS S.E. (en liquidación) - INDER
Sr. Contador Miguel Ángel Melillo, Liquidador
Av. Julio Argentino Roca 694, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

Dirección Nacional de Normalización Patrimonial
MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
Sr. Director Ingeniero Guillermo Mardarás
Pte. Hipólito Yrigoyen 250, Piso 6°, Of. 629, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

> Re:    In the Matter of the Arbitration Between TIG Insurance Company (as successor to
> International Insurance Company) and Caja Nacional De Ahorro y Seguro

Dear Messrs. Melillo and Mardarás:

This firm represents TIG Insurance Company ("TIG"), as successor by merger to International Insurance Company ("IIC") and International Surplus Lines Insurance Company, with respect to two reinsurance agreements between TIG and Caja Nacional de Ahorro y Seguro ("Caja"): the Casualty Reinsurance Agreement, effective January 1979 ("First Casualty Excess"), and the Casualty Excess Reinsurance Agreement, effective March 1979 ("Second Casualty Excess") (collectively, the "Reinsurance Agreements"). Copies of the Reinsurance Agreements are enclosed. Pursuant to the arbitration clauses contained in each of the agreements, TIG hereby demands arbitration against Caja to resolve TIG's right to reimbursement for, and Caja's obligation to pay, the amounts listed below:

Aldort 276

July 1, 2016
Page 2

| Agreement | Treaty Term | Balance Past Due |
|---|---|---|
| First Casualty Excess | 01/01/79-12/31/83 | $114,401 |
| Second Casualty Excess | 03/15/79-12/31/81 | $2,084,310 |
| **TOTAL AMOUNT DUE** | | **$2,198,711** |

This demand is directed to Instituto Nacional de Reaseguros ("INdeR") as the administrator of the reinsurance business and liquidation of Caja and as the entity to which Caja's business was transferred for such purposes.

TIG will seek an order from the arbitration panel requiring Caja to comply with its obligations under the Reinsurance Agreements, including payment of the amounts past due, plus interest, costs, and attorneys' fees. In addition, pursuant to Article XVI of the Reinsurance Agreements, TIG will seek from Caja a letter of credit sufficient to cover the future amounts due under the Reinsurance Agreements.

TIG suggests that the parties agree to have this dispute heard in a single, consolidated proceeding. Should Caja insist, however, on a separate arbitration under each agreement, then this letter constitutes a demand for a separate arbitration under each agreement.

TIG hereby appoints Daniel E. Schmidt IV as its arbitrator, whether in a consolidated proceeding or in separate proceedings. A copy of Mr. Schmidt's biography is enclosed. Mr. Schmidt can be reached at:

Daniel E. Schmidt IV
628 Little Silver Point
Little Silver, New Jersey 07739
480-284-6775
dan@des4adr.com

Pursuant to the Reinsurance Agreements, TIG demands that Caja appoint an arbitrator within thirty (30) days of receipt of this demand. If Caja fails to appoint an arbitrator, TIG will exercise its right to appoint a second arbitrator.

The disputed rights and obligations at issue in this demand are in addition to and separate from those amounts previously awarded to TIG by an arbitration panel in the Final Award dated October 17, 2000, which was subsequently confirmed by the United States Federal District Court in July 2001 and affirmed by the United States Seventh Circuit Court of Appeals in June 2002.

July 1, 2016
Page 3

Please direct all future correspondence to the undersigned.

Regards,

Julie Rodriguez Aldort

cc:   Subsecretaría de Administración y Normalización Patrimonial
      MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
      Sr. Subsecretario Guillermo García Eleisequi
      Pte. Hipólito Yrigoyen 250, Piso 5°, Of. 529, Ciudad Autónoma de Buenos Aires
      ARGENTINA

      Secretaría Legal y Administrativa
      MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
      Sr. Secretario Dr. Marcelo Eugenio Griffi
      Pte. Hipólito Yrigoyen 250, 5°, Of 506, Ciudad Autónoma de Buenos Aires
      ARGENTINA

      PROCURACIÓN DEL TESORO DE LA NACIÓN
      Sr. Procurador General: Dr. Carlos Francisco Balbín
      Posadas 1641, Ciudad Autónoma de Buenos Aires
      ARGENTINA

      PROCURACIÓN DEL TESORO DE LA NACIÓN
      Dirección Nacional de Asuntos y Controversias Internacionales (DNACI)
      Directora Dra. Silvina González Napolitano
      Posadas 1641, Ciudad Autónoma de Buenos Aires
      ARGENTINA

July 1, 2016
Page 4


David Guy (*via electronic mail*)
RiverStone Management Ltd
No. 2 Minster Court
Mincing Lane
London
EC3R 7BB
UK
david.guy@rsml.co.uk

Locke Lord (as successor to Lord Bissell & Brook) (*via certified mail*)
111 South Wacker Drive, Suite 4100
Chicago, IL 60606
USA

Illinois Secretary of State (*via certified mail*)
State of Illinois Center
100 West Randolph Street
Chicago, IL 60601


Enclosures

 BUTLER RUBIN

1° de julio, 2016

Julie Rodriguez Aldort
Direct Dial: 312-696-4478
Direct Fax: 312-873-4382
jaldort@butlerrubin.com

**MEDIANTE ENTREGA DIRECTA Y CORREO ELECTRÓNICO**

INSTITUTO NACIONAL DE REASEGUROS S.E. (en liquidación) - INDER
Sr. Contador Miguel Ángel Melillo, Liquidador
Av. Julio Argentino Roca 694, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

Dirección Nacional de Normalización Patrimonial
MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
Sr. Director Ingeniero Guillermo Mardarás
Pte. Hipólito Yrigoyen 250, Piso 6°, Of. 629, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

> Ref.: Arbitraje entre TIG Insurance Company (como continuadora de International Insurance Company) y Caja Nacional de Ahorro y Seguro

Estimados Sres. Melillo y Mardarás:

Este estudio representa a TIG Insurance Company ("TIG"), como continuadora a causa de fusión con International Insurance Company ("IIC") e International Surplus Lines Insurance Company, respecto de dos contratos de reaseguro entre TIG y Caja Nacional de Ahorro y Seguro ("Caja"): el Contrato de Reaseguro por Daños, vigente desde julio de 1979 ("*First Casualty Excess*") y el Contrato de Reaseguro por Daños Excedentes, vigente desde marzo de 1979 ("*Second Casualty Excess*") (conjuntamente, los "Acuerdos de Reaseguro"). Se acompañan copias de los Acuerdos de Reaseguro. Conforme las cláusulas arbitrales presentes en cada uno de los acuerdos, TIG exige un arbitraje contra Caja para resolver acerca del derecho de TIG a reembolso, y la consecuente obligación de Caja de pagar, las sumas detalladas a continuación:

MINISTERIO DE HACIENDA
Y FINANZAS PÚBLICAS
1 JUL 2016

BUTLER RUBIN SALTARELLI & BOYD LLP  321 NORTH CLARK STREET | SUITE 400 | CHICAGO, IL  60654 | TEL 312-444-9660 | WWW.BUTLERRUBIN.COM

Aldort 280

1 de julio, 2016
Página 2

| Acuerdo | Plazo | Suma adeudada |
|---|---|---|
| First Casualty Excess | 01/01/79-12/31/83 | US$114,401 |
| Second Casualty Excess | 03/15/79-12/31/81 | US$2,084,310 |
| **TOTAL ADEUDADO** | | **US$2,198,711** |

Esta demanda está dirigida al Instituto Nacional de Reaseguros ("INdeR") como administrador del negocio de reaseguro y la liquidación de Caja y como la entidad a la que se le transfirió el giro de la Caja a tales fines.

Es la pretensión de TIG obtener una orden del tribunal arbitral que requiera a Caja cumplir con sus obligaciones emergentes de los Acuerdos de Reaseguro, incluidos el pago de sumas adeudadas, más intereses, costos y costas. Adicionalmente, en virtud de la Cláusula XVI de los Acuerdos de Reaseguro, TIG buscará obtener de Caja una carta de crédito que sea suficiente para cubrir futuras sumas adeudadas en virtud de los Contratos de Reaseguro.

TIG sugiere que las partes convengan que esta disputa sea tratara en un proceso único y consolidado. Sin embargo, para el caso en que Caja insista en tratar los arbitrajes por cada acuerdo separadamente, esta carta constituye una demanda para arbitrajes separados para cada acuerdo.

TIG por medio de la presente designa a Daniel E. Schmidt IV como su árbitro, sea en un proceso consolidado o en procesos separados. Se acompaña una copia de la biografía del Sr. Schmidt, cuyos datos de contacto son:

Daniel E. Schmidt IV
628 Little Silver Point
Little Silver, New Jersey 07739
480-284-6775
dan@des4adr.com

Conforme los Acuerdos de Reaseguro, TIG exige que Caja designe un árbitro en el plazo de treinta (30) días de recibida esta demanda. Si Caja no lo hiciere, TIG ejercerá su derecho a designar un segundo árbitro.

Los derechos y obligaciones en pugna de la presente demanda son adicionales e independientes de las sumas que fueran reconocidas a TIG por un panel arbitral en el Laudo Final de fecha 17 de octubre de 2000, que fuera subsecuentemente confirmado por el Tribunal De Distrito Federal de los Estados Unidos en julio de 2001 y reafirmado por el Tribual de Apelaciones del Séptimo Circuito de los Estados Unidos en junio de 2002.

Aldort 281

1 de julio, 2016
Página 3

Por favor, dirigir toda la correspondencia futura a la suscripta.

Saludos,



Julie Rodriguez Aldort

cc:   Subsecretaría de Administración y Normalización Patrimonial
      MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
      Sr. Subsecretario Guillermo García Eleisequi
      Pte. Hipólito Yrigoyen 250, Piso 5°, Of. 529, Ciudad Autónoma de Buenos Aires
      ARGENTINA

      Secretaría Legal y Administrativa
      MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
      Sr. Secretario Dr. Marcelo Eugenio Griffi
      Pte. Hipólito Yrigoyen 250, 5°, Of 506, Ciudad Autónoma de Buenos Aires
      ARGENTINA

      PROCURACIÓN DEL TESORO DE LA NACIÓN
      Sr. Procurador General: Dr. Carlos Francisco Balbín
      Posadas 1641, Ciudad Autónoma de Buenos Aires
      ARGENTINA

      PROCURACIÓN DEL TESORO DE LA NACIÓN
      Dirección Nacional de Asuntos y Controversias Internacionales (DNACI)
      Directora Dra. Silvina González Napolitano
      Posadas 1641, Ciudad Autónoma de Buenos Aires
      ARGENTINA

1  de julio, 2016
Página 4


David Guy (*mediante correo electrónico*)
RiverStone Management Ltd
No. 2 Minster Court
Mincing Lane
Londres
EC3R 7BB
Reino Unido
david.guy@rsml.co.uk

Locke Lord (como continuadora de Lord Bissell & Brook) (*mediante correo certificado*)
111 South Wacker Drive, Suite 4100
Chicago, Illinois 60606
Estados Unidos

Secretaría de Estado de Illinois (*mediante correo certificado*)
State of Illinois Center
100 West Randolph Street
Chicago, Illinois 60601



BUTLER RUBIN

July 1, 2016

Julie Rodriguez Aldort
Direct Dial: 312-696-4478
Direct Fax: 312-873-4382
jaldort@butlerrubin.com

<u>VIA HAND DELIVERY AND ELECTRONIC MAIL</u>

INSTITUTO NACIONAL DE REASEGUROS S.E. (en liquidación) - INDER
Sr. Contador Miguel Ángel Melillo, Liquidador
Av. Julio Argentino Roca 694, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

Dirección Nacional de Normalización Patrimonial
MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
Sr. Director Ingeniero Guillermo Mardarás
Pte. Hipólito Yrigoyen 250, Piso 6º, Of. 629, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

> Re:   In the Matter of the Arbitration Between TIG Insurance Company (as successor to
> International Insurance Company) and Caja Nacional De Ahorro y Seguro

Dear Messrs. Melillo and Mardarás:

This firm represents TIG Insurance Company ("TIG"), as successor by merger to
International Insurance Company ("IIC") and International Surplus Lines Insurance Company,
with respect to two reinsurance agreements between TIG and Caja Nacional de Ahorro y Seguro
("Caja"):  the Casualty Reinsurance Agreement, effective January 1979 ("First Casualty
Excess"), and the Casualty Excess Reinsurance Agreement, effective March 1979 ("Second
Casualty Excess") (collectively, the "Reinsurance Agreements").   Copies of the Reinsurance
Agreements are enclosed.   Pursuant to the arbitration clauses contained in each of the
agreements, TIG hereby demands arbitration against Caja to resolve TIG's right to
reimbursement for, and Caja's obligation to pay, the amounts listed below:

Aldort 284

July 1, 2016
Page 2

| Agreement | Treaty Term | Balance Past Due |
|---|---|---|
| First Casualty Excess | 01/01/79-12/31/83 | $114,401 |
| Second Casualty Excess | 03/15/79-12/31/81 | $2,084,310 |
| **TOTAL AMOUNT DUE** | | $2,198,711 |

This demand is directed to Instituto Nacional de Reaseguros ("INdeR") as the administrator of the reinsurance business and liquidation of Caja and as the entity to which Caja's business was transferred for such purposes.

TIG will seek an order from the arbitration panel requiring Caja to comply with its obligations under the Reinsurance Agreements, including payment of the amounts past due, plus interest, costs, and attorneys' fees. In addition, pursuant to Article XVI of the Reinsurance Agreements, TIG will seek from Caja a letter of credit sufficient to cover the future amounts due under the Reinsurance Agreements.

TIG suggests that the parties agree to have this dispute heard in a single, consolidated proceeding. Should Caja insist, however, on a separate arbitration under each agreement, then this letter constitutes a demand for a separate arbitration under each agreement.

TIG hereby appoints Daniel E. Schmidt IV as its arbitrator, whether in a consolidated proceeding or in separate proceedings. A copy of Mr. Schmidt's biography is enclosed. Mr. Schmidt can be reached at:

Daniel E. Schmidt IV
628 Little Silver Point
Little Silver, New Jersey 07739
480-284-6775
dan@des4adr.com

Pursuant to the Reinsurance Agreements, TIG demands that Caja appoint an arbitrator within thirty (30) days of receipt of this demand. If Caja fails to appoint an arbitrator, TIG will exercise its right to appoint a second arbitrator.

The disputed rights and obligations at issue in this demand are in addition to and separate from those amounts previously awarded to TIG by an arbitration panel in the Final Award dated October 17, 2000, which was subsequently confirmed by the United States Federal District Court in July 2001 and affirmed by the United States Seventh Circuit Court of Appeals in June 2002.

Aldort 285

July 1, 2016
Page 3

Please direct all future correspondence to the undersigned.

Regards,

Julie Rodriguez Aldort

cc:    Subsecretaría de Administración y Normalización Patrimonial
       MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
       Sr. Subsecretario Guillermo García Eleisequi
       Pte. Hipólito Yrigoyen 250, Piso 5°, Of. 529, Ciudad Autónoma de Buenos Aires
       ARGENTINA

       Secretaría Legal y Administrativa
       MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
       Sr. Secretario Dr. Marcelo Eugenio Griffi
       Pte. Hipólito Yrigoyen 250, 5°, Of 506, Ciudad Autónoma de Buenos Aires
       ARGENTINA

       PROCURACIÓN DEL TESORO DE LA NACIÓN
       Sr. Procurador General: Dr. Carlos Francisco Balbín
       Posadas 1641, Ciudad Autónoma de Buenos Aires
       ARGENTINA

       PROCURACIÓN DEL TESORO DE LA NACIÓN
       Dirección Nacional de Asuntos y Controversias Internacionales (DNACI)
       Directora Dra. Silvina González Napolitano
       Posadas 1641, Ciudad Autónoma de Buenos Aires
       ARGENTINA

July 1, 2016
Page 4


     David Guy (*via electronic mail*)
     RiverStone Management Ltd
     No. 2 Minster Court
     Mincing Lane
     London
     EC3R 7BB
     UK
     david.guy@rsml.co.uk

     Locke Lord (as successor to Lord Bissell & Brook) (*via certified mail*)
     111 South Wacker Drive, Suite 4100
     Chicago, IL 60606
     USA

     Illinois Secretary of State (*via certified mail*)
     State of Illinois Center
     100 West Randolph Street
     Chicago, IL 60601


Enclosures

 BUTLER RUBIN

1° de julio, 2016

Julie Rodriguez Aldort
Direct Dial: 312-696-4478
Direct Fax: 312-873-4382
jaldort@butlerrubin.com

**MEDIANTE ENTREGA DIRECTA Y CORREO ELECTRÓNICO**

INSTITUTO NACIONAL DE REASEGUROS S.E. (en liquidación) - INDER
Sr. Contador Miguel Ángel Melillo, Liquidador
Av. Julio Argentino Roca 694, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

Dirección Nacional de Normalización Patrimonial
MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
Sr. Director Ingeniero Guillermo Mardarás
Pte. Hipólito Yrigoyen 250, Piso 6º, Of. 629, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

> Ref.:  Arbitraje entre TIG Insurance Company (como continuadora de International Insurance Company) y Caja Nacional de Ahorro y Seguro

Estimados Sres. Melillo y Mardarás:

Este estudio representa a TIG Insurance Company ("TIG"), como continuadora a causa de fusión con International Insurance Company ("IIC") e International Surplus Lines Insurance Company, respecto de dos contratos de reaseguro entre TIG y Caja Nacional de Ahorro y Seguro ("Caja"): el Contrato de Reaseguro por Daños, vigente desde julio de 1979 ("*First Casualty Excess*") y el Contrato de Reaseguro por Daños Excedentes, vigente desde marzo de 1979 ("*Second Casualty Excess*") (conjuntamente, los "Acuerdos de Reaseguro"). Se acompañan copias de los Acuerdos de Reaseguro. Conforme las cláusulas arbitrales presentes en cada uno de los acuerdos, TIG exige un arbitraje contra Caja para resolver acerca del derecho de TIG a reembolso, y la consecuente obligación de Caja de pagar, las sumas detalladas a continuación:

Aldort 288

1 de julio, 2016
Página 2

| Acuerdo | Plazo | Suma adeudada |
|---|---|---|
| First Casualty Excess | 01/01/79-12/31/83 | US$114,401 |
| Second Casualty Excess | 03/15/79-12/31/81 | US$2,084,310 |
| **TOTAL ADEUDADO** | | **US$2,198,711** |

Esta demanda está dirigida al Instituto Nacional de Reaseguros ("INdeR") como administrador del negocio de reaseguro y la liquidación de Caja y como la entidad a la que se le transfirió el giro de la Caja a tales fines.

Es la pretensión de TIG obtener una orden del tribunal arbitral que requiera a Caja cumplir con sus obligaciones emergentes de los Acuerdos de Reaseguro, incluidos el pago de sumas adeudadas, más intereses, costos y costas. Adicionalmente, en virtud de la Cláusula XVI de los Acuerdos de Reaseguro, TIG buscará obtener de Caja una carta de crédito que sea suficiente para cubrir futuras sumas adeudadas en virtud de los Contratos de Reaseguro.

TIG sugiere que las partes convengan que esta disputa sea tratara en un proceso único y consolidado. Sin embargo, para el caso en que Caja insista en tratar los arbitrajes por cada acuerdo separadamente, esta carta constituye una demanda para arbitrajes separados para cada acuerdo.

TIG por medio de la presente designa a Daniel E. Schmidt IV como su árbitro, sea en un proceso consolidado o en procesos separados. Se acompaña una copia de la biografía del Sr. Schmidt, cuyos datos de contacto son:

Daniel E. Schmidt IV
628 Little Silver Point
Little Silver, New Jersey 07739
480-284-6775
dan@des4adr.com

Conforme los Acuerdos de Reaseguro, TIG exige que Caja designe un árbitro en el plazo de treinta (30) días de recibida esta demanda. Si Caja no lo hiciere, TIG ejercerá su derecho a designar un segundo árbitro.

Los derechos y obligaciones en pugna de la presente demanda son adicionales e independientes de las sumas que fueran reconocidas a TIG por un panel arbitral en el Laudo Final de fecha 17 de octubre de 2000, que fuera subsecuentemente confirmado por el Tribunal De Distrito Federal de los Estados Unidos en julio de 2001 y reafirmado por el Tribual de Apelaciones del Séptimo Circuito de los Estados Unidos en junio de 2002.

1 de julio, 2016
Página 3

Por favor, dirigir toda la correspondencia futura a la suscripta.

Saludos,



Julie Rodríguez Aldort

cc:     Subsecretaría de Administración y Normalización Patrimonial
        MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
        Sr. Subsecretario Guillermo García Eleisequi
        Pte. Hipólito Yrigoyen 250, Piso 5°, Of. 529, Ciudad Autónoma de Buenos Aires
        ARGENTINA

        Secretaría Legal y Administrativa
        MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
        Sr. Secretario Dr. Marcelo Eugenio Griffi
        Pte. Hipólito Yrigoyen 250, 5°, Of 506, Ciudad Autónoma de Buenos Aires
        ARGENTINA

        PROCURACIÓN DEL TESORO DE LA NACIÓN
        Sr. Procurador General: Dr. Carlos Francisco Balbín
        Posadas 1641, Ciudad Autónoma de Buenos Aires
        ARGENTINA

        PROCURACIÓN DEL TESORO DE LA NACIÓN
        Dirección Nacional de Asuntos y Controversias Internacionales (DNACI)
        Directora Dra. Silvina González Napolitano
        Posadas 1641, Ciudad Autónoma de Buenos Aires
        ARGENTINA

1 de julio, 2016
Página 4


David Guy (*mediante correo electrónico*)
RiverStone Management Ltd
No. 2 Minster Court
Mincing Lane
Londres
EC3R 7BB
Reino Unido
david.guy@rsml.co.uk

Locke Lord (como continuadora de Lord Bissell & Brook) (*mediante correo certificado*)
111 South Wacker Drive, Suite 4100
Chicago, Illinois 60606
Estados Unidos

Secretaría de Estado de Illinois (*mediante correo certificado*)
State of Illinois Center
100 West Randolph Street
Chicago, Illinois 60601

Aldort 291

 BUTLER RUBIN

July 1, 2016

Julie Rodriguez Aldort
Direct Dial: 312-696-4478
Direct Fax: 312-873-4582
jaldort@butlerrubin.com

VIA HAND DELIVERY AND ELECTRONIC MAIL

INSTITUTO NACIONAL DE REASEGUROS S.E. (en liquidación) - INDER
Sr. Contador Miguel Ángel Melillo, Liquidador
Av. Julio Argentino Roca 694, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

Dirección Nacional de Normalización Patrimonial
MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
Sr. Director Ingeniero Guillermo Mardarás
Pte. Hipólito Yrigoyen 250, Piso 6º, Of. 629, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

> Re:   In the Matter of the Arbitration Between TIG Insurance Company (as successor to
>       International Insurance Company) and Caja Nacional De Ahorro y Seguro

Dear Messrs. Melillo and Mardarás:

This firm represents TIG Insurance Company ("TIG"), as successor by merger to
International Insurance Company ("IIC") and International Surplus Lines Insurance Company,
with respect to two reinsurance agreements between TIG and Caja Nacional de Ahorro y Seguro
("Caja"):  the Casualty Reinsurance Agreement, effective January 1979 ("First Casualty
Excess"), and the Casualty Excess Reinsurance Agreement, effective March 1979 ("Second
Casualty Excess") (collectively, the "Reinsurance Agreements").  Copies of the Reinsurance
Agreements are enclosed.  Pursuant to the arbitration clauses contained in each of the
agreements, TIG hereby demands arbitration against Caja to resolve TIG's right to
reimbursement for, and Caja's obligation to pay, the amounts listed below:

Aldort 292

July 1, 2016
Page 2

| Agreement | Treaty Term | Balance Past Due |
|---|---|---|
| First Casualty Excess | 01/01/79-12/31/83 | $114,401 |
| Second Casualty Excess | 03/15/79-12/31/81 | $2,084,310 |
| TOTAL AMOUNT DUE | | $2,198,711 |

This demand is directed to Instituto Nacional de Reaseguros ("INdeR") as the administrator of the reinsurance business and liquidation of Caja and as the entity to which Caja's business was transferred for such purposes.

TIG will seek an order from the arbitration panel requiring Caja to comply with its obligations under the Reinsurance Agreements, including payment of the amounts past due, plus interest, costs, and attorneys' fees. In addition, pursuant to Article XVI of the Reinsurance Agreements, TIG will seek from Caja a letter of credit sufficient to cover the future amounts due under the Reinsurance Agreements.

TIG suggests that the parties agree to have this dispute heard in a single, consolidated proceeding. Should Caja insist, however, on a separate arbitration under each agreement, then this letter constitutes a demand for a separate arbitration under each agreement.

TIG hereby appoints Daniel E. Schmidt IV as its arbitrator, whether in a consolidated proceeding or in separate proceedings. A copy of Mr. Schmidt's biography is enclosed. Mr. Schmidt can be reached at:

Daniel E. Schmidt IV
628 Little Silver Point
Little Silver, New Jersey 07739
480-284-6775
dan@des4adr.com

Pursuant to the Reinsurance Agreements, TIG demands that Caja appoint an arbitrator within thirty (30) days of receipt of this demand. If Caja fails to appoint an arbitrator, TIG will exercise its right to appoint a second arbitrator.

The disputed rights and obligations at issue in this demand are in addition to and separate from those amounts previously awarded to TIG by an arbitration panel in the Final Award dated October 17, 2000, which was subsequently confirmed by the United States Federal District Court in July 2001 and affirmed by the United States Seventh Circuit Court of Appeals in June 2002.

July 1, 2016
Page 3

Please direct all future correspondence to the undersigned.

Regards,

Julie Rodriguez Aldort

cc:    Subsecretaría de Administración y Normalización Patrimonial
       MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
       Sr. Subsecretario Guillermo García Eleisequi
       Pte. Hipólito Yrigoyen 250, Piso 5°, Of. 529, Ciudad Autónoma de Buenos Aires
       ARGENTINA

       Secretaría Legal y Administrativa
       MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
       Sr. Secretario Dr. Marcelo Eugenio Griffi
       Pte. Hipólito Yrigoyen 250, 5°, Of 506, Ciudad Autónoma de Buenos Aires
       ARGENTINA

       PROCURACIÓN DEL TESORO DE LA NACIÓN
       Sr. Procurador General: Dr. Carlos Francisco Balbín
       Posadas 1641, Ciudad Autónoma de Buenos Aires
       ARGENTINA

       PROCURACIÓN DEL TESORO DE LA NACIÓN
       Dirección Nacional de Asuntos y Controversias Internacionales (DNACI)
       Directora Dra. Silvina González Napolitano
       Posadas 1641, Ciudad Autónoma de Buenos Aires
       ARGENTINA

July 1, 2016
Page 4


David Guy (*via electronic mail*)
RiverStone Management Ltd
No. 2 Minster Court
Mincing Lane
London
EC3R 7BB
UK
david.guy@rsml.co.uk

Locke Lord (as successor to Lord Bissell & Brook) (*via certified mail*)
111 South Wacker Drive, Suite 4100
Chicago, IL 60606
USA

Illinois Secretary of State (*via certified mail*)
State of Illinois Center
100 West Randolph Street
Chicago, IL 60601


Enclosures

Aldort 295



BUTLER RUBIN

1° de julio, 2016

Julie Rodriguez Aldort
Direct Dial: 312-696-4478
Direct Fax: 312-873-4382
jaldort@butlerrubin.com

**MEDIANTE ENTREGA DIRECTA Y CORREO ELECTRÓNICO**

INSTITUTO NACIONAL DE REASEGUROS S.E. (en liquidación) - INDER
Sr. Contador Miguel Ángel Melillo, Liquidador
Av. Julio Argentino Roca 694, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

Dirección Nacional de Normalización Patrimonial
MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
Sr. Director Ingeniero Guillermo Mardarás
Pte. Hipólito Yrigoyen 250, Piso 6º, Of. 629, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

Ref.: Arbitraje entre TIG Insurance Company (como continuadora de International Insurance Company) y Caja Nacional de Ahorro y Seguro

Estimados Sres. Melillo y Mardarás:

Este estudio representa a TIG Insurance Company ("TIG"), como continuadora a causa de fusión con International Insurance Company ("IIC") e International Surplus Lines Insurance Company, respecto de dos contratos de reaseguro entre TIG y Caja Nacional de Ahorro y Seguro ("Caja"): el Contrato de Reaseguro por Daños, vigente desde julio de 1979 ("*First Casualty Excess*") y el Contrato de Reaseguro por Daños Excedentes, vigente desde marzo de 1979 ("*Second Casualty Excess*") (conjuntamente, los "Acuerdos de Reaseguro"). Se acompañan copias de los Acuerdos de Reaseguro. Conforme las cláusulas arbitrales presentes en cada uno de los acuerdos, TIG exige un arbitraje contra Caja para resolver acerca del derecho de TIG a reembolso, y la consecuente obligación de Caja de pagar, las sumas detalladas a continuación:



Aldort 296

1 de julio, 2016
Página 2

| Acuerdo | Plazo | Suma adeudada |
|---|---|---|
| First Casualty Excess | 01/01/79-12/31/83 | US$114,401 |
| Second Casualty Excess | 03/15/79-12/31/81 | US$2,084,310 |
| **TOTAL ADEUDADO** | | **US$2,198,711** |

Esta demanda está dirigida al Instituto Nacional de Reaseguros ("INdeR") como administrador del negocio de reaseguro y la liquidación de Caja y como la entidad a la que se le transfirió el giro de la Caja a tales fines.

Es la pretensión de TIG obtener una orden del tribunal arbitral que requiera a Caja cumplir con sus obligaciones emergentes de los Acuerdos de Reaseguro, incluidos el pago de sumas adeudadas, más intereses, costos y costas. Adicionalmente, en virtud de la Cláusula XVI de los Acuerdos de Reaseguro, TIG buscará obtener de Caja una carta de crédito que sea suficiente para cubrir futuras sumas adeudadas en virtud de los Contratos de Reaseguro.

TIG sugiere que las partes convengan que esta disputa sea tratara en un proceso único y consolidado. Sin embargo, para el caso en que Caja insista en tratar los arbitrajes por cada acuerdo separadamente, esta carta constituye una demanda para arbitrajes separados para cada acuerdo.

TIG por medio de la presente designa a Daniel E. Schmidt IV como su árbitro, sea en un proceso consolidado o en procesos separados. Se acompaña una copia de la biografía del Sr. Schmidt, cuyos datos de contacto son:

Daniel E. Schmidt IV
628 Little Silver Point
Little Silver, New Jersey 07739
480-284-6775
dan@des4adr.com

Conforme los Acuerdos de Reaseguro, TIG exige que Caja designe un árbitro en el plazo de treinta (30) días de recibida esta demanda. Si Caja no lo hiciere, TIG ejercerá su derecho a designar un segundo árbitro.

Los derechos y obligaciones en pugna de la presente demanda son adicionales e independientes de las sumas que fueran reconocidas a TIG por un panel arbitral en el Laudo Final de fecha 17 de octubre de 2000, que fuera subsecuentemente confirmado por el Tribunal De Distrito Federal de los Estados Unidos en julio de 2001 y reafirmado por el Tribual de Apelaciones del Séptimo Circuito de los Estados Unidos en junio de 2002.

1 de julio, 2016
Página 3

Por favor, dirigir toda la correspondencia futura a la suscripta.

Saludos,

Julie Rodriguez Adort

cc:    Subsecretaría de Administración y Normalización Patrimonial
       MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
       Sr. Subsecretario Guillermo García Eleisequi
       Pte. Hipólito Yrigoyen 250, Piso 5°, Of. 529, Ciudad Autónoma de Buenos Aires
       ARGENTINA

       Secretaría Legal y Administrativa
       MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
       Sr. Secretario Dr. Marcelo Eugenio Griffi
       Pte. Hipólito Yrigoyen 250, 5°, Of 506, Ciudad Autónoma de Buenos Aires
       ARGENTINA

       PROCURACIÓN DEL TESORO DE LA NACIÓN
       Sr. Procurador General: Dr. Carlos Francisco Balbín
       Posadas 1641, Ciudad Autónoma de Buenos Aires
       ARGENTINA

       PROCURACIÓN DEL TESORO DE LA NACIÓN
       Dirección Nacional de Asuntos y Controversias Internacionales (DNACI)
       Directora Dra. Silvina González Napolitano
       Posadas 1641, Ciudad Autónoma de Buenos Aires
       ARGENTINA



1  de julio, 2016
Página 4


David Guy (*mediante correo electrónico*)
RiverStone Management Ltd
No. 2 Minster Court
Mincing Lane
Londres
EC3R 7BB
Reino Unido
david.guy@rsml.co.uk

Locke Lord (como continuadora de Lord Bissell & Brook) (*mediante correo certificado*)
111 South Wacker Drive, Suite 4100
Chicago, Illinois 60606
Estados Unidos

Secretaría de Estado de Illinois (*mediante correo certificado*)
State of Illinois Center
100 West Randolph Street
Chicago, Illinois 60601



BUTLER RUBIN

July 1, 2016

Julie Rodriguez Aldort
Direct Dial: 312-696-4478
Direct Fax: 312-873-4382
jaldort@butlerrubin.com

**VIA HAND DELIVERY AND ELECTRONIC MAIL**

INSTITUTO NACIONAL DE REASEGUROS S.E. (en liquidación) - INDER
Sr. Contador Miguel Ángel Melillo, Liquidador
Av. Julio Argentino Roca 694, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

Dirección Nacional de Normalización Patrimonial
MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
Sr. Director Ingeniero Guillermo Mardarás
Pte. Hipólito Yrigoyen 250, Piso 6º, Of. 629, Ciudad Autónoma de Buenos Aires
ARGENTINA
postmaster@inder.gov.ar

Re:    In the Matter of the Arbitration Between TIG Insurance Company (as successor to
       International Insurance Company) and Caja Nacional De Ahorro y Seguro

Dear Messrs. Melillo and Mardarás:

This firm represents TIG Insurance Company ("TIG"), as successor by merger to
International Insurance Company ("IIC") and International Surplus Lines Insurance Company,
with respect to two reinsurance agreements between TIG and Caja Nacional de Ahorro y Seguro
("Caja"): the Casualty Reinsurance Agreement, effective January 1979 ("First Casualty
Excess"), and the Casualty Excess Reinsurance Agreement, effective March 1979 ("Second
Casualty Excess") (collectively, the "Reinsurance Agreements"). Copies of the Reinsurance
Agreements are enclosed. Pursuant to the arbitration clauses contained in each of the
agreements, TIG hereby demands arbitration against Caja to resolve TIG's right to
reimbursement for, and Caja's obligation to pay, the amounts listed below:

Aldort 300

July 1, 2016
Page 2

| Agreement | Treaty Term | Balance Past Due |
|---|---|---|
| First Casualty Excess | 01/01/79-12/31/83 | $114,401 |
| Second Casualty Excess | 03/15/79-12/31/81 | $2,084,310 |
| **TOTAL AMOUNT DUE** | | **$2,198,711** |

This demand is directed to Instituto Nacional de Reaseguros ("INdeR") as the administrator of the reinsurance business and liquidation of Caja and as the entity to which Caja's business was transferred for such purposes.

TIG will seek an order from the arbitration panel requiring Caja to comply with its obligations under the Reinsurance Agreements, including payment of the amounts past due, plus interest, costs, and attorneys' fees. In addition, pursuant to Article XVI of the Reinsurance Agreements, TIG will seek from Caja a letter of credit sufficient to cover the future amounts due under the Reinsurance Agreements.

TIG suggests that the parties agree to have this dispute heard in a single, consolidated proceeding. Should Caja insist, however, on a separate arbitration under each agreement, then this letter constitutes a demand for a separate arbitration under each agreement.

TIG hereby appoints Daniel E. Schmidt IV as its arbitrator, whether in a consolidated proceeding or in separate proceedings. A copy of Mr. Schmidt's biography is enclosed. Mr. Schmidt can be reached at:

Daniel E. Schmidt IV
628 Little Silver Point
Little Silver, New Jersey 07739
480-284-6775
dan@des4adr.com

Pursuant to the Reinsurance Agreements, TIG demands that Caja appoint an arbitrator within thirty (30) days of receipt of this demand. If Caja fails to appoint an arbitrator, TIG will exercise its right to appoint a second arbitrator.

The disputed rights and obligations at issue in this demand are in addition to and separate from those amounts previously awarded to TIG by an arbitration panel in the Final Award dated October 17, 2000, which was subsequently confirmed by the United States Federal District Court in July 2001 and affirmed by the United States Seventh Circuit Court of Appeals in June 2002.

Aldort 301

July 1, 2016
Page 3

Please direct all future correspondence to the undersigned.

Regards,

Julie Rodriguez Aldort

cc:    Subsecretaría de Administración y Normalización Patrimonial
       MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
       Sr. Subsecretario Guillermo García Eleisequi
       Pte. Hipólito Yrigoyen 250, Piso 5°, Of. 529, Ciudad Autónoma de Buenos Aires
       ARGENTINA

       Secretaría Legal y Administrativa
       MINISTERIO DE HACIENDA Y FINANZAS PÚBLICAS
       Sr. Secretario Dr. Marcelo Eugenio Griffi
       Pte. Hipólito Yrigoyen 250, 5°, Of 506, Ciudad Autónoma de Buenos Aires
       ARGENTINA

       PROCURACIÓN DEL TESORO DE LA NACIÓN
       Sr. Procurador General: Dr. Carlos Francisco Balbín
       Posadas 1641, Ciudad Autónoma de Buenos Aires
       ARGENTINA

       PROCURACIÓN DEL TESORO DE LA NACIÓN
       Dirección Nacional de Asuntos y Controversias Internacionales (DNACI)
       Directora Dra. Silvina González Napolitano
       Posadas 1641, Ciudad Autónoma de Buenos Aires
       ARGENTINA

PROCURACIÓN DEL TESORO
DE LA NACIÓN
1 JUL 2016
MESA DE ENTRADAS

July 1, 2016
Page 4


David Guy (*via electronic mail*)
RiverStone Management Ltd
No. 2 Minster Court
Mincing Lane
London
EC3R 7BB
UK
david.guy@rsml.co.uk

Locke Lord (as successor to Lord Bissell & Brook) (*via certified mail*)
111 South Wacker Drive, Suite 4100
Chicago, IL 60606
USA

Illinois Secretary of State (*via certified mail*)
State of Illinois Center
100 West Randolph Street
Chicago, IL 60601


Enclosures

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Julie Rodriguez Aldort
Butler Rubin Saltarelli & Boyd LLP
321 N. Clark Street
Suite 400
Chicago, IL  60654

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Locke Lord (as successor to Lord Bissell & Brook)
111 S. Wacker Drive
Suite 4100
Chicago, IL  60606

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   JUAN PRADO      B. Date of Delivery

C. Signature   JUL 07 REC'D
X              US MESSENGER             ☐ Agent
                                        ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered          ☑ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)              ☐ Yes

2. Article Number (Copy from service label)

7004 2510 0001 9539 2738

PS Form 3811, July 1999          Domestic Return Receipt          102595-99-M-1789

Aldort 304

UNITED STATES POSTAL SERVICE

First
Posta
USP
Pe

• Sender: Please print your name, address, and ZIP+4 in this

Julie Rodriguez Aldort
Butler Rubin Saltarelli & Boyd LLP
321 N. Clark Street
Suite 400
Chicago, IL  60654

4–477000

---

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Illinois Secretary of State
State of Illinois Center
100 W. Randolph Street
Chicago, IL  60601

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)     B. Date of Delivery
Dyamond Pruitt     7/6/10

C. Signature
X  Dyamond Pruitt     ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail     ☐ Express Mail
☐ Registered     ☑ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number (Copy fro
7004 2510 0001 9539 2745

PS Form 3811, July 1999     Domestic Return Receipt     102595-99-M-1789

Aldort 305

# Exhibit 19

From: W Mark Wigmore
Sent: Thursday, March 09, 2017 12:52 PM
To: Julie Rodriguez Aldort; Daniel E Schmidt; AM@amaneval.com; bsaravia@mecon.gov.ar; Angela Kubacki; bcusto@kleinyfranco.com; cloturco@mecon.gov.ar; ggarcia@mecon.gov.ar; Caja Email 1; lcinto@mecon.gov.ar; sgnapolitano@ptn.gov.ar
Subject: TIG V Caja Final Order and Award



TIGvRepofArg(Caja)
-FinalOrderAward.pdf

Dear Counsel:

Attached please find the Panel's Final Order and Award. With the issuance of this Final Order, this arbitration is formally concluded and ex parte communication with the party-appointed arbitrators may reconvene.

It has been my pleasure working with you.

Best regards,

Mark Wigmore
For the Panel

# Exhibit 20

**From:** Siegart, John [mailto:John_Siegart@trg.com]
**Sent:** Wednesday, March 15, 2017 4:38 PM
**To:** bsaravia@mecon.gov.ar
**Cc:** lgu@embassyofargentina.us; ggarcia@mecon.gov.ar; sgnapolitano@ptn.gov.ar;
lcinto@mecon.gob.ar; Julie Rodriguez Aldort; Bernardo Custo; Christopher LeGros; Louis Dupart
**Subject:** Final Arbitration Award and Outstanding Judgments



TIGvRepublicOfArg(
Caja)_FinalAward_3.

Dear Dr. Saravia Frías,

Please see attached correspondence.  Thank you for your consideration.

Sincerely,

John Siegart
Vice President, Deputy General Counsel
TIG Insurance Company
250 Commercial Street
Manchester, NH 03101

603-656-2479 (Office)
602-203-6028 (Cell)

*Important Notice:* *This email contains information of a privileged and/or confidential nature. If you are not the intended recipient, please delete this email immediately and notify the sender of the error. RiverStone Resources LLC, 250 Commercial Street, Manchester, NH 03101.*

# Exhibit 21

**Affidavit of Process Server**

TIG Insurance Co et al _vs_ Republic of Argentina, et al. 17cv2835

| Plaintiff/Petitioner | Defendant/Respondent | Case# |
|---|---|---|

Being duly sworn, on my oath, I declare that I am a citizen of the United States, over the age of eighteen and not a party to this action.

_TRINITY McHATTEN_

**Service:**   I served   Republic of Argentina c/o Dept. of Insurance

NAME OF PERSON/ENTITY BEING SERVED

with the (documents)   ☐ Subpoena with $ _____ witness fee and mileage

Letter, Summons, Petition, Civil Cover Sheet & Declaration of Julie Rodriquez Aldort (2 Sets) and Letter ($10) check

by serving (NAME)   ANDREW WILLE: Asst to DIRECTOR OF GENERAL COUNSEL

at ☐ Home
☒ Business   122 So. Michigan 19th Flr Chicago Illinois
☒ on (DATE)   4/20/17   at (TIME)   12:11p

Thereafter copies of the documents were mailed by prepaid, first class mail on (DATE) _____

From (CITY) _____   (STATE) _____

**Manner of Service:**

☐ By Personal Service

☒ By delivering, during office hours, copies at the office of the person/entity being served, leaving same with the person apparently in charge thereof, namely

ANDREW WILLE: Asst to Direct: AUTHORIZED TO Accept SERVICE

☐ By leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the general nature of the papers _____

☐ By posting copies in a conspicuous manner to the address of the person/entity being served. _____

**Non-Service:**   After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address   ☐ Evading   ☐ Other: _____
☐ Address does not exist   ☐ Service cancelled by litigant
☐ Moved, Left no forwarding   ☐ Unable to serve in a timely fashion

**Service Attempts:**   Service was attempted on: ( ) _____ , ( ) _____ , ( ) _____
DATE   TIME   DATE   TIME   DATE   TIME
( ) _____ , ( ) _____ , ( ) _____
DATE   TIME   DATE   TIME   DATE   TIME

**Description:**

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ Male | ☒ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☒ Brown Hair | ☐ Balding | ☒ 21-35 Yrs. | ☐ 5'-5'3" | ☐ 100-130 Lbs. |
| | ☐ Brown Skin | ☐ Blond Hair | | ☐ 36-50 Yrs. | ☒ 5'4"-5'8" | ☒ 131-160 Lbs. |
| ☐ Glasses | ☐ Yellow Skin | ☐ Gray Hair | ☐ Mustache | ☐ 51-65 Yrs. | ☐ 5'9"-6' | ☐ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☐ Beard | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

OTHER IDENTIFYING FEATURES: _____

State of Illinois  County of Cook

SERVED BY
LASALLE PROCESS SERVERS
ILLINOIS PRIVATE DETECTIVE LICENSE# 117-001432

Subscribed and sworn to before me
A notary public, this 20 day of ____ 20__

OFFICIAL SEAL
ANDREW RAPHAEL
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 10/01/19

Notary Public

CHARTER MEMBER NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS

# Exhibit 22

## Affidavit of Process Server

TIG Insurance Co. et al. vs Republic of Argentina, et al. 17cv2835

Plaintiff/Petitioner          Defendant/Respondent          Case#

Being duly sworn, on my oath, I *Trinity M'Vatten*

declare that I am a citizen of the United States, over the age of eighteen and not a party to this action.

**Service:**      I served *Republic of Argentina % Locke Lord LLP*

NAME OF PERSON/ENTITY BEING SERVED

with the (documents)    ☐ Subpoena with $ _____ witness fee and mileage

☒ *Letter, Summons, Petition, Civil Cover Sheet & Declaration of Julie Rodriguez Aldort*

by serving (NAME) *Loraine Taylor - Receptionist*

at ☐ Home

☒ Business

☒ on (DATE) *4/20/17*    at (TIME) *12:44p*

Thereafter copies of the documents were mailed by prepaid, first class mail on (DATE) _____

From (CITY) _____          (STATE) _____

**Manner of Service:**

☐ By Personal Service

☒ By delivering, during office hours, copies at the office of the person/entity being served, leaving same with the person apparently in charge thereof, namely, *Loraine Taylor - Receptionist - Authorized to Accept Service*

☐ By leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the general nature of the papers _____

☐ By posting copies in a conspicuous manner to the address of the person/entity being served. _____

**Non-Service:**    After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address      ☐ Evading          ☐ Other: _____

☐ Address does not exist    ☐ Service cancelled by litigant

☐ Moved, Left no forwarding  ☐ Unable to serve in a timely fashion

**Service Attempts:**  Service was attempted on: ( ) _____ ,( ) _____ ,( ) _____

DATE  TIME          DATE  TIME          DATE  TIME

( ) _____ ,( ) _____ ,( ) _____ ,( ) _____

DATE  TIME      DATE  TIME          DATE  TIME          DATE  TIME

**Description:**

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ Male | ☒ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☒ Female | ☐ Black Skin | ☐ Brown Hair | ☐ Balding | ☐ 21-35 Yrs. | ☐ 5'-5'3" | ☐ 100-130 Lbs. |
| | ☐ Brown Skin | ☒ Blond Hair | | ☐ 36-50 Yrs. | ☒ 5'4"-5'8" | ☒ 131-160 Lbs. |
| ☒ Glasses | ☐ Yellow Skin | ☐ Gray Hair | ☐ Mustache | ☐ 51-65 Yrs. | ☐ 5'9"-6' | ☐ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☐ Beard | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

OTHER IDENTIFYING FEATURES: _____

State of Illinois  County of Cook

SERVED BY

Subscribed and sworn to before me
A notary public, this *20* day of *Apr* 20 ___

LASALLE PROCESS SERVERS
ILLINOIS PRIVATE DETECTIVE LICENSE # 117-001432

OFFICIAL SEAL
ANDREW RAPHAEL
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/01/19

Notary Public

CHARTER MEMBER NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS

Aldort 313

# Exhibit 23

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| TIG INSURANCE COMPANY as successor by merger to INTERNATIONAL INSURANCE COMPANY and INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, | ) ) ) ) ) |  |
| Petitioner, | ) | Civil Action No. 17 cv 02835 |
| v. | ) ) | Hon. Judge Gary Feinerman Magistrate Hon. Mary M. Rowland |
| REPUBLIC OF ARGENTINA as successor to CAJA NACIONAL DE AHORRO Y SEGURO, | ) ) ) ) |  |
| Respondent. | ) ) |  |

**DECLARATION OF GISELLE B. SAFAZADEH
IN SUPPORT OF PETITIONER'S MOTION FOR DEFAULT JUDGMENT**

I, Giselle B. Safazadeh, declare as follows:

1. I am over the age of 18 years.

2. I am an associate at the law firm of Butler Rubin Saltarelli & Boyd LLP. I am one of the attorneys for TIG Insurance Company in the action captioned *In the Matter of the Arbitration between TIG Insurance Company and the Republic of Argentina, as successor to Caja Nacional de Ahorro y Seguro.* I respectfully submit this declaration in support of TIG Insurance Company's Motion for Default Judgment.

3. On April 14, 2017, TIG filed the *Petition for Confirmation of Final Arbitration Award* ("Petition") in the Northern District of Illinois, along with a supporting declaration and exhibits. (Petition, ECF No. 2, and Aldort Declaration, ECF No. 3)

4. On April 20, 2017, TIG, by special process server, served the Petition and supporting documentation on Respondent, The Republic of Argentina, as successor to Caja Nacional de Ahorro y Seguro (hereinafter the "Republic"), via Locke Lord (as successor to Lord

Bissell and Brook) of Chicago, Illinois.  Locke Lord is specified as agent for service of process in Article XX of each reinsurance contract ("Treaty") at issue in the underlying arbitration.  (*See* Aldort Declaration, ECF No. 3, Exhibits 2 and 3.)  TIG, also by special process server, served Respondent via the Illinois Department of Insurance, as permitted by Article XX of each Treaty. (*Id*.)  Copies of the receipt of service on Locke Lord and on the Illinois Department of Insurance are attached hereto as **Exhibit 1** and **Exhibit 2,** and were also filed with the Court.  (*See also* Return of Service on Illinois Dept. of Insurance, ECF No. 6; Return of Service on Locke Lord, ECF No. 7.)

5.      TIG also served the Republic with the Petition and supporting documentation via U.S. certified mail, for which TIG received a receipt of service on May 15, 2017. A copy of the return of service via U.S. certified mail is attached hereto as **Exhibit 3**.

6.      On May 11, 2017, TIG additionally provided the Republic courtesy copies of the Petition, along with Spanish translations, via TIG's local counsel in Argentina.  The documents were received by the Republic's Attorney General's office and Ministry of Economy, as indicated by the stamps on the transmittal documents attached as **Exhibits 4** and **5**.

7.      As of today's date, the Republic has failed to answer, appear, communicate with TIG, or otherwise file a responsive pleading in this action.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:  Chicago, Illinois
August 30, 2017

Giselle B. Safazadeh

- 2 -

# Exhibit 24

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIG INSURANCE COMPANY as successor by merger to<br>INTERNATIONAL INSURANCE COMPANY<br>and INTERNATIONAL<br>SURPLUS LINES INSURANCE COMPANY,<br><br>                          Petitioner,<br>v.<br><br>REPUBLIC OF ARGENTINA as<br>successor to CAJA NACIONAL DE<br>AHORRO Y SEGURO,<br><br>                        Respondent. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 17 cv 2835<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PETITION FOR CONFIRMATION OF FINAL ARBITRATION AWARD

TIG Insurance Company, as successor by merger to International Insurance Company and International Surplus Lines Insurance Company, ("TIG"), petitions this Court to confirm the final award of an arbitration panel entered on March 9, 2017 ("Final Award"). In support hereof, TIG submits the declaration of Julie Rodriguez Aldort ("Aldort Dec."), and further states as follows:

### Nature of the Action

1. This is an action to confirm a final arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.*, the Inter-American Convention on International Commercial Arbitration (the "Panama Convention") and its implementing legislation, 9 U.S.C. § 301, *et. seq*. TIG is a domestic insurance company that purchased reinsurance from Caja Nacional de Ahorro y Seguro ("Caja"), an alien insurance and reinsurance company domiciled in Argentina and wholly-owned by the Republic of Argentina (the "Republic"), which has since been dissolved and succeeded by the Republic. Pursuant to the terms of the two reinsurance contracts entered into between the parties, TIG initiated an arbitration for the Republic's failure

to pay TIG nearly three million dollars in indemnity obligations.  Although repeatedly notified of

the proceedings, the Republic failed to appear in the arbitration.  On March 9, 2017, after a full

merits hearing, the arbitration panel entered a final award against the Republic in the amount of

$2,827,912.20 in overdue balances; $473,320.92 in interest; $32,812.44 as the Republic's 50%

share of the arbitration costs and arbitrator fees; and $125,443.75 in attorneys' fees incurred by

TIG in pursuing the arbitration.

### The Parties

2.   TIG is a corporation organized and existing under the laws of the State of California

with its current principal place of business in Manchester, New Hampshire.  At the time the

contracts were negotiated, TIG's predecessors, International Insurance Company and

International Surplus Lines, maintained their principal places of business in Chicago, Illinois.

3.   Caja was a corporation organized and previously existing under the laws of

Argentina, wholly-owned by the government of the Republic of Argentina, which had its

principal place of business in Buenos Aires, Argentina.  In 1994, the Republic placed Caja into

liquidation, and in 2005, when the liquidation process concluded, the Republic officially

dissolved Caja, and Caja ceased being a separate juridical entity.  By decree of the Republic, all

of Caja's assets and liabilities were transferred to the Treasury of the Republic of Argentina, and

the Republic is now successor to Caja.  The Republic has waived any immunity based on the

commercial reinsurance contracts it, as successor to Caja, entered into in the United States with

TIG, in which it, as successor to Caja, agreed to arbitrate in the United States and to enforcement

in the courts of the United States.

- 2 -

Aldort 319

**Jurisdiction**

4.   Jurisdiction of this Court is proper pursuant to 9 U.S.C. § 203 and 9 U.S.C. § 302 inasmuch as this is an action or proceeding falling under the Panama Convention.

5.   This Court also has jurisdiction over Respondent pursuant to 28 U.S.C. § 1330(a). The Republic, as successor to Caja, consented to this Court's jurisdiction in Articles XX and XXI of the two reinsurance contracts at issue by agreeing to arbitration in Chicago, Illinois, and it waived immunity pursuant to 28 U.S.C. § 1605(a)(6)(A).

6.   Venue is properly maintained in this district pursuant to 9 U.S.C. § 204 and 9 U.S.C. § 302.

**Facts**

7.   TIG and Caja entered into two reinsurance treaties, which were at issue in the arbitration, the Casualty Reinsurance Agreement incepting on January 1, 1979 and terminating at 12:01am on January 1, 1984, and the Casualty Excess Reinsurance Agreement incepting on March 15, 1979 and terminating on December 31, 1981 (the "Treaties").  (Copies of the Treaties are attached to the Aldort Declaration as Exhibits 1 and 2.)

8.   Article XXI of each Treaty contains an arbitration clause, requiring the arbitration of "any dispute . . . with reference to the interpretation of this Agreement or the rights of either party with respect to any transaction under this Agreement . . ."

9.   Article XXI of each Treaty further provides that any such dispute shall be referred to three Arbitrators, "one to be chosen by each party and the third by the two so chosen."  Finally, the Treaties provide that "[i]f either party refuses or neglects to appoint an Arbitrator within

- 3 -

thirty days after receipt of written notice from the other party requesting it to do so, the
requesting party may nominate two arbitrators who shall choose the third."

10. On July 1, 2016, TIG demanded arbitration with the Republic with respect to amounts
due under the Treaties.  (Aldort Dec. Exhibit 3.)  TIG appointed its arbitrator, Daniel Schmidt,
IV, in its demand letter.  The arbitration demand was served on the Republic via hand delivery in
Buenos Aires to the Ministry of Finance, the attorney general's office, and the Instituto Nacional
de Reaseguro ("INDER").  Service was also made by certified mail on Locke Lord (as successor
to Lord Bissell and Brook) of Chicago, Illinois, which was specified as Caja's agent for service
of process in Article XX of each Treaty, and on the Illinois Department of Insurance, also
pursuant to Article XX of each Treaty.  TIG included a Spanish translation of the arbitration
demand in the copies served on the Republic in Argentina.

11. Pursuant to Article XXI of each Treaty, the Republic must name its arbitrator within
thirty days of its receipt of the arbitration demand.  As the deadline approached for appointment
of the Republic's arbitrator, TIG reached out in writing to officials at the Ministry of Finance,
INDER, the attorney general's office, and the Argentine embassy in Washington, D.C to reiterate
the impending deadline.  TIG also held an in person meeting with representatives from the
Ministry of Finance to discuss the outstanding amounts and the pending dispute, providing
copies of the reinsurance contracts and additional supporting documentation during the meeting.
During the meeting, the officials acknowledged the arbitration demand.  Ultimately, the
Republic, failed to name its arbitrator within thirty days of its receipt of the arbitration demand.
Accordingly, TIG named a second arbitrator, Andrew Maneval, on August 2, 2016, with a copy
of the appointment to the Republic by email carbon copy.  On August 3, 2016, sent a letter

- 4 -

Aldort 321

advising of the appointment to the Republic's offices in Buenos Aires by hand delivery with a

Spanish translation to officials at the Ministry of Finance, INDER, and the attorney general's

office.  Copies were also sent to Locke Lord.  TIG followed up with email notice of the

appointment to the Argentine embassy in Washington, D.C. and to additional officials at the

Ministry of Finance and the attorney general's office.  On August 18, 2016, the Republic advised

TIG that the Ministry of Finance would supervise the arbitration proceedings, rather than the

attorney general's office.  Thereafter, TIG continued to provide updates to the Ministry of

Finance and the attorney general regarding the arbitration.

     12. On September 8, 2016, the two arbitrators appointed a third arbitrator, Mark

Wigmore, who served as umpire.    The arbitration panel advised TIG and the Republic by

electronic mail. All three panel members are certified as arbitrators by the AIDA Reinsurance

and Insurance Arbitration Society ("ARIAS-U.S.").

     13. Following their appointment, the arbitration panel scheduled a telephonic

organizational hearing with the parties and their counsel to discuss issues, potential discovery,

and a schedule for the proceedings.  The Republic was copied on communications with the

arbitration panel. TIG repeatedly reached out directly to the Republic in an effort to engage it in

the arbitration.  TIG forwarded Spanish translations of communications relating to the proposed

schedule.   On September 22, 2016, by email, an official at the Ministry of Finance responded

that the Ministry would evaluate the subject matter and follow up, but TIG heard nothing further.

The telephonic hearing took place on November 2, 2016.  The Republic failed to participate.

     14. During the November 2, 2016 telephonic hearing, TIG accepted the arbitration panel.

After acceptance of the arbitration panel by TIG, the panel set a schedule for the arbitration

Aldort 322

proceeding.  The schedule required the parties to complete any discovery by December 30, 2016

and then file pre-hearing briefs by January 12, 2017 and any response briefs by January 26, 2017.

 The arbitration panel scheduled the merits hearing, wherein evidence would be submitted on the

merits of the dispute, for February 2, 2017.  TIG forwarded the transcript for the organizational

meeting to the Republic.

     15. TIG made its pre-hearing submission as required on January 12, 2017, simultaneously

serving copies on the Republic by electronic mail, and following with hand delivery of hard

copies on January 16, 2017.  The Republic failed to make any pre-hearing submission.

     16. On February 2, 2017, the arbitration hearing was held in Chicago, Illinois, as agreed

to in Article XXI of the Treaties.  The Republic failed to appear.  The arbitration panel reviewed

documentary evidence, received and examined testimony from two witnesses, and heard

argument.

     17. On March 9, 2017, the arbitration panel entered its written Final Award, copy of

which is attached to the Aldort Declaration as Exhibit 4.  The Final Award requires, *inter alia*,

that:

       a.     The Republic pay to TIG $2,827,912.20 in overdue balances;

       b.     The Republic pay to TIG $473,320.92 in interest;

       c.     The Republic pay to TIG $32,812.44, as its 50% share of arbitrator fees

     and arbitration expenses;

       d.     The Republic pay to TIG $125,443.75 in attorneys' fees incurred by TIG

     in this matter;

Aldort 323

e.    The amounts to be paid under paragraphs (a) through (d) be paid within seven days of the date of the Final Award.

18. The total amount to be paid by the Republic to TIG pursuant to the Final Award is $3,459,489.31.

19. Shortly after receiving the Final Award, TIG reached out directly to the Republic's Ministry of Finance seeking payment, but received no response.

20. Article XXI of each Treaty provides that "The decision of a majority of the arbitrators shall be final and binding on both the Company and the Reinsurer."

21.  Article XXI of each Treaty provides that "judgment may be entered upon the award of the Arbitrators in any court having jurisdiction."

### Cause of Action

22. TIG repeats the allegations contained in paragraphs 1 through 21 as if fully set forth herein.

23. The Final Award is a final arbitration award issued by a unanimous arbitration panel duly constituted and accepted by TIG, with no objection from the Republic, who declined to participate in the arbitration.

24. The Final Award is binding and enforceable against the Republic under Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, and under the Panama Convention, 9 U.S.C. §§ 207, 301.

25. This Petition to Confirm is brought within three years after the issuance of the Final Award, and no grounds exist under the Panama Convention or the Federal Arbitration Act for refusal or deferral of recognition or enforcement of the Final Award.

Aldort 324

WHEREFORE, TIG Insurance Company respectfully requests that this Court confirm the

Final Award of the arbitration panel and enter judgment against the Republic of Argentina, as

successor to Caja Nacional de Ahorro y Seguro, in accordance with the terms thereof.

> TIG INSURANCE COMPANY, as successor in
> interest to International Surplus Lines Insurance
> Company and International Insurance Company
>
> By: _____
> One of its Attorneys

Julie Rodriguez Aldort (Attorney I.D. No. 6271412)
Giselle Safazadeh (Attorney I.D. No.6315712)
Butler, Rubin, Saltarelli & Boyd LLP
321 N. Clark Street, Suite 400
Chicago, Illinois 60654
(312) 444-9660

544234

Aldort 325

# Exhibit 25

Aldort 326

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| TIG INSURANCE COMPANY as successor by merger to INTERNATIONAL INSURANCE COMPANY and INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, | ) ) ) ) ) | |
| Petitioner, | ) | Civil Action No. 17 cv 02835 |
| v. | ) ) | Hon. Judge Gary Feinerman Magistrate Hon. Mary M. Rowland |
| REPUBLIC OF ARGENTINA as successor to CAJA NACIONAL DE AHORRO Y SEGURO, | ) ) ) | |
| Respondent. | ) ) | |

## PETITIONER'S MOTION FOR DEFAULT JUDGMENT

Pursuant to Fed. R. Civ. P. 55, TIG Insurance Company, as successor by merger to International Insurance Company and International Surplus Lines Insurance Company, ("TIG"), respectfully requests that this Court enter a default judgment against Respondent, the Republic of Argentina as successor to Caja Nacional de Ahorro y Seguro ("Republic"), for failure to answer, plead, appear, or otherwise defend in a timely manner as to TIG's Petition for Confirmation of Final Arbitration Award.  In support of its motion, TIG states as follows:

### Nature of the Action

1.   The subject *Petition for Confirmation of Final Arbitration Award* ("Petition") was filed with this Court on April 14, 2017.  (ECF No. 2; *see also* Declaration of Giselle Safazadeh in Support of Petitioner's Motion for Default Judgment, dated August 30, 2017 (hereinafter "Safazadeh Decl."), at ¶ 3.)  The Petition seeks to confirm a final arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.*, the Inter-American Convention on International Commercial Arbitration (the "Panama Convention") and its implementing

Aldort 327

legislation, 9 U.S.C. § 301, *et. seq*.  TIG is a domestic insurance company that purchased

reinsurance from Caja Nacional de Ahorro y Seguro ("Caja"), an alien insurance and reinsurance

company domiciled in Argentina and wholly-owned by the Republic, which has since been

dissolved and succeeded by the Republic.  Pursuant to the terms of the two reinsurance contracts

entered into between the parties, TIG initiated arbitration for the Republic's failure to pay TIG

nearly three million dollars in indemnity obligations.

      2.   Although repeatedly notified of the proceedings, the Republic failed to appear in

the arbitration.  On March 9, 2017, after a full merits hearing, the arbitration panel entered a final

award against the Republic in the amount of $2,827,912.20 in overdue balances; $473,320.92 in

interest; $32,812.44 as the Republic's 50% share of the arbitration costs and arbitrator fees; and

$125,443.75 in attorneys' fees incurred by TIG in pursuing the arbitration.  (Petition at ¶ 1.)

**The Parties**

      3.   TIG is a corporation organized and existing under the laws of the State of

California with its current principal place of business in Manchester, New Hampshire.  At the

time the contracts were negotiated, TIG's predecessors, International Insurance Company and

International Surplus Lines, maintained their principal places of business in Chicago, Illinois.

(Petition at ¶ 2.)

      4.   Caja was a corporation organized and previously existing under the laws of

Argentina, wholly-owned by the government of the Republic of Argentina, which had its

principal place of business in Buenos Aires, Argentina.  In 1994, the Republic placed Caja into

liquidation, and in 2005, when the liquidation process concluded, the Republic officially

dissolved Caja, and Caja ceased being a separate juridical entity.  By decree of the Republic, all

Aldort 328

of Caja's assets and liabilities were transferred to the Treasury of the Republic of Argentina, and the Republic is now successor to Caja.  (Petition at ¶ 3.)

5.    The Republic has waived any immunity based on the commercial reinsurance contracts it, as successor to Caja, entered into in the United States with TIG, in which it, as successor to Caja, agreed to arbitrate in the United States and to enforcement in the courts of the United States.  *See Int'l Ins. Co. v. Caja Nacional De Ahorro y Seguro*, 293 F.3d 392, 393 (7th Cir. 2002) (finding that, under the same reinsurance contracts at issue in this case, the Republic "[b]y agreeing to a contract designating Chicago, Illinois as the site of arbitration,…waived its immunity in a proceeding to confirm the arbitral award.").

## Statement of Facts

6.    TIG and the Republic entered into two reinsurance contracts, which were at issue in the arbitration, the Casualty Reinsurance Agreement incepting on January 1, 1979 and terminating at 12:01 a.m. on January 1, 1984, and the Casualty Excess Reinsurance Agreement incepting on March 15, 1979 and terminating on December 31, 1981 (the "Treaties").  (Copies of the Treaties are attached as Exhibits 1 and 2 to the Aldort Declaration, ECF No. 3.)

7.    Article XXI of each Treaty contains an arbitration clause, requiring the arbitration of "any dispute . . . with reference to the interpretation of this Agreement or the rights of either party with respect to any transaction under this Agreement . . ."  (Petition at ¶ 8.)

8.    On July 1, 2016, TIG demanded arbitration with the Republic with respect to amounts due under the Treaties.  From the filing of the arbitration demand, through the arbitration hearing, subsequent award, and this current action, the Republic refused to engage. (Petition at ¶ 10.)

Aldort 329

9. On February 2, 2017, the arbitration hearing was held in Chicago, Illinois, as agreed to in Article XXI of the Treaties. The Republic failed to appear. The arbitration panel reviewed documentary evidence, received and examined testimony from two witnesses, and heard argument. (Petition at ¶ 16.)

10. On March 9, 2017, the arbitration panel entered its written Final Award. (A copy of the Final Award is attached as Exhibit 4 to the Aldort Declaration, ECF No. 3.) The Final Award requires, *inter alia*, that:

    a. The Republic pay to TIG $2,827,912.20 in overdue balances;

    b. The Republic pay to TIG $473,320.92 in interest;

    c. The Republic pay to TIG $32,812.44, as its 50% share of arbitrator fees and arbitration expenses;

    d. The Republic pay to TIG $125,443.75 in attorneys' fees incurred by TIG in this matter;

    e. The amounts to be paid under paragraphs (a) through (d) be paid within seven days of the date of the Final Award.

(Petition at ¶ 17.)

11. The total amount to be paid by the Republic to TIG pursuant to the Final Award is $3,459,489.31. (Petition at ¶ 18.)

12. Shortly after receiving the Final Award, TIG reached out directly to the Republic's Ministry of Finance seeking payment, but received no response. (Petition at ¶ 19.)

13. Article XXI of each Treaty provides that "The decision of a majority of the arbitrators shall be final and binding on both the Company and the Reinsurer." (Petition at ¶ 20.)

Aldort 330

14. Article XXI of each Treaty provides that "judgment may be entered upon the award of the Arbitrators in any court having jurisdiction."  (Petition at ¶ 21.)

15. Article XX of each Treaty includes a Service of Suit provision that provides the Republic "will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction" and the provision also provides that service of process may be made on Lord Bissell and Brook and/or the Director of the Illinois Department of Insurance.  (Petition at ¶ 10.)

16. On April 20, 2017, TIG, via special process server, served the Petition and supporting documentation on Locke Lord (as successor to Lord Bissell and Brook) of Chicago, Illinois, which was specified as the Republic's agent for service of process in Article XX of each Treaty, and on the Illinois Department of Insurance, also pursuant to Article XX of each Treaty.[1] (*See* Return of Service on Illinois Dept. of Insurance, ECF No. 6; Return of Service on Locke Lord, ECF No. 7; Safazadeh Decl. at ¶ 4.)

17. On May 11, 2017, TIG had its local counsel in Argentina provide courtesy copies of the Petition and supporting documentation, along with a Spanish translation of the documents, to the Republic's Attorney General's office and Ministry of Economy.  (*See* Safazadeh Decl. at ¶ 6.)  The Republic's offices acknowledged receipt by stamping the documents.  (*Id*.)

18. As of the date of this filing, the Republic has failed to answer, appear, communicate with TIG, or otherwise file a responsive pleading in this action.  (*See* Safazadeh Decl. at ¶ 7.)

---

[1] TIG also served the Republic with the Petition and supporting documentation via U.S. certified mail. A return receipt was entered for this service by mail on May 15, 2017. (*See* Return of U.S. Post Office Receipt, ECF No. 8; *see* Safazadeh Decl. at ¶ 5.).

Aldort 331

## Argument

19. Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Entry of a default judgment by Clerk is appropriate where, as here, "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1).

20. Further, entry of a default judgment by Clerk is appropriate where the defendant being defaulted for not appearing is "neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). The Republic, as a foreign sovereign state, does not fall into either of the categories contemplated by Rule 55(b)(1).

21. TIG properly served the Republic's agents for service of process on April 20, 2017. In May, 2017, TIG took the additional step of having its local counsel in Argentina hand deliver copies of the Petition to the Republic, with Spanish Translations. More than four months have passed since initial service, and the Republic, as it did with the underlying arbitration, failed to respond to the Petition. Its continuing willful disregard of both the Final Arbitration Award and the Summons in the instant matter make default judgment appropriate, particularly, as is the case here, where TIG has been diligent in every aspect of this matter, including service. *See, e.g.,* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2693 (3d ed. 1998) ("Default judgment…represents a means of encouraging an unwilling or uncooperative party to honor the rules established for federal-court litigation and provides the nondefaulting [sic] party an expeditious path to follow when an adversary does not do so simply abandons the contest."); *see also U.S. Fire Ins. Co. v. Korea Foreign Ins. Co.,* No. 92 C 5770,

- 6 -

1993 WL 54643, at *1 (N.D. Ill. Mar. 2, 1993) (denying foreign insurer's petition to vacate default judgment confirming arbitration award, noting that foreign insurer's complete failure to participate in action prior to entry of default was "willful" and "careless" so as to preclude vacating default judgment, particularly where petitioner U.S. Fire Insurance Company had established clear proof of service)).

22. TIG is entitled to confirmation of the Final Award. The Final Award is binding and enforceable against the Republic under Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, and under the Panama Convention, 9 U.S.C. §§ 207, 301. The Republic did not move to vacate the Final Award within three months of the delivery of the Final Award, and therefore, may not now do so, as set forth in the Federal Arbitration Act, 9 U.S.C. § 12. The Petition was brought within the time permitted for confirmation of such awards, and no grounds exist under the Panama Convention or the Federal Arbitration Act for refusal or deferral of recognition or enforcement of the Final Award.

23. Having completely ignored TIG's Arbitration demand, the subsequent Final Award, and the Summons in this instant action, the Republic has flouted its obligations under the Treaties, as found by the Arbitration Panel, and the authority of this Court. TIG submits that a default judgment is both necessary and appropriate.

24. Although TIG believes this matter can be adjudicated without a hearing, TIG stands ready and willing to appear for a hearing on this motion should the Court request one.

Aldort 333

WHEREFORE, TIG Insurance Company respectfully requests that this Court grant its

Motion for Default Judgment, confirm the Final Award of the arbitration panel, and enter

judgment against the Republic of Argentina, as successor to Caja Nacional de Ahorro y Seguro,

in the amount of $3,459,489.31.

TIG INSURANCE COMPANY, as successor in
interest to International Surplus Lines Insurance
Company and International Insurance Company



By: _____
One of its Attorneys

Julie Rodriguez Aldort (Attorney I.D. No. 6271412)
Giselle Safazadeh (Attorney I.D. No.6315712)
Butler Rubin Saltarelli & Boyd LLP
321 N. Clark Street, Suite 400
Chicago, Illinois 60654
(312) 444-9660

Aldort 334

# Exhibit 26

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ERNESTO PALOMO
Locke Lord LLP
111 South Wacker Dr.
Ste. 4100
Chgo. IL 60606 - 4410

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _____ ☐ Agent ☐ Addressee

B. Received by ( *Printed Name* )     C. Date of Delivery

JUAN PRADO

US MESSENGER

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☒ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*     ☐ Yes

2. Article Number
   *(Transfer from service label)*     7004 2510 0001 9539 5371

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Butler Rubin Saltarelli + Boyd LLP
321 N. Clark Street
Ste. 321
Chgo. IL 60654
Giselle Safrazadeh

Caja

Aldort 336

# Exhibit 27

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.1.1.2
### Eastern Division

TIG Insurance Company

|                    |               |
|--------------------|---------------|
|                    | **Plaintiff,** |
| v.                 |               |
|                    |               |
| Republic of Argentina |            |
|                    | **Defendant.** |

Case No.: 1:17−cv−02835

Honorable Gary Feinerman

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, September 6, 2017:

      MINUTE entry before the Honorable Gary Feinerman:Motion hearing held. Plaintiff's motion for default judgment [9] is granted in part (as to the Civil Rule 55(a) default) and entered and continued in part (as to the Civil Rule 55(b) default judgment) to 9/20/2017 at 9:00 a.m. For the reasons stated on the record, a Civil Rule 55(a) default is entered against Defendant Republic of Argentina as successor to Caja Navional De Ahorro y Seguro. A Rule 55(b) hearing is set for 9/20/2017 at 9:00 a.m. If Defendant wishes to oppose Plaintiff's Rule 55(b) motion for default judgment, Defendant must file a written opposition by 9/19/2017 or appear at the 9/20/2017 hearing. If Defendant does not respond or appear, the court will rule on the Rule 55(b) motion at the 9/20/2017 hearing. Plaintiff shall serve Defendant with a copy of this order via a means that allows for electronic confirmation of delivery.Mailed notice.(jlj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# Exhibit 28

**Julie Rodriguez Aldort**

| | |
|---|---|
| **From:** | Julie Rodriguez Aldort |
| **Sent:** | Friday, September 08, 2017 2:05 PM |
| **To:** | 'Palomo, Ernesto' |
| **Subject:** | RE: Arbitration between TIG and Caja |
| **Attachments:** | Docket Entry 9-6-2017.pdf |

Ernesto,

I'm attaching an order that was entered in the court today.  As you will recall, Locke Lord (as successor to Lord Bissell) is designated as the agent for the Republic as successor to Caja.  If you would be so kind as to forward the order to the Republic in your agent capacity under the contracts, I would appreciate it.  I have also asked our counsel in Argentina to deliver a copy as well.

Best regards,


**Julie Rodriguez Aldort**
**Butler Rubin Saltarelli & Boyd LLP**
321 North Clark Street | Suite 400 | Chicago, IL 60654
312.696.4478 | 312.873.4382 fax

jaldort@butlerrubin.com
www.butlerrubin.com
www.womeninreinsurance.com

**From:** Palomo, Ernesto [mailto:EPalomo@lockelord.com]
**Sent:** Tuesday, May 02, 2017 9:20 AM
**To:** Julie Rodriguez Aldort
**Subject:** RE: Arbitration between TIG and Caja

Thank you.  Have a nice day

**From:** Julie Rodriguez Aldort [mailto:JAldort@butlerrubin.com]
**Sent:** Tuesday, May 02, 2017 9:17 AM
**To:** Palomo, Ernesto
**Subject:** RE: Arbitration between TIG and Caja

Mr. Palomo,
Thank you for reaching out.  We have been communicating with Mr. Bernardo Saravia Frías at the Ministerio de Hacienda.  You can direct it to his attention.  Please let me know if I can be of further assistance.

Best regards,

**Julie Rodriguez Aldort**
**Butler Rubin Saltarelli & Boyd LLP**
321 North Clark Street | Suite 400 | Chicago, IL 60654
312.696.4478 | 312.873.4382 fax

Aldort 340

jaldort@butlerrubin.com
www.butlerrubin.com
www.womeninreinsurance.com

**From:** Palomo, Ernesto [mailto:EPalomo@lockelord.com]
**Sent:** Monday, May 01, 2017 3:25 PM
**To:** Julie Rodriguez Aldort
**Subject:** Arbitration between TIG and Caja
**Importance:** High

Julie:

Your firm served various pleadings on my firm because we are listed as agents for service of process in one or more treaties between TIG and Caja.  FedEx is not able to deliver the package because we have specified a particular individual to receive the package.  Can you please send me the contact info of the individual you have been communicating with at Ministerio de Hacienda?  Many thanks in advance for your attention.

Best regards,

ERP

Ernesto R. Palomo
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
312-443-0477 Direct
312-896-6477 Fax
epalomo@lockelord.com



Atlanta | Austin | Boston | Chicago | Cincinnati | Dallas | Hartford | Hong Kong | Houston | London | Los Angeles | Miami | Morristown | New Orleans | New York | Providence | Sacramento | San Francisco | Stamford | Washington DC | West Palm Beach

For more information visit www.lockelord.com

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

This email message is intended for the sole use of the intended recipient(s) and may contain confidential or privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy and delete all copies of the original message.

Aldort 341

BUTLER RUBIN SALTARELLI & BOYD LLP



_____

Atlanta | Austin | Boston | Chicago | Cincinnati | Dallas | Hartford | Hong Kong | Houston | London | Los Angeles | Miami | Morristown | New Orleans | New York | Providence | Sacramento | San Francisco | Stamford | Washington DC | West Palm Beach

For more information visit www.lockelord.com

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

Aldort 342

Case: 1:17-cv-02835 Document #: 14 Filed: 09/06/17 Page 1 of 1 PageID #:134

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.1.1.2
### Eastern Division

TIG Insurance Company

                    Plaintiff,

v.                                         Case No.: 1:17−cv−02835

                                         Honorable Gary Feinerman

Republic of Argentina

                    Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, September 6, 2017:

      MINUTE entry before the Honorable Gary Feinerman:Motion hearing held. Plaintiff's motion for default judgment [9] is granted in part (as to the Civil Rule 55(a) default) and entered and continued in part (as to the Civil Rule 55(b) default judgment) to 9/20/2017 at 9:00 a.m. For the reasons stated on the record, a Civil Rule 55(a) default is entered against Defendant Republic of Argentina as successor to Caja Navional De Ahorro y Seguro. A Rule 55(b) hearing is set for 9/20/2017 at 9:00 a.m. If Defendant wishes to oppose Plaintiff's Rule 55(b) motion for default judgment, Defendant must file a written opposition by 9/19/2017 or appear at the 9/20/2017 hearing. If Defendant does not respond or appear, the court will rule on the Rule 55(b) motion at the 9/20/2017 hearing. Plaintiff shall serve Defendant with a copy of this order via a means that allows for electronic confirmation of delivery.Mailed notice.(jlj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# Exhibit 29

**Julie Rodriguez Aldort**

| | |
|---|---|
| **From:** | Bernardo Custo <bcusto@kleinyfranco.com> |
| **Sent:** | Monday, September 11, 2017 2:51 PM |
| **To:** | secretariaprivada@ptn.gov.ar |
| **Cc:** | bsaravia@ptn.gov.ar; John Siegart; Christopher LeGros; Julie Rodriguez Aldort; Louis Dupart; Giselle Safazadeh |
| **Attachments:** | 20170915155204678.pdf |

Dr. Bernardo Saravia Frías:

En representación de TIG Insurance Company (continuadora de International Insurance Company), le envío por este medio la notificación emitida por el Tribunal de Justicia de los Estados Unidos de Norteamérica para el Distrito Norte de Illinois, Juez Gary Feinerman, en el Caso N° 1:17-cv-02835, que fue entregada en la Procuración del Tesoro de la Nación en el día de la fecha, juntamente con una traducción libre.

Muy atentamente,


**Bernardo Custo**
**KLEIN & FRANCO**
*Attorneys at Law*
*Av. Corrientes 327, 12 th floor*
*C1043AAD - Buenos Aires - Argentina*
*Phone 5411-5550-4000*
*Fax 5411-5550-4001/4005*
*http://www.kleinyfranco.com*

*The information contained in this e-mail is legally privileged, confidential and intended only for the use of the addressee. If you have received this e-mail in error, please notify us immediately by telephone (+54-11-5550-4000) or by e-mail (kyf@kleinyfranco.com) and then delete the e-mail from your system. Any dissemination, distribution or copying of this e-mail is strictly prohibited.*

1

TRIBUNAL DE JUSTICIA DE LOS ESTADOS UNIDOS DE NORTEAMÉRICA

PARA El Distrito Norte de Illinois – CM/ECF Vivo, Ver 6.1.1.2

Division Este

TIG Compañía de Seguros

Demandante,

Vs.

República Argentina

Demandado.

PROCURACIÓN DEL TESORO
DE LA NACIÓN

1 1 SET 2017

MESA DE ENTRADAS

Caso Nro. N° 1:17-cv-02835

Honorable Gary Feinerman

NOTIFICACIÓN DE INICIO DE EXPEDIENTE

Esta notificación de inicio de expediente fue realizada por el Secretario el Miércoles 6 de Septiembre de 2017.

NOTA interpuesta ante el Honorable Gary Feinerman: Pedido de audiencia.

El reclamo del Demandante solicitando el dictado de sentencia en rebeldía es concedido parcialmente (de acuerdo a la Norma Civil 55 (a) default) e ingresado y continuado parcialmente (de acuerdo a la Norma Civil 55 (b) de sentencia en rebeldía) el 20/09/2017 a las 9:00 a.m. Por los motivos expuestos en el expediente, se inició un pedido de dictado de sentencia en rebeldía contra el Demandado República Argentina como sucesor de la Caja Navional de Ahorro y Seguro. La audiencia fijada de acuerdo a la Norma 55 (b) se estableció para el 20/09/2017 a las 9:00 a.m. Si el Demandado desea oponerse al pedido del Demandante de dictado de sentencia en rebeldía de acuerdo a la Norma 55 (b), el Demandado debe presentar una oposición por escrito el día 19/09/2017 o comparecer a la audiencia fijada para el día 20/09/2017. Si el Demandado no responde o no comparece, el juzgado fallará en la audiencia del 20/09/2017 de acuerdo a la Norma 55 (b). El Demandante deberá proveer al Demandado de una copia de esta notificación por cualquier vía que permita una confirmación electrónica del envío. Notificación por correo.(jlj, )

ATENCIÓN: Esta notificación es enviada de conformidad con la Norma 77 (d) de las Normas Federales de Procedimiento Civil o la Norma 49 (c) de las Normas Federales de Procedimiento Criminal. Ha sido generada mediante CM/ECF, el sistema automático de inicio de expedientes para preservar los expedientes civiles y criminales de este Distrito. En caso de que se adjunte una orden judicial o un documento, por favor mencionarlo adicionalmente.

Para ver el calendario de eventos, reglas de inicio de petición, pronunciamientos judiciales recientes y otra información, viste nuestro sitio web **www.ilnd.uscourts.gov**

Aldort 346

Case: 1:17-cv-02835 Document #: 14 Filed: 09/06/17 Page 1 of 1 PageID #:134

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.1.1.2
### Eastern Division

TIG Insurance Company

                     Plaintiff,

v.                                        Case No.: 1:17–cv–02835

                                          Honorable Gary Feinerman

Republic of Argentina

                          Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, September 6, 2017:

      MINUTE entry before the Honorable Gary Feinerman:Motion hearing held. Plaintiff's motion for default judgment [9] is granted in part (as to the Civil Rule 55(a) default) and entered and continued in part (as to the Civil Rule 55(b) default judgment) to 9/20/2017 at 9:00 a.m. For the reasons stated on the record, a Civil Rule 55(a) default is entered against Defendant Republic of Argentina as successor to Caja Navional De Ahorro y Seguro. A Rule 55(b) hearing is set for 9/20/2017 at 9:00 a.m. If Defendant wishes to oppose Plaintiff's Rule 55(b) motion for default judgment, Defendant must file a written opposition by 9/19/2017 or appear at the 9/20/2017 hearing. If Defendant does not respond or appear, the court will rule on the Rule 55(b) motion at the 9/20/2017 hearing. Plaintiff shall serve Defendant with a copy of this order via a means that allows for electronic confirmation of delivery.Mailed notice.(jlj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# Exhibit 30

**From:** Bernardo Custo [mailto:bcusto@kleinyfranco.com]
**Sent:** Monday, September 11, 2017 1:46 PM
**To:** ipcortes@mecon.gob.ar
**Cc:** John Siegart; Christopher LeGros; Julie Rodriguez Aldort; Louis Dupart; Giselle Safazadeh
**Subject:**



20170915144253998
.pdf

Dr. Ignacio Pérez Cortés:

En representación de TIG Insurance Company (continuadora de International Insurance Company), le envío por este medio la notificación emitida por el Tribunal de Justicia de los Estados Unidos de Norteamérica para el Distrito Norte de Illinois, Juez Gary Feinerman, en el Caso N° 1:17-cv-02835, que fue entregada a su nombre en sobre cerrado en el día de la fecha, juntamente con una traducción libre.

Muy atentamente,

**Bernardo Custo**
**KLEIN & FRANCO**
*Attorneys at Law*
*Av. Corrientes 327, 12 th floor*
*C1043AAD - Buenos Aires - Argentina*
*Phone 5411-5550-4000*
*Fax 5411-5550-4001/4005*
*http://www.kleinyfranco.com*
_____
*The information contained in this e-mail is legally privileged, confidential and intended only for the use of the addressee. If you have received this e-mail in error, please notify us immediately by telephone (+54-11-5550-4000) or by e-mail (kyf@kleinyfranco.com) and then delete the e-mail from your system. Any dissemination, distribution or copying of this e-mail is strictly prohibited.*

# Exhibit 31

Aldort 350



*Consulate General*
*of the*
*Argentine Republic*

Note  CCHIC 255/2017

The CONSULATE GENERAL OF THE REPUBLIC OF ARGENTINA presents its compliments to the UNITED STATES DISTRICT COURT – NORTHERN DISTRICT OF ILLINOIS- and has the honor to address you in regards to Case number 17-cv-02835 / TIG Cía. de Seguros v. Rep. Argentina.

Given the provision setforth in the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, in force between the Argentine Republic and the United States of America. The Argentine Republic would like to recall the Declaration made in terms of Article 21 of the aforementioned Convention pertaining the opposition to the use of methods of transmission pursuant to Article 10. In this regard, the transmission of judicial documents by postal channels, directly to persons abroad, cannot be considered as a valid notification. To conclude, please find attached Note Verbal N°194, issued July 10th, 2017.

The CONSULATE GENERAL OF THE REPUBLIC OF ARGENTINA avails itself of the opportunity to renew to the UNITED STATES DISTRICT COURT – NORTHERN DISTRICT OF ILLINOIS the assurances of its highest esteem and consideration.

Chicago, September 19th, 2017.



UNITED STATES DISTRICT COURT – NORTHERN DISTRICT OF ILLINOIS

205 North Michigan Avenue, Suite 4209   Chicago, Illinois 60601-5914   Ph.: 312.819.2610   Fax: 312.819.2612



**Consulate General**
**of the**
**Republic of Argentina**

Note CCHIC 194/2017

    The CONSULATE GENERAL OF THE REPUBLIC OF ARGENTINA presents its compliments to the UNITED STATES DISTRICT COURT-NORTHERN DISTRICT OF ILLINOIS- and has the honor to submit a copy of documents sent to the PROCESS FORWARDING INTERNATIONAL (PFI) CONTRACTING AGENT FOR THE DEPARTMENT OF JUSTICE-OFFICE OF INTERNATIONAL JUDICIAL ASSISTANCE.

    The CONSULATE GENERAL OF THE REPUBLIC OF ARGENTINA avails itself of the opportunity to renew to the UNITED STATES DISTRICT COURT-NORTHERN DISTRICT OF ILLINOIS the assurances of its highest esteem and consideration.

Chicago, July 10th, 2017



UNITED STATES DISTRICT COURT-NORTHERN DISTRICT OF ILLINOIS

Aldort 352

"2017 – AÑO DE LAS ENERGIAS RENOVABLES"



Ministerio de Relaciones Exteriores y Culto



Nota Nro.: 6509/2017

Sírvase citar Carpe. DAJIN N° 1701/17

Buenos Aires,

PROCESS FORWARDING INTERNATIONAL (PFI)
CONTRACTING AGENT FOR THE DEPARTMENT OF JUSTICE
OFFICE OF INTERNATIONAL JUDICIAL ASSISTANCE
633 Yesler Way Seattle, WA 98104 USA

Tengo el agrado de dirigirme a Ud., en mi carácter de Autoridad Central para la aplicación del Convenio relativo a la comunicación y notificación en el extranjero de documentos judiciales y extrajudiciales en materia civil o comercial, suscripto en La Haya el 15/11/65, en relación a la documentación relativa a la notificación de la REPUBLICA ARGENTINA que fuera remitida -por el Departamento de Seguros de Illinois- vía postal al MINISTERIO DE HACIENDA – SECRETARIA LEGAL Y ADMINISTRATIVA.

En la nota emitida el 6/7/17 por el citado Ministerio (cuya copia y traducción no oficial se adjunta a la presente), se manifiesta que "…El 12 de mayo pasado se recibió en la Mesa de Entradas del MINISTERIO DE HACIENDA" un sobre cerrado con documentación relativa a una supuesta acción judicial promovida por TIG Insurance Company contra la REPUBLICA ARGENTINA ante un tribunal judicial de los ESTADOS UNIDOS. En esa causa intervendría un Tribunal del Distrito Norte del Estado de Illinois. Dado lo establecido en el Convenio de La Haya de 1965, tal como fuera ratificado por la REPUBLICA ARGENTINA, la entrega de ese sobre nunca podría considerarse una notificación válida de una demanda judicial contra este país en los Estados Unidos. En los documentos contenidos en el sobre se hace además referencia a un arbitraje contra la REPUBLICA ARGENTINA (en el que se habría dictado un laudo) que tampoco habría sido notificado válidamente al Estado Nacional conforme lo previsto en los tratados vigentes. …".

Atento lo antedicho, se remite la documentación de referencia a fin de que sea devuelta a la United States



Generado por DAJINGES BNO:6779/2017
Carpeta 1701/2017

Aldort 353



'2017 – AÑO DE LAS ENERGIAS RENOVABLES'



Ministerio de Relaciones Exteriores y Culto

District Court, Northern District of Illinois –de ser posible antes del 11/7/17–, informándole que la pretendida notificación vía postal no es válida, atento que la República Argentina y los Estados Unidos de América se encuentran vinculados en materia de notificación por el Convenio relativo a la comunicación y notificación en el extranjero de documentos judiciales y extrajudiciales en materia civil o comercial suscripto en La Haya el 15/11/65.

En relación al citado Convenio de La Haya de 1965, la República Argentina en virtud a lo estipulado en el art. 21, 2° párrafo, ha expresado que se opone al uso de los métodos de transmisión de documentos designados en el art. 10: "La facultad de remitir directamente, por vía postal los documentos judiciales a las personas que se encuentren en el extranjero". También hizo reserva al art. 5, 3° párrafo: "La República Argentina únicamente aceptará documentación traducida al castellano".

En razón de lo antes mencionado, se solicita que se informe a las mencionadas autoridades judiciales estadounidenses que la pretendida notificación vía postal es inválida atento la oposición efectuada por Argentina a las vías de transmisión previstas en el art. 10 del citado Convenio. Por lo tanto, para que dicha notificación tenga validez en la República Argentina, deberá realizarse en virtud a la vía de transmisión principal prevista en los art. 2 a 7 del Convenio, es decir con intervención de la Autoridad Central argentina, debiendo la petición realizarse conforme al formulario modelo anexo al mencionado Convenio y debiéndose efectuar la notificación de acuerdo a una de las formas establecidas en el art. 5. La petición recibida por la Autoridad Central argentina, será remitida a la justicia competente, la cual procederá a practicar la notificación.

Se desea remarcar sobre esto último, que cuando se reciba en este Ministerio la petición de notificación conforme al formulario modelo anexo al citado Convenio de La Haya de 1965, se hará en el carácter de Autoridad Central designada por la República Argentina para la aplicación del Convenio y no como persona demandada, debiendo practicar la notificación la justicia argentina competente.



Generado por DAJINGES BNO:6779/2017
Carpeta 1701/2017

Aldort 354

"2017 – AÑO DE LAS ENERGIAS RENOVABLES"



Ministerio de Relaciones Exteriores y Culto

Asimismo, deberá recordarse al Tribunal de Illinois que el documento a notificar deberá estar traducido al español, conforme a la reserva efectuada por Argentina al art. 5 párrafo 3.

Saludo a Ud. atentamente.

FERNANDO DE MOMPADRE
Ministro
Oficina de Asistencia Jurídica Internacional

Adj.: 1 cuerpo.
moi

UNNOFFICIAL TRANSLATION

Our file Carpe. DAJIN N° 1701/17

Buenos Aires,


PROCESS FORWARDING INTERNATIONAL (PFI)
CONTRACTING AGENT FOR THE DEPARTMENT OF JUSTICE
OFFICE OF INTERNATIONAL JUDICIAL ASSISTANCE
633 Yesler Way Seattle, WA 98104 USA


I have the honor to address you in our capacity as Central
Authority for the Convention on the Service Abroad of
Judicial and Extrajudicial Documents in Civil or Commercial
Matters, concluded 15 November 1965 in The Hague, in
reference to documents related to service the Argentine
Republic sent by postal channels by the Illinois Department
of Insurance to the Ministry of Economy ("Ministerio de
Hacienda, Secretario Legal y Administrativo).


The Ministry's note dated July 6, 2017 (which copy and
unofficial translation is attached), says: "On May 12, a
closed envelope was received at the entrance desk of the
Ministry of Economy with documentation concerning an
action, which would have been brought by TIG Insurance
Company against the Argentine Republic before a judicial
court of the United States. A court of the Northern
District of the State of Illinois would intervene in the
case. Given the provisions set forth in The Hague Service
Convention of 1965, as ratified by the Argentine Republic,
the delivery of that envelope could never be considered as
a valid notification of a lawsuit against this country in
the United States. Besides, an arbitration against the
Argentine Republic (in which an award would have been
issued) is referred to in the documents contained in the
aforementioned envelope, which would not have been duly
notified to the Argentine Republic either according to the
applicable law…".


Consequently, we sent back the referred documents in order
to be returned to the United States District Court,
Northern District of Illinois –if possible before July 11,
2017-. We also inform you that the said service by postal
channels is not valid, taking into account that the service
of documents between the Argentine Republic and the United
States of America is ruled by the Convention on the Service

Aldort 356

Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, concluded 15 November 1965 in The Hague.

In relation to the said Hague Convention of 1965, the Argentine Republic, in accordance with the second paragraph of Article 21, has informed its opposition to the use of methods of transmission pursuant to Article 10: "the freedom to send judicial documents, by postal channels, directly to persons abroad". It has also made a reservation to paragraph 3 of Article 5: "The Argentine Republic will only accept documents translated into Spanish".

In that regard, we request to inform the above mentioned U.S judicial authorities that the service by postal channels is invalid due to the opposition made by Argentina to the transmission channels pursuant Article 10 of the Convention. Therefore, a valid service of documents in Argentina should be made through the channels established pursuant Articles 2 to 7 of the Convention, that is, with the intervention of the Argentine Central Authority, with the request made in the form attached to the Convention and the service made in accordance to one of the methods established in Article 5. The request received by the Argentine Central Authority will be sent to the competent judicial authority, which will then proceed with the service of the document.

We want to highlight that when the request for service conforming to the model form annexed to the 1965 Hague Convention will be received at this Ministry, we will do so as Central Authority designated by the Argentine Republic for the application of the Convention and not as the defendant, as the service of documents should be made by the competent Argentine judicial authority.

The Court of Illinois should also be informed that the document to be served should be translated into Spanish, according to the reservation made by Argentina to paragraph 3 of Article 5.

Yours sincerely,

# Exhibit 32

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.1.1.2
### Eastern Division

TIG Insurance Company

                                    Plaintiff,

v.                                                    Case No.: 1:17−cv−02835

                                                      Honorable Gary Feinerman

Republic of Argentina

                                    Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, September 20, 2017:

        MINUTE entry before the Honorable Gary Feinerman:Status hearing held and continued to 10/26/2017 at 9:00 a.m. Plaintiff's motion for default judgment [9] is entered and continued. Plaintiff shall respond to the letter from the Consulate General of the Argentine Republic by 10/11/2017. The Consulate General of the Argentine Republic is encouraged to file an attorney appearance. Notice mailed to Consulate General of the Argentine Republic, 205 North Michigan Avenue, Suite 4209, Chicago, Illinois 60604−5914 by judicial staff.Mailed notice.(jlj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

Aldort 359

Exhibit 33

Aldort 360

## Julie Rodriguez Aldort

| | |
|---|---|
| **From:** | Julie Rodriguez Aldort |
| **Sent:** | Wednesday, September 20, 2017 3:51 PM |
| **To:** | 'cchic@mrecic.gov.ar' |
| **Cc:** | 'Bernardo Custo' |
| **Subject:** | Communication from court in Chicago - FW: Activity in Case 1:17-cv-02835 TIG Insurance Company et al v. Republic of Argentina order on motion for default judgment |

Dear Consulate:

I represent TIG Insurance Company in the above referenced litigation against the Republic. Following up on my conversation with your office, I am forwarding the order entered in the court today. Please contact me with questions. I am also copying above TIG's counsel in Argentina, should you wish to speak with our counsel there.

**Best regards,**


**Julie Rodriguez Aldort**
**Butler Rubin Saltarelli & Boyd LLP**
321 North Clark Street | Suite 400 | Chicago, IL 60654
312.696.4478 | 312.873.4382 fax

jaldort@butlerrubin.com
www.butlerrubin.com
www.womeninreinsurance.com

**From:** usdc_ecf_ilnd@ilnd.uscourts.gov [mailto:usdc_ecf_ilnd@ilnd.uscourts.gov]
**Sent:** Wednesday, September 20, 2017 2:34 PM
**To:** ecfmail_ilnd@ilnd.uscourts.gov
**Subject:** Activity in Case 1:17-cv-02835 TIG Insurance Company et al v. Republic of Argentina order on motion for default judgment


This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### United States District Court

### Northern District of Illinois - CM/ECF LIVE, Ver 6.1.1.2

## Notice of Electronic Filing

The following transaction was entered on 9/20/2017 at 2:33 PM CDT and filed on 9/20/2017
**Case Name:**        TIG Insurance Company et al v. Republic of Argentina

Aldort 361

**Case Number:**      1:17-cv-02835
**Filer:**
**WARNING: CASE CLOSED on 04/14/2017**
**Document Number:** 16

**Docket Text:**
**MINUTE entry before the Honorable Gary Feinerman:Status hearing held and continued to 10/26/2017 at 9:00 a.m. Plaintiff's motion for default judgment [9] is entered and continued. Plaintiff shall respond to the letter from the Consulate General of the Argentine Republic by 10/11/2017. The Consulate General of the Argentine Republic is encouraged to file an attorney appearance. Notice mailed to Consulate General of the Argentine Republic, 205 North Michigan Avenue, Suite 4209, Chicago, Illinois 60604-5914 by judicial staff.Mailed notice.(jlj, )**

**1:17-cv-02835 Notice has been electronically mailed to:**

Julie Rodriguez Aldort    jaldort@butlerrubin.com, akubacki@butlerrubin.com, wkondziolka@butlerrubin.com

**1:17-cv-02835 Notice has been delivered by other means to:**

2

Aldort 362

# Exhibit 34

Aldort 363

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TIG INSURANCE COMPANY as successor by merger to INTERNATIONAL INSURANCE COMPANY and INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, | ) ) ) ) | |
| Petitioner, | ) | Civil Action No. 17 cv 02835 |
| v. | ) ) | Hon. Judge Gary Feinerman Magistrate Hon. Mary M. Rowland |
| REPUBLIC OF ARGENTINA as successor to CAJA NACIONAL DE AHORRO Y SEGURO, | ) ) ) ) | |
| Respondent. | ) | |

**PETITIONER'S MOTION TO STRIKE RESPONDENT'S
*EX PARTE* COMMUNICATION CONTESTING SERVICE**

Petitioner TIG Insurance Company ("TIG") submits this Motion to Strike Respondent the Republic of Argentina's ("Republic") *ex parte* communication to this Court contesting service of process in the instant matter. The Republic's *ex parte* communication is procedurally defective because it failed to comply with Rules 7, 11(a) and 12. Even if treated as a proper Rule 12 motion, the Republic's submission should be stricken because the Republic failed to post prejudgment security, as required under Illinois law for foreign reinsurers and insurers. Moreover, the Republic's submission is legally incorrect; service was proper. For the reasons that follow, Respondent's communication should be stricken, and default judgment entered in favor of TIG.

# INTRODUCTION

For years, TIG has sought to have the Republic honor the debts it incurred under the commercial reinsurance contracts it entered into with TIG.  Despite proper notice, the Republic has repeatedly stonewalled TIG by refusing to pay its bills, refusing to participate in the agreed arbitration procedures and, now, by refusing to appear before this Court to respond to TIG's Petition for Confirmation of Final Arbitration Award ("Petition").  TIG filed its petition six months ago.  After months of waiting, TIG filed its Motion for Default Judgment.  It was only on the eve of the most recent status hearing before this Court, that the Republic finally uttered a response through its *ex parte* communication with this Court.  That response, however, is both procedurally improper and without merit.  Thus, it cannot serve as a basis for avoiding the default judgment requested by TIG.

The Republic's eleventh hour *ex parte* submission to this Court should be stricken because it was not properly filed in this Court under Rules 7, 11(a) or Rule 12(b).  An *ex parte* letter to the Court, that does not even bear the name or signature of its author, is not a proper filing with this Court.

Even if the Court were to assume that the *ex parte* submission were a proper Rule 12(b)(4) or 12(b)(5) motion challenging service, the motion should be stricken because as a foreign reinsurer, pursuant to 215 ILCS § 123(5), the Republic is required to provide pre-judgment security before it may enter a responsive pleading in this case.  The Republic has not posted the required pre-judgment security and, as the Seventh Circuit previously found under the very same reinsurance contracts, the Republic is not immune from posting security because it waived any such immunity when it, through its predecessor, Caja Nacional de Ahorro y Seguro

- 2 -

Aldort 365

("Caja"), entered into the two commercial reinsurance contracts at issue with TIG's predecessor, International Insurance Company ("IIC"). *Int'l Ins. Co. v. Caja Nacional De Ahorro y Seguro*, 293 F.3d 393-94 (7th Cir. 2002) (finding waiver of immunity, if any such immunity applied, and affirming default judgment against Caja for failure to post prejudgment security). Thus, the Republic's *ex parte* communication with the Court should be stricken.

    Substantively, the Republic's belated communication to the Court is legally incorrect. The Republic challenges the method of service of the Petition based on an erroneous assumption that service was to be made under the Foreign Sovereign Immunities Act ("FSIA"), Section 1608(a)(2), which provides for service under applicable international conventions for service of judicial documents, such as the Hague Convention. The Republic alleges that TIG failed to serve the Republic in accordance with the Republic's exception to Article 10 of the Hague Convention of 1965 ("Hague Convention"). (ECF No. 15 at 7.) Article 10 of the Hague Convention provides that signatory countries agree "to send judicial documents, by postal channels, directly to persons abroad." As the Republic's communication asserts, Argentina has maintained an official objection to Article 10 of the Hague Convention. However, TIG did not seek to serve the Republic under Section 1608(a)(2) of the FSIA.

    TIG served the Republic under FSIA Section 1608(a)(1), *i.e.,* under a "special arrangement" between the foreign state and the plaintiff. The Republic expressly agreed to a Service of Suit provision in the reinsurance contracts at issue, which provides that service may be made through its agents, Locke Lord and the Illinois Department of Insurance. (ECF No. 15 at 6.) As it has with past suits against the Republic under the same contracts, TIG served the Republic in accordance with that agreement, and therefore, has met the requirements of both the

- 3 -

Aldort 366

FSIA and the reinsurance contracts.  Consequently, the Republic's assertions are without merit.

TIG respectfully requests that this Court grant its motion to strike and enter default judgment, as

requested in TIG's Motion for Default Judgment.

## RELEVANT BACKGROUND AND PROCEDURAL POSTURE

TIG is a domestic insurance company that purchased reinsurance from Caja, an alien

insurance and reinsurance company domiciled in Argentina and wholly-owned by the Republic,

which has since been dissolved and succeeded by the Republic.  Caja was a corporation

organized and previously existing under the laws of Argentina, wholly-owned by the government

of the Republic of Argentina, which had its principal place of business in Buenos Aires,

Argentina.  (*Petition for Confirmation of Final Arbitration Award,* ECF No. 2 ("Petition") at ¶

3.)  In 1994, the Republic placed Caja into liquidation, and in 2005, when the liquidation process

concluded, the Republic officially dissolved Caja, and Caja ceased being a separate juridical

entity.  By decree of the Republic, all of Caja's assets and liabilities were transferred to the

Treasury of the Republic of Argentina, and the Republic is now successor to Caja.  (Petition at ¶

3.)

TIG's predecessor, IIC, an Illinois corporation, and certain affiliates, purchased

reinsurance from Caja, pursuant to two reinsurance contracts:  the Casualty Reinsurance

Agreement incepting on January 1, 1979 and terminating at 12:01 a.m. on January 1, 1984, and

the Casualty Excess Reinsurance Agreement March 15, 1979 and terminating on December 31,

1981 ("Treaties").  (Copies of the Treaties are attached as Exhibits 1 and 2 to the Declaration of

Julie Rodriguez Aldort submitted in support of TIG's Petition ("Aldort Decl."), ECF No. 3.)  The

Treaties contained an arbitration clause at Article XXI.  (Petition at ¶ 8.)  After years of being

- 4 -

unable to obtain reimbursement from Respondent under the Treaties, TIG initiated arbitration

against the Republic for its failure to pay TIG nearly three million dollars in indemnity

obligations.  The facts surrounding the underlying arbitration in this matter are described in

greater detail in the Petition.  (*See* Petition, ECF No. 2.)

       Although repeatedly notified of the arbitration proceedings, the Republic failed to appear

in the arbitration.  On March 9, 2017, after a full merits hearing, the arbitration panel entered a

final award against the Republic in the amount of $2,827,912.20 in overdue balances;

$473,320.92 in interest; $32,812.44 as the Republic's 50% share of the arbitration costs and

arbitrator fees; and $125,443.75 in attorneys' fees incurred by TIG in pursuing the arbitration.

(Petition at ¶ 1.)  On April 14, 2017, TIG filed its Petition to confirm the arbitration award and

served the Republic according to the Service of Suit provision in the reinsurance contracts at

issue, by providing copies to the Illinois Department of Insurance and Locke Lord, as the

registered agents of the Republic under the terms of the Treaties.  (Petition at ¶ 10.)

       The Republic did not enter an appearance or otherwise respond to TIG's Petition.

Accordingly, on August 30, 2017, TIG filed *Petitioner's Motion for Default Judgment* (ECF No.

9 ("Motion")), requesting that this Court enter a default judgment against the Republic for failure

to answer, plead, appear, or otherwise defend in a timely manner as to TIG's Petition.  (Motion

at 1.)  Once again following the protocol set forth in the Treaties' Service of Suit provision, TIG

sent copies of the Motion and supporting documentation to the Illinois Department of Insurance

and Locke Lord, as the registered agents of the Republic under the terms of the Treaties.  (Copies

of the letters sent to the Illinois Dept. of Insurance and Locke Lord are attached as Exhibits 1 and

2.)  On September 6, 2017, TIG appeared before this Court to present the Motion.  The Court

- 5 -

Aldort 368

granted TIG's Motion in part, entering the order of default.  (ECF No. 14.)  The Court set another status hearing for September 20, 2017, and further stated that if Respondent wished to oppose TIG's Motion, Respondent was to file a written opposition by September 19, 2017 or appear at the September 20, 2017 hearing.  (*Id.*)  The Court also directed that TIG serve Respondent with a copy of the Court's order via a means that allowed for electronic confirmation of delivery.  (*Id.*) TIG forwarded copies of the order to Respondent's agent for service of process, Locke Lord, and directly to Respondent, by email, on September 8 and September 11, 2017, respectively.  (Copies of these communications are attached as Exhibits 3 and 4.)

TIG appeared at the status hearing on September 20, 2017, at which the Court advised TIG that the Consulate General for Argentina had sent a communication ("Communication") directly to the Court, contesting service, which the Court subsequently placed on the docket as ECF No. 15.  The Court granted TIG the opportunity to respond.  (ECF No. 16.)  That same day, after contacting the Consulate General's office number listed in the Communication, per the Consulate's request, TIG forwarded the Court's September 20, 2017 minute order by email to the Consulate General, as shown in Exhibit 5 and as acknowledged by the Consulate in Exhibit 6.

## ARGUMENT

**I.    THE REPUBLIC'S EX PARTE COMMUNICATION SHOULD BE STRICKEN BECAUSE IT FAILS TO COMPLY WITH APPLICABLE FEDERAL RULES.**

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, a party may assert the defense of insufficient process or insufficient service of process by motion under the Rule 12(b)(4) or 12(b)(5).  Failure to raise a challenge to service by Rule 12 motion results in waiver:

Aldort 369

> A party waives any defense listed in Rule 12(b)(2)-(5) by: …
> (B) failing to either:
>> (i) make it by motion under this rule; or
>> (ii) include it in a responsive pleading or in an amendment allowed by
>> Rule 15(a)(1) as a matter of course.

Fed. R. Civ. Proc. 12(h)(1). Here, to assert its apparent challenge to service, the Republic did not

submit a Rule 12 motion or any other kind of motion that would comply with Rule 7(b). Fed. R.

Civ. Proc. 7(b) (request of the court "must be made by motion"). Instead, it merely submitted

what appears to be a collection of letters from the Consulate General of the Argentine Republic.

The Communication is not a procedurally proper response to the Petition, and thus, the Court

should strike it.

In addition to failing to comply with Rules 7 or 12, the submission also fails under Rule

11(a). The Republic's Communication was unsigned, with the exception of one attachment.

Rule 11(a) requires a signature by at least one attorney of record or by a party personally if the

party is unrepresented. Rule 11(a) provides that the "court must strike an unsigned paper unless

the omission is promptly corrected after being called to the attorney's or party's attention." Fed.

R. Civ. Proc. 11(a).

## II. THE REPUBLIC'S EX PARTE COMMUNICATION SHOULD BE STRICKEN BECAUSE THE REPUBLIC MUST PROVIDE PRE-JUDGMENT SECURITY BEFORE RESPONDING TO TIG'S PETITION AND MOTION.

Even if the Republic's *ex parte* Communication were to be treated as a Rule 12(b)(4) or

12(b)(5) motion, it still should be stricken. Section 123(5) of the Illinois Insurance Code

("Section 123") mandates that a foreign or alien insurer or reinsurer not authorized by the Illinois

Department of Insurance to do business in Illinois post adequate pre-judgment security with the

Court – "sufficient to secure the payment of any final judgment which may be rendered" in the

Aldort 370

proceedings – prior to filing "any pleading in any action or proceeding . . . instituted against it." 215 ILCS 5/123(5). For the Court's convenience, a copy of the Illinois statute is appended hereto as Exhibit 7. In enacting Section 123, the Illinois legislature made clear its intent to protect the citizens of and corporations authorized by the State of Illinois in their dealings with foreign reinsurance such as the Republic, as successor to Caja, stating:

> The Legislature declares that it is a subject of concern that many residents of this State or corporations authorized to do business in this State hold policies of insurance or reinsurance issued by companies not authorized to do business in this State, thus presenting to such residents or corporations authorized to do business in this State the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies. In furtherance of such State interest, the Legislature herein provides a method of substituted service of process upon such companies and *declares that in so doing it exercises its power to protect its residents and corporations authorized to do business in this State* . . .

215 ILCS 5/123(1) (emphasis added). *See also First Specialty Ins. Corp. v. Cont'l Cas. Co., No. 01 C 9175*, 2002 WL 31386521, at *4 (N.D. Ill. Oct. 21, 2002) (noting that "the purpose of the pre-judgment security is to insure that the possible amount of final judgment is filed with the court to insure that the Illinois resident would not have to resort to a distant forum to recover any such reward" and holding that the foreign insurer in the case was required to post such pre-judgment security).

As an unauthorized alien reinsurer, the Republic should have posted security with this Court *before* submitting its ex parte communication in response to TIG's Petition to confirm the arbitration award. *Id.* The Republic failed to do so. Accordingly, the Republic's *ex parte* Communication should be stricken, and the Court should refuse to consider the assertions set forth therein unless and until the Republic provides pre-judgment security in the amount of the arbitrations award, which is $3,459,489.31.

- 8 -

The Seventh Circuit previously determined that the Republic is required to post pre-judgment security under the same Treaties involved in the instant action. In *Int'l Ins. Co. v. Caja Nacional De Ahorro y Seguro*, TIG's predecessor in interest, IIC, petitioned to confirm a separate arbitration award it had obtained against Caja under the same Treaties (this was prior to Caja being dissolved and the Republic becoming its successor in interest). 293 F.3d 393-94 (7th Cir. 2002). After Caja filed an answer to IIC's petition, IIC moved for an order requiring Caja to post pre-judgment security pursuant to Section 123. Assuming *arguendo* that Caja was a foreign instrumentality and was "therefore entitled to the protection of the FSIA," the Seventh Circuit nonetheless found that Argentina, as a signatory of both the New York and Panama Conventions which allow "a court to impose a security requirement" such as the one contemplated by Section 123, had waived immunity under the FSIA. *Id.* at 399. Further recognizing that "[b]oth the New York Convention and the Panama Convention clearly indicate that district courts have discretion to impose pre-judgment security as they deem proper[,]" the court proceeded to find that requiring Caja to post pre-judgment security was not an abuse of discretion given that "Caja repeatedly failed to appear for any part of the arbitration proceeding." *Id.* at 401.

In this instant action, the Republic has also repeatedly failed to appear for any part of the underlying arbitration proceeding and has not entered an appearance or otherwise properly pled in this action. As was the case in *Int'l Ins. Co. v. Caja Nacional De Ahorro y Seguro*, the Republic is required to post pre-judgment security prior to entering any pleading in this matter. Therefore, its Communication should be stricken.

- 9 -

Aldort 372

III.    **SERVICE IS PROPER UNDER ARTICLE XX OF THE TREATIES, WHICH
        CONSTITUTES A "SPECIAL ARRANGEMENT" FOR SERVICE OF PROCESS
        UNDER SECTION 1608 OF THE FSIA.**

The substance of the Republic's *ex parte* submission is without merit, and thus, even if

not stricken, it would not be a basis for denying TIG's Motion for Default.  Under the FSIA, the

exclusive means of service upon a foreign sovereign is contained in section 1608 of the FSIA.[1]

In relevant part, section 1608 of the FSIA states that "[s]ervice in the courts of the United States

and of the States shall be made upon a foreign state or political subdivision of a foreign state: (1)

by delivery of a copy of the summons and complaint in accordance with any special arrangement

for service between the plaintiff and the foreign state or political subdivision; or (2) if no special

arrangement exists, by delivery of a copy of the summons and complaint in accordance with an

applicable international convention on service of judicial documents [*e.g.*, the Hague

Convention]. . . ." 28 U.S.C.A. § 1608(a).  Here, the applicable Section is 1608(a)(1), which

provides that service may be made on a foreign state in accordance with a special arrangement

between the plaintiff and the foreign state.  That arrangement was made in the Treaties.

Article XX of the Treaties includes a Service of Suit provision that provides the Republic

"will submit to the jurisdiction of any court of competent jurisdiction within the United States

and will comply with all requirements necessary to give such court jurisdiction;" further, service

of process may be made on Lord Bissell and Brook and/or the Director of the Illinois Department

of Insurance.  (Petition at ¶ 10.)  Consistent with the terms of the Treaties, on April 20, 2017,

---

[1] The Republic has not asserted that it is immune to this action or the underlying arbitration, and no such immunity exists because the Republic waived any immunity based on the commercial reinsurance contracts it, as successor to Caja, entered into in the United States with TIG.  In the reinsurance contracts it, as successor to Caja, agreed to arbitrate in the United States and to enforcement in the courts of the United States.  *See Int'l Ins. Co. v. Caja Nacional De Ahorro y Seguro*, 293 F.3d 392, 393 (7th Cir. 2002) (finding that, under the same reinsurance contracts at issue in this case, the Republic "[b]y agreeing to a contract designating Chicago, Illinois as the site of arbitration,…waived its immunity in a proceeding to confirm the arbitral award.").

- 10 -

Aldort 373

TIG, via special process server, served the Petition and supporting documentation on Locke Lord

(as successor to Lord Bissell and Brook) of Chicago, Illinois, which was specified as the

Republic's agent for service of process in Article XX of each Treaty, and on the Illinois

Department of Insurance, also pursuant to Article XX of each Treaty. (*See* Return of Service on

Illinois Dept. of Insurance, ECF No. 6; Return of Service on Locke Lord, ECF No. 7.) The

Republic's *ex parte* Communication acknowledged that it received service copies of TIG's

Petition from the Illinois Department of Insurance on May 12, 2017. [2] (*See* ECF No. 15 at p. 6.)

Courts have recognized service of suit provisions like those contained in Article XX of

both Treaties as constituting a "special arrangement for service" sufficient to effect service on a

foreign sovereign/instrumentality or agency of a foreign sovereign under the terms of FSIA

section 1608. *See Marlowe v. Argentine Naval Comm'n*, 604 F. Supp. 703, 707 (D.D.C. 1985)

(finding that service upon Argentinian instrumentality pursuant to the terms of contract between

instrumentality and plaintiff to constitute a "special arrangement" in compliance with 28 U.S.C.

§ 1608(a)); *Saunders Real Estate Corp. v. Consulate General of Greece*, Civ. A. No. 94–11951,

1995 WL 598964 at *2 (D. Mass. Aug. 11, 1995) (finding that lease provision providing that

"notices shall be effective when delivered in hand or sent by certified mail..." established

"special arrangement" under section 1608 of FSIA); *Arbitration Between Space Sys./Loral, Inc.

v. Yuzhnoye Design Office*, 164 F. Supp. 2d 397, 402-403 (S.D.N.Y. 2001) (holding that

"NOTICES AND WORKING LANGUAGE" section of contract between plaintiff and

---

[2] On May 11, 2017, TIG additionally provided the Republic courtesy copies of the Petition, along with Spanish
translations, via TIG's local counsel in Argentina. Those documents were received by the Republic's Attorney
General's office and Ministry of Economy, as indicated by the stamps on the transmittal documents. (*See*
Declaration of Giselle Safazadeh submitted in support of TIG's Petition ("Safazadeh Decl."; ECF No.10) at ¶ 6 and
Exhibits 4 and 5 attached thereto.) TIG also served the Republic with the Petition and supporting documentation via
U.S. certified mail. A return receipt was entered for this service by mail on May 15, 2017. (*See* Return of U.S. Post

Aldort 374

instrumentality of the Republic of Ukraine constituted "special arrangement" for service of process sufficient to comply with section 1608 of the FSIA); *Int'l Rd. Fed'n v. Embassy of the Democratic Republic of the Congo*, 131 F. Supp. 2d 248, 251 (D.D.C. 2001) (notice provision in sublease between plaintiff and foreign sovereign constitutes "special arrangement" under section 1608 of FSIA).

The Republic's exception to service under Article 10 of the Hague Convention is inapplicable because service was made pursuant to Section 1608(a)(1), *i.e.*, by special arrangement, and not under Section 1608(a)(2). The Service of Suit provision was placed in the Treaties precisely so that TIG would not have to jump through procedural hoops to enforce its rights under the Treaties.[3]

## CONCLUSION

TIG Insurance Company respectfully requests that this Court strike the *ex parte* response of the Republic for its failure to post pre-judgment security and grant TIG's Motion for Default Judgment, confirming the final arbitration award and entering judgment against the Republic of Argentina, as successor to Caja Nacional de Ahorro y Seguro, in the amount of $3,459,489.31.

---

Office Receipt, ECF No. 8; *see* Safazadeh Decl. at ¶ 5.).
[3] Courts recognize that the purpose of a service of suit clause is to ensure that jurisdiction over the foreign reinsurer can be obtained in order to compel arbitration or enforce an arbitral award. *See, e.g., Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 79 F.3d 295, 298, 1996 A.M.C. 1379 (2d Cir. 1996) ("The principal effect of the [service of suit clause] is to resolve the issue of personal jurisdiction over a foreign association, since 'an arbitration award cannot be enforced without access to the courts.'") (citation omitted); *Security Life Ins. Co. v. Hannover Life Reassurance Co. of America*, 167 F. Supp. 2d 1086, 1088 (D. Minn. 2001); *NECA Ins. Ltd. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 595 F. Supp. 955, 958 (S.D.N.Y. 1984) (service of suit clause designed to guarantee the enforcement of arbitration awards). The federal appellate court for the Third Circuit, when reviewing a nearly identical service of suit clause to those in the Treaties concluded that "service-of-suit clauses . . . may complement arbitration clauses by establishing a judicial forum in which a party may enforce arbitration." *See Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 554 (3d Cir. 2009).

- 12 -

Respectfully submitted,


TIG INSURANCE COMPANY, as successor in
interest to International Surplus Lines Insurance
Company and International Insurance Company


By:    /s/ Julie Rodriguez Aldort
                 One of its Attorneys

Julie Rodriguez Aldort (Attorney I.D. No. 6271412)
Giselle Safazadeh (Attorney I.D. No.6315712)
Butler Rubin Saltarelli & Boyd LLP
321 N. Clark Street, Suite 400
Chicago, Illinois 60654
(312) 444-9660

- 13 -

Aldort 376

# Exhibit 35

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TIG INSURANCE COMPANY as successor by merger to INTERNATIONAL INSURANCE COMPANY and INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, | ) ) ) ) ) | |
| Petitioner, | ) | Civil Action No. 17 cv 02835 |
| v. | ) ) | Hon. Judge Gary Feinerman Magistrate Hon. Mary M. Rowland |
| REPUBLIC OF ARGENTINA as successor to CAJA NACIONAL DE AHORRO Y SEGURO, | ) ) ) ) | |
| Respondent. | ) ) | |

## NOTICE OF MOTION AND CERTIFICATE OF SERVICE

**TO:** The Republic of Argentina, as successor to Caja Nacional de Ahorro y Seguro, c/o:

Illinois Department of Insurance
122 South Michigan Avenue
19th Floor
Chicago, IL 60603
Amy.trader@illinois.gov

Locke Lord LLP
111 South Wacker Drive
Suite 4100
Chicago, IL 60606-4410
epalomo@lockelord.com

Consulate General of Argentina in Chicago
205 N. Michigan Ave.
Suite 4208/09
Chicago, IL 60601
cchic@mrecic.gov.ar

**PLEASE TAKE NOTICE** that on October 26, 2017, at 9:00 a.m., or as soon thereafter as counsel may be heard, we shall appear before the Honorable Gary Feinerman, or any other Judge who may be sitting in his stead, in Courtroom 2125 at the Dirksen Courthouse, 219 South Dearborn Street, Chicago, Illinois, and present for hearing the attached *Petitioner TIG Insurance*

*Company's Motion to Strike Respondent's* Ex Parte *Communication Contesting Service*, a copy of which is attached hereto and hereby served on you.

On October 11, 2017 before 5 p.m., the undersigned, an attorney, certifies that she caused a copy of this Notice and the aforementioned *Petitioner TIG Insurance Company's Motion to Strike Respondent's* Ex Parte *Communication Contesting Service* to be served upon the addresses listed above via registered and certified U.S. Mail, at 321 N. Clark St., Suite 400, Chicago, Illinois 60654, and also via electronic mail.

<div style="margin-left:40%">

TIG INSURANCE COMPANY, as successor in interest to International Surplus Lines Insurance Company and International Insurance Company

By:    /s/ Julie Rodriguez Aldort
           One of its Attorneys

</div>

Julie Rodriguez Aldort (Attorney I.D. No. 6271412)
Giselle Safazadeh (Attorney I.D. No.6315712)
Butler Rubin Saltarelli & Boyd LLP
321 N. Clark Street, Suite 400
Chicago, Illinois 60654
(312) 444-9660

<center>- 2 -</center>

Exhibit 36

| | |
|---|---|
| **From:** | Julie Rodriguez Aldort |
| **Sent:** | Wednesday, October 11, 2017 2:54 PM |
| **To:** | 'epalomo@locklord.com' |
| **Subject:** | TIG Insurance Company v. Republic of Argentina |
| **Attachments:** | Notice of Motion and Certificate of Service.pdf; Petitioner's Motion to Strike.pdf |

Ernesto,

As you will recall, Locke Lord (as successor to Lord Bissell) is designated as the agent for the Republic as successor to Caja.  Today, we filed a motion to strike in the pending litigation.  A copy of the papers are attached.  We are also sending them to you in hard copy by U.S. Mail.  Please forward the motion to the Republic in your agent capacity under the contracts.  I have also asked our counsel in Argentina to deliver a copy as well.

Thank you for your assistance.

Best regards,

Julie Rodriguez Aldort
Butler Rubin Saltarelli & Boyd LLP
321 North Clark Street | Suite 400 | Chicago, IL 60654
312.696.4478 | 312.873.4382 fax

jaldort@butlerrubin.com
www.butlerrubin.com

Aldort 381

# Exhibit 37

| **From:** | Bernardo Custo <bcusto@kleinyfranco.com> |
|---|---|
| **Sent:** | Thursday, October 19, 2017 10:10 AM |
| **To:** | ipcortes@mecon.gob.ar |
| **Cc:** | John Siegart; Christopher LeGros; Julie Rodriguez Aldort; Louis Dupart; Giselle Safazadeh |
| **Subject:** | RE: |
| **Attachments:** | 20171023105848888.pdf |

Dr. Ignacio Pérez Cortés:

En representación de TIG Insurance Company (continuadora de International Insurance Company), le envío por este medio el *"Notice of Motion and Certificate of Service"* y el *"Petitioner's Motion to strike Respondent's ex parte communication contesting service"* en el Caso N° 17-cv-02835, ante el Hon. Juez Gary Feinerman, Hon. Magistrado Mary M. Rowland, documentación que en copia fue entregada a su nombre en sobre cerrado en el día de la fecha, juntamente con una traducción libre.

Muy atentamente,

**Bernardo Custo**
**KLEIN & FRANCO**
*Attorneys at Law*
*Av. Corrientes 327, 12 th floor*
*C1043AAD - Buenos Aires - Argentina*
*Phone 5411-5550-4000*
*Fax 5411-5550-4001/4005*
[http://www.kleinyfranco.com](http://www.kleinyfranco.com)

_____

*The information contained in this e-mail is legally privileged, confidential and intended only for the use of the addressee. If you have received this e-mail in error, please notify us immediately by telephone (+54-11-5550-4000) or by e-mail (kyf@kleinyfranco.com) and then delete the e-mail from your system. Any dissemination, distribution or copying of this e-mail is strictly prohibited.*

Aldort 383

| | |
|---|---|
| **From:** | Bernardo Custo |
| **To:** | secretariaprivada@ptn.gov.ar |
| **Cc:** | John Siegart; Christopher LeGros; Julie Rodriguez Aldort; Louis Dupart; Giselle Safazadeh |
| **Subject:** | RV: |
| **Date:** | Thursday, October 19, 2017 11:17:51 AM |
| **Attachments:** | 20171023110416191.pdf |

Dr. Bernardo Saravia Frías:

En representación de TIG Insurance Company (continuadora de International Insurance Company), le envío por este medio el *"Notice of Motion and Certificate of Service"* y el *"Petitioner's Motion to strike Respondent's ex parte communication contesting service"* en el Caso N° 17-cv-02835, ante el Hon. Juez Gary Feinerman, Hon. Magistrado Mary M. Rowland, documentación que en copia fue entregada a su nombre en sobre cerrado en el día de la fecha, juntamente con una traducción libre.

Muy atentamente,

**Bernardo Custo**
**KLEIN & FRANCO**
*Attorneys at Law*
*Av. Corrientes 327, 12 th floor*
*C1043AAD - Buenos Aires - Argentina*
*Phone 5411-5550-4000*
*Fax 5411-5550-4001/4005*
*http://www.kleinyfranco.com*

———————————

*The information contained in this e-mail is legally privileged, confidential and intended only for the use of the addressee. If you have received this e-mail in error, please notify us immediately by telephone (+54-11-5550-4000) or by e-mail (kyf@kleinyfranco.com) and then delete the e-mail from your system. Any dissemination, distribution or copying of this e-mail is strictly prohibited.*

# Exhibit 38

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.2.1
### Eastern Division

TIG Insurance Company

                    Plaintiff,

v.                                    Case No.: 1:17−cv−02835

                                    Honorable Gary Feinerman

                    Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, December 6, 2017:

      MINUTE entry before the Honorable Gary Feinerman:Status hearing held and continued to 1/8/2018 at 9:00 a.m. Motion hearing held. For the reasons stated on the record, Petitioner's motion to strike respondent's ex parte communication contesting service [18] is denied as moot, although Defendant's objection to the validity of service is overruled. Defendant Republic of Argentina has until 1/3/2018 to respond on the merits to the motion for default judgment [9]. Any response must be filed with the Clerk of Court, via counsel, and may not be sent in correspondence to the District Judge. If Defendant fails to respond, the court will rule on the default judgment motion at the 1/8/2018 hearing. The Clerk of the Court shall send a copy of this order to via mail delivery and email delivery to Illinois Department of Insurance, 122 South Michigan Avenue, 19th Floor, Chicago, IL 60603, email: Amy.trader@illinois.gov; Ernesto Palomo, Lock Lord LLP, 111 South Wacker Drive, Suite 4100, Chicago, IL 60604−4410, email: epalomo@lockelord.com; and Consulate General of Argentina in Chicago, 205 N. Michigan Avenue, Suite 4208/09, Chicago, IL 60601, email:cchic@mrecic.gov.ar.Mailed notice.(jlj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# Exhibit 39

1

| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| | FOR THE NORTHERN DISTRICT OF ILLINOIS |
| 2 | EASTERN DIVISION |

```
 3

 4   TIG INSURANCE COMPANY, as      )
     Successor to INTERNATIONAL     )
     INSURANCE COMPANY and          )
 5   INTERNATIONAL SURPLUS LINES    )
     INSURANCE COMPANY,             )
 6                                  )
                    Petitioner,     )
 7                                  )
     -vs-                           )   Case No. 17 C 2835
 8                                  )
     REPUBLIC OF ARGENTINA, as      )
 9   Successor to CAJA NACIONAL     )
     DE AHORRO & SEGURO,            )   Chicago, Illinois
10                                  )   December 6, 2017
                    Respondent.     )   9:00 a.m.
11

12               TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE GARY FEINERMAN
13

14   APPEARANCES:

15   For the Petitioner:    BUTLER, RUBIN, SALTARELLI & BOYD, LLP
                            BY:  MS. JULIE RODRIGUEZ ALDORT
16                          321 North Clark Street
                            Suite 400
17                          Chicago, Illinois  60654
                            (312) 444-9660
18

19

20

21
     Court Reporter:
22
                        CHARLES R. ZANDI, CSR, RPR, FCRR
23                          Official Court Reporter
                        United States District Court
24                219 South Dearborn Street, Room 2128
                        Chicago, Illinois  60604
25                   Telephone:  (312) 435-5387
                email:  Charles_zandi@ilnd.uscourts.gov
```

2

1    (Proceedings heard in open court:)

2         THE CLERK:  17 C 2835, TIG Insurance Company versus

3    Republic of Argentina.

4         MS. ALDORT:  Good morning, your Honor.  Julie Aldort

5    on behalf of TIG Insurance Company.

6         THE COURT:  Good morning.  Is there anybody here on

7    behalf of the Republic of Argentina?

8         Nobody's responded.  This matter was set for

9    9:00 o'clock.  It's now a little after 9:00, so we'll proceed.

10        Have you received anything from Argentina?

11        MS. ALDORT:  No.  And I wondered if they might have

12   sent you something else again.

13        THE COURT:  No, not this time.  And by the way, I

14   think the record's clear on this, but I'll just state it.  I

15   did get two letters of sorts from the Argentine consulate; and

16   whenever I receive those two letters, as I do whenever I

17   receive anything from a party that isn't filed, I immediately

18   put it on the docket after I check it to make sure that

19   there's nothing on there that shouldn't be publicly filed.

20        So, I did not get anything else.

21        So, this is what I'm going to do.  I'm going to deny

22   docket 18, which is TIG's motion to strike Argentina's

23   *ex parte* filing.  I'm going to deny that motion as moot, and

24   I'm just going to -- it's a country.  I'm bending over

25   backwards because this party is a country, a sovereign nation.

1          So, I'll accept the filing.  That said, I'm going

2     to -- to the extent that I'm going to deem the filing as a

3     motion to dismiss for lack of proper service, I'm going to

4     deny that motion.

5          The -- TIG has established that service was

6     appropriate under 28 USC 1608 because even taking Argentina's

7     submissions as properly filed, what TIG has established is

8     that there was a special arrangement within the meaning of

9     1608 in the insurance contracts for the insurance company to

10    serve Argentina via their lawyers at what was then called

11    Lord, Bissell & Brook and what's now called Locke Lord and

12    the Illinois Department of Insurance.

13         So, Argentina's objection to the mode and

14    appropriateness and validity of service is denied.  I'm going

15    to give Argentina one last chance to respond on the merits.

16    If Argentina would like to respond on the merits to the

17    request for default judgment, it needs to file something by

18    January 3rd.  And let's set this for a status hearing on

19    January 8th, Jackie.

20         THE CLERK:  Sure.  9:00 a.m.

21         THE COURT:  And let's -- as last time, the Court's

22    going to send a copy of today's order to the consulate, to

23    Mr. Palomo at Locke Lord.  And the consulate's address is

24    205 North Michigan, is that correct?  I think it is.

25         MS. ALDORT:  Let me see if I can -- I don't know that

4

1   I have a copy of the certificate.

2        THE COURT:  I have it here.  So, everybody who

3   received a copy of the order in -- on October 22nd will

4   receive it.

5        Let's make sure that the address for the consul

6   general is 205, not 2015 North Michigan; and let's make sure

7   that we send it to Mr. Palomo's correct e-mail address, and

8   that was on the docket there on October 31st.

9        So, we'll bring this to -- if Argentina doesn't

10  respond on the merits, we'll bring this to a close during the

11  week of January 8th.

12       Did we already give a date?

13       THE CLERK:  January 8th, 9:00 a.m.

14       THE COURT:  Is that all right with you?

15       MS. ALDORT:  Um-hum.

16       THE COURT:  Okay.  Thanks.

17

18    (Which were all the proceedings heard.)

19                         CERTIFICATE

20    I certify that the foregoing is a correct transcript from

21  the record of proceedings in the above-entitled matter.

22

23  /s/Charles R. Zandi              September 14, 2018

24  Charles R. Zandi                 Date
    Official Court Reporter

25

# Exhibit 40

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.2.1
### Eastern Division

TIG Insurance Company

                                  Plaintiff,

v.                                                Case No.: 1:17−cv−02835

                                                Honorable Gary Feinerman

                                  Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, January 8, 2018:

      MINUTE entry before the Honorable Gary Feinerman:Status hearing held. For the reasons stated on the record, Petitioner's motion for default judgment [9] is granted. Enter judgment order. Civil case closed. Mailed notice.(jlj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# Exhibit 41

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

TIG Insurance Company et al,

Plaintiff(s),

v.

Republic of Argentina,

Defendant(s).

Case No.  17 C 2835
Judge  Gary Feinerman

### JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
and against defendant(s)
in the amount of $          ,

which ☐ includes          pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐    in favor of defendant(s)
and against plaintiff(s)

.

Defendant(s) shall recover costs from plaintiff(s).

---

☒    other: Judgment is entered in favor of the Petitioners TIG Insurance Company and International Surplus Lines Insurance Company, and against Respondent Republic of Argentina, in the amount of $3,459,489.31.

---

This action was *(check one)*:

☐ tried by a jury with Judge      presiding, and the jury has rendered a verdict.
☐ tried by Judge      without a jury and the above decision was reached.
☒ decided by Judge Gary Feinerman on a motion for default judgment.

Date:   1/8/2018                Thomas G. Bruton, Clerk of Court

/s/ Jackie Deanes, Deputy Clerk

Aldort 395

Exhibit 42

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.2.1
### Eastern Division

TIG Insurance Company

<div style="text-align:center">Plaintiff,</div>

v.                                                    Case No.: 1:17−cv−02835

<div style="text-align:right">Honorable Gary Feinerman</div>

<div style="text-align:center">Defendant.</div>

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, January 10, 2018:

     MINUTE entry before the Honorable Gary Feinerman:MAILED a copy of the order dated 1/08/2018 [29] via mail delivery and email delivery to Illinois Department of Insurance, 122 South Michigan Avenue, 19th Floor, Chicago, IL 60603, email: Amy.trader4;illinois.gov; Ernesto Palomo, Lock Lord LLP, 111 South Wacker Drive, Suite 4100, Chicago, IL 60604−4410, email: epalomo@lockelord.com; and Consulate General of Argentina in Chicago, 205 N. Michigan Avenue, Suite 4208/09, Chicago, IL 60601, email:cchic@mrecic.gov.ar.Mailed notice.(jlj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# Exhibit 43

Aldort 398



January 30, 2018

Julie Rodriguez Aldort
Direct Dial: 312-696-4478
Direct Fax: 312-873-4382
jaldort@butlerrubin.com

**VIA U.S. REGISTERED AND CERTIFIED MAIL**

Ernesto Palomo
Locke Lord LLP
111 South Wacker Drive
Suite 4100
Chicago, IL 60606-4410

Re:    *TIG Insurance Company v. Republic of Argentina*, No. 17 cv 02835
(N.D. Ill. 2017)

Dear Mr. Palomo:

As noted in previous correspondence with you and your firm, Locke Lord LLP, as successor to Lord Bissell & Brook, is designated as the agent for service of process for the Republic of Argentina, as successor to Caja Nacional de Ahorro y Seguro, in Article XX of two reinsurance contracts entered into with Petitioner, TIG Insurance Company, as successor to International Insurance Company and International Surplus Lines.  (Copies of the reinsurance contracts were previously provided to Locke Lord in a letter dated April 19, 2017.)

Specifically, Article XX provides:

It is further agreed that service of process in such suit may be made upon John G. Smith, Attorney-In-Fact, as respects Lloyd's admitted, and Lord Bissell & Brook as respects other underwriters, both of 115 LaSalle Street, Chicago, Illinois 60603, and that any suit instituted against any of them upon this Agreement, Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of any appeal.

The above-named are authorized and directed to accept service of process on behalf of Reinsurers in any suit and/or upon request of the Company [TIG], to give a written undertaking to the Company that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted.

Caja Nacional de Ahorro y Seguro has been succeeded by the Republic of Argentina.  Accordingly, the enclosed certified Docket Entry and Default Judgment entered on January 8, 2018, along with the court transcript for the hearing on that date, is being served on

Aldort 399

Ernesto Palomo
January 30, 2018
Page 2

you as agent for the Republic of Argentina, as successor to Caja Nacional de Ahorro y
Seguro.  The enclosed documents are also being served on the Director of the Illinois
Department of Insurance, as provided in Article XX of the reinsurance contracts.

Sincerely,

Julie Rodriguez Aldort

Enclosures

Aldort 400



January 30, 2018

Julie Rodriguez Aldort
Direct Dial: 312-696-4478
Direct Fax: 312-873-4382
jaldort@butlerrubin.com

**VIA REGISTERED AND CERTIFIED MAIL**

Jennifer Hammer, Director
Illinois Department of Insurance
122 South Michigan Avenue
19th Floor
Chicago, IL 60603

      Re:    Service of Judicial Documents on Unauthorized Foreign Reinsurer in
                Connection with *TIG Insurance Company v. Republic of Argentina,*
                No. 17 cv 02835 (N.D. Ill. 2017)

Dear Director Hammer:

      On behalf of our client, TIG Insurance Company, successor in interest to the International
Insurance Co. and International Surplus Lines, we hereby serve the attached judicial documents
on you in your capacity as the designated agent for service for the Republic of Argentina, as
successor to Caja Nacional de Ahorro y Seguro, an unauthorized foreign re-insurer that
transacted business in Illinois with International Insurance Co.  At all times relevant to the
above-captioned court proceeding, Caja Nacional de Ahorro y Seguro was owned by the
Republic of Argentina.

      The Illinois Department of Insurance is designated as the agent for service of process for
the Republic, as successor to Caja Nacional de Ahorro y Seguro, in Article XX of two
reinsurance contracts entered into with Petitioner, TIG Insurance Company. (Copies of the
reinsurance contracts were previously provided to the Illinois Department of Insurance in a
previous letter to the Department, dated April 19, 2017.)

      Article XX of both reinsurance contracts provides a special arrangement between the
parties for the service of judicial documents upon foreign reinsurers, such as Caja Nacional de
Ahorro y Seguro, as follows:

      [P]ursuant to any statute of any state, territory, or district of the United States which
      makes provisions therefor, Reinsurers hereon designate the Superintendent,
      Commissioner, or Director of Insurance or other officer specified for that purpose in the

Aldort 401

Jennifer Hammer
January 30, 2018
Page 2

statute, or his successor or successors in office, as their true and lawful attorney upon
whom may be served any lawful process in any action, suit, or proceeding instituted by or
on behalf of the Company or any beneficiary hereunder arising out of this Agreement of
reinsurance, and hereby designate the above-named as the person to whom said officer is
authorized to mail such process or a true copy thereof.

Further, Section 215 ILCS 5/123 of the Illinois Insurance Code provides that service of
judicial documents upon an unauthorized foreign company shall be made upon the Director of
the Department of Insurance.

Accordingly, by registered and certified U.S. mail, and in accordance with Illinois
Insurance Code 215 ILCS 5/123, TIG Insurance Company, hereby serves the Republic of
Argentina, as successor to Caja Nacional de Ahorro y Seguro, with certified copies of the Docket
Entry and Default Judgment entered by the Court on January 8, 2018, along with a copy of the
court transcript from the hearing held on January 8, 2018.  Also enclosed is a check for the $20
processing fee.

We ask that you send the service copies of the enclosed documents to the Republic of
Argentina, as successor to Caja Nacional de Ahorro y Seguro.  For your reference, the last
known address for the Republic of Argentina, as successor to Caja Nacional de Ahorro y Seguro,
is:

Secretaría Legal y Administrativa
Sr. Secretario & Sr. Subsecretario Guillermo García Eleisequi
Pte. Hipólito Yrigoyen 250, 5°, Of. 506/529, Ciudad Autónoma de Buenos Aires
ARGENTINA

Sincerely,

Julie Rodriguez Aldort

Enclosures

549969

Aldort 402

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JENNIFER HAMMER
ILLINOIS Dept. OF INSURANCE
122 South Michigan Ave.
19th Floor
Chgo. IL 60603

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                             ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery
6. J 500 A                       2/1/18

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☒ Certified Mail      ☐ Express Mail
☒ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)    7004 2510 0001 9539 0703

S Form 3811, February 2004      Domestic Return Receipt      102595-02-M-15

---

UNITED STATES POSTAL SERVICE

$2.809
00 FEB '18
2M 51

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-1D

* Sender: Please print your name, address, and ZIP+4 in this box *

Julie Rodriguez Aldort
Butler Rubin Saltarelli + Boyd LLP
321 N. Clark St.
Ste. 400
Chgo. IL 60654

CAJA

Aldort 403

DER: COMPLETE THIS SECTION

- complete items 1, 2, and 3. Also complete
  nem 4 if Restricted Delivery is desired.
- Print your name and address on the reverse
  so that we can return the card to you.
- Attach this card to the back of the mailpiece,
  or on the front if space permits.

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee
B. Received by ( Printed Name)    C. Date of Delivery
E GAIADA
D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

1. Article Addressed to:

Ernesto Palomo
Locke Lord LLP
111 South Wacker Drive
Ste. 4100
Chgo IL 60606

3. Service Type
☒ Certified Mail    ☐ Express Mail
☒ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)         ☐ Yes

2. Article Number
   (Transfer from service label)    7004 2510 0001 9539 0710

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

UNITED STATES POSTAL SERVICE

FEB '10

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Julie Rodriguez Aldort
Butler Rubin Saltarelli + Boyd LLP
321 N. Clark St.
Ste. 400
Chgo. IL 60654

CAJ4

**Rachel Sloan**

| | |
|---|---|
| **From:** | TrackingUpdates@fedex.com |
| **Sent:** | Thursday, February 01, 2018 9:28 AM |
| **To:** | Rachel Sloan |
| **Subject:** | FedEx Shipment 771360895475 Delivered |



# Your package has been delivered

## Tracking # 771360895475

| Ship date: | | Delivery date: |
|---|---|---|
| **Tue, 1/30/2018** | | **Thu, 2/1/2018 12:21 pm** |
| JULIE RODRIGUEZ ALDORT | | BERNARDO CUSTO |
| BUTLER RUBIN SALTARELLI BOYD | | CABANELLAS, ETCHEBARNE & KELLY |
| CHICAGO, IL 60654 | | AV. EDUARDO MADERO 900, PISO 1 |
| US | | EDIFICIO CATALINAS PLAZA |
| | | BUENOS AIRES, C1106ACV |
| | | AR |



Delivered

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| **Tracking number:** | 771360895475 |
| **Status:** | Delivered: 02/01/2018 12:21 PM Signed for By: E.EMILIA |
| **Reference:** | 481650000-013 |
| **Signed for by:** | E.EMILIA |
| **Delivery location:** | BUENOS AIRES, |
| **Delivered to:** | Receptionist/Front Desk |
| **Service type:** | FedEx International Priority |
| **Packaging type:** | FedEx Pak |
| **Number of pieces:** | 1 |
| **Weight:** | 1.00 lb. |
| **Special handling/Services:** | Deliver Weekday |
| **Standard transit:** | 2/1/2018 by 6:00 pm |

Aldort 405

✉ Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:27 AM CST on 02/01/2018.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

© 2018 Federal Express Corporation. The content of this message is protected by copyright and trademark laws under U.S. and international law. Review our privacy policy. All rights reserved.

Thank you for your business.

Aldort 406

Exhibit 44

Minute Order Form (06/97)    Case: 1:00-cv-06703 Document #: 64 Filed: 12/04/02 Page 1 of 1 PageID #:119

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6703 | **DATE** | 12/4/2002 |
| **CASE TITLE** | INTERNATIONAL INS. CO.. Vs. CAJA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____.  Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☒  Status hearing held and continued to 1/16/03 at 9:00AM..

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to]
       ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ☒  [Other docket entry]    It is ordered that sanctions is imposed in the amount of $2,000.00 each day
        from today forward that defendant fails to respond to discovery.

(11) ☐  [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | DEC 0 5 2002 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | CLERK | date mailed notice | |
| | TBK | courtroom deputy's initials | 02 DEC -4 PM 4: 35 | mailing deputy initials | |
| | | | FILED-EG 10 | | |
| | | | Date/time received in central Clerk's Office | | |

Document Number: 64

1

```
1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
2                            EASTERN DIVISION

3
   INTERNATIONAL INSURANCE COMPANY,        )
4  for itself, et al.,                     )
                                           )
5                    Plaintiffs,           ) No. 00 C 6703
                                           )
6            v.                            ) Chicago, Illinois
                                           ) December 4, 2002
7  CAJA NACIONAL DE AHORRO Y SEGURO,       ) 9:00 o'clock a.m.
                                           )
8                    Defendant.            ) Status Hearing

9
                        TRANSCRIPT OF PROCEEDINGS
10              BEFORE THE HONORABLE JOHN W. DARRAH

11 APPEARANCES:

12 For the Plaintiff:       BUTLER, RUBIN, SALTARELLI & BOYD, by
                            MS. JULIE CHRISTINE RODRIGUEZ
13                          Three First National Plaza
                            70 West Madison Street - Suite 1800
14                          Chicago, Illinois 60602

15 For the Defendant:       MC KENNA, STORER, ROWE, WHITE
                            & FARRUG, by
16                          MR. RICHARD J. RETTBERG
                            200 North LaSalle Street - Suite 3000
17                          Chicago, Illinois 60601

18

19

20           Valarie M. Harris - Official Court Reporter
                  219 South Dearborn - Room 1212
21                    Chicago, Illinois 60604
                        (312) 435-6891
22

23

24

25
```

2

1          THE CLERK:  00 C 6703, International Insurance versus

2   Caja Nacional.

3          MS. RODRIGUEZ:  Good morning, Your Honor.  Julie

4   Rodriguez on behalf of International Insurance Company.

5          THE COURT:  Good morning, Miss Rodriguez.

6          MR. RETTBERG:  Good morning, Your Honor.  Richard

7   Rettberg, local counsel for the defendant.

8          THE COURT:  Good morning, Mr. Rettberg.

9          The matter comes on this morning for status.  Pending

10  is a motion for sanctions.

11         MS. RODRIGUEZ:  Yes, Your Honor.

12         THE COURT:  I've read the motion.  I read the material

13  attached to the motion, including the so-called affidavits that

14  I requested, and they are woefully deficient.  There has not

15  been a showing of good faith in attempting to comply with the

16  court's orders.

17         When you read them, your -- everything you say in the

18  brief I think is supported by an examination of the purported

19  responses.  There's nothing in there that responds to any of

20  the aspects of the citation, and some of that material is

21  easily learned and could be easily communicated.

22         How much are you suggesting a day, counsel?

23         MS. RODRIGUEZ:  I believe we suggested 2,000, but I

24  don't have the brief in front of me, unfortunately.

25         THE COURT:  Yes, you do.  And you're really relying on

Valarie M. Harris - Official Court Reporter - (312) 435-6891

3

1   that Wausau case, and there is authority for that.  I will

2   impose sanctions pursuant to Rule 37 in the amount of $2,000 a

3   day for each day from today forward that the defendant refuses

4   to respond in good faith to the requested discovery material.

5           MS. RODRIGUEZ:  Thank you, Your Honor.

6           THE COURT:  You welcome.

7           MR. RETTBERG:  Thank you, Your Honor.

8           MS. RODRIGUEZ:  Your Honor, will the court impose a

9   further status date or --

10          THE COURT:  Why don't we take a status date about 30

11  days.

12          THE CLERK:  January 7th.

13          THE COURT:  Why don't we go to the next week.  That's

14  going to be a crowded week.

15          THE CLERK:  January 14th, 9 a.m.

16          THE COURT:  There's two days I'm going to be gone.  I

17  don't know if they gave you those or not.

18          THE CLERK:  Are they in your book?

19          THE COURT:  Yes.

20          MS. RODRIGUEZ:  Your Honor, I'd also like to request

21  that the citation be renewed for another six months.  I think

22  it's set to expire.  I think we renewed it in July, so it will

23  be set to expire in early January.

24          THE COURT:  Citation will be renewed for a period of

25  six months commencing today.

Aldort 411

4

```
 1        THE CLERK:  January 14th is okay, 9:00 a.m.

 2        THE COURT:  I don't think that's right.  Hold on one

 3   second.  That book might not be accurate.  I think I'll be gone

 4   the 14th and 15th.  Why don't we say the 16th just to be on the

 5   safe side.

 6        In the meantime, if there is compliance in the

 7   interim, counsel, you can certainly file a motion suggesting

 8   that, and on notice to your opponent we'll consider the motion.

 9        MR. RETTBERG:  Thank you, Judge.

10        THE COURT:  You welcome.

11        MS. RODRIGUEZ:  Thank you.

12

13              * * * * * * * * * * * * * *

14

15              C E R T I F I C A T E

16

17        I hereby certify that the foregoing is a true and

18   correct transcript of the above-entitled matter.

19

20   _____          1:-/12/02
     Official Court Reporter            Date

21

22

23

24

25
```

Valarie M. Harris - Official Court Reporter - (312) 435-6891

Exhibit 45

Case: 1:00-cv-06703 Document #: 71 Filed: 03/13/03 Page 1 of 2 PageID #:139

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6703 | **DATE** | March 13, 2003 |
| **CASE TITLE** | International Insurance Company v. Caja Nacional De Ahorro Y Seguro | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Plaintiff's Petition for Attorney's Fees Pursuant to Rule 37 is granted in part and denied in part.  Plaintiff is awarded $8,060 in attorney's fees.  See reverse side of Minute Order.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| √ | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | **71** |
| | Notices mailed by judge's staff. | | MAR 1 4 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | CLERK U.S. DISTRICT COURT | date mailed notice | |
| | courtroom deputy's initials | 03 MAR 13 PM 5: 53 | | |
| | LC | Date/time received in central Clerk's Office | mailing deputy initials | |

Aldort 414

(Reserved for use by the Court)

## ORDER

On July 5, 2001, this Court confirmed the arbitration award against Defendant. On December 12, 2001, a Citation to Discover Assets issued against Defendant. On June 6, 2002, Defendant was ordered to comply with discovery requests relating to the discovery of assets by June 20, 2002. On July 2, 2002, the Citation to Discover Assets was extended. On December 4, 2002, the Court imposed sanctions against Defendant for failing to respond to discovery. Plaintiff now seeks attorney's fees pursuant to Federal Rule of Civil Procedure 37 for Defendant's failure to comply with the Court's June 6, 2002 order.

Federal Rule of Civil Procedure 37(b) provides that a court may impose sanctions on a party or its attorney who fails to comply with a court order. *See* Fed. R. Civ. P. 37(b); *Tamari v. Bache & Co.*, 729 F.2d 469, 472 (7th Cir. 1984). Rule 37(b) states, in pertinent part, that a court "shall require the party failing to obey the order ... to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."

In the instant case, Plaintiff seeks attorney's fees dating back to January 10, 2002. However, the Court did not order Defendant to comply with the discovery requests until June 6, 2002. Accordingly, any fees expended on or after June 6, 2002, could be awarded. However, attorney's fees prior to the court order would not have been incurred by the Defendant's failure to obey that order and are not recoverable.

In response to Plaintiff's motion, Defendant filed an affidavit that simply restates its previous argument that this Court rejected in granting sanctions against Defendant. Defendant does not demonstrate that its failure to comply with the court order was substantially justified or that other circumstances make an award of expenses, as itemized by Plaintiff, unjust.

Based on the above and, further, on Plaintiff's submission of billing records for its attorney's fees, Plaintiff is awarded its reasonable attorney's fees it incurred for Defendant's failure to comply with the June 6, 2002 court order. The hourly rate and time expended on its attempts to receive the requested discovery are reasonable. Accordingly, Plaintiff is awarded $8,060 in attorney's fees.

Aldort 415

# Exhibit 46

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6703 | **DATE** | 3/17/2005 |
| **CASE TITLE** | International Insurance Company vs. Caja Nacional | | |

**DOCKET ENTRY TEXT:**

For the reasons stated in the attached memorandum opinion and order, plaintiff's motion for increased sanctions is granted. The per diem sanctions of $2,000.00, first imposed on 12/4/02, are increased to $4,000.00 per day and continue to accrue until Caja complies with this Court's orders. Enter Memorandum Opinion and Order. Status hearing set for 4/20/05 at 9:00 a.m.

■ [ For further detail see attached order.]

Docketing to mail notices.

| | Courtroom Deputy Initials: | MF |
|---|---|---|

00C6703 International Insurance Company vs. Caja Nacional

Page 1 of 1

Aldort 417

*C J*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL INSURANCE COMPANY, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 00 C 6703 |
| | ) |
| CAJA NACIONAL DE AHORRO Y SEGURO, | ) Judge John W. Darrah |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

In October 2000, an arbitration panel awarded Plaintiff, International Insurance Company, an award of $4,702,428.12 against Defendant, Caja Nacional De Ahorro Y Seguro (Caja), an Argentine entity. In its March 26, 2001 Amended Memorandum Opinion and Order, this Court ordered Defendant to post a pre-judgment security and struck Caja's answer to the petition. Caja failed to post a pre-judgment security and failed to answer Plaintiff's petition. Default judgment was issued against Defendant on July 5, 2001. On September 5, 2001, Plaintiff filed a citation to discover assets as a supplementary proceeding for aid in enforcing its judgment against Caja. The citation had a return date of October 2, 2001. Caja did not file a response to the citation and failed to produce witnesses or documents on October 2, 2001. This Court entered a rule to show cause against Caja and set a rule to show cause hearing for October 31, 2001.

On November 27, 2001, the Court quashed the outstanding citation to discover assets. That same day, Plaintiff filed a new citation to discover assets. On June 6, 2002, the Court ordered Caja to comply with Plaintiff's discovery requests by June 20, 2002. Caja failed to comply with the discovery requests; and, on December 4, 2002, the Court awarded Plaintiff sanctions in the amount of $2,000.00 per day for Caja's refusal to respond in good faith with the requested discovery

Aldort 418

materials. In July 2003, Caja provided responses to Plaintiff's interrogatories; however, Caja's response to interrogatory #2 was incomplete. At the September 30, 2003 status hearing, Plaintiff noted the deficiencies in Caja's responses. Caja's counsel offered the deposition of Dr. Guillermo Sobral, the current liquidator of Caja, to provide an explanation of the extent of the Ministry of the Economy's knowledge regarding Caja's assets. The Court ordered the parties to confer and prepare a joint status report.

On October 21, 2003, the parties presented their joint status report that Dr. Sobral would be deposed in Argentina "pursuant to U.S. Federal Rules of Civil Procedure" and that Caja's counsel would provide dates for the deposition. The parties requested ninety days to complete the deposition and to translate and analyze the transcript. The Court granted the request and set the next status hearing for January 27, 2004.

Caja failed to comply with the joint status report, and Plaintiff filed a Motion to Compel. In its response to Plaintiff's Motion to Compel, Caja stated that it would amend its answer to interrogatory #2, produce the requested documents, and make Dr. Sobral available for deposition in Buenos Aires pursuant to the Hague Convention of the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"). Caja did not dispute Plaintiff's statement that the parties had previously agreed that Dr. Sobral's deposition would be taken as an American-styled, question-and-answer deposition. On February 26, 2004, the Court granted Plaintiff's Motion to Compel, ordering Caja to provide deposition dates for Dr. Sobral.

Subsequently, Caja sought "clarification" of the Court's February 26 Order, contending that Dr. Sobral should be deposed in accordance with the Hague Convention. On March 17, 2004, the Court held that Caja was judicially estopped from changing its position as to the means in which

2

Aldort 419

Dr. Sobral's deposition would take place and that the case warranted the application of the Federal Rules of Civil Procedure as opposed to the Hague Convention. Accordingly, Dr. Sobral's deposition was to be conducted pursuant to Federal Rule of Civil Procedure 30.

The Ministry of the Economy, the entity that controls Caja, has failed to produce the documents that are still outstanding or to provide an answer responsive to interrogatory #2. In addition, the Ministry of the Economy has refused to produce Dr. Sobral for his deposition, claiming that the Court did not have authority to order Dr. Sobral's deposition, except via the letter rogatory process.

Plaintiff has moved to increase the sanctions against Caja to $4,000.00 per day as sanction against Caja for its failure to follow the Court's orders. Caja again argues that discovery should proceed via the letter rogatory process as provided by the Hague Convention. In the same argument, Caja seeks reconsideration of the Court's previous orders.

As to Caja's request that the Court reconsider its prior rulings, motions for reconsideration serve a limited function of correcting manifest errors of law or fact or presenting newly discovered evidence or an intervening change in the law. *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998). Reconsideration is appropriate when "the Court has patently misunderstood a party or has made a decision outside the adversarial issues presented to the Court by the parties or has made an error not of reasoning but of apprehension." *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 139 F. Supp. 2d 943, 945 (N.D. Ill. 2001), *quoting Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). A motion for reconsideration cannot be used to introduce new legal theories for the first time, to raise legal arguments that could have been heard

3

Aldort 420

during the pendency of the previous motion, or to present evidence that could have been adduced during the pendency of the original motion. *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985).

In its response brief, Caja repeats essentially the same arguments already addressed by the Court in its previous orders. Accordingly, Caja's request that the Court reconsider its previous orders is denied.

Federal Rule of Civil Procedure 37 provides that a court may impose sanctions on a party or its attorney who fails to comply with a court order. *See* Fed. R. Civ. P. 37; *Tamari v. Bache & Co.*, 729 F.2d 469, 472 (7th Cir. 1984). Sanctions for failing to follow a court order are appropriate as "[j]udicial orders must, unless stayed, be obeyed even when wrong." *Employers Ins. of Wausau v. El Banco De Seguros Del Estado*, 357 F.3d 666, 671-72 (7th Cir. 2004) (affirming district court's sanction of $2,000.00 per day and subsequent increase to $4,000.00 per day for continued noncompliance with court order).

In the instant case, Caja has repeatedly failed to obey the Court's orders. As indicated above, Caja simply repeats its same arguments that have already been rejected by the Court in defense of its continued disobedience of the Court's orders. Accordingly, increased sanctions are awarded.

4

Aldort 421

For the foregoing reasons, Plaintiff's Motion for Increased Sanctions is granted. The *per diem* sanctions of $2,000.00, first imposed on December 4, 2002, are increased to $4,000.00 per day and continue to accrue until Caja complies with this Court's orders.

Dated: *March 17, 2005*

JOHN W. DARRAH
United States District Judge

5

Aldort 422

# Exhibit 47

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| INTERNATIONAL INSURANCE COMPANY, | ) | |
| for itself and as Successor In Interest to International | ) | |
| Surplus Lines Insurance Company, The North River | ) | |
| Insurance Company, United States Fire Insurance | ) | |
| Company and/or Westchester Fire Insurance Company | ) | |
| Industrial Indemnity Company, United States Fire | ) | |
| Insurance Company of Canada, Toronto, Ontario, and | ) | |
| Herald Insurance Company of Canada, Toronto, Ontario, | ) | Civil Action No. 00 C 6703 |
| | ) | |
| Judgment Creditor, | ) | Judge Darrah |
| | ) | |
| v. | ) | |
| | ) | |
| CAJA NACIONAL DE AHORRO Y SEGURO, | ) | |
| | ) | |
| Judgment Debtor. | ) | |

## INTERNATIONAL INSURANCE COMPANY'S PETITION TO REVIVE JUDGMENT

Pursuant to Rule 69 of the Federal Rules of Civil Procedure, 735 ILCS 5/2-1602, and 735 ILCS 5/13-218, Judgment Creditor, International Insurance Company n/k/a TIG Insurance Company ("IIC"), by and through its attorneys, hereby petitions the Court to revive the judgment entered against Defendant, Caja Nacional de Ahorro y Seguro n/k/a The Republic of Argentina ("Caja"). In support of this motion, IIC states as follows:

1.    On July 5, 2001, this Court entered judgment in favor of IIC and against Caja confirming the October, 2000, final arbitration award in favor of IIC and against Caja for $4,702,428.12.

2.    As of June 30, 2014, post-judgment interest at the statutory rate of 9% has accrued in the sum of $3,953,865.

3.    On December 4, 2002, the Court imposed sanctions against Caja pursuant to Rule 37 for its failure to make a good faith effort to comply with the Citation to Discover Assets in the amount of $2,000 per day.

Case: 1:00-cv-06703 Document #: 136 Filed: 07/01/14 Page 2 of 2 PageID #:385

4.      On March 17, 2005, the Court increased sanctions against Caja pursuant to Rule 37 to $4,000 per day.

5.      As of June 30, 2014, the sanctions imposed on Caja, at the rate of $2,000 per day from December 4, 2002 through March 16, 2005 and at the rate of $4,000 per day from March 17, 2005 through the present, total $15,234,000.

6.      On March 13, 2003, the Court awarded IIC $8,060 in attorney's fees.

7.      Accordingly, as of June 30, 2014, the judgment debt Caja owes to IIC is $23,898.354.

8.      The entry "of a reviving order should be a clerical task; all it entails is assurance that the judgment has not been vacated or marked satisfied since its rendition." *TDK Electronics Corp. v. Draiman*, 321 F.3d 677, 680 (7th Cir. 2003).

9.      The judgment has not been vacated or satisfied.  Caja has paid no amount in satisfaction of the judgment and is entitled to no credits.

WHEREFORE, Plaintiff respectfully requests that the judgment entered on July 5, 2001, be revived.

July 1, 2014

  /s/ Joseph P. Noonan III_____
James I Rubin (Attorney I.D. No. 02413191)
Julie Rodriguez Aldort (Attorney I.D. No. 06271412)
Joseph P. Noonan III (Attorney I.D. No. 6278142)
Butler Rubin Saltarelli & Boyd LLP
70 West Madison, Suite 1800
Chicago, Illinois 60602
312-444-9660
*Attorneys for Judgment Creditor*
*International Insurance Co.*
*n/k/a TIG Insurance Co.*

517490

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6,1
### Eastern Division

International Insurance Company

                            Plaintiff,

v.                                       Case No.: 1:00−cv−06703
                                       Hon. John W. Darrah

Caja Nacional de Ahorro y Seguro

                            Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, July 11, 2014:

        MINUTE entry before the Honorable Charles R. Norgle as Emergency Judge:International Insurance Company's Petition to Revive Judgment [136] is granted. Motion hearing held on 7/11/2014. Mailed notice(ewf, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at **_www.ilnd.uscourts.gov_**.

Exhibit 48

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6,1
### Eastern Division

International Insurance Company

                              Plaintiff,

v.                                      Case No.: 1:00−cv−06703
                                      Hon. John W. Darrah

Caja Nacional de Ahorro y Seguro

                              Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, July 11, 2014:

      MINUTE entry before the Honorable Charles R. Norgle as Emergency Judge:International Insurance Company's Petition to Revive Judgment [136] is granted. Motion hearing held on 7/11/2014. Mailed notice(ewf, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

Exhibit 49

# **EXHIBIT 4**

In the Matter of the Arbitration Between )
                                                           )

TIG INSURANCE COMPANY as successor by merger to )
INTERNATIONAL INSURANCE COMPANY )
and INTERNATIONAL )
SURPLUS LINES INSURANCE COMPANY, )
                                                                 )
                                    Claimant, )     Mr. Andrew Maneval
         and )     Mr. Daniel E. Schmidt, IV
                                                                   )     Mr. W. Mark Wigmore

REPUBLIC OF ARGENTINA as )
successor to CAJA NACIONAL DE )
AHORRO Y SEGURO, )
                                                 )
                                     Respondent. )

## FINAL ORDER AND AWARD

        We, the undersigned, duly appointed arbitrators (the "Panel") in the above-captioned

matter, after reviewing all the submissions made to the Panel in this matter, including all briefs,

exhibits, and authorities, after hearing live testimony from two witnesses at a hearing conducted

in Chicago, Illinois on February 2, 2017, and having examined such witnesses, and after oral

presentation, do hereby rule as follows:

     1)  The Panel finds that Claimant, TIG Insurance Company ("TIG") duly notified the
        Republic of Argentina, ás successor to Caja Nacional de Ahorro y Seguro (the
        "Republic") of this arbitration through its arbitration demand issued on July 1, 2016 to
        the Republic and to the Republic's agents under the Service of Suit provision in the
        reinsurance treaties, and in multiple communications with the Republic thereafter; the
        Panel attempted to contact the Republic through the Republic's appointed arbitrator and
        through Panel communications; the Republic did not respond and therefore the Panel
        concludes that the Republic elected not to participate in these proceedings;

     2)  The Panel finds that it has jurisdiction over the issues presented in the arbitration
        pursuant to the Arbitration Clause of the reinsurance treaties;

     3)  The Panel finds that TIG has proven that it is entitled to $2,827,912.20 in overdue
        balances claimed under the reinsurance treaties as of December 31, 2016, reasonable
        attorneys' fees and expenses incurred in the prosecution of this arbitration from June 1,
        2016, prejudgment interest at a rate of 7%, and 50% of the arbitrator and umpire fees and
        arbitration expenses incurred in this arbitration proceeding;

     4)  Within seven days of the date of the issuance of this Final Award, Respondent, the
        Republic, shall pay to TIG:

a)  $2,827,912.20 in overdue balances (as of December 31, 2016);

b)  Interest in the amount of $473,320.92;

c)  Attorney fees and expenses in the amount of $125,443.75; and

d)  $32,812.44, as the Republic's 50% share of the arbitrator and umpire fees and arbitration expenses.


So ordered this 9th day of MARCH, 2017.


W. Mark Wigmore (Umpire)


Andrew Maneval (Arbitrator)


Daniel E. Schmidt, IV (Arbitrator)


2