**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| TIG INSURANCE COMPANY, as successor by merger to International Insurance Company and International Surplus Lines Insurance Company; | ) ) ) ) | |
| Plaintiff-Judgment Creditor, | ) ) ) | Case No. 1:18-mc-00129 |
| v. | ) ) | |
| REPUBLIC OF ARGENTINA as successor to Caja Nacional de Ahorro y Seguro; and CAJA NACIONAL DE AHORRO Y SEGURO; | ) ) ) ) | |
| Defendants-Judgment Debtors. | ) ) | |

**DECLARATION OF BERNARDO GUSTAVO CUSTO**

I, Bernardo Gustavo Custo, declare as follows:

1.      I am a citizen of Argentina and maintain my legal practice in Argentina.  I was awarded my law degree from the School of Law of the University of Buenos Aires in 1981, and am currently registered with the Buenos Aires Bar.  Since November 1st, 2017, I have been a partner at CABANELLAS ETCHEBARNE KELLY law firm, which presently acts commercially under the name of DLA Piper Argentina and am the head of DLA's Infrastructure and Administrative Law groups in Argentina.  I have personally been involved in TIG Insurance Company's efforts to collect on debts owed by Caja Nacional de Ahorro y Seguro S.A. ("Caja Nacional") and the Republic of Argentina.  Before my employment at DLA Piper Argentina, I was a partner at the law firm of Klein & Franco, located in Buenos Aires, where I was also involved in TIG's efforts to collect on the debts at issue.  I make the statements below based on my personal knowledge and based on my review of official records and decrees of the Republic of Argentina.

2.     DLA Piper Argentina today is, and Klein & Franco previously was, counsel to TIG in connection with the debts at issue. Klein & Franco has acted as counsel to TIG on the matter of TIG's claims against Caja Nacional and the Argentine State, as its successor, for noncompliance with: (i) a judgment entered in favor of TIG in arbitration proceedings, where the resulting award was confirmed in the case captioned *International Insurance Co. v. Caja Nacional de Ahorro Seguro*, 293 F.3d 392 (7th Cir. 2002) regarding two contracts, the Casualty Reinsurance Agreement and the Casualty Excess Reinsurance Agreement ("the reinsurance agreements"); (ii) a judgment entered in favor of TIG in the matter captioned *International Insurance Co. v. Caja Nacional de Ahorro y Seguro,* 00 C 2189 (N.D. Ill.) in relation to six facultative reinsurance certificates; (iii) Caja Nacional's obligations under the reinsurance contracts related to billings subsequent to the prior proceedings; and (iv) Caja Nacional's and the Republic of Argentina's obligations under the reinsurance agreements, where the resulting award was confirmed in 2018, in the case captioned *TIG Insurance Co. v. Republic of Argentina*, No. 17-cv-02835. An administrative claim in Argentina was also filed before the Ministry of Economy and coded *EXP-S01: 0257851/2005* related to the existing judgments in the United States.

## The Liquidation of Caja Nacional & Transfer of Its Assets and Liabilities to the Republic of Argentina

3.     In connection with TIG's various efforts to collect against Caja Nacional and the Republic of Argentina, I have reviewed certain Argentinian government decrees and resolutions regarding Caja Nacional, its liquidation, and the resulting transfer of assets and liabilities to the Republic of Argentina.

4.     Notably, I also performed such a review in connection with the 2016 arbitration commenced against the Republic. For that arbitration, I presented to the panel substantially the

2

same information as that which is detailed below concerning the relationship between Caja Nacional and the Republic of Argentina.  After the arbitral panel reviewed the evidence presented there, the panel concluded in its award that the Republic was the "successor in interest" to Caja Nacional, such that TIG could proceed to arbitrate its claim directly against the Republic.  *See* Aldort Decl. Ex. 49 at ¶ 1.  That arbitral award against the Republic itself, as noted above, would later be confirmed in 2018 by the Northern District of Illinois.

5.      My understanding is that Caja Nacional was initially founded in 1915, by the Argentinian government, as a state-owned company.  My understanding is also that Caja Nacional, at the time of its dissolution and liquidation (as explained below), was 100% owned by the Government of Argentina.

6.      In 1994, long after Caja Nacional breached its payment obligations to TIG under the reinsurance contracts at issue, the Government of Argentina then commenced the liquidation process of Caja Nacional.  The liquidation of Caja Nacional – and its resulting and eventual transfer of its assets and liabilities to the Argentine government under Argentine law – is borne out by a series of Argentine resolutions and decrees.

7.      To begin with, the (then) Ministry of Economy and Works and Public Services of Argentina issued Resolution No. 470 on April 7, 1994.  Attached hereto as **Exhibit A** is a true and correct copy of Resolution No. 470, including a certified translated version.[1]  In Article 2 of Resolution No. 470, the Ministry stated that "CAJA NACIONAL DE AHORRO Y SEGURO … is declared as dissolved and in process of liquidation."  The Resolution also commenced Caja Nacional's liquidation process, which would be managed by the Ministry and/or its secretaries or departments.

---

[1] The translated versions of exhibits provided in connection with this declaration were translated by Morningside Translations.  Morningside's certifications of their translations are attached hereto as **Exhibit H**.

8.     In 1998, the same Ministry of Economy and Works and Public Services of Argentina issued Resolution No. 893/98. Attached hereto as **Exhibit B** is a true and correct copy of the Resolution and its Annex, along with certified translated versions. In issuing Resolution No. 893/98, the Ministry of Economy and Works and Public Services of Argentina decided that ascertained liabilities and contingent assets and liabilities of Caja Nacional, derived from active reinsurance transactions in private markets outside the Republic of Argentina in which such entity was involved, were to be transferred to the National Treasury. Further, Article 1 of Resolution No. 893/98 decreed that "the liquidated liabilities and the contingent liabilities and assets of CAJA NACIONAL DE AHORRO Y SEGURO" are "declare[d] as transferred to the NATIONAL TREASURY[.]" Notably, as Article 1 further states, among Caja Nacional's liquidated and contingent liabilities were ones specifically "derived from the reinsurance businesses active in the international private market in which [Caja Nacional] may participate" outside of Argentina.

9.     Other pertinent sections of Resolution No. 893/98 include the following:

- The Annex of Resolution No. 893/98 identified some of Caja Nacional's liabilities as of 1998. And it specified Caja Nacional's contingent liabilities to TIG in the amount of $1,600,000.00 USD. (This Annex, it should be noted, was published well before the entry of even the first underlying arbitration award against Caja Nacional here, which was entered in October 2000.)

- Articles 2 and 3 of Resolution No. 893/98 also charged an Argentine Governmental agency, Instituto Nacional de Reaseguro ("INDER"), with the management of Caja Nacional's liabilities and assets, as well as claims that could arise in the future. Such claims, as Article 3 states, also include those that

4

originated in "active reinsurance transactions of the international private market," originally entered into by Caja Nacional.

10.     On October 11, 2005, the Ministry of Economy and Production issued Resolution 563/2005. Attached hereto as **Exhibit C** is a true and correct copy of the Resolution, along with a certified translation. In Resolution 563/2005, in particular at Article 4, the Ministry decided that Caja Nacional's liquidation was concluded — and, therefore, that Caja Nacional itself would cease to exist as of 90 calendar days after the Resolution's publication in the Official Gazette of Argentina (also known as the Official Bulletin). The Resolution was published on October 13, 2005, and accordingly, Caja Nacional itself ceased to exist as of January 12, 2006.

11.     Resolution 563/2005 also further detailed the transfer of Caja Nacional's assets and liabilities to Argentina as follows:

- Articles 5 and 6 of the Resolution stated that "the liquidated assets and liabilities, and the contingent assets and liabilities of CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process) are declared as transferred" to Argentina, acting through the Legal and Administrative Secretary of the (then) Ministry of Economy and Production.

- Article 6 of the Resolution also commanded the Ministry to make payments that may rise from the liquidation process, which would include the aforementioned claims arising from reinsurance transactions entered into by Caja Nacional.

- Article 12 of the Resolution also set forth that the Ministry's Legal and Administrative Secretary was to manage "any and all legal cases that CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process) may be a party to and the ones that may be filed in the future."

5

- Finally, Article 14 of the Resolution determined that the Ministry was to manage all pending tasks related to Caja Nacional's liquidation not included in the rest of the sections.

12. The aforementioned Resolutions determined that both Caja Nacional's assets and liabilities (ascertained or contingent) were to be transferred and managed, ultimately, by the Argentina National State. Therefore, it is the Argentine National State that must fulfill Caja Nacional's duties and consequently pay TIG any amounts deemed due.

## Negotiations with the Government of Argentina to Satisfy the Republic and Caja Nacional's Debts

13. Argentina is fully aware of its obligation to pay all of Caja Nacional's debts due to TIG. Representatives from Argentina's Ministry of the Economy, the Argentinean Embassy, and the Attorney General for the National Treasury of Argentina have been handling negotiation over the debts owed to TIG under the reinsurance contracts at issue here. I personally have been involved in these negotiations. Those communications, briefly summarized, included the following.

14. On January 27, 2016, the newly appointed Ambassador for the Argentine Republic in Washington D.C., Martin Lousteau, contacted TIG to arrange an in-person meeting between IIC and Argentinian officials to resolve the matter. A true and correct copy of that correspondence is attached hereto as **Exhibit D**. TIG promptly responded to Mr. Lousteau's letter agreeing to the proposed meeting. A true and correct copy of TIG's response, dated February 4, 2016, is attached hereto as **Exhibit E**.

15. TIG and the representatives from the Government of Argentina met at the Argentine Embassy in Washington, D.C. on April 4, 2016. I attended the meeting on TIG's

6

behalf, as did other senior-level representatives for TIG. At the meeting, the Attorney General asked that TIG provide additional background information because the then-new administration did not have access to the historic files related to Caja Nacional's debts. TIG provided the requested information on April 20, 2016. On April 27, 2016, Argentina's Ambassador, Mr. Lousteau, stated in a letter that he expected Argentina to progress towards a prompt resolution of the matter. A true and correct copy of that letter is attached hereto as **Exhibit F**.

16.     Having not heard back from Argentina after Mr. Lousteau's response, I wrote an additional follow-up email to the Attorney General's Office for the National Treasury of Argentina on June 3, 2016. In my email, I advised the Attorney General's office that TIG would be initiating additional proceedings if no progress towards resolution of the outstanding amounts had been made by June 30, 2016. An Argentinian representative replied in a letter, dated June 30, 2016, advising that the office had not completed their analysis of the TIG dispute. My office provided the additional documentation on July 7, 2016.

17.     My office also hand-delivered copies of TIG's arbitration demand in 2016, along with a free translation into Spanish, to INDER, the Ministry of Finance, and the attorney general on July 1, 2016. Throughout the arbitral process, my office forwarded communications and emails from the arbitral panel, translated into Spanish, to the Embassy, the Ministry of Economy, and the office of the attorney general. The Republic failed to participate in the arbitration.

## The Government of Argentina's Authorization of the Sale of Certain Properties Located in the District of Columbia

18.     In 2016, Argentina President Mauricio Macri issued Decree 1064/2016. Attached hereto as **Exhibit G** is a true and correct copy of the Decree and its Annex, along with certified translations. According to Article 1 of the Decree, the National State of Argentina stated that

7

"[t]he STATE PROPERTY ADMINISTRATION AGENCY is hereby authorized [to] dispose of and/or sell" certain "real estate property of the NATIONAL STATE" on the open market. The list of items to be sold included four properties in Washington D.C.   1816 Corcoran Street, NW, Washington DC 20009, Square: 0134, Lot: 0803; 1816 Corcoran Street, NW, Washington DC 20009, Square: 0134, Lot: 0142; 1815 Q Street, NW, Washington DC 20009, Square: 0134, Lot: 0831; and 2136 R Street, NW, Washington DC 20008, Square: 2513; Lot: 0007.

19.     Following President Macri's decree in 2016, however, none of the properties located in the United States were put up for sale until 2018. I understand that in the summer of 2018, one of the properties (2136 R Street, NW) was put up for sale, via public auction. Because of the earlier Decree 1064/2016, no additional Argentine authorization regarding the sale of the property was needed for the auction to proceed. Rather, the Argentine government elected to expedite the process through its ADMINISTRACIÓN DE BIENES DEL ESTADO (State Property Administration) with the advice of the Ministry of Foreign Affairs to conduct the proceedings for the sale of the properties located abroad.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at Buenos Aires, Argentina, this 24th day of September 2018.

Bernardo Gustavo Custo
Attorney-at-Law

8

# Exhibit A

BUENOS AIRES, 7 ABR 1994

**RESOLUCION N°: 470**

VISTO el Decreto N° 2715 del 29 de diciembre de 1993, y

CONSIDERANDO:

Que por el Decreto mencionado se constituyeron las sociedades CAJA NACIONAL DE AHORRO Y SEGURO SOCIEDAD ANONIMA, BANCO CAJA DE AHORRO SOCIEDAD ANONIMA, CAJA DE SEGUROS SOCIEDAD ANONIMA y CAJA DE SEGUROS DE VIDA SOCIEDAD ANONIMA, las que fueron creadas para continuar las tareas que se hallaban en cabeza de la CAJA NACIONAL DE AHORRO Y SEGURO - CNAS como entidad autárquica del ESTADO NACIONAL.

Que de acuerdo con lo expuesto en el considerando precedente, y en concordancia con las disposiciones del Artículo 7°, in fine del Decreto 2715/93, la CAJA NACIONAL DE AHORRO Y SEGURO — CNAS ha dejado de cumplir su misión y funciones específicas por lo´que corresponde incluirla en los extremos establecidos por el Decreto N° 2394 del 15 de diciembre de 1992, siendo procedente entonces, disponer el fin de la intervención de dicho ente y declararlo disuelto y en estado de liquidación.

Que es oportuno, asimismo, designar por la presente las autoridades que conducirán el proceso liquidatorio del ente en cuestión.

Que el Ministro de Economía y Obras y Servicios Públicos se encuentra facultado para el dictado de esta resolución según lo establece el Artículo 2° del Decreto n° 2394/92.

Por ello,

EL MINISTRO DE ECONOMIA Y OBRAS Y SERVICIOS PUBLICOS

RESUELVE:

**ARTICULO 1°**.- Declárase finalizada la Intervención de la CAJA NACIONAL DE AHORRO Y SEGURO - CNAS.

**ARTICULO 2°**.- Declárase a la CAJA NACIONAL DE AHORRO Y SEGURO -CNAS, disuelta y en estado de liquidación.

**ARTICULO 3°**.- Designase en el cargo de Liquidador de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) - CNAS (e.l.) al Señor Subsecretario de Normalización Patrimonial, Contador D. Rubén Domingo PONCIO (D.N.I. N° 6.291.740), por el plazo de UN (1) año. El funcionario designado por el presente artículo continuará con el cumplimiento normal de las tareas correspondientes a su cargo como Subsecretario.

**ARTICULO 4°**.- Designase Subliquidador del ente mencionado en el artículo precedente al Contador D. Osvaldo Alfredo BESSONE (D.N.I. N° 7.955.862), por el plazo de UN (1) año.

**ARTICULO 5°**.- A partir de la entrada en vigencia de la presente, la CAJA NACIONAL DE AHORRO Y SEGURO (En Liquidación) - CNAS (e.l.) pasará al ámbito de competencia de la SUBSECRETARIA DE NORMALIZACION PATRIMONIAL de la SECRETARIA DE HACIENDA.

**ARTICULO 6°.-** Los gastos que implique el cumplimiento de las disposiciones de la presente, serán imputados a recursos específicos de la CAJA NACIONAL DE AHORRO Y SEGURO (En Liquidación) - CNAS (e.l.).

**ARTICULO 7°.-** Comuníquese, publíquese, dése a la Dirección Nacional del Registro Oficial y archívese.

**BUENOS AIRES, APRIL 7 1994**

**RESOLUTION No.: 470**

PURSUANT TO Decree No. 2715 dated December 29 1993, and

WHEREAS:

Que por el Decreto mencionado se constituyeron las sociedades CAJA NACIONAL DE AHORRO Y SEGURO SOCIEDAD ANONIMA, BANCO CAJA DE AHORRO SOCIEDAD ANONIMA, CAJA DE SEGUROS SOCIEDAD ANONIMA y CAJA DE SEGUROS DE VIDA SOCIEDAD ANONIMA, las que fueron creadas para continuar las tareas que se hallaban en cabeza de la CAJA NACIONAL DE AHORRO Y SEGURO - CNAS como entidad autárquica del ESTADO NACIONAL.

Que de acuerdo con lo expuesto en el considerando precedente, y en concordancia con las disposiciones del Artículo 7°, in fine del Decreto 2715/93, la CAJA NACIONAL DE AHORRO Y SEGURO — CNAS ha dejado de cumplir su misión y funciones específicas por lo que corresponde incluirla en los extremos establecidos por el Decreto N° 2394 del 15 de diciembre de 1992, siendo procedente entonces, disponer el fin de la intervención de dicho ente y declararlo disuelto y en estado de liquidación.

Que es oportuno, asimismo, designar por la presente las autoridades que conducirán el proceso liquidatorio del ente en cuestión.

Que el Ministro de Economía y Obras y Servicios Públicos se encuentra facultado para el dictado de esta resolución según lo establece el Artículo 2° del Decreto n° 2394/92.

Now therefore,

THE MINISTER OF ECONOMY AND WORKS AND PUBLIC SERVICES

RESOLVES:

**ARTICLE 1**.- Intervention of CAJA NACIONAL DE AHORRO Y SEGURO (CNAS) is declared to have finished.

**ARTICLE 2**.- CAJA NACIONAL DE AHORRO Y SEGURO (CNAS) is declared as dissolved and in process of liquidation.

**ARTICLE 3**.- Asset Normalization Deputy Secretary, Mr. Rubén Domingo PONCIO (National Identity Document No. 6,291,740), accountant, is hereby appointed to hold the position as Liquidator of CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process) - CNAS (i.l.) for the term of ONE (1) year. The officer hereby appointed to cover that position shall continue performing their normal duties related to their position as Deputy Secretary.

**ARTICLE 4**.- Mr. Osvaldo Alfredo BESSONE (National Identity Document No. 7,955,862), accountant, is hereby appointed as Deputy Liquidator of the entity mentioned n the previous article for the term of ONE (1) year.

**ARTICLE 5**.- From the effective date hereof, CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process) - CNAS (i.l.) shall fall within the competence of the ASSET NORMALIZATION DEPUTY SECRETARIAT of the SECRETARIAT OF THE TREASURY.

**ARTICLE 6**.- Any expenses involved in the fulfillment of the provisions hereof shall be chargeable to specific resources of CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process) - CNAS (i.l.)

**ARTICLE 7**.- Be it communicated, published, delivered to the National Department of Official Registration and filed.

# Exhibit B

Case 1:18-mc-00129-DLF    Document 2-5    Filed 09/25/18    Page 15 of 65



**MINISTERIO DE ECONOMIA Y OBRAS Y SERVICIOS PUBLICOS**

**Resolución N° 893/98**

**Bs. As., 31/7/98**

**B.O: 12/8/98**

VISTO el Expediente N° 750-005170/97 del Registro del MINISTERIO DE ECONOMIA Y OBRAS Y SERVICIOS PUBLICOS, y

CONSIDERANDO:

Que en el Expediente referenciado, el Liquidador de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) plantea la conveniencia de transferir los negocios de reaseguros activos del mercado privado del exterior en los que participara el citado ente, aún pendientes de conclusión, al INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación).

Que la medida que se propone encuentra su fundamento técnico y político en la naturaleza particular de los negocios de que se trata y la necesidad de optimizar los recursos y las estructuras con que aún cuentan ambos entes en liquidación, posibilitando el cierre del proceso liquidatorio de algunos rubros de uno de ellos.

Que respecto de este tipo de negocios, la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) mantiene en su estado patrimonial al 30 de junio de 1994, realizando en los términos del Decreto N° 1836 del 14 de octubre de 1994, un conjunto de deudas con cedentes de dichos negocios, la mayoría de las cuales tienen reclamos de cancelación.

Que asimismo el INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación) tiene pendientes de conclusión operatorias de la misma naturaleza y características que las realizadas en su momento por la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), esto es, procedentes de reaseguros activos con cedentes del exterior.

Que la naturaleza jurídica, económica y financiera de este tipo de negocios, determinantes de su complejidad técnica, así como la repercusión que toda negociación tendiente a su conclusión tendrá en el mercado, tornan necesario un manejo unificado de los mismos que posibiliten una mejor defensa de los intereses del ESTADO NACIONAL.

Que encontrándose ambos entes en estado de liquidación y existiendo intereses comunes de los mismos en muchos de los negocios antes indicados, resulta conveniente encarar la conclusión de ellos mediante una estructura especializada en los complejos aspectos técnicos que presentan y conforme a un manejo unívoco y centralizado.

Que los aristas esenciales del marco político negocial antedicho, aconsejan la utilización de uniformidad de criterios para la atención de los acreedores internacionales en este rubro, junto con el aumento del caudal de información para las negociaciones y recuperaciones y un mejor perfil técnico en los equipos de negociación.

Que el manejo unificado de tales negocios por parte del INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación) tendrá efectos de orden económico con incidencia sobre los costos directos e indirectos, los que se verán sensiblemente reducidos, así como el aumento de la eficacia de los controles internos y externos cuyos costos también se reducirán.

Que al concentrar en un solo de los entes en liquidación la totalidad de los negocios de reaseguros activos con cedentes del exterior a los fines de su conclusión, se adquirirá un mayor poder de negociación frente a los acreedores aludidos, aprovechando racionalmente los recursos mediante la utilización de los que posee un ente que, aún encontrándose en proceso liquidatorio, tiene indudable especialización en el tema.

Que la atención de los citados negocios de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) por el INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD.DEL ESTADO (en liquidación) permitirá avanzar más rapidamente en el objetivo liquidatorio del primero de los entes nombrados, sin que ello traiga aparejada una

demora en la liquidación del segundo, en razón de tratarse de negocios similares a los que ya figuran en la cartera de este, y en los que se unificarán la representación y las pautas en las negociaciones destinadas a concluir los mismos.

Que por otra parte, dada la especialización del INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación) en el tratamiento y manejo de este tipo de negocios, la medida que se dispone no implica descuidar los intereses fiscales comprometidos sino, antes bien, reforzar la defensa de los mismos por las razones técnicas y de política negocial que se describen en los Considerandos precedentes.

Que por ello se hace necesario disponer las medidas pertinentes a los fines de la atención de la cartera de negocios de reaseguros activos del mercado privado del exterior de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) por el INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación), dentro del marco normativo vigente que regula el proceso liquidatorio de los entes que hayan sido declarados en estado de liquidación.

Que a tal fin, la mecánica apropiada es la transferencia al ESTADO NACIONAL, en el marco de lo dispuesto por el artículo 9° del Decreto N° 2148 del 19 de octubre de 1993, de los pasivos determinados y de los activos y pasivos contingentes de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), derivados de la cartera de reaseguros activos con cedentes del exterior, encomendando su atención al INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación).

Que la DIRECCION GENERAL DE ASUNTOS JURIDICOS de este MINISTERIO ha tomado la intervención que le compete.

Que la presente se dicta en uso de las facultades otorgadas por los artículos 13 y 15, inciso 1° de la Ley N° 23.696, el artículo 10 del Decreto N° 171 del 23 de enero de 1992, el artículo 29 del Decreto N° 2394 del 15 de diciembre de 1992, el artículo 99 del Decreto N° 2148 del 19 de octubre de 1993 y los artículos 4° y 15 del Decreto N° 1836 del 14 de octubre de 1994.

Por ello,

EL MINISTRO DE ECONOMIA Y OBRAS Y SERVICIOS PUBLICOS

RESUELVE:

**ARTICULO 1°**-Declarar transferidos al TESORO NACIONAL los pasivos determinados y los activos y pasivos contingentes de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), derivados de los negocios de reaseguros activos del mercado privado del exterior en los que participara el citado ente, y cuyo detalle que forma parte del estado patrimonial confeccionado al 30 de junio de 1994 de conformidad con lo establecido por el Decreto N° 1836/94, figura como Anexo de la presente Resolución.

**ARTICULO 2°**-Encomendar al INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación) la atención de los negocios indicados en el artículo anterior hasta la conclusión de los mismos, así como de los reclamos que pudiesen surgir en el futuro derivados de operaciones de reaseguros activos del mercado privado del exterior, realizadas en su momento por la CAJA NACIONAL DE AHORRO Y SEGURO, hoy en liquidación, ejerciendo la totalidad de las facultades que a su respecto tiene el Liquidador de este último ente, conforme a las normas vigentes que reglamentan la liquidación del mismo.

**ARTICULO 3°**-A los fines de la liquidación de los negocios cuya atención se le encomienda, el INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación) podrá ofrecer a los acreedores de los mismos, los medios de pago que se encuentra facultada a ofrecer la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) conforme al artículo 27 de la Ley N° 24.764.

**ARTICULO 4°**-Los organismos involucrados deberán disponer todos los medios necesarios para la inmediata puesta en práctica de lo establecido en la presente Resolución.

**ARTICULO 5°**-Comuníquese, publíquese, dése a la Dirección Nacional del Registro Oficial y archívese.-Dr. ROQUE BENJAMIN FERNANDEZ. Ministro de Economía y Obras y Servicios Públicos.

NOTA: Esta Resolución se publica sin anexo. La documentación no publicada puede ser consultada en la Sede Central del Boletín Oficial (Suipacha 767, Capital Federal).

e.12/8/98 N° 239.053 v. 12/8/98

"1999 - Año de los Municipios"

ANEXO

| CEDENTE - RECLAMANTE | IMPORTE EN U$S |
|---|---|
| GROUPE KLEBER | 5.500.000,00 |
| CONCORD REINS. | 690.000,00 |
| UMIC | 2.250.000,00 |
| INTERNATIONAL INSS. CO. | 1.600.000,00 |
| MENTOR INSS. LTD. | 1.930.000,00 |
| TRINITY AND REASS. CO. | 330.000,00 |
| MARKET RUN OFF | 2.460.000,00 |
| DELTA  RE | 1.680.000,00 |
| INTER COMMUNITY REINS. | 10.320.000,00 |
| PROPRIETORS INSS. CO. | 235.000,00 |
| ALL-STATE INSS. CO. | 70.000,00 |
| GROUP MISSION | 700.000,00 |
| SKANDIA INS. CO. | 630.000,00 |
| AMERICAN DRUGGISTS | 103.900,00 |
| RE INTERNATIONAL | 444.000,00 |
| MUTUAL FIRE AND MARINE | 383.000,00 |
| TRUCKING LINES | 266.000,00 |
| ATLANTIC UNION | 142.000,00 |
| AGENCE REAS DE PARIS | 180.000,00 |
| EXCESS INS. CO. | 1.500.000,00 |
| MALVERN INS. | 119.000,00 |
| GROUPE SPRINK | 165.000,00 |
| IBERO AMERICANA | 69.000,00 |
| SPHERE DRAKE | 74.000,00 |
| POLARIS NORSKE | 75.000,00 |
| HELLENIG SHIP | 54.000,00 |
| CONTINENTAL ASS. | 77.000,00 |
| ENNIA | 158.000,00 |
| WESTMINSTER | 54.000,00 |
| AMERICAN MARINE | 147.000,00 |
| NOTH BROOK | 156.000,00 |
| TRIDENT | 180.000,00 |
| OUT WHITE | 96.000,00 |
| NEDERLAND | 120.000,00 |
| FORENEDE | 214.000,00 |
| BOURGHOINE ALFORT | 473.000,00 |
| TRANSPORTATION | 91.000,00 |
| KOREAN INS. | 90.000,00 |
| GRANT UNION | 128.000,00 |
| ABEILLE PAIX | 168.000,00 |
| AFIA | 106.000,00 |
| LA REUNION AIRENNE | 186.000,00 |

1845

"1993 - Año de los Municipios"

///-2-

| | |
|---|---:|
| UNION INDEMNITY | 279.000,00 |
| MENNER REINS. | 41.000,00 |
| UNIVERSAL MARINE | 239.000,00 |
| GRUPO UNIVERSAL | 71.000,00 |
| CONTINENTAL | 41.000,00 |
| HEATH | 95.000,00 |
| UNION AMERICA | 55.000,00 |
| NORTH RIVER | 215.000,00 |
| C.E. HEATH | 69.000,00 |
| ISLIC | 187.000,00 |
| AMERICAN EAGLE | 61.000,00 |
| MUTUAL MARINE | 70.000,00 |
| SARABIMAH | 55.000,00 |
| DRAKE INS. | 367.000,00 |
| CAMBRIDGE | 54.000,00 |
| GROUP SPRINK II | 120.000,00 |
| SEG. LA REPUBLICA | 107.000,00 |
| UNION INDEMNITY II | 2.476.000,00 |
| IDEAL MUTUAL | 1.145.000,00 |
| STETZEL THOMPSON | 1.350.000,00 |
| INTER POOL - ARGENHALL | 4.630.000,00 |

|  | | |
|---|---|---:|
| | SUBTOTAL | 46.140.900,00 |
| NEGOCIOS QUE NO TRAMITARON RECLAMOS | | 6.203.824,00 |
| | TOTAL | 52.344.724,00 (*) |

(*) Importe registrado en el Estado Patrimonial al 30.06.94.

**MINISTRY OF ECONOMY AND WORKS AND PUBLIC SERVICES**

**Resolution No. 893/98**

**Bs. As., 7/31/98**

**Official Bulletin: 12/8/98**

PURSUANT TO Case File No. 750-005170/97 of the Registry of the MINISTRY OF ECONOMY AND WORKS AND PUBLIC SERVICES, and

WHEREAS:

Que en el Expediente referenciado, el Liquidador de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) plantea la conveniencia de transferir los negocios de reaseguros activos del mercado privado del exterior en los que participara el citado ente, aún pendientes de conclusión, al INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación).

Que la medida que se propone encuentra su fundamento técnico y político en la naturaleza particular de los negocios de que se trata y la necesidad de optimizar los recursos y las estructuras con que aún cuentan ambos entes en liquidación, posibilitando el cierre del proceso liquidatorio de algunos rubros de uno de ellos.

Que respecto de este tipo de negocios, la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) mantiene en su estado patrimonial al 30 de junio de 1994, realizando en los términos del Decreto N° 1836 del 14 de octubre de 1994, un conjunto de deudas con cedentes de dichos negocios, la mayoría de las cuales tienen reclamos de cancelación.

Que asimismo el INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación) tiene pendientes de conclusión operatorias de la misma naturaleza y características que las realizadas en su momento por la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), esto es, procedentes de reaseguros activos con cedentes del exterior.

Que la naturaleza jurídica, económica y financiera de este tipo de negocios, determinantes de su complejidad técnica, así como la repercusión que toda negociación tendiente a su conclusión tendrá en el mercado, tornan necesario un manejo unificado de los mismos que posibiliten una mejor defensa de los intereses del ESTADO NACIONAL.

Que encontrándose ambos entes en estado de liquidación y existiendo intereses comunes de los mismos en muchos de los negocios antes indicados, resulta conveniente encarar la conclusión de ellos mediante una estructura especializada en los complejos aspectos técnicos que presentan y conforme a un manejo unívoco y centralizado.

Que los aristas esenciales del marco político negocial antedicho, aconsejan la utilización de uniformidad de criterios para la atención de los acreedores internacionales en este rubro, junto con el aumento del caudal de información para las negociaciones y recuperaciones y un mejor perfil técnico en los equipos de negociación.

Que el manejo unificado de tales negocios por parte del INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación) tendrá efectos de orden económico con incidencia sobre los costos directos e indirectos, los que se verán sensiblemente reducidos, así como el aumento de la eficacia de los controles internos y externos cuyos costos también se reducirán.

Que al concentrar en un solo de los entes en liquidación la totalidad de los negocios de reaseguros activos con cedentes del exterior a los fines de su conclusión, se adquirirá un mayor poder de negociación frente a los acreedores aludidos, aprovechando racionalmente los recursos mediante la utilización de los que posee un ente que, aún encontrándose en proceso liquidatorio, tiene indudable especialización en el tema.

Que la atención de los citados negocios de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) por el INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD.DEL ESTADO (en liquidación) permitirá avanzar más rapidamente en el objetivo liquidatorio del primero de los entes nombrados, sin que ello traiga aparejada una demora en la liquidación del segundo, en razón de tratarse de negocios similares a los que ya figuran en la cartera de este, y en los que se unificarán la representación y las pautas en las negociaciones destinadas a concluir los mismos.

Que por otra parte, dada la especialización del INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación) en el tratamiento y manejo de este tipo de negocios, la medida que se dispone no implica descuidar los intereses fiscales comprometidos sino, antes bien, reforzar la defensa de los mismos por las razones técnicas y de política negocial que se describen en los Considerandos precedentes.

Que por ello se hace necesario disponer las medidas pertinentes a los fines de la atención de la cartera de negocios de reaseguros activos del mercado privado del exterior de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) por el INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación), dentro del marco normativo vigente que regula el proceso liquidatorio de los entes que hayan sido declarados en estado de liquidación.

Que a tal fin, la mecánica apropiada es la transferencia al ESTADO NACIONAL, en el marco de lo dispuesto por el artículo 9º del Decreto N° 2148 del 19 de octubre de 1993, de los pasivos determinados y de los activos y pasivos contingentes de la CA JA NACIONAL DE AHORRO Y SEGURO (en liquidación), derivados de la cartera de reaseguros activos con cedentes del exterior, encomendando su atención al INSTITUTO NACIONAL DE REASEGUROS SOCIEDAD DEL ESTADO (en liquidación).

Que la DIRECCION GENERAL DE ASUNTOS JURIDICOS de este MINISTERIO ha tomado la intervención que le compete.

Que la presente se dicta en uso de las facultades otorgadas por los artículos 13 y 15, inciso 1° de la Ley N° 23.696, el artículo 10 del Decreto N° 171 del 23 de enero de 1992, el artículo 29 del Decreto N° 2394 del 15 de diciembre de 1992, el artículo 99 del Decreto N° 2148 del 19 de octubre de 1993 y los artículos 4° y 15 del Decreto N° 1836 del 14 de octubre de 1994.

Now therefore,

THE MINISTER OF ECONOMY AND WORKS AND PUBLIC SERVICES

RESOLVES:

**ARTICLE 1**.- To declare as transferred to the NATIONAL TREASURY the liquidated liabilities and the contingent liabilities and assets of CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process), derived from the reinsurance businesses active in the international private market in which the above-mentioned entity may participate, and whose detail which makes part of the statement of financial position as of June 30 1994 pursuant to the provisions under Decree No. 1836/94 has been included as an Annex to this Resolution.

**ARTICLE 2**.- To entrust to the NATIONAL REINSURANCE INSTITUTE STATE COMPANY (in liquidation process) to serve the businesses mentioned in the previous article until completion thereof, as well as to take care of any claims that may arise in the future as derived from operations related to active reinsurances of the international private market, performed in due course by CAJA NACIONAL DE AHORRO Y SEGURO, today in liquidation process, exercising all the powers granted to the Liquidator of the latter entity, pursuant to the current regulations ruling liquidation thereof.

**ARTCLE 3**.- For the purposes of the liquidation of the businesses entrusted to the NATIONAL REINSURANCE INSTITUTE STATE COMPANY (in liquidation), this entity may offer to the creditors thereof the payment methods that CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process) is entitled to offer pursuant to article 27 of Law No. 24,764.

**ARTICLE 4**.- The organisms involved shall make use of any and all means necessary for immediate execution of everything established in this Resolution.

**ARTICLE 5**.- Be it communicated, published, delivered to the National Department of Official Registration and filed.- Dr. ROQUE BENJAMIN FERNANDEZ. Minister of Economy and Works and Public Services.

NOTE: This Resolution is published without any annexes. The non-published documentation may be consulted at the Official Bulletin Headquarters (Suipacha 767, Buenos Aires).

"1999 - Year of the Municipalities"

APPENDIX

| TRANSFEROR - BENEFICIARY | SUM IN US$ |
|---|---|
| GROUPE KLEBER | 5.500.000,00 |
| CONCORD REINS. | 690.000,00 |
| UMIC | 2.250.000,00 |
| INTERNATIONAL INSS. CO. | 1.600.000,00 |
| MENTOR INSS. LTD. | 1.930.000,00 |
| TRINITY AND REASS. CO. | 330.000,00 |
| MARKET RUN OFF | 2.460.000,00 |
| DELTA   RE | 1.680.000,00 |
| INTER COMMUNITY REINS. | 10.320.000,00 |
| PROPRIETORS INSS. CO. | 235.000,00 |
| ALL-STATE INSS. CO. | 70.000,00 |
| GROUP MISSION | 700.000,00 |
| SKANDIA INS. CO. | 630.000,00 |
| AMERICAN DRUGGISTS | 103.900,00 |
| RE INTERNATIONAL | 444.000,00 |
| MUTUAL FIRE AND MARINE | 383.000,00 |
| TRUCKING LINES | 266.000,00 |
| ATLANTIC UNION | 142.000,00 |
| AGENCE REAS DE PARIS | 180.000,00 |
| EXCESS INS. CO. | 1.500.000,00 |
| MALVERN INS. | 119.000,00 |
| GROUPE SPRINK | 165.000,00 |
| IBERO AMERICANA | 69.000,00 |
| SPHERE DRAKE | 74.000,00 |
| POLARIS NORSKE | 75.000,00 |
| HELLENIG SHIP | 54.000,00 |
| CONTINENTAL ASS. | 77.000,00 |
| ENNIA | 158.000,00 |
| WESTMINSTER | 54.000,00 |
| AMERICAN MARINE | 147.000,00 |
| NOTH BROOK | 156.000,00 |
| TRIDENT | 180.000,00 |
| OUT WHITE | 96.000,00 |
| NEDERLAND | 120.000,00 |
| FORENEDE | 214.000,00 |
| BOURGHOINE ALFORT | 473.000,00 |
| TRANSPORTATION | 91.000,00 |
| KOREAN INS. | 90.000,00 |
| GRANT UNION | 128.000,00 |
| ABEILLE PAIX | 168.000,00 |
| AFIA | 106.000,00 |
| LA REUNION AIRENNE | 186.000,00 |

[Stamp, illegible]

1845

*n*

[Initials, illegible]

"1999 - Year of the Municipalities"

*///-2-*

| | |
|---|---:|
| UNION INDEMNITY | 279.000,00 |
| MENNER REINS. | 41.000,00 |
| UNIVERSAL MARINE | 239.000,00 |
| GRUPO UNIVERSAL | 71.000,00 |
| CONTINENTAL | 41.000,00 |
| HEATH | 95.000,00 |
| UNION AMERICA | 55.000,00 |
| NORTH RIVER | 215.000,00 |
| C.E. HEATH | 69.000,00 |
| ISLIC | 187.000,00 |
| AMERICAN EAGLE | 61.000,00 |
| MUTUAL MARINE | 70.000,00 |
| SARABIMAH | 55.000,00 |
| DRAKE INS. | 367.000,00 |
| CAMBRIDGE | 54.000,00 |
| GROUP SPRINK II | 120.000,00 |
| SEG. LA REPUBLICA | 107.000,00 |
| UNION INDEMNITY II | 2.476.000,00 |
| IDEAL MUTUAL | 1.145.000,00 |
| STETZEL THOMPSON | 1.350.000,00 |
| INTER POOL - ARGENHALL | 4.630.000,00 |
| **SUBTOTAL** | 46.140.900,00 |
| BUSINESSES THAT DID NOT PROCESS CLAIMS | 6.203.824,00 |
| **TOTAL** | 52.344.724,00  (*) |

(*)  Recorded net worth through 06/30/94.

[Stamp, illegible]

1845

*n*

[Initials, illegible]

Exhibit C

Resolución 563-05

**Ministerio de Economía y Producción**

**CAJA NACIONAL DE AHORRO Y SEGURO**

**Resolución 563/2005**

**Considérase como estado de liquidación el Estado Patrimonial, al 30 de junio de 1994, de la Caja Nacional de Ahorro y Seguro (en liquidación), de la Dirección Nacional de Normalización Patrimonial de la Subsecretaría de Administración y Normalización Patrimonial. Presentación de las rendiciones de cuentas correspondientes al período comprendido entre el 1 de julio de 1994 y el 31 de diciembre de 2003. Delégase en la Secretaría Legal y Administrativa la facultad de tener por presentadas las rendiciones de cuentas entre el 1 de enero de 2004 y la fecha en que se produzca la extinción de la personería jurídi-ca de la citada institución.**

Bs. As., 11/10/2005

VISTO el Expediente Nº 090-004711/2001 del Registro del ex - MINISTERIO DE ECONOMIA, los Artículos 61 y 62 de la Ley Nº 11.672, Complementaria Permanente de Presupuesto (t.o. 1999), los Decretos Nros. 2148 de fecha 19 de octubre de 1993, 1836 de fecha 14 de octubre de 1994 y la Decisión Administrativa Nº 12 de fecha 11 de julio de 2003, y

CONSIDERANDO:

Que en virtud de lo establecido por el Artículo 1º del Decreto Nº 1836 de fecha 14 de octubre de 1994, la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) dependiente de la Dirección Nacional de Normalización Patrimonial de la SUBSECRETARIA DE ADMINISTRACION y NORMALIZACION PATRIMONIAL de la SECRETARIA LEGAL Y ADMINISTRATIVA del MINISTERIO DE ECONOMIA Y PRODUCCION, ha procedido a realizar un relevamiento del Estado Patrimonial de activos y pasivos, ciertos y contingentes al 30 de junio de 1994.

Que en relación con el Estado Patrimonial al 30 de junio de 1994, ha tomado intervención competente la SINDICATURA GENERAL DE LA NACION dependiente de la PRESIDENCIA DE LA NACION, según lo previsto por el Artículo 4º del Decreto Nº 1836/94, produciéndose su opinión mediante informe de fecha 6 de febrero de 1998.

Que como consecuencia de ello, el señor Liquidador de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) ha resuelto disponer el envío de dicho Estado Patrimonial y de las rendiciones de cuentas posteriores al 30 de junio de 1994, previstas en el segundo párrafo del Artículo 4º del Decreto Nº 1836/94, al MINISTERIO DE ECONOMIA Y PRODUCCION.

Que el MINISTERIO DE ECONOMIA Y PRODUCCION, en su carácter de Autoridad de Aplicación del Decreto Nº 1836/94, puede resolver considerar dicho Estado Patrimonial como Estado de Liquidación de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación).

Que en tal caso, dicho Estado Patrimonial es sustitutivo de los balances correspondientes al período comprendido entre el último balance auditado y el 30 de junio de 1994, de conformidad con lo normado por el Artículo 61 de la Ley Nº 11.672, Complementaria Permanente de Presupuesto (t.o. 1999).

Que la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) ha presentado las rendiciones de cuentas correspondientes al período comprendido entre el 1 de julio de 1994 y el 31 de diciembre de 2003.

Que de disponerse considerar el Estado Patrimonial de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), como estado de liquidación, las rendiciones de cuentas aludidas en el considerando precedente serán sustitutivas de los balances anuales de esa empresa.

Que en el período que media entre la última rendición de cuentas y la fecha en que se producirá la extinción de la personería jurídica de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), se siguen desarrollando las tareas remanentes que se distribuyen por esta resolución, lo cual implica la eventual percepción de ingresos y atención de erogaciones, por lo que resulta necesario arbitrar las medidas conducentes para tener por presentadas las rendiciones de cuentas efectuadas con posterioridad al 31 de diciembre de 2003 y hasta los NOVENTA (90) días corridos de la fecha de publicación de la presente resolución en el Boletín Oficial.

Que a esos efectos, según lo normado por el Artículo 14 de la Ley de Ministerios (texto ordenado por Decreto Nº 438/92) y sus modificaciones, la Autoridad Jurisdiccional puede delegar la resolución correspondiente a las cuestiones de su competencia en el funcionario que determine, conforme con la organización de cada área.

Que en tal sentido resulta conveniente facultar a la SECRETARIA LEGAL Y ADMINISTRATIVA del MINISTERIO DE ECONOMIA Y PRODUCCION, para tener por presentadas las rendiciones de cuentas posteriores al 31 de diciembre de

2003.

Que no existen otras tareas que justifiquen, por su importancia, el mantenimiento del estado de liquidación de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación).

Que el Artículo 62 de la Ley Nº 11.672, Complementaria Permanente de Presupuesto (t.o. 1999), establece que la liquidación definitiva de los organismos o empresas se producirá con el dictado de la resolución que, en el marco de los Decretos Nros. 2148 de fecha 19 de octubre de 1993 y 1836/94, disponga el cierre de los respectivos procesos liquidatorios.

Que dicho dispositivo legal contempla que la personería jurídica de los entes u organismos del ESTADO NACIONAL cuyo cierre se disponga con posterioridad al dictado de dicha ley se extinguirá a los NOVENTA (90) días corridos de la fecha de publicación en el Boletín Oficial del acto que resolvió su cierre.

Que por imperio de esa normativa, resulta conducente establecer las condiciones necesarias para una ordenada transferencia de las tareas actualmente a cargo de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) al ámbito de competencia de la Administración Central dentro de los NOVENTA (90) días corridos de la publicación de la presente resolución en el Boletín Oficial.

Que en oportunidad de producirse la liquidación definitiva del ente de que se trata, debe darse íntegro cumplimiento a lo establecido en el Artículo 9º del Decreto Nº 2148/93 y, en consecuencia, transferir al ESTADO NACIONAL los activos y pasivos, ciertos y/o contingentes, de la entidad liquidada.

Que dado que la labor de liquidación cesará a los NOVENTA (90) días corridos de la fecha de publicación de la presente resolución en el Boletín Oficial, es necesario proveer a la atención de las tareas remanentes que han de prolongarse después de la extinción de la personería jurídica de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), tales como la atención de juicios, trámites de consolidación de deudas, manejo de archivos y registros contables, administrativos y laborales, entre otras.

Que para la atención de tales tareas, es conveniente recurrir a los organismos permanentes del MINISTERIO DE ECONOMIA Y PRODUCCION, atendiendo a las incumbencias, responsabilidades y atribuciones que ya tienen asignadas y a las que se estima conveniente delegarles.

Que por el Decreto Nº 1283 de fecha 24 de mayo de 2003 se sustituyó, entre otros aspectos, la denominación del MINISTERIO DE ECONOMIA por la de MINISTERIO DE ECONOMIA Y PRODUCCION, asignándole las competencias a las que esta Cartera Ministerial deberá ajustar su accionar.

Que en función de tal asignación, se reordenaron las responsabilidades de dicha jurisdicción mediante el Decreto Nº 25 de fecha 27 de mayo de 2003 que aprobó el Organigrama de Aplicación de la Administración Centralizada del MINISTERIO DE ECONOMIA Y PRODUCCION así como los objetivos de los niveles políticos establecidos en dicho Organigrama hasta el nivel de Subsecretarías.

Que posteriormente el Decreto Nº 1359 de fecha 5 de octubre de 2004 sustituyó el Anexo I al Artículo 1º del Decreto Nº 25/03 - Organigrama de Aplicación de la Administración Centralizada del MINISTERIO DE ECONOMIA Y PRODUCCION, por el que se consigna en la planilla anexa a su Artículo 1º.

Que, del mismo modo, el Decreto Nº 1359/04 en su Artículo 2º sustituyó el Anexo II al Artículo 2º del Decreto Nº 25/03 - Objetivos del MINISTERIO DE ECONOMIA Y PRODUCCION, quedando conformado según el detalle que se consigna en las planillas anexas a dicho artículo.

Que, por otra parte, el Artículo 3º del Decreto Nº 1359/04 dispuso aprobar la estructura organizativa del primer nivel operativo del MINISTERIO DE ECONOMIA Y PRODUCCION de acuerdo con los Organigramas, Responsabilidades Primarias y Acciones y Dotación que como Anexos Ia, Ib, Ic, Id, Ie, If, Ig, Ih, Ii, Ij, Ik, Il, IIIa y IIIb forman parte integrante del citado decreto.

Que de acuerdo al Artículo 4º del citado Decreto Nº 1359/04 mediante la Resolución Nº 779 de fecha 6 de diciembre de 2004 del MINISTERIO DE ECONOMIA Y PRODUCCION se aprueban las aperturas estructurales inferiores de dicha jurisdicción de conformidad con los Organigramas, Acciones y Dotación que como Anexos Ia, Ib, Ic, Id, Ie, If, Ig, Ih, Ii, Ij, Ik, II, II, IIa y IIb forman parte integrante de la mencionada resolución.

Que en ese sentido, la TESORERIA GENERAL DE LA NACION actuante en el ámbito de la SECRETARIA DE HACIENDA de este Ministerio, tendrá a su cargo la realización de los pagos pendientes derivados del proceso liquidatorio de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), los que se efectivizarán contra las Ordenes de Pago que emita el Servicio Administrativo Financiero de la SECRETARIA LEGAL Y ADMINISTRATIVA de este Ministerio.

Que la SUBSECRETARIA LEGAL de la SECRETARIA LEGAL Y ADMINISTRATIVA de este Ministerio, es el organismo permanente indicado para disponer sobre la atención de las causas judiciales.

Que la CONTADURIA GENERAL DE LA NACION, actuante en el ámbito de la SECRETARIA DE HACIENDA de este Ministerio, por las responsabilidades asignadas por el Artículo 91 de la Ley Nº 24.156 de Administración Financiera y de los Sistemas de Control del Sector Público Nacional, debe proceder al resguardo de la documentación financiera de la empresa liquidada y a registrar contablemente la liquidación.

Que la SUBSECRETARIA DE RELACIONES CON PROVINCIAS de la SECRETARIA DE HACIENDA de este Ministerio, es el área competente en la coordinación de los aspectos fiscales, económicos y financieros y sus impactos sociales, en la relación entre el Gobierno Nacional y los Sectores Públicos Provinciales y Municipales.

Que existiendo otras tareas administrativas remanentes, no previstas específicamente en los objetivos contenidos en los cuerpos normativos a que se alude precedentemente, o que no hayan sido delegadas en el marco de lo autorizado por el Artículo 14 de la Ley de Ministerios (texto ordenado por Decreto Nº 438/92) y sus modificaciones, se encomienden por la presente resolución, la repartición indicada para reunir las mismas resulta ser la SUBSECRETARIA DE ADMINISTRACION Y NORMALIZACION PATRIMONIAL de la SECRETARIA LEGAL Y ADMINISTRATIVA de este Ministerio.

Que la Resolución Nº 803 de fecha 26 de diciembre de 2002 del ex-MINISTERIO DE ECONOMIA sustituyó el Artículo 1º de la Resolución Nº 681 de fecha 2 de junio de 1998 del ex - MINISTERIO DE ECONOMIA Y OBRAS Y SERVICIOS PUBLICOS, autorizando en forma indistinta a las personas que se encuentren a cargo de la Dirección Nacional de Normalización Patrimonial dependiente de la SUBSECRETARIA DE ADMINISTRACION Y NORMALIZACION PATRIMONIAL de la SECRETARIA LEGAL Y ADMINISTRATIVA de este Ministerio y de la ex - Dirección de Entes en Liquidación, actualmente Dirección de Procesos Liquidatorios, de esa Dirección Nacional o, en caso de ausencia de sus titulares, a la persona que tenga delegada la firma del despacho de ambas dependencias, para la suscripción de las Cartas de Gerencia y de los Requerimientos de Pago de Bonos de la Deuda Pública hasta la suma de PESOS CIEN MIL ($ 100.000), en los procedimientos de cancelación de los pasivos de los entes, organismos y/o sociedades del Estado cuyo proceso liquidatorio ha finiquitado o se finiquite en el futuro, en el marco de lo normado por las Leyes Nº 23.982 y Nº 25.344 y normas complementarias y el Artículo 45 de la Ley Nº 11.672 Complementaria Permanente de Presupuesto (t.o. 1997), actualmente Artículo 60 de dicho cuerpo legal, texto ordenado por el Decreto Nº 689 de fecha 30 de junio de 1999.

Que de acuerdo a las aperturas estructurales inferiores aprobadas por la Resolución Nº 779/04 del MINISTERIO DE ECONOMIA Y PRODUCCION y las acciones encomendadas a los distintos organismos actuantes en esta órbita ministerial, es de la actual competencia del funcionario a cargo de la Dirección de Procesos Liquidatorios dependiente de la Dirección Nacional de Normalización Patrimonial, intervenir a los fines previstos en la Resolución Nº 681/98 del ex - MINISTERIO DE ECONOMIA Y OBRAS Y SERVICIOS PUBLICOS, con las sustituciones normadas en la Resolución Nº 803/02 del ex - MINISTERIO DE ECONOMIA, en reemplazo de la ex - Dirección de Entes en Liquidación, oportunamente dependiente de la citada Dirección Nacional.

Que a consecuencia de la asunción por el ESTADO NACIONAL de los activos ciertos y contingentes de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) resulta conducente por razones de continuidad de gestión, concentración de tareas y economía de procedimientos, transferir a partir del momento en que se concrete la misma la gestión de cobranza de los créditos administrativos que pudieren derivarse del proceso liquidatorio a la Dirección Nacional de Normalización Patrimonial de la SUBSECRETARIA DE ADMINISTRACION Y NORMALIZACION PATRIMONIAL de la SECRETARIA LEGAL Y ADMINISTRATIVA de este Ministerio, conforme a los objetivos y acciones a cargo de las estructuras de primer nivel operativo dispuestas por el Decreto Nº 1359/04, el cuál estableció como responsabilidad primaria de la citada Dirección Nacional realizar la coordinación de las actividades tendientes a la normalización y saneamiento de los activos y pasivos del ESTADO NACIONAL y establece entre sus acciones, la de participar en la coordinación de las actividades prejudiciales orientadas al recupero de los créditos a favor del ESTADO NACIONAL.

Que como consecuencia de ello, los fondos que resulten de la gestión de cobranza de los créditos a que se alude precedentemente serán depositados en la Cuenta Nº 2510/4 "Recaudaciones Tesorería General de la Nación" del Banco de la Nación Argentina - Sucursal Plaza de Mayo.

Que existiendo además en tratamiento por el ente residual casos de créditos con garantías hipotecarias oportunamente acordados por la entonces CAJA NACIONAL DE AHORRO Y SEGURO y que deben ser transferidos al BANCO CAJA DE AHORRO SOCIEDAD ANONIMA en el marco de la privatización de la ex entidad crediticia corresponde, por las mismas razones señaladas en el considerando anterior, que la indicada Dirección Nacional continúe entendiendo en los aspectos inherentes a la cesión de los mismos y las respectivas hipotecas constituidas a favor del ente residual, como así en la instrumentación de la documentación que resulte pertinente respecto de aquellos créditos otorgados en el período comprendido entre el 1 de enero de 1994 y el 31 de marzo de 1994, sin perjuicio de lo que por derecho corresponda respecto de estos últimos, en cuanto a su titularidad.

Que la SECRETARIA LEGAL Y ADMINISTRATIVA de este Ministerio, de acuerdo a lo dispuesto en el Decreto Nº 1359/04, resulta competente para entender en relación con aquellos casos en que se ventilen derechos de créditos litigiosos y su titularidad al amparo del marco legal de la privatización de la CAJA NACIONAL DE AHORRO Y SEGURO, hoy en liquidación, con la intervención que corresponda a la Dirección General de Asuntos Jurídicos y de la SUBSECRETARIA LEGAL de esa Secretaría en los aspectos jurídicos y judiciales involucrados.

Que en materia de bienes físicos, el Decreto Nº 1836/94 contempla que los derechos reales correspondientes a los inmuebles pertenecientes a los entes en liquidación se transfieran al ESTADO NACIONAL.

Que por su parte, la Ley de Ministerios (texto ordenado por Decreto Nº 438/92) y sus modificaciones, establece que corresponde al MINISTERIO DE ECONOMIA Y PRODUCCION entender en la organización, dirección y fiscalización del registro de bienes del Estado.

Que por Decreto Nº 443 de fecha 1 de junio de 2000 se suprimió a la ex - Dirección Nacional de Bienes del Estado y se creó el ORGANISMO NACIONAL DE ADMINISTRACION DE BIENES, como órgano desconcentrado en el ámbito del ex - MINISTERIO DE INFRAESTRUCTURA Y VIVIENDA, actualmente actuante en el ámbito de la SECRETARIA DE OBRAS PUBLICAS del MINISTERIO DE PLANIFICACION FEDERAL, INVERSION PUBLICA Y SERVICIOS.

Que el Artículo 3º del Decreto Nº 443/00 establece que dicho organismo tendrá las misiones y funciones correspondientes, entre otras, a la ex - Dirección Nacional de Bienes del Estado establecidas en el Decreto Nº 1450 de fecha 12 de diciembre de 1996, con excepción del Registro Patrimonial que se mantendrá en la órbita del MINISTERIO DE ECONOMIA Y PRODUCCION, a través de la SUBSECRETARIA DE PRESUPUESTO de la SECRETARIA DE HACIENDA.

Que el MINISTERIO DE ECONOMIA Y PRODUCCION está facultado para requerir la baja de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) de los registros de la Dirección General Impositiva dependiente de la ADMINISTRACION FEDERAL DE INGRESOS PUBLICOS de este Ministerio y otros organismos públicos.

Que conforme lo establecido en el Artículo 61 de la Ley Nº 11.672, Complementaria Permanente de Presupuesto (t.o. 1999), las resoluciones emanadas del ex - MINISTERIO DE ECONOMIA Y OBRAS Y SERVICIOS PUBLICOS, actualmente MINISTERIO DE ECONOMIA Y PRODUCCION, en ejercicio de las competencias otorgadas por el Decreto Nº 1836/94, deberán ser transcriptas en los libros de Actas de Asamblea respectivos o sus equivalentes y constituirán documentación suficiente a todos sus efectos.

Que la Dirección General de Asuntos Jurídicos del MINISTERIO DE ECONOMIA Y PRODUCCION ha tomado la intervención que le compete.

Que la presente se dicta en cumplimiento de lo dispuesto por el Artículo 14 de la Ley de Ministerios (texto ordenado por Decreto Nº 438/92) y sus modificaciones, el Artículo 67 de la Ley Nº 23.696, los Artículos 61 y 62 de la Ley Nº 11.672, Complementaria Permanente de Presupuesto (t.o. 1999), el Artículo 9º del Decreto Nº 2148/93 y los Artículos 4º, 10 y 15 del Decreto Nº 1836/94.

Por ello,

EL MINISTRO

DE ECONOMIA Y PRODUCCION

RESUELVE:

**Artículo 1º —** Considérase como Estado de Liquidación, el Estado Patrimonial al 30 de junio de 1994 de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) de la Dirección Nacional de Normalización Patrimonial de la SUBSECRETARIA DE ADMINISTRACION Y NORMALIZACION PATRIMONIAL de la SECRETARIA LEGAL Y ADMINISTRATIVA del MINISTERIO DE ECONOMIA Y PRODUCCION, que como Anexo I forma parte integrante de la presente resolución.

**Art. 2º —** Téngase por presentadas las rendiciones de cuentas confeccionadas por la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), correspondientes al período comprendido entre el 1 de julio de 1994 y el 31 de diciembre de 2003, que como Anexo II integran la presente resolución.

**Art. 3º —** Delégase en la SECRETARIA LEGAL Y ADMINISTRATIVA de este Ministerio, la facultad de tener por presentadas las rendiciones de cuentas de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), entre el 1 de enero de 2004 y la fecha en que se produzca la extinción de su personería jurídica.

**Art. 4º —** Dase por concluida a los NOVENTA (90) días corridos contados desde la fecha de publicación de la presente resolución en el Boletín Oficial, la liquidación de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación).

**Art. 5º —** Decláranse transferidos a partir del cumplimiento del plazo establecido en el artículo precedente al ESTADO NACIONAL, los activos y pasivos determinados, y los activos y pasivos contingentes de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación).

**Art. 6º —** Encomiéndase a la TESORERIA GENERAL DE LA NACION, actuante en el ámbito de la SECRETARIA DE HACIENDA de este Ministerio, a partir del cumplimiento del plazo establecido en el Artículo 4º, la realización de pagos que eventualmente pudieren derivarse del proceso liquidatorio de dicho ente, los que se efectivizarán contra las Ordenes de Pago que emita el Servicio Administrativo Financiero de la SECRETARIA LEGAL Y ADMINISTRATIVA de este Ministerio.

**Art. 7º —** Encomiéndase a la CONTADURIA GENERAL DE LA NACION, actuante en el ámbito de la SECRETARIA DE HACIENDA, la registración del Estado de Liquidación y de las rendiciones de cuentas a las que se hace referencia en los Artículos 1º, 2º y 3º respectivamente, así como el resguardo de los archivos financieros de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) y el registro contable de las operaciones inherentes a su liquidación y las derivadas de la misma.

**Art. 8º —** Encomiéndase a la SUBSECRETARIA DE RELACIONES CON PROVINCIAS de la Secretaria DE HACIENDA, a partir del cumplimiento del plazo establecido en el Artículo 4º, la consideración de los aspectos fiscales, económicos y financieros que se deriven del proceso de privatización y liquidación de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), en la relación entre el Gobierno Nacional y los Sectores Provinciales y Municipales.

**Art. 9º —** Encomiéndase a partir que se disponga el cierre del proceso liquidatorio de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) a la SUBSECRETARIA DE ADMINISTRACION Y NORMALIZACION PATRIMONIAL dependiente de la SECRETARIA LEGAL Y ADMINISTRATIVA de este Ministerio, la suscripción de las Cartas de Gerencia y de los Requerimientos de Pago en Bonos de la Deuda Pública con las excepciones establecidas en la Resolución Nº 803 de fecha 26 de diciembre de 2002 del ex - MINISTERIO DE ECONOMIA, por la que se sustituyó el Artículo 1º de la Resolución Nº 681 del 2 de junio de 1998 del ex - MINISTERIO DE ECONOMIA Y OBRAS Y SERVICIOS PUBLICOS.

**Art. 10. —** Transfiérese a partir de su asunción por el ESTADO NACIONAL en el marco del Artículo 5º de la presente resolución a la Dirección Nacional de Normalización Patrimonial de la SUBSECRETARIA DE ADMINISTRACION Y NORMALIZACION PATRIMONIAL de la SECRETARIA LEGAL Y ADMINISTRATIVA de este Ministerio, la gestión de cobranza sobre todos los créditos ciertos y contingentes de carácter administrativo que pudieran derivarse del proceso liquidatorio de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación). A esos efectos la citada Dirección Nacional podrá valerse de los recursos técnicos y humanos del Patrimonio en Liquidación BANCO NACIONAL DE DESARROLLO, de ese mismo ámbito y hasta la liquidación definitiva de este último. Del mismo modo, existiendo casos de créditos con garantía hipotecaria oportunamente acordados por la entonces CAJA NACIONAL DE AHORRO Y SEGURO que deben ser transferidos al BANCO CAJA DE AHORRO SOCIEDAD ANONIMA, corresponde a la citada Dirección Nacional continuar entendiendo en los aspectos inherentes a la cesión de los mismos y las respectivas hipotecas constituidas a favor del ente residual como así en la instrumentación de la documentación que resulte pertinente respecto de aquellos créditos otorgados por el período comprendido entre el 1 de enero de 1994 y 31 de marzo de 1994, sin perjuicio de lo que por derecho corresponda respecto estos últimos, en cuanto a su titularidad.

Los fondos que resulten de la gestión de cobranza de los créditos a que se alude precedentemente serán depositados en la Cuenta Nº 2510/46 "Recaudaciones Tesorería General de la Nación" del Banco de la Nación Argentina - Sucursal Plaza de Mayo.

**Art. 11. —** Encomiéndase a la SECRETARIA LEGAL Y ADMINISTRATIVA de este Ministerio, el tratamiento de aquellos casos en que se ventilen derechos de créditos litigiosos y/o su titularidad, a consecuencia de la privatización de la CAJA NACIONAL DE AHORRO Y SEGURO, hoy en liquidación, con la intervención que corresponda de la Dirección General de Asuntos Jurídicos y de la SUBSECRETARIA LEGAL de esa Secretaría en los aspectos jurídicos y judiciales que correspondan.

**Art. 12. —** Encomiéndase a la SUBSECRETARIA LEGAL dependiente de la SECRETARIA LEGAL Y ADMINISTRATIVA, la implementación dentro de los NOVENTA (90) días corridos de la fecha de publicación de la presente resolución en el Boletín Oficial, de los medios necesarios para atender todas las causas judiciales en que sea parte la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) y las que eventualmente se inicien.

**Art. 13. —** Encomiéndase a la SECRETARIA LEGAL Y ADMINISTRATIVA, a partir del cumplimiento del plazo establecido en el Artículo 4º de la presente resolución, dar intervención al ORGANISMO NACIONAL DE ADMINISTRACION DE BIENES, actuante en el ámbito de la SECRETARIA DE OBRAS PUBLICAS DEL MINISTERIO DE PLANIFICACION FEDERAL, INVERSION PUBLICA Y SERVICIOS, con respecto a los bienes físicos de la CAJA NACIONAL DE AHORRO

Y SEGURO (en liquidación), en el marco de las competencias que le asigna a dicho organismo el Decreto Nº 443 de fecha 1 de junio de 2000 en cuanto correspondiere.

**Art. 14.** — Encomiéndase a la SUBSECRETARIA DE ADMINISTRACION Y NORMALIZACION PATRIMONIAL, a partir del cumplimiento del plazo establecido en el Artículo 4º de la presente resolución, todas las tareas remanentes de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), no incluidas en los artículos precedentes ni en los objetivos establecidos en el Decreto Nº 25 de fecha 27 de mayo de 2003 modificado por su similar Nº 1359 de fecha 5 de octubre de 2004, ni en las naturales competencias delegadas en virtud del Artículo 14 de la Ley de Ministerios (texto ordenado por el Decreto Nº 438/92) y sus modificaciones.

**Art. 15.** — Dispónese a partir de la extinción de la personería jurídica de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), su baja de los registros de la Dirección General Impositiva dependiente de la ADMINISTRACION FEDERAL DE INGRESOS PUBLICOS, entidad autárquica en el ámbito del MINISTERIO DE ECONOMIA Y PRODUCCION.

**Art. 16.** — Dispónese la transcripción de la presente resolución en el libro de Actas de Asamblea o sus equivalentes de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación).

**Art. 17.** — Los organismos involucrados deberán disponer todos los medios necesarios para que dentro de los NOVENTA (90) días corridos contados de la fecha de publicación de la presente resolución en el Boletín oficial, se concreten los actos conducentes a la asunción de las tareas post - liquidatorias de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) en cuanto resulten alcanzados por la presente resolución, en la órbita de sus naturales competencias y de aquellas otras que se les encomiendan por este acto.

**Art. 18.** — Comuníquese, publíquese, dése a la Dirección Nacional del Registro Oficial y archívese.— Roberto Lavagna.

| | | | |
|---|---|---|---|
| ANEXOS - PARTE 1 | ANEXOS - PARTE 2 | ANEXOS - PARTE 3 | ANEXOS - PARTE 4 |
| ANEXOS - PARTE 5 | ANEXOS - PARTE 6 | ANEXOS - PARTE 7 | ANEXOS - PARTE 8 |
| ANEXOS - PARTE 9 | ANEXOS - PARTE 10 | ANEXOS - PARTE 11 | ANEXOS - PARTE 12 |
| ANEXOS - PARTE 13 | ANEXOS - PARTE 14 | ANEXOS - PARTE 15 | ANEXOS - PARTE 16 |

**Ministry of Economy and Production**

**CAJA NACIONAL DE AHORRO Y SEGURO**

**Resolution 563/2005**

**It is considered as Statement of Liquidation the Statement of Financial Position, as of June 30 1994, of Caja Nacional de Ahorro y Seguro (in liquidation process) of the Asset Normalization National Directorate of the Asset Administration and Normalization Deputy Secretariat. Submission of accountabilities pertinent to the period from July 1 1994 to December 31 2003. It is hereby delegated on the Legal and Administrative Secretariat the power to accept as filed the accountabilities between January 1 2004 and the date on which the extinction of the status of legal entity of the above-mentioned institution takes place.**

Bs. As., 10/11/2005

PURSUANT TO Case File No. 090-004711/2001 of the Registry of the ex MINISTRY OF ECONOMY, Articles 61 and 62 of Law No. 11,672, Permanent Budget Complementary Law (consolidated text 1999), Decrees No. 2148 dated October 19 1993; 1836 dated October 14 1994, and Administrative Decision No. 12 dated July 11 2003, and

WHEREAS:

Que en virtud de lo establecido por el Artículo 1º del Decreto Nº 1836 de fecha 14 de octubre de 1994, la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) dependiente de la Dirección Nacional de Normalización Patrimonial de la SUBSECRETARIA DE ADMINISTRACION Y NORMALIZACION PATRIMONIAL de la SECRETARIA LEGAL Y ADMINISTRATIVA del MINISTERIO DE ECONOMIA Y PRODUCCION, ha procedido a realizar un relevamiento del Estado Patrimonial de activos y pasivos, ciertos y contingentes al 30 de junio de 1994.

Que en relación con el Estado Patrimonial al 30 de junio de 1994, ha tomado intervención competente la SINDICATURA GENERAL DE LA NACION dependiente de la PRESIDENCIA DE LA NACION, según lo previsto por el Artículo 4º del Decreto Nº 1836/94, produciéndose su opinión mediante informe de fecha 6 de febrero de 1998.

Que como consecuencia de ello, el señor Liquidador de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) ha resuelto disponer el envío de dicho Estado Patrimonial y de las rendiciones de cuentas posteriores al 30 de junio de 1994, previstas en el segundo párrafo del Artículo 4º del Decreto Nº 1836/94, al MINISTERIO DE ECONOMIA Y PRODUCCION.

Que el MINISTERIO DE ECONOMIA Y PRODUCCION, en su carácter de Autoridad de Aplicación del Decreto Nº 1836/94, puede resolver considerar dicho Estado Patrimonial como Estado de Liquidación de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación).

Que en tal caso, dicho Estado Patrimonial es sustitutivo de los balances correspondientes al período comprendido entre el último balance auditado y el 30 de junio de 1994, de conformidad con lo normado por el Artículo 61 de la Ley Nº 11.672, Complementaria Permanente de Presupuesto (t.o. 1999).

Que la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) ha presentado las rendiciones de cuentas correspondientes al período comprendido entre el 1 de julio de 1994 y el 31 de diciembre de 2003.

Que de disponerse considerar el Estado Patrimonial de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), como estado de liquidación, las rendiciones de cuentas aludidas en el considerando precedente serán sustitutivas de los balances anuales de esa empresa.

Que en el período que media entre la última rendición de cuentas y la fecha en que se producirá la extinción de la personería jurídica de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), se siguen desarrollando las tareas remanentes que se distribuyen por esta resolución, lo cual implica la eventual percepción de ingresos y atención de erogaciones, por lo que resulta necesario arbitrar las medidas conducentes para tener por presentadas las rendiciones de cuentas efectuadas con posterioridad al 31 de diciembre de 2003 y hasta los NOVENTA (90) días corridos de la fecha de publicación de la presente resolución en el Boletín Oficial.

Que a esos efectos, según lo normado por el Artículo 14 de la Ley de Ministerios (texto ordenado por Decreto Nº 438/92) y sus modificaciones, la Autoridad Jurisdiccional puede delegar la resolución correspondiente a las cuestiones de su competencia en el funcionario que determine, conforme con la organización de cada área.

Que en tal sentido resulta conveniente facultar a la SECRETARIA LEGAL Y ADMINISTRATIVA del MINISTERIO DE ECONOMIA Y PRODUCCION, para tener por presentadas las rendiciones de cuentas posteriores al 31 de diciembre de 2003.

Que no existen otras tareas que justifiquen, por su importancia, el mantenimiento del estado de liquidación de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación).

Que el Artículo 62 de la Ley Nº 11.672, Complementaria Permanente de Presupuesto (t.o. 1999), establece que la liquidación definitiva de los organismos o empresas se producirá con el dictado de la resolución que, en el marco de los Decretos Nros. 2148 de fecha 19 de octubre de 1993 y 1836/94, disponga el cierre de los respectivos procesos liquidatorios.

Que dicho dispositivo legal contempla que la personería jurídica de los entes u organismos del ESTADO NACIONAL cuyo cierre se disponga con posterioridad al dictado de dicha ley se extinguirá a los NOVENTA (90) días corridos de la fecha de publicación en el Boletín Oficial del acto que resolvió su cierre.

Que por imperio de esa normativa, resulta conducente establecer las condiciones necesarias para una ordenada transferencia de las tareas actualmente a cargo de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) al ámbito de competencia de la Administración Central dentro de los NOVENTA (90) días corridos de la publicación de la presente resolución en el Boletín Oficial.

Que en oportunidad de producirse la liquidación definitiva del ente de que se trata, debe darse íntegro cumplimiento a lo establecido en el Artículo 9º del Decreto Nº 2148/93 y, en consecuencia, transferir al ESTADO NACIONAL los activos y pasivos, ciertos y/o contingentes, de la entidad liquidada.

Que dado que la labor de liquidación cesará a los NOVENTA (90) días corridos de la fecha de publicación de la presente resolución en el Boletín Oficial, es necesario proveer a la atención de las tareas remanentes que han de prolongarse después de la extinción de la personería jurídica de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), tales como la atención de juicios, trámites de consolidación de deudas, manejo de archivos y registros contables, administrativos y laborales, entre otras.

Que para la atención de tales tareas, es conveniente recurrir a los organismos permanentes del MINISTERIO DE ECONOMIA Y PRODUCCION, atendiendo a las incumbencias, responsabilidades y atribuciones que ya tienen asignadas y a las que se estima conveniente delegarles.

Que por el Decreto Nº 1283 de fecha 24 de mayo de 2003 se sustituyó, entre otros aspectos, la denominación del MINISTERIO DE ECONOMIA por la de MINISTERIO DE ECONOMIA Y PRODUCCION, asignándole las competencias a las que esta Cartera Ministerial deberá ajustar su accionar.

Que en función de tal asignación, se reordenaron las responsabilidades de dicha jurisdicción mediante el Decreto Nº 25 de fecha 27 de mayo de 2003 que aprobó el Organigrama de Aplicación de la Administración Centralizada del MINISTERIO DE ECONOMIA Y PRODUCCION así como los objetivos de los niveles políticos establecidos en dicho Organigrama hasta el nivel de Subsecretarías.

Que posteriormente el Decreto Nº 1359 de fecha 5 de octubre de 2004 sustituyó el Anexo I al Artículo 1º del Decreto Nº 25/03 - Organigrama de Aplicación de la Administración Centralizada del MINISTERIO DE ECONOMIA Y PRODUCCION, por el que se consigna en la planilla anexa a su Artículo 1º.

Que, del mismo modo, el Decreto Nº 1359/04 en su Artículo 2º sustituyó el Anexo II al Artículo 2º del Decreto Nº 25/03 - Objetivos del MINISTERIO DE ECONOMIA Y PRODUCCION, quedando conformado según el detalle que se consigna en las planillas anexas a dicho artículo.

Que, por otra parte, el Artículo 3º del Decreto Nº 1359/04 dispuso aprobar la estructura organizativa del primer nivel operativo del MINISTERIO DE ECONOMIA Y PRODUCCION de acuerdo con los Organigramas, Responsabilidades Primarias y Acciones y Dotación que como Anexos la, Ib, Ic, Id, Ie, If, Ig, Ih, Ii, Ij, Ik, Il, IIIa y IIIb forman parte integrante del citado decreto.

Que de acuerdo al Artículo 4º del citado Decreto Nº 1359/04 mediante la Resolución Nº 779 de fecha 6 de diciembre de 2004 del MINISTERIO DE ECONOMIA Y PRODUCCION se aprueban las aperturas estructurales inferiores de dicha jurisdicción de conformidad con los Organigramas, Acciones y Dotación que como Anexos la, lb, Ic, Id, Ie, If, Ig, Ih, Ii, Ij, Ik, Il, II, IIa y IIb forman parte integrante de la mencionada resolución.

Que en ese sentido, la TESORERIA GENERAL DE LA NACION actuante en el ámbito de la SECRETARIA DE HACIENDA de este Ministerio, tendrá a su cargo la realización de los pagos pendientes derivados del proceso liquidatorio de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación), los que se efectivizarán contra las Ordenes de Pago que emita el Servicio Administrativo Financiero de la SECRETARIA LEGAL Y ADMINISTRATIVA de este Ministerio.

Que la SUBSECRETARIA LEGAL de la SECRETARIA LEGAL Y ADMINISTRATIVA de este Ministerio, es el organismo permanente indicado para disponer sobre la atención de las causas judiciales.

Que la CONTADURIA GENERAL DE LA NACION, actuante en el ámbito de la SECRETARIA DE HACIENDA de este Ministerio, por las responsabilidades asignadas por el Artículo 91 de la Ley Nº 24.156 de Administración Financiera y de los Sistemas de Control del Sector Público Nacional, debe proceder al resguardo de la documentación financiera de la empresa liquidada y a registrar contablemente la liquidación.

Que la SUBSECRETARIA DE RELACIONES CON PROVINCIAS de la SECRETARIA DE HACIENDA de este Ministerio, es el área competente en la coordinación de los aspectos fiscales,

económicos y financieros y sus impactos sociales, en la relación entre el Gobierno Nacional y los Sectores Públicos Provinciales y Municipales.

Que existiendo otras tareas administrativas remanentes, no previstas específicamente en los objetivos contenidos en los cuerpos normativos a que se alude precedentemente, o que no hayan sido delegadas en el marco de lo autorizado por el Artículo 14 de la Ley de Ministerios (texto ordenado por Decreto Nº 438/92) y sus modificaciones, o se encomienden por la presente resolución, la repartición indicada para reunir las mismas resulta ser la SUBSECRETARIA DE ADMINISTRACION Y NORMALIZACION PATRIMONIAL de la SECRETARIA LEGAL Y ADMINISTRATIVA de este Ministerio.

Que la Resolución Nº 803 de fecha 26 de diciembre de 2002 del ex-MINISTERIO DE ECONOMIA sustituyó el Artículo 1º de la Resolución Nº 681 de fecha 2 de junio de 1998 del ex - MINISTERIO DE ECONOMIA Y OBRAS Y SERVICIOS PUBLICOS, autorizando en forma indistinta a las personas que se encuentren a cargo de la Dirección Nacional de Normalización Patrimonial dependiente de la SUBSECRETARIA DE ADMINISTRACION Y NORMALIZACION PATRIMONIAL de la SECRETARIA LEGAL Y ADMINISTRATIVA de este Ministerio y de la ex - Dirección de Entes en Liquidación, actualmente Dirección de Procesos Liquidatorios, de esa Dirección Nacional o, en caso de ausencia de sus titulares, a la persona que tenga delegada la firma del despacho de ambas dependencias, para la suscripción de las Cartas de Gerencia y de los Requerimientos de Pago de Bonos de la Deuda Pública hasta la suma de PESOS CIEN MIL ($ 100.000), en los procedimientos de cancelación de los pasivos de los entes, organismos y/o sociedades del Estado cuyo proceso liquidatorio ha finiquitado o se finiquite en el futuro, en el marco de lo normado por las Leyes Nº 23.982 y Nº 25.344 y normas complementarias y el Artículo 45 de la Ley Nº 11.672 Complementaria Permanente de Presupuesto (t.o. 1997), actualmente Artículo 60 de dicho cuerpo legal, texto ordenado por el Decreto Nº 689 de fecha 30 de junio de 1999.

Que de acuerdo a las aperturas estructurales inferiores aprobadas por la Resolución Nº 779/04 del MINISTERIO DE ECONOMIA Y PRODUCCION y las acciones encomendadas a los distintos organismos actuantes en esta órbita ministerial, es de actual competencia del funcionario a cargo de la Dirección de Procesos Liquidatorios dependiente de la Dirección Nacional de Normalización Patrimonial, intervenir a los fines previstos en la Resolución Nº 681/98 del ex - MINISTERIO DE ECONOMIA Y OBRAS Y SERVICIOS PUBLICOS, con las sustituciones normadas en la Resolución Nº 803/02 del ex - MINISTERIO DE ECONOMIA, en reemplazo de la ex - Dirección de Entes en Liquidación, oportunamente dependiente de la citada Dirección Nacional.

Que a consecuencia de la asunción por el ESTADO NACIONAL de los activos ciertos y contingentes de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) resulta conducente por razones de continuidad de gestión, concentración de tareas y economía de procedimientos, transferir a partir del momento en que se concrete la misma la gestión de cobranza de los créditos administrativos que pudieren derivarse del proceso liquidatorio a la Dirección Nacional de Normalización Patrimonial de la SUBSECRETARIA DE ADMINISTRACION Y NORMALIZACION PATRIMONIAL de la SECRETARIA LEGAL Y ADMINISTRATIVA de este Ministerio, conforme a los objetivos y acciones a cargo de las estructuras de primer nivel operativo dispuestas por el Decreto Nº 1359/04, el cuál estableció como responsabilidad primaria de la citada Dirección Nacional realizar la coordinación de las actividades tendientes a la normalización y saneamiento de los activos y pasivos del ESTADO NACIONAL y establece entre sus acciones, la de participar en la coordinación de las actividades prejudiciales orientadas al recupero de los créditos a favor del ESTADO NACIONAL.

Que como consecuencia de ello, los fondos que resulten de la gestión de cobranza de los créditos a que se alude precedentemente serán depositados en la Cuenta Nº 2510/4 "Recaudaciones Tesorería General de la Nación" del Banco de la Nación Argentina - Sucursal Plaza de Mayo.

Que existiendo además en tratamiento por el ente residual casos de créditos con garantías hipotecarias oportunamente acordados por la entonces CAJA NACIONAL DE AHORRO Y SEGURO y que deben ser transferidos al BANCO CAJA DE AHORRO SOCIEDAD ANONIMA en el marco de la privatización de la ex entidad crediticia corresponde, por las mismas razones señaladas en el considerando anterior, que la indicada Dirección Nacional continúe entendiendo en los aspectos inherentes a la cesión de los mismos y las respectivas hipotecas constituidas a favor del ente residual, como así en la instrumentación de la documentación que resulte pertinente respecto de aquellos créditos otorgados en el período comprendido entre el 1 de enero de 1994 y el 31 de marzo de 1994, sin perjuicio de lo que por derecho corresponda respecto de estos últimos, en cuanto a su titularidad.

Que la SECRETARIA LEGAL Y ADMINISTRATIVA de este Ministerio, de acuerdo a lo dispuesto en el Decreto Nº 1359/04, resulta competente para entender en relación con aquellos casos en que se ventilen derechos de créditos litigiosos y su titularidad al amparo del marco legal de la privatización de la CAJA NACIONAL DE AHORRO Y SEGURO, hoy en liquidación, con la intervención que corresponda a la Dirección General de Asuntos Jurídicos y de la SUBSECRETARIA LEGAL de esa Secretaría en los aspectos jurídicos y judiciales involucrados.

Que en materia de bienes físicos, el Decreto Nº 1836/94 contempla que los derechos reales correspondientes a los inmuebles pertenecientes a los entes en liquidación se transfieran al ESTADO NACIONAL.

Que por su parte, la Ley de Ministerios (texto ordenado por Decreto Nº 438/92) y sus modificaciones, establece que corresponde al MINISTERIO DE ECONOMIA Y PRODUCCION entender en la organización, dirección y fiscalización del registro de bienes del Estado.

Que por Decreto Nº 443 de fecha 1 de junio de 2000 se suprimió a la ex - Dirección Nacional de Bienes del Estado y se creó el ORGANISMO NACIONAL DE ADMINISTRACION DE BIENES, como órgano desconcentrado en el ámbito del ex - MINISTERIO DE INFRAESTRUCTURA Y VIVIENDA, actualmente actuante en el ámbito de la SECRETARIA DE OBRAS PUBLICAS del MINISTERIO DE PLANIFICACION FEDERAL, INVERSION PUBLICA Y SERVICIOS.

Que el Artículo 3º del Decreto Nº 443/00 establece que dicho organismo tendrá las misiones y funciones correspondientes, entre otras, a la ex - Dirección Nacional de Bienes del Estado establecidas en el Decreto Nº 1450 de fecha 12 de diciembre de 1996, con excepción del Registro Patrimonial que se mantendrá en la órbita del MINISTERIO DE ECONOMIA Y PRODUCCION, a través de la SUBSECRETARIA DE PRESUPUESTO de la SECRETARIA DE HACIENDA.

Que el MINISTERIO DE ECONOMIA Y PRODUCCION está facultado para requerir la baja de la CAJA NACIONAL DE AHORRO Y SEGURO (en liquidación) de los registros de la Dirección General Impositiva dependiente de la ADMINISTRACION FEDERAL DE INGRESOS PUBLICOS de este Ministerio y otros organismos públicos.

Que conforme lo establecido en el Artículo 61 de la Ley Nº 11.672, Complementaria Permanente de Presupuesto (t.o. 1999), las resoluciones emanadas del ex - MINISTERIO DE ECONOMIA Y OBRAS Y SERVICIOS PUBLICOS, actualmente MINISTERIO DE ECONOMIA Y PRODUCCION, en ejercicio de las competencias otorgadas por el Decreto Nº 1836/94, deberán ser transcriptas en los libros de Actas de Asamblea respectivos o sus equivalentes y constituirán documentación suficiente a todos sus efectos.

Que la Dirección General de Asuntos Jurídicos del MINISTERIO DE ECONOMIA Y PRODUCCION ha tomado la intervención que le compete.

Que la presente se dicta en cumplimiento de lo dispuesto por el Artículo 14 de la Ley de Ministerios (texto ordenado por Decreto Nº 438/92) y sus modificaciones, el Artículo 67 de la Ley Nº 23.696, los Artículos 61 y 62 de la Ley Nº 11.672, Complementaria Permanente de Presupuesto (t.o. 1999), el Artículo 9º del Decreto Nº 2148/93 y los Artículos 4º, 10 y 15 del Decreto Nº 1836/94.

Now therefore,

THE MINISTER

OF ECONOMY AND PRODUCTION

RESOLVES:

**Article 1.** — It is considered as Statement of Liquidation the Statement of Financial Position, as of June 30 1994, of CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process) of the Asset Normalization National Directorate of the ASSET ADMINISTRATION AND NORMALIZATION DEPUTY SECRETARIAT of the LEGAL AND ADMINISTRATIVE SECRETARIAT of the MINISTRY OF ECONOMY AND PRODUCION, which makes an integral part of this resolution as Annex I.

**Art. 2** — The accountabilities prepared by CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process), pertinent to the period from July 1 1994 to December 31 2003, making an integral part hereof as Annex II, shall be accepted as filed.

**Art. 3** — It is hereby delegated on the LEGAL AND ADMINISTRATIVE SECRETARIAT of this Ministry the power to accept as filed the accountabilities of CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process) between January 1 2004 and the date on which the extinction of the status of legal entity of the above-mentioned institution takes place.

**Art. 4** — Liquidation of CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process) shall be deemed as completed after NINETY (90) calendar days from the date of publication of this Resolution in the Official Bulletin.

**Art. 5** — From expiry of the term established in the previous article, the liquidated assets and liabilities, and the contingent assets and liabilities of CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process) are declared as transferred.

**Art. 6** — It is hereby entrusted to the GENERAL TREASURY OF THE REPUBLIC, acting within the scope of the SECRETARIAT OF THE TREASURY of this Ministry, from expiry of the term established under Article 4, the issuance of any payments that may derive from the liquidation process of such entity, which shall be made against the Purchase Orders issued by the Financial Administrative Service of the LEGAL AND ADMINISTRATIVE SECRETARIAT of this Ministry.

**Art. 7** — It is hereby entrusted to the COMPTROLLER GENERAL OF THE REPLIC, acting within the scope of the SECRETARIAT OF THE TREASURY, the registration of the Statement of Liquidation and of the accountabilities referred to in Articles 1, 2 and 3, respectively, as well as the keeping of the financial files of CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process) and the accounting recording of the operations inherent to its liquidation and any operations that may derive therefrom.

**Art. 8** — It is hereby entrusted to the DEPUTY SECRETARIAT OF RELATIONS WITH THE PROVINCES of the SECRETARIAT OF THE TREASURY, from expiry of the term established in Article 4, the consideration of the fiscal, economic and financial aspects that may derive from the privatization and liquidation process of CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation

process), in the relationship between the National Government and the Provincial and Municipal Sectors.

**Art. 9 —** It is hereby entrusted to the DEPUTY SECRETARIAT OF ASSET NORMALIZATION AND ADMINISTRATION dependent on the LEGAL AND ADMINISTRATIVE SECRETARIAT of this Ministry, from the closing of the liquidation process of CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process), the execution of Management Letters and the Demands for Payment in Domestic Public Debt Bonds with the exceptions established in Resolution No. 803 dated December 26 2002 of the ex MINISTRY OF ECONOMY, under which Article 1 of Resolution No. 681 dated June 2 1998 of the ex MINISTRY OF ECONOMY AND WORKS AND PUBLIC SERVICES was replaced.

**Art. 10. —** Be it transferred upon undertaking by the NATIONAL STATE in the framework of Article 5 hereof to the Asset Normalization National Directorate of the DEPUTY SECRETARIAT OF ASSET NORMALIZATION AND ADMINISTRATION of the LEGAL AND ADMINISTRATIVE SECRETARIAT of this Ministry the collection management on all true and contingent credits of an administrative nature that may derive from the liquidation process of CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process). For the purposes above, the above-mentioned National Directorate may make use of the technical and human resources of the Estate in Liquidation NATIONAL DEVELOPMENT BANK, of that same area and until the final liquidation of the latter. Likewise, in the event of credits with mortgage guarantee agreed in due time by the then CAJA NACIONAL DE AHORRO Y SEGURO that shall be transferred to BANCO CAJA DE AHORRO SOCIEDAD ANÓNIMA, the above-mentioned National Directorate shall continue to address any aspects inherent to the assignment thereof and the respective mortgages created in favor of the residual entity as well as to execute the pertinent documentation in relation to said credits granted for the period between January 1 1994 and March 31 1994, notwithstanding any provisions by law in connection to the latter, regarding their ownership.

The funds resulting from the collection management of the credits referred to above shall be deposited in Account No. 2510/46 "General Treasury of the Republic Collections" of the bank Banco de la Nación Argentina - Plaza de Mayo Branch.

**Art. 11. —** It is entrusted to the LEGAL AND ADMINISTRATIVE SECRETARIAT of this Ministry the treatment of those cases involving contentious receivables rights and/or ownership thereof, as a consequence of the privatization of CAJA NACIONAL DE AHORRO Y SEGURO, today in liquidation process, with the pertinent intervention of the Legal Issues General Directorate and of the LEGAL DEPUTY SECRETARIAT of that Secretariat in any applicable legal and judicial aspects.

**Art. 12. —** It is entrusted to the LEGAL DEPUTY SECRETARIAT dependent on the LEGAL AND ADMINISTRATIVE SECRETARIAT the implementation, within a term of NINETY (90) calendar days from the date of publication of this resolution in the Official Bulletin, of the means necessary to address any and all legal cases that CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process) may be a party to and the ones that may be filed in the future.

**Art. 13. —** It is entrusted to the LEGAL AND ADMINISTRATIVE SECRETARIAT, from expiry of the term established in Article 4 hereof, to give notice to the NATIONAL ORGANISM OF ASSET ADMINISTRATION, acting within the scope of the SECRETARIAT OF PUBLIC WORKS of the MINISTRY OF FEDERAL PLANNING, PUBLIC INVESTMENT AND SERVICES, regarding the physical assets of CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process), in the framework of the competences conferred to such organism under Decree No. 443 dated June 1 2000 as appropriate.

**Art. 14. —** The ASSET NORMALIZATION AND ADMINISTRATION DEPUTY SECRETARIAT is entrusted, from expiry of the term established in Article 4 hereof, all remaining duties of CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process) not included in the previous articles,

nor in the objectives established in Decree No. 25 dated May 27 2003 as amended by decree No. 1359 dated October 5 2004, nor in the natural competencies delegated by virtue of Article 14 of the Law on Ministries (consolidated text under Decree No. 438/92) and any amendments thereto.

**Art. 15.** — From extinction of the status of legal entity of CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation), removal thereof from the registries of the Tax Administration Department dependent on the FEDERAL ADMINISTRATION OF PUBLIC INCOME, an autarkic entity within the scope of the MINISTRY OF ECONOMY AND PRODUCTION.

**Art. 16.** — It is ordered the transcription of this resolution in the book of Minutes of the Meetings or similar books of CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process).

**Art. 17.** — The organisms involved shall have any necessary means to ensure, within the term of NINETY (90) calendar days from the date of publication of this resolution in the Official Bulletin, execution of any acts leading to assumption of the post-liquidation duties of CAJA NACIONAL DE AHORRO Y SEGURO (in liquidation process) as they fall within the scope of this resolution, within the scope of their natural competencies and any other competencies hereby entrusted thereto.

**Art. 18.** — Be it communicated, published, delivered to the National Department of Official Registration and filed.— Roberto Lavagna.

# Exhibit D

EMBASSY OF THE
ARGENTINE REPUBLIC
WASHINGTON, D.C.
—
AMBASSADOR'S OFFICE

Washington, D.C., January 27, 2016

Mr. Frank J. De María
Senior Vice President
TIG Insurance Company
250 Commercial Street
Manchester, New Hampshire 03101

Dear Mr. De María:

Although I have just taken over as the new Ambassador of Argentina, the numerous exchanges between TIG Insurance Company ("TIG") representatives and the Embassy of Argentina regarding the claims brought by the former against the Republic of Argentina, have already been called to my attention.

Argentina's position continues to be that TIG should initiate the corresponding legal proceedings to enforce foreign judgments and arbitral awards pursuant to the provisions of the Argentine legal system. However, mindful of the disagreements on certain legal issues evidenced in the above-referenced exchanges, I would like to suggest a meeting between the appropriate representatives of your company and relevant officials from Argentina in order to clarify the legal situation in such a way as to allow progress towards a mutually satisfactory solution to this matter.

In this regard, a delegation of governmental officials from Buenos Aires, including lawyers from Argentina's Treasury Attorney General's Office, will be present in Washington sometime in March and I believe this visit could represent a suitable opportunity for such a meeting. I hope TIG shares this perception; if so, please let me know if this suggestion suits TIG.

It is my sincere belief that this matter can only be sorted out through a frank and open dialogue. Please do not hesitate to contact my staff (Minister Gustavo Lunazzi at lgu@embassyofargentina.us) if you wish to further discuss this proposal.

Sincerely,

Martín Lousteau
Ambassador

cc:
The Honorable Kelly Ayotte, United States Senate
The Honorable Jeanne Shaheen, United States Senate
The Honorable Lou D'Alessandro, New Hampshire Senate

# Exhibit E

# TIG
# Insurance Company

250 Commercial Street, Suite 5000
Manchester, New Hampshire 03101
Telephone   (603) 656-2200
Facsimile    (603) 656-7500

February 4, 2016

Mr. Martin Lousteau
Ambassador to the United States
Embassy of the Argentine Republic
1600 New Hampshire Avenue, N.W.
Washington, D.C.  20009-2512

Re:     TIG Insurance Company v. Republic of Argentina as successor to
        Caja Nacional de Ahorro y Seguro ("Caja")

Dear Ambassador Lousteau,

I want to congratulate you on your appointment as Ambassador to the United States and note that TIG Insurance Company (TIG) looks forward to working with you and the Staff at your embassy.

Thank you for your letter of January 27, 2016.   On behalf of TIG, I accept your proposal for a meeting between representatives of TIG, and the Government of Argentina.   I plan to personally attend this meeting with our representatives, including TIG's legal counsel from Buenos Aires, and key staff who have worked on this matter for more than 14 years.   TIG remains committed to resolving this issue and we are available to meet with you and the visiting officials from Buenos Aires in March as you have suggested.   Based on my calendar, I would suggest a meeting on any of the following dates: March 7, March 14, 15, 28, 29, 30 or 31.   Should these dates not be convenient for your colleagues, TIG will make every effort to accommodate your required dates.

We disagree with the position that further legal action is required of TIG within the Argentine legal system. Nevertheless, TIG fully shares your view that this matter can be resolved through a frank and open dialogue.  Please note that I have full authority to settle this matter on behalf of TIG Insurance Company and anticipate that attendees on behalf of the Republic of Argentina will appear with similar authority.  You may contact our Washington representative (Mr. Louis Dupart, Managing Partner of the Normandy Group at ldupart@thenormandygrp.com or 202 223 8950) to set up a mutually agreeable date for this meeting.

Respectfully yours,

Nicholas C. Bentley
Chairman of the Board, Chief Executive Officer and President, TIG Insurance Company
President, The RiverStone Group, LLC

Letter to Ambassador Lousteau
February 4, 2016
Page 2 of 2


cc.
Mark Bannister
Vice President, TIG Insurance Company

Frank DeMaria
Special Representative to TIG Insurance Company

Louis C. DuPart, Esquire
The Normandy Group
Washington, D.C. USA

# Exhibit F

EMBASSY OF THE
ARGENTINE REPUBLIC
WASHINGTON, D. C.
———
AMBASSADOR'S OFFICE

Washington D.C., April 27, 2016

Mr. John Siegart
Vice President, TIG Insurance Company
Deputy General Counsel. The RiverStone Group, LLC.

Dear Mr. Siegart,

Thank you for your letter dated April 6, 2016. I appreciate you and your team attending a productive meeting at our Embassy with Attorney General Balbín and his staff last April 4. Also, I am particularly pleased with the fact that your letter underscores TIG Insurance Company's commitment to find a mutually agreed solution to its claims brought against Caja Nacional de Ahorro y Seguros. Let me reassure you that Argentina fully shares that end.

I am willing to continue to facilitate a dialogue with relevant authorities in Buenos Aires although, as mentioned during the aforementioned meeting, a discussion about a settlement would seem premature at this juncture. Due to legal constrains, Argentine officials would not be allowed to discuss a settlement without an absolute legal certainty of the validity of the claims under Argentine legislation. As a matter of fact, our Ministry of Economy and the Office of the Attorney General of the National Treasury are already reviewing all the documents pertaining to these claims and will surely be able to come to a conclusion soon about the different pending issues, so as to allow the definition of a clear course of action regarding TIG's claims and, hopefully, a mutually satisfactory solution.

Yours sincerely,

Martín Lousteau
Ambassador

Cc: Louis C. Dupart, Esquire
The Normandy Group
Washington D.C., USA

Exhibit G

# AGENCIA DE ADMINISTRACIÓN DE BIENES DEL ESTADO

**Decreto 1064/2016**

**Autorización para la enajenación de bienes del estado.**

Buenos Aires, 05/10/2016

VISTO el Expediente EX-2016-00496765-APN-DMEYD#AABE, la Ley Nº 22.423 su modificatoria y complementarias, el Decreto Nº 1.382 de fecha 9 de agosto de 2012, su modificatorio Nº 1.416 de fecha 18 de septiembre de 2013, la reglamentación aprobada por el Decreto Nº 2.670 de fecha 1º de diciembre de 2015, y

CONSIDERANDO:

Que a través de las actuaciones mencionadas en el Visto, la AGENCIA DE ADMINISTRACIÓN DE BIENES DEL ESTADO, organismo descentralizado en el ámbito de la JEFATURA DE GABINETE DE MINISTROS, gestiona la pertinente autorización del PODER EJECUTIVO NACIONAL, para proceder a la venta de diversos inmuebles pertenecientes al dominio privado del ESTADO NACIONAL, cuyo detalle y características particulares obran en el ANEXO que forma parte integrante del presente.

Que por el artículo 1º del Decreto Nº 1.382/12 se creó la mencionada AGENCIA DE ADMINISTRACIÓN DE BIENES DEL ESTADO, como organismo descentralizado en el ámbito de la JEFATURA DE GABINETE DE MINISTROS, estableciéndose entre sus objetivos, la ejecución de las políticas, normas y procedimientos que rigen la disposición y administración de los bienes inmuebles del ESTADO NACIONAL en uso, concesionados y/o desafectados.

Que el inciso 3 del artículo 8º del Decreto Nº 1.382/12 establece que compete a la AGENCIA DE ADMINISTRACIÓN DE BIENES DEL ESTADO, entre otras funciones, la de disponer, previa autorización pertinente conforme la normativa vigente, de los bienes inmuebles que integran el patrimonio del ESTADO NACIONAL.

Qué asimismo, el inciso 7 del referido artículo, faculta a la AGENCIA DE ADMINISTRACIÓN DE BIENES DEL ESTADO a transferir y enajenar, en las mismas condiciones, bienes inmuebles desafectados del uso con el fin de constituir emprendimientos de interés público, destinados al desarrollo y la inclusión social, en coordinación con las áreas con competencia específica en la materia.

Que, en concordancia con ello, el artículo 17 del Anexo al Decreto Nº 2.670/15, establece que todo acto de disposición de inmuebles de propiedad del ESTADO NACIONAL, cualquiera sea su jurisdicción de origen, será centralizado por la AGENCIA DE ADMINISTRACIÓN DE BIENES DEL ESTADO, organismo que detenta las funciones que la Ley Nº 22.423 su modificatoria y complementarias, atribuía a la entonces SECRETARÍA DE ESTADO DE HACIENDA del ex MINISTERIO DE ECONOMÍA,

con plenas facultades para disponer, tramitar, aprobar y perfeccionar la venta de inmuebles del dominio privado del ESTADO NACIONAL.

Que por su parte, el artículo 20 del referido Anexo dispone que el PODER EJECUTIVO NACIONAL autorizará en forma previa a la AGENCIA DE ADMINISTRACIÓN DE BIENES DEL ESTADO para disponer y enajenar bienes inmuebles, conforme lo previsto en los incisos 3 y 7 del artículo 8º del Decreto Nº 1.382/12 y su modificatorio.

Que en función de las competencias mencionadas en los considerandos precedentes, la AGENCIA DE ADMINISTRACIÓN DE BIENES DEL ESTADO ha relevado una serie de inmuebles pertenecientes al ESTADO NACIONAL que se encuentran en condiciones de ser enajenados, por haber sido desafectados del servicio al cual estaban asignados, en razón de resultar innecesarios para la gestión a su cargo.

Que las áreas técnicas de la AGENCIA DE ADMINISTRACIÓN DE BIENES DEL ESTADO han realizado los estudios pertinentes respecto de los referidos bienes, de los que surge su ubicación, datos dominiales, individualización catastral, situación de revista, superficie y demás condiciones, encontrándose dicha información incorporada en las actuaciones mencionadas en el Visto.

Que del análisis efectuado por la AGENCIA DE ADMINISTRACIÓN DE BIENES DEL ESTADO resulta que mantener ociosos dichos inmuebles implicaría desatender intereses prioritarios del ESTADO NACIONAL, por cuanto las operaciones que se impulsan no sólo constituirán una fuente de ingresos para el TESORO NACIONAL, sino que además generarán un impulso en la economía al reactivar diversas actividades productivas, lo que redundará en el mejoramiento de las condiciones de vida de la población.

Que asimismo el MINISTERIO DE RELACIONES EXTERIORES Y CULTO ha manifestado la necesidad de vender una serie de inmuebles en el extranjero asignados a dicha Jurisdicción que ya no pueden ser utilizados por encontrarse con elevados niveles de deterioro, haber perdido funcionalidad, estar ubicados en lugares inconvenientes o requerir elevados costos de reparación.

Que, las operaciones inmobiliarias que se realicen en el exterior deben llevarse a cabo adoptando mecanismos idóneos adaptados a las modalidades del país en que se realicen las mismas, asegurando igualmente la aplicación de los principios rectores de publicidad, competencia de precios e igualdad de trato de los oferentes, pudiéndose encomendar las operaciones a entidades bancarias oficiales con especialización inmobiliaria.

Que a los fines de evaluar la conveniencia de dichas operaciones se deberá contar con la tasación o precio testigos suministrados por los organismos competentes.

Que resulta pertinente autorizar a la AGENCIA DE ADMINISTRACIÓN DE BIENES DEL ESTADO a disponer y enajenar los inmuebles pertenecientes al ESTADO NACIONAL, detallados en el ANEXO del presente.

Que la DIRECCIÓN GENERAL DE ASUNTOS JURÍDICOS de la AGENCIA DE

ADMINISTRACIÓN DE BIENES DEL ESTADO y la SECRETARÍA LEGAL Y TÉCNICA de la PRESIDENCIA DE LA NACIÓN, han tomado la intervención de su competencia.

Que la presente medida se dicta en uso de las atribuciones emergentes del artículo 99 inciso 1 de la CONSTITUCIÓN NACIONAL.

Por ello,

EL PRESIDENTE
DE LA NACIÓN ARGENTINA
DECRETA:

ARTÍCULO 1° — Autorízase a la AGENCIA DE ADMINISTRACIÓN DE BIENES DEL ESTADO, en los términos del artículo 20 del Anexo al Decreto N° 2.670/15, a disponer y/o enajenar los inmuebles del ESTADO NACIONAL que se detallan en el ANEXO (IF-2016-01876455-APN-AABE#JGM) del presente.

ARTÍCULO 2° — Establécese que las ventas de los inmuebles listados en el referido ANEXO ubicados en el extranjero se realizarán adoptando mecanismos idóneos, adaptados a las modalidades del país en que se realicen las mismas, debiéndose justificar en su caso la imposibilidad o inconveniencia de realizar una licitación o subasta pública, aplicando sea cual fuera el procedimiento, los principios rectores de publicidad, competencia de precios e igualdad de trato a los oferentes, pudiéndose requerir la intervención de entidades bancarias oficiales con especialización inmobiliaria.

ARTÍCULO 3° — Establécese que para evaluar la conveniencia de las operaciones inmobiliarias referidas en el artículo 2º del presente decreto, se deberá requerir la tasación o fijación de precios testigo de los organismos competentes, que permitan asegurar que el precio de las operaciones sea conveniente y adecuado a los valores en plaza.

ARTÍCULO 4° — Establécese que, para la mejor y más eficiente gestión de los procedimientos que se sustancien en los términos del Artículo 2° del presente decreto, la AGENCIA DE ADMINISTRACIÓN DE BIENES DEL ESTADO podrá requerir al MINISTERIO DE RELACIONES EXTERIORES Y CULTO la realización de aquellas gestiones y trámites necesarios y conducentes para la enajenación de los inmuebles ubicados en el extranjero detallados en el ANEXO del presente.

ARTÍCULO 5° — Comuníquese, publíquese, dése a la DIRECCIÓN NACIONAL DEL REGISTRO OFICIAL y archívese. — MACRI. — Marcos Peña.

NOTA: El/los Anexo/s que integra/n este(a) Decreto se publican en la edición web del BORA —www.boletinoficial.gob.ar— y también podrán ser consultados en la Sede Central de esta Dirección Nacional (Suipacha 767 - Ciudad Autónoma de Buenos Aires).

**Fecha de publicación** 06/10/2016

*"2016 – Año del Bicentenario de la Declaración de la Independencia Nacional"*

## ANEXO

| | IDENTIFICACIÓN DEL INMUEBLE | PAÍS | PROVINCIA/ ESTADO | PARTIDO | LOCALIDAD/ CIUDAD | NOMENCLATU RA CATASTRAL |
|---|---|---|---|---|---|---|
| 1 | ECUADOR Nº 333 | ARGENTINA | CABA | | CABA | C. 9, S. 13, M. 89, P. 23 |
| 2 | JARAMILLO Nº 2028/36 - ARCOS S/Nº | ARGENTINA | CABA | | CABA | C.16, S. 29, M.40, P.2 |
| 3 | JOSÉ PASCUAL TAMBORINI Nº 3043 | ARGENTINA | CABA | | CABA | C. 16, S. 41, M. 93, P. 21 |
| 4 | CONESA Nº 3274 | ARGENTINA | CABA | | CABA | C. 16, S. 41, M. 93, P. 32 |
| 5 | ITAQUI Nº 6550 | ARGENTINA | CABA | | CABA | C. 1, S. 82, M. 37, P. 14 |
| 6 | MARTIN RODRIGUEZ Nº 762/64 | ARGENTINA | CABA | | CABA | C. 4, S. 6, M. 29, P. 15 |
| 7 | GODOY CRUZ Nº 2043/49 | ARGENTINA | CABA | | CABA | C.18, S. 19, M. 88, P. 14 |
| 8 | DEFENSA Nº 1357/61 | ARGENTINA | CABA | | CABA | C. 12, S. 4, M. 25, P. 26 |
| 9 | REPUBLICA BOLIVARIANA DE VENEZUELA S/Nº – AV. AZOPARDO Nº 440/480/490 – AV. BELGRANO Nº 10 – AV. ING. HUERGO Nº 411/431/451/463/467 | ARGENTINA | CABA | | CABA | C. 13, S. 2, M. 75, P. 1A |
| 10 | AV. ING. HUERGO Nº 475 ESQ. REPÚBLICA BOLIVARIANA DE VENEZUELA Nº 15/25 | ARGENTINA | CABA | | CABA | C. 13, S. 2, M. 75, P. 1B |
| 11 | REPUBLICA BOLIVARIANA DE VENEZUELA Nº 2 - AZOPARDO S/Nº – MEXICO S/Nº - AV. ING. HUERGO S/Nº | ARGENTINA | CABA | | CABA | C. 13, S. 2, M. 74 |

IF-2016-01876455-APN-AABE#JGM

*"2016 – Año del Bicentenario de la Declaración de la Independencia Nacional"*

| 12 | AV. DEL LIBERTADOR GENERAL SAN MARTIN S/Nº ENTRE AV. GENERAL PAZ Y VÍAS DEL FERROCARRIL GENERAL BELGRANO | ARGENTINA | BUENOS AIRES | VICENTE LOPEZ | VICENTE LOPEZ | C. III, S. D, M. 89, P.13B |
|----|----|----|----|----|----|----|
| 13 | 6 DE AGOSTO S/Nº ESQUINA SAN MARTIN | ARGENTINA | BUENOS AIRES | LOBOS | EMP. LOBOS | C. III, S. C, CHACRA 154, M. 154N, P. 1 y 2 |
| 14 | EL BENTEVEO S/ Nº ESQUINA MARTIN MIGUEL DE GÜEMES | ARGENTINA | BUENOS AIRES | LA MATANZA | CIUDAD EVITA | C. VII, S. N, M. 71, P. 5 |
| 15 | AV. E. CROVARA S/Nº ENTRE OMBÚ Y ATAHUALPA | ARGENTINA | BUENOS AIRES | LA MATANZA | LA TABLADA | C. III, S. M, M.20, P.7a |
| 16 | EL PAYADOR ESQ. EL ESPORAL | ARGENTINA | BUENOS AIRES | LA MATANZA | CIUDAD EVITA | C. VII, S. P, M. 53, P. 15B |
| 17 | EL TORDO E/ EL CALDEN Y VIAS DEL FERROCARRIL | ARGENTINA | BUENOS AIRES | LA MATANZA | CIUDAD EVITA | C. VII, P. 936 E |
| 18 | AGUSTIN ALVAREZ ENTRE CUYO Y ESPECHE | ARGENTINA | BUENOS AIRES | BAHIA BLANCA | BAHIA BLANCA | C. II, S. C, CHACRA 212, M. 212 IC, P. 20 |
| 19 | LA FALDA ESQ. CUYO | ARGENTINA | BUENOS AIRES | BAHIA BLANCA | BAHIA BLANCA | C. II, S. A, CHACRA 99, M. 99F, P. 11 |
| 20 | CALLE 55 Nº 2907/09/19/29 ESQ. CALLE 64 Nº 2706/12/18 - UF. 9 y 46 | ARGENTINA | BUENOS AIRES | NECOCHEA | NECOCHEA | C. I, S. A, M. 41, P. 4h, UF. 9 y 46 Y UC. J |
| 21 | CALLE 62 S/Nº ESQ. CALLE 63 S/Nº - UF 7, 34, 101 y 116 | ARGENTINA | BUENOS AIRES | NECOCHEA | NECOCHEA | C.I, S. A, M. 66, P. 5E, UF. 7, 34 , 101 Y 116 |
| 22 | BV. 27 DE FEBRERO Nº 2289 | ARGENTINA | SANTA FE | | ROSARIO | DEPTO. 16, DTO. 3, S. 11, M. 258, P. 0050 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 23 | JUAN DE DIOS CORREAS S/N – SAN PEDRO NOLASCO Nº 7051 | ARGENTINA | CORDOBA | | CORDOBA | DEPTO. 11, PED. 1, LOC.1, C. 12, S. 03, M. 18 , P. 03 |
| 24 | PINZON Nº 1055 – UF 24 y 25 | ARGENTINA | CORDOBA | | CORDOBA | DEPTO. 11, PED. 1, LOC. 1, C. 3, S.13, M. 30, P. 4, UF. 24 Y 25 |
| 25 | RUTA NACIONAL 66 S/Nº (PARTE DEL INMUEBLE CONFORME CROQUIS QUE SE ACOMPAÑA) | ARGENTINA | JUJUY | | PALPALÁ | C. 1, S.2, P. 11 (PARTE) - PADRON P-34258 |
| 26 | OFICINAS DE LA EMBAJADA ARGENTINA EN COLOMBIA (AVENIDA 40 Y CARRERA 13 Nº 39, PISOS 2DO. Y 16 Y UNIDADES DE PARQUEO S1-16, S1-17, S1- 18, S1-19 y S1-20) | COLOMBIA | | | BOGOTA | |
| 27 | RESIDENCIA OFICIAL DE LA EMBAJADA ARGENTINA EN EE.UU (1815 Q STREET NORTHWEST) | EEUU | | | WASHINGTON D.C. | |
| 28 | RESIDENCIA OFICIAL DE LA EMBAJADA ARGENTINA EN BRASIL (CHACRA 54, TRECHO CH-1, SHI SUL) | BRASIL | | | BRASILIA | |
| 29 | EX CENTRO CULTURAL "19 DE ABRIL" (AV. 19 DE ABRIL 3309 ESQUINA AV. AGRACIADA – EL PRADO) | URUGUAY | | | MONTEVIDEO | |

IF-2016-01876455-APN-AABE#JGM

*"2016 – Año del Bicentenario de la Declaración de la Independencia Nacional"*

| 30 | SAN PEDRO S/N – LOTE 206 | URUGUAY | | | COLONIA DEL SACRAMENTO | |
|----|--------------------------|---------|--|--|------------------------|--|
| 31 | CORCORAN STREET, NORTHWEST, OLD CITY II | EEUU | | | WASHINGTON D.C. | |
| 32 | EDIFICIO ANEXO DE LA EMBAJADA ARGENTINA EN EEUU (1811 Q STREET NORTHWEST) | EEUU | | | WASHINGTON D.C. | |
| 33 | 2136 R STREET NORTHWEST | EEUU | | | WASHINGTON D.C. | |

IF-2016-01876455-APN-AABE#JGM

*"2016 – Año del Bicentenario de la Declaración de la Independencia Nacional"*

## CROQUIS INMUEBLE Nº 25

## RUTA NACIONAL 66 S/Nº

## C. 1, S.2, P. 11 (PARTE) - PADRON P-34258



## STATE PROPERTY ADMINISTRATION AGENCY

**Decree 1064/2016**

**Authorization for State assets disposal.**

Buenos Aires, 10/05/2016

PURSUANT TO Case File EX-2016-00496765-APN-DMEYD#AABE, Law No. 22,423, in addition to any amending and complementary laws, Decree No. 1,382 dated August 9 2012, its amending decree No. 1,416 dated September 18 2013, the regulation approved by Decree No. 2,670 dated December 1 2015, and

WHEREAS:

Through the acts mentioned in the PURSUANT TO section above, the STATE PROPERTY ADMINISTRATION AGENCY, a decentralized organism within the scope of the PRESIDENCY OF THE CABINET OF MINISTERS manages the pertinent authorization by the NATIONAL EXECUTIVE BRANCH to sell private real estate property belonging to the NATIONAL STATE, whose detail and particular features are provided in the ANNEX that makes an integral part hereof.

Under article 1 of Decree No. 1,382/12 it was created the above-mentioned STATE PROPERTY ADMINISTRATION AGENCY, as a decentralized organism within the scope of the PRESIDENCY OF THE CABINET OF MINISTERS, whose objectives include, to mention but a few, the execution of the policies, rules and procedures ruling the disposal and administration of real estate property of the NATIONAL STATE in use, under concession and/or no longer used.

Subsection 3 of article 8 of Decree No. 1,382/12 establishes that the duties of the STATE PROPERTY ADMINISTRATION AGENCY include among other functions the disposal, upon pertinent authorization pursuant to the current regulation, of the real estate property making the estate of the NATIONAL STATE.

Section 7 of the article referred to above empowers the STATE PROPERTY ADMINISTRATION AGENCY for the transfer and disposal, in the same conditions, of real estate property no longer used with the purposes of creating endeavors of public interest, destined to social inclusion and development, in coordination with the areas with specific competence on the matter.

In accordance with the above, article 17 of the Annex to Decree No. 2,670/15 establishes that any act for the disposal of real estate property owned by the NATIONAL STATE, whichever their jurisdiction of origin, shall be centralized by the STATE PROPERTY ADMINISTRATION AGENCY, an organism having the functions that Law No. 22,423 and its amending and complementary laws attributed to the then SECRETARY OF THE STATE FOR FINANCE of the ex MINISTRY OF ECONOMY, with full power to decide,

process, approve and completion of the sale of real estate property under the private ownership of the NATIONAL STATE.

On its part, article 20 of the Annex referred to above states that the NATIONAL EXECUTIVE BRANCH shall previously authorize the STATE PROPERTY ADMINISTRATION AGENCY for the disposal of real estate property, pursuant to the provisions under sections 3 and 7 of article 8 of Decree No. 1,382/12 and its amending decree.

Based on the competencies mentioned in the whereas clauses above, the STATE PROPERTY ADMINISTRATION AGENCY has released a series of real estate property belonging to the NATIONAL STATE that are in condition to be disposed of, since they are no longer used for the purpose for which they were designed, since they are not necessary for the duties entrusted to it.

The technical areas of the STATE PROPERTY ADMINISTRATION AGENCY have carried out the pertinent studies regarding the assets referred to above, from which there arise their location, ownership data, identification in the real estate registry, situation of the real estate property, area and further conditions, such information being incorporated to the proceedings mentioned in the PURSUANT TO section above.

From the analysis made by the STATE PROPERTY ADMINISTRATION AGENCY, it arises that keeping such real estate property unused would imply not to address priority interests of the NATIONAL STATE; therefore, these operations would not only constitute a source of income for the NATIONAL TREASURY but they would also boost the economy by reactivating diverse productive activities, which shall inure to the improvement of the living conditions of the population.

Likewise, the MINISTRY OF FOREIGN AFFAIRS AND WORSHIP has manifested the need to sell a series of real estate property abroad allocated to such Jurisdiction that can no longer be used since they are highly deteriorated, they have lost functionality, they are placed at inconvenient places or they require high repairing costs.

The real-estate property operations that are performed abroad shall be performed in adoption of appropriate mechanisms that adapt to the modalities of the country where such operations are performed, also ensuring the application of the ruling principles in terms of publicity, prices competition and equality of treatment for offerors, being it possible to entrust the operations to official banking entities specializing in real estate property.

For the purposes of assessing convenience of such operations, the pertinent appraisal or reference prices shall be provided by the competent organisms.

It is pertinent to authorize the STATE PROPERTY ADMINISTRATION AGENCY for the disposal of the real estate property belonging to the NATIONAL STATE, as detailed in the ANNEX hereto.

The GENERAL DIRECTORATE OF LEGAL ISSUES of the STATE PROPERTY

ADMINISTRATION AGENCY and the LEGAL AND TECHNICAL SECRETARIAT of the PRESIDENCY OF THE NATION have intervened as due pursuant to their competence.

This measure is issued in use of the powers arising from article 99, subsection 1 of the NATIONAL CONSTITUTION.

Now therefore,

THE PRESIDENT
OF ARGENTINA
DECREES AS FOLLOWS:

ARTICLE 1 — The STATE PROPERTY ADMINISTRATION AGENCY is hereby authorized, pursuant to article 20 of the Annex to Decree No. 2,670/15, dispose of and/or sell the real estate property of the NATIONAL STATE as detailed in the ANNEX (IF-2016-01876455-APN-AABE#JGM) hereto.

ARTICLE 2 — It is hereby established that the sales of the real estate property listed in the ANNEX referred to above that are located abroad shall be made in adoption of appropriate mechanisms that adapt to the modalities of the country where the sales take place, duly justifying, when appropriate, the impossibility or inconvenience to make a public tender or bid, always applying, no matter the procedure followed, the ruling principles in terms of publicity, price competition and equality of treatment for offerors, being it possible to require the intervention of official banking entities with specialization in real estate property.

ARTICLE 3 — It is established that, in order to assess the convenience of the real estate property operations referred to in article 2 hereof, it shall be requested the appraisal or the fixing of reference prices from the competent organisms, which may allow to ensure that the price of the operations is convenient and matches the market values.

ARTICLE 4 — It is established that, for the best and most efficient management of the procedures under the terms of Article 2 hereof, the STATE PROPERTY ADMINISTRATION AGENCY may require from the MINISTRY OF FOREIGN AFFAIRS AND WORSHIP to carry out any necessary and pertinent processes and formalities for the disposal of the real estate property located abroad as detailed in the ANNEX hereto.

ARTICLE 5 — Be it communicated, published, delivered to the NATIONAL DEPARTMENT OF OFFICIAL REGISTRATION and filed. — MACRI. — Marcos Peña.

NOTE: The Annexes making part of this Decree are published in the web edition of the BORA —www.boletinoficial.gob.ar— and they may also be consulted at the Headquarters of this National Department (Suipacha 767 - Autonomous City of Buenos Aires).

**Date of publication** 10/06/2016

*"2016 – Año del Bicentenario de la Declaración de la Independencia Nacional"*

## ANEXO

| | BUILDING LOCATION | COUNTRY | PROVINCE/ STATE | DISTRICT | TOWN/ CITY | LAND REGISTRY NOMENCLATURE |
|---|---|---|---|---|---|---|
| 1 | ECUADOR Nº 333 | ARGENTINA | CABA | | CABA | C. 9,S. 13, M. 89, P. 23 |
| 2 | JARAMILLO Nº 2028/36 - ARCOS S/Nº | ARGENTINA | CABA | | CABA | C.16, S. 29, M.40, P.2 |
| 3 | JOSÉ PASCUAL TAMBORINI Nº 3043 | ARGENTINA | CABA | | CABA | C. 16, S. 41, M. 93, P. 21 |
| 4 | CONESA Nº 3274 | ARGENTINA | CABA | | CABA | C. 16, S. 41, M. 93, P. 32 |
| 5 | ITAQUI Nº 6550 | ARGENTINA | CABA | | CABA | C. 1,S. 82, M. 37, P. 14 |
| 6 | MARTIN RODRIGUEZ Nº 762/64 | ARGENTINA | CABA | | CABA | C. 4,S. 6, M. 29, P. 15 |
| 7 | GODOY CRUZ Nº 2043/49 | ARGENTINA | CABA | | CABA | C.18, S. 19, M. 88, P. 14 |
| 8 | DEFENSA Nº 1357/61 | ARGENTINA | CABA | | CABA | C. 12, S. 4, M. 25, P. 26 |
| 9 | REPUBLICA BOLIVARIANA DE VENEZUELA S/Nº – AV. AZOPARDO Nº 440/480/490 – AV. BELGRANO Nº 10 – AV. ING. HUERGO Nº 411/431/451/463/467 | ARGENTINA | CABA | | CABA | C. 13, S. 2, M. 75, P. 1A |
| 10 | AV. ING. HUERGO Nº 475 ESQ. REPÚBLICA BOLIVARIANA DE VENEZUELA Nº 15/25 | ARGENTINA | CABA | | CABA | C. 13, S. 2, M. 75, P. 1B |
| 11 | REPUBLICA BOLIVARIANA DE VENEZUELA Nº 2 - AZOPARDO S/Nº – MEXICO S/Nº - AV. ING. HUERGO S/Nº | ARGENTINA | CABA | | CABA | C. 13, S. 2, M. 74 |

IF-2016-01876455-APN-AABE#JGM

| | | | | | |
|---|---|---|---|---|---|
| 12 | AV. DEL LIBERTADOR GENERAL SAN MARTIN S/Nº ENTRE AV. GENERAL PAZ Y VÍAS DEL FERROCARRIL GENERAL BELGRANO | ARGENTINA | BUENOS AIRES | VICENTE LOPEZ | VICENTE LOPEZ | C. III, S. D, M. 89, P.13B |
| 13 | 6 DE AGOSTO S/Nº ESQUINA SAN MARTIN | ARGENTINA | BUENOS AIRES | LOBOS | EMP. LOBOS | C. III, S. C, CHACRA 154, M. 154N, P. 1 y 2 |
| 14 | EL BENTEVEO S/ Nº ESQUINA MARTIN MIGUEL DE GÜEMES | ARGENTINA | BUENOS AIRES | LA MATANZA | CIUDAD EVITA | C. VII, S. N, M. 71, P. 5 |
| 15 | AV. E. CROVARA S/Nº ENTRE OMBÚ Y ATAHUALPA | ARGENTINA | BUENOS AIRES | LA MATANZA | LA TABLADA | C. III, S. M, M.20, P.7a |
| 16 | EL PAYADOR ESQ. EL ESPORAL | ARGENTINA | BUENOS AIRES | LA MATANZA | CIUDAD EVITA | C. VII, S. P, M. 53, P. 15B |
| 17 | EL TORDO E/ EL CALDEN Y VIAS DEL FERROCARRIL | ARGENTINA | BUENOS AIRES | LA MATANZA | CIUDAD EVITA | C. VII, P. 936 E |
| 18 | AGUSTIN ALVAREZ ENTRE CUYO Y ESPECHE | ARGENTINA | BUENOS AIRES | BAHIA BLANCA | BAHIA BLANCA | C. II, S. C, CHACRA 212, M. 212 IC, P. 20 |
| 19 | LA FALDA ESQ. CUYO | ARGENTINA | BUENOS AIRES | BAHIA BLANCA | BAHIA BLANCA | C. II, S. A, CHACRA 99, M. 99F, P. 11 |
| 20 | CALLE 55 Nº 2907/09/19/29 ESQ. CALLE 64 Nº 2706/12/18 - UF. 9 y 46 | ARGENTINA | BUENOS AIRES | NECOCHEA | NECOCHEA | C. I, S. A, M. 41, P. 4h, UF. 9 y 46 Y UC. J |
| 21 | CALLE 62 S/Nº ESQ. CALLE 63 S/Nº - UF 7, 34, 101 y 116 | ARGENTINA | BUENOS AIRES | NECOCHEA | NECOCHEA | C.I, S. A, M. 66, P. 5E, UF. 7, 34 , 101 Y 116 |
| 22 | BV. 27 DE FEBRERO Nº 2289 | ARGENTINA | SANTA FE | | ROSARIO | DEPTO. 16, DTO. 3, S. 11, M. 258, P. 0050 |

*"2016 – Año del Bicentenario de la Declaración de la Independencia Nacional"*

| | | | | | | |
|---|---|---|---|---|---|---|
| 23 | JUAN DE DIOS CORREAS S/N – SAN PEDRO NOLASCO Nº 7051 | ARGENTINA | CORDOBA | | CORDOBA | DEPTO. 11, PED. 1, LOC.1, C. 12, S. 03, M. 18 , P. 03 |
| 24 | PINZON Nº 1055 – UF 24 y 25 | ARGENTINA | CORDOBA | | CORDOBA | DEPTO. 11, PED. 1, LOC. 1, C. 3, S.13, M. 30, P. 4, UF. 24 Y 25 |
| 25 | RUTA NACIONAL 66 S/Nº (PARTE DEL INMUEBLE CONFORME CROQUIS QUE SE ACOMPAÑA) | ARGENTINA | JUJUY | | PALPALÁ | C. 1, S.2, P. 11 (PARTE) - PADRON P34258 |
| 26 | OFICINAS DE LA EMBAJADA ARGENTINA EN COLOMBIA (AVENIDA 40 Y CARRERA 13 Nº 39, PISOS 2DO. Y 16 Y UNIDADES DE PARQUEO S1-16, S1-17, S1- 18, S1-19 y S1-20) | COLOMBIA | | | BOGOTA | |
| 27 | OFFICIAL HEADQUARTERS OF THE ARGENTINIAN EMBASSY IN THE U.S. (1815 Q STREET NORTHWEST) | U.S.A. | | | WASHINGTON D.C. | |
| 28 | RESIDENCIA OFICIAL DE LA EMBAJADA ARGENTINA EN BRASIL (CHACRA 54, TRECHO CH-1, SHI SUL) | BRASIL | | | BRASILIA | |
| 29 | EX CENTRO CULTURAL "19 DE ABRIL" (AV. 19 DE ABRIL 3309 ESQUINA AV. AGRACIADA – EL PRADO) | URUGUAY | | | MONTEVIDEO | |

IF-2016-01876455-APN-AABE#JGM

| 30 | SAN PEDRO S/N – LOTE 206 | URUGUAY | | | COLONIA DEL SACRAMENTO | |
|---|---|---|---|---|---|---|
| 31 | CORCORAN STREET, NORTHWEST, OLD CITY II | U.S.A. | | | WASHINGTON D.C. | |
| 32 | ADJOINING BUILDING TO THE ARGENTINIAN EMBASSY IN THE U.S. (1811 Q STREET NORTHWEST) | U.S.A. | | | WASHINGTON D.C. | |
| 33 | 2136 R STREET NORTHWEST | U.S.A. | | | WASHINGTON D.C. | |

IF-2016-01876455-APN-AABE#JGM

## CROQUIS INMUEBLE Nº 25

## RUTA NACIONAL 66 S/Nº

## C. 1, S.2, P. 11 (PARTE) - PADRON P-34258



IF-2016-01876455-APN-AABE#JGM

# Exhibit H



# TRANSLATION CERTIFICATION

450 7th Avenue
10th Floor
New York, NY  10123
Tel 212.643.8800
Fax 212.643.0005
www.morningtrans.com

**County of New York**
**State of New York**

Date: May 3, 2017

To whom it may concern:

This is to certify that the attached translations from Spanish into English are accurate representations of the documents received by this office.

The documents are designated as:
- Decreto 1064-2016.docx
- Res MECON 470-1994.docx
- Resolución 563-2005.docx
- Resolución 893-1998.docx

Sarah Faup, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are true, full and accurate translations of the specified documents."

_____
Signature of Sarah Faup

Accurate Translation Services 24/7

# TRANSLATION CERTIFICATION

450 7th Avenue
10th Floor
New York, NY 10123
Tel 212.643.8800
Fax 212.643.0005
www.morningtrans.com

**County of New York**
**State of New York**

Date: May 8, 2017

To whom it may concern:

This is to certify that the attached translation from Spanish into English is an accurate representation of the documents received by this office.

The documents are designated as:

- Annex to Resolution 893-98

- Annex to Decree 1064--2016

Natalie Legros, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

*Natalie Legros*

Signature of Natalie Legros

Accurate Translation Services 24/7